CLEMENT SETH ROBERTS (STATE BAR NO. 209203)
croberts@orrick.com
BAS DE BLANK (CA Bar No. 191487)
basdeblank@orrick.com
ALYSSA CARIDIS (STATE BAR NO. 260103)
acaridis@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone: +1 415 773 5700
Facsimile: +1 415 773 5759

GEORGE I. LEE (*pro hac vice* application forthcoming)
lee@ls3ip.com
SEAN M. SULLIVAN (*pro hac vice* application forthcoming)
sullivan@ls3ip.com
RORY P. SHEA (*pro hac vice* application forthcoming)
shea@ls3ip.com
J. DAN SMITH (*pro hac vice* application forthcoming)
smith@ls3ip.com
LEE SULLIVAN SHEA & SMITH LLP
656 W Randolph St., Floor 5W
Chicago, IL 60661
Telephone: +1 312 754 0002
Facsimile: +1 312 754 0003

*Attorneys for Defendant Sonos, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

Google LLC,

Plaintiff,

v.

Sonos, Inc.,

Defendant.

Case No. 20-cv-03845-EMC

**SONOS, INC.'S MOTION TO DISMISS GOOGLE LLC'S SECOND, THIRD, AND FIFTH CAUSES OF ACTION PURSUANT TO FED. R. CIV. P. 12(B)(6) AND 35 U.S.C. § 101**

Date: Thursday, October 8, 2020
Time: 1:30 p.m.
Courtroom: 5, 17th Floor

## TABLE OF CONTENTS

NOTICE OF MOTION ..... 1

STATEMENT OF THE RELIEF REQUESTED ..... 1

MEMORANDUM OF POINTS AND AUTHORITIES ..... 1

I. INTRODUCTION ..... 1

II. STATEMENT OF ISSUES ..... 2

III. FACTUAL BACKGROUND ..... 2

IV. LEGAL STANDARD ..... 2

A. Dismissing Claims for Infringement of Patents Directed to Abstract Ideas ..... 2

B. Pleading Standard Under Rule 12(b)(6) ..... 3

V. ARGUMENT ..... 4

A. The ’489 Patent is Invalid Under 35 U.S.C. § 101 ..... 4

1. *Alice* Step 1: Claim 15 is Directed to an Abstract Idea ..... 4

2. *Alice* Step 2: Claim 15 Lacks any Inventive Concept ..... 10

3. The Remaining Claims Do Not Alter this Analysis ..... 11

B. Google Fails to State a Plausible Claim for Infringement of the ’375 Patent ..... 13

C. Google Fails to State a Plausible Claim for Infringement of the ’586 Patent ..... 14

VI. CONCLUSION ..... 15

## TABLE OF AUTHORITIES

**Cases**

*Affinity Labs of Texas, LLC v. DirecTV, LLC*,
838 F.3d 1253 (Fed. Cir. 2016) .......... 3

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
573 U.S. 208 (2014) .......... 1, 3

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 3, 4

*Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*,
687 F.3d 1266 (Fed. Cir. 2012) .......... 6

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 3, 4

*Berkheimer v. HP Inc.*,
890 F.3d 1369 (Fed. Cir. 2018) .......... 3, 10

*Bot M8 LLC v. Sony Corp. of Am.*,
No. 19-CV-07027-WHA, 2020 WL 418938 (N.D. Cal. Jan. 27, 2020) .......... 13

*buySAFE, Inc. v. Google, Inc.*,
765 F.3d 1350 (Fed. Cir. 2014) .......... 10

*ChargePoint, Inc. v. SemaConnect, Inc.*,
920 F.3d 759 (Fed. Cir. 2019) .......... 10

*Cleveland Clinic Found. v. True Health Diagnostics LLC*,
859 F.3d 1352 (Fed. Cir. 2017) .......... 3

*Cogent Medicine, Inc. v. Elsevier Inc.*,
70 F. Supp. 3d 1058 (N.D. Cal. 2014) .......... 9

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*,
776 F.3d 1343 (Fed. Cir. 2014) .......... 3, 6, 12, 13

*Credit Acceptance Corp. v. Westlake Servs.*,
859 F.3d 1044 (Fed. Cir. 2017) .......... 12

*DDR Holdings, LLC v. Hotels.com, L.P.*,
773 F.3d 1245 (Fed.Cir.2014)........................................................................................ 3

*Electric Power Group, LLC v. Alstom S.A.*,
830 F.3d 1350 (Fed. Cir. 2016)........................................................................... 7, 8, 11

*FairWarning IP, LLC v. Iatric Systems, Inc.*,
839 F.3d 1089 (Fed. Cir. 2016)........................................................................................ 9

*Genetic Techs. Ltd. v. Merial LLC*,
818 F.3d 1369 (Fed. Cir. 2016)........................................................................................ 3

*HowLink Global LLC v. Network Commc'ns In''l Corp.*,
561 Fed. App'x 898 (Fed. Cir. 2014)............................................................................. 14

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*,
681 F.3d 1323 (Fed. Cir. 2012)...................................................................................... 13

*In re Bilski*,
545 F.3d 943 (Fed. Cir. 2008).......................................................................................... 2

*In re TLI Commc'ns LLC Patent Litig.*,
823 F.3d 607 (Fed. Cir. 2016)........................................................................................ 11

*In the Matter of Certain Audio Players & Controllers, Components Thereof, & Prod. Containing Same*,
USITC Inv. No. 337-TA-1191 (Jan. 7, 2020) ................................................................... 2

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
792 F.3d 1363 (Fed. Cir. 2015)........................................................................................ 3

*Intellectual Ventures I LLC v. Erie Indemnity Company*,
850 F.3d 1315 (Fed. Cir. 2017)........................................................................................ 9

*Levitt v. Yelp! Inc.*,
765 F. 3d 1123 (9th Cir. 2014)......................................................................................... 4

*Linear Tech. Corp. v. Impala Linear Corp.*,
379 F.3d 1311 (Fed. Cir. 2004 ...................................................................................... 13

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
521 F.3d 1097 (9th Cir. 2008)........................................................................................ 4

*Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*,
811 F.3d 1314 (Fed. Cir. 2016)................................................................................ 6, 10

*SAP America, Inc., v. InvestPic, LLC*,
898 F.3d 1161 (Fed. Cir. 2018)...................................................................................... 10

*Sensor Elec. Tech., Inc. v. Bolb, Inc.*,
No. 18-cv-05194-LHK, 2019 WL 4645338 (N.D. Cal. Sept 24, 2019) ................................... 14

*Sonos Inc. v. Google LLC*,
2:20-CV-00169-JAK-DAM, 2020 WL 85166 (C.D. Cal. Jan. 7, 2020)..................................... 2

*West View Research, LLC v. Audi AG*,
685 F. App'x 923 (Fed. Cir. 2017) ..................................................................................... 9

*Windy City Innovations, LLC v. Microsoft Corp.*,
193 F. Supp. 3d 1109 (N.D. Cal. 2016) .............................................................................. 4

*WiNet Labs LLC v. Apple Inc.*,
No. 5:19-cv-2248-EJD, 2020 WL 409012 (N.D. Cal. Jan. 24, 2020) ........................................ 4

**NOTICE OF MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS:

PLEASE TAKE NOTICE that on Thursday, October 8, 2020 at 1:30 p.m., or as soon thereafter may be heard in Courtroom 5 on the 17th Floor of the San Francisco Courthouse, Defendant Sonos, Inc. ("Sonos") will, and hereby does, move the Court to dismiss Plaintiff Google LLC's ("Google's") claims for infringement of U.S. Patent Nos. 8,583,489 ('489 Patent; Dkt. 1-8), 10,140,375 ('375 Patent; Dkt. 1-12), and 10,229,586 ('586 Patent; Dkt. 1-22) under Rule 12(b)(6). This motion is made under Federal Rule of Civil procedure 12(b)(6) because Plaintiff fails to state a claim upon which relief may be granted, and is based upon this Notice and the Memorandum of Points and Authorities below, and upon such further oral and written evidence as may be presented at or before the hearing on this matter.

**STATEMENT OF THE RELIEF REQUESTED**

Sonos requests that this Court dismiss Google's claims for infringement of the '489 Patent, the '375 Patent, and the '586 Patent under Rule 12(b)(6).

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Patent law protects only concrete and tangible inventions. It does not protect abstract ideas, even when they are claimed in a particular context or in connection with conventional technology. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 223 (2014). The '489 Patent violates this principle. It is directed to the abstract idea of gathering information about the availability of content from multiple sources and presenting that information to a user. To this, the claims add only generic computer hardware, which the specification acknowledges to be both conventional and conventionally arranged. As discussed below, the Federal Circuit repeatedly has found analogous claims to be impermissibly abstract and thus invalid under 35 U.S.C. § 101. The Court should likewise find the '489 Patent invalid as directed to an unpatentable abstract idea and dismiss Google's claim for infringement of the '489 Patent under Rule 12(b)(6).

The Court should also dismiss Google's claims for infringement of the '375 Patent and the '586 Patent under Rule 12(b)(6) on the basis that these infringement claims are not plausible.

## II. STATEMENT OF ISSUES

1) Whether Google's claim for infringement of the '489 Patent should be dismissed on the grounds that it is subject-matter ineligible under 35 U.S.C. § 101.

2) Whether Google's claim for infringement of the '375 Patent should be dismissed because Google's allegations fail to plausibly show that the Accused '375 Products meet each and every element of claim 1 of the '375 Patent.

3) Whether Google's claim for infringement of the '586 Patent should be dismissed because Google's allegations fail to plausibly show that the Accused '586 Products meet each and every element of claim 1 of the '586 Patent.

## III. FACTUAL BACKGROUND

On January 7, 2020, Sonos filed an investigation before the United States International Trade Commission seeking a permanent exclusion order against Google for products that infringe five of Sonos's patents. *See In the Matter of Certain Audio Players & Controllers, Components Thereof, & Prod. Containing Same*, USITC Inv. No. 337-TA-1191 (Jan. 7, 2020). That same day, Sonos also filed a district court complaint against Google, which was subsequently stayed. *See Sonos Inc. v. Google LLC*, 2:20-CV-00169-JAK-DAM, 2020 WL 85166 (C.D. Cal. Jan. 7, 2020).

On June 11, 2020, Google brought the present suit against Sonos, alleging infringement of five of Google's patents. *See* Dkt. No. 1 ("Compl."). This motion challenges Google's infringement allegations for three of those patents: (1) the '489 Patent, (2) the '375 Patent, and (3) the '586 Patent.

## IV. LEGAL STANDARD

### A. Dismissing Claims for Infringement of Patents Directed to Abstract Ideas

"Whether a claim is drawn to patent-eligible subject matter under § 101 is a threshold inquiry" and "an issue of law." *In re Bilski*, 545 F.3d 943, 950 (Fed. Cir. 2008), *aff'd, Bilski v. Kappos*, 561 U.S. 593, 602 (U.S. 2010) (describing § 101 as "a threshold test"); *SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1331 (Fed. Cir. 2010) ("patent-eligible subject matter is an issue of law"). For this reason, the Federal circuit has "repeatedly recognized that in many cases

it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion." *Genetic Techs. Ltd. v. Merial LLC*, 818 F.3d 1369, 1373 (Fed. Cir. 2016).

The Supreme Court has set forth a two-part test for determining whether a patent recites ineligible subject matter under § 101. *Alice*, 573 U.S. at 218. At step one, the Court must determine if the patented claims are "directed to" an abstract idea. *Id.* "The 'abstract idea' step of the [*Alice*] inquiry calls upon [the Court] to look at the focus of the claimed advance over the prior art to determine if the claim's character as a whole is directed to excluded subject matter." *Affinity Labs of Texas, LLC v. DirecTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016). In performing this analysis, courts often compare a claim to "the ideas found to be abstract in other cases before the Supreme Court and [the Federal Circuit]." *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1367 (Fed. Cir. 2015).

If the claim is directed to an abstract idea, the Court proceeds to step two and asks whether the claim elements, considered "both individually and 'as an ordered combination,'" recite an "inventive concept" that is "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [abstract idea] itself." *Alice*, 573 U.S. at 217-18. However, the inventive concept cannot be either (i) an abstract idea in itself or (ii) a generic computer implementation. *Berkheimer v. HP Inc.*, 890 F.3d 1369, 1374 (Fed. Cir. 2018) ("[T]he 'inventive concept' cannot be the abstract idea itself."); *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1256 (Fed.Cir.2014) ("[A]fter *Alice*, there can remain no doubt: recitation of generic computer limitations does not make an otherwise ineligible claim patent-eligible.").

Where, as here, all the claims of a challenged patent "are substantially similar and linked to the same abstract idea," analyzing a representative claim is proper. *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1348 (Fed. Cir. 2014); *see also Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1359-60 (Fed. Cir. 2017).

**B. Pleading Standard Under Rule 12(b)(6)**

To survive a Rule 12(b)(6) motion to dismiss after *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a plaintiff "must…suggest that the

claim has at least a plausible chance of success." *Levitt v. Yelp! Inc.*, 765 F. 3d 1123, 1134-35 (9th Cir. 2014).

Under Rule 12(b)(6), "dismissal of a complaint is required if 'the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.'" *WiNet Labs LLC v. Apple Inc.*, No. 5:19-cv-2248-EJD, 2020 WL 409012, at *4 (N.D. Cal. Jan. 24, 2020) (quoting *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)). The rules require a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In this respect, a complaint must plead "enough facts to state a claim to relief that is plausible on its face" (*Twombly*, 550 U.S. at 570), which is when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" (*Iqbal*, 556 U.S.at 678). When performing this analysis, the Court should set aside Google's legal conclusions, bald assertions, and unwarranted deductions of fact regarding infringement, which are not entitled to an assumption of truth, and then determine whether the remaining factual allegations can plausibly show infringement. *See In re Gilead Sciences Sec. Litig.*, 536 F. 3d 1049, 1055 (9th Cir. 2008); *Atlas IP LLC v. Pac. Gas & Elec. Co.*, No. 15-cv-05469-EDL, 2016 WL 1719545, at *3–4 (N.D. Cal. Mar. 9, 2016) (order granting motion to dismiss for failure to state a plausible claim of infringement) (citing *Iqbal*, 556 U.S. at 678-79). After performing this analysis, "[i]f the facts alleged do not support a reasonable inference of liability, stronger than a mere possibility, the claim must be dismissed." *Windy City Innovations, LLC v. Microsoft Corp.*, 193 F. Supp. 3d 1109, 1112 (N.D. Cal. 2016).

## V. ARGUMENT

### A. The '489 Patent is Invalid Under 35 U.S.C. § 101

#### 1. *Alice* Step 1: Claim 15 is Directed to an Abstract Idea

The '489 Patent is titled "Generating a Media Content Availability Notification" and issued on November 12, 2013. The only claim specifically identified by Google in its Complaint

is claim 15 (Compl. ¶ 43). This motion therefore uses claim 15 as representative but also addresses the additional elements found in the dependent claims.

Claim 15 of the ’489 Patent is directed to the abstract idea of gathering information about the availability of content from different sources and presenting that information to a user via a notification. *See* ’489 Patent at 1:13-16.

The claim recites:

> 15. One or more non-transitory computer-readable media having instructions therein, the instructions being executable by one or more processors to execute a method comprising:
>
> [a] receiving, at the one or more processors, a selection of media content and content delivery preferences, wherein the content delivery preferences comprise a selection of a plurality of unique online content sources specified by a user interface and user account data for each of the plurality of unique online content sources;
>
> [b] requesting, over a network, content availability data from the plurality of unique online content sources based at least in part on the selection of media content and the user account data, wherein the content availability data indicates whether the selection of media content is available to a user account in the user account data;
>
> [c] receiving, at the one or more processors, the content availability data; and
>
> [d] using the content availability data to generate a notification for an electronic device, wherein the notification indicates that the selection of media content is available to at least one user account in the user account data from at least one of the plurality of unique online content sources.

Claim 15 recites four functional steps: [a] ***receiving*** a selection of media content and content delivery preferences that include preferred online sources; [b] ***requesting*** content availability data from those sources based, at least in part, on the selected content and delivery preferences; [c] ***receiving*** information on the availability of the selected content; and [d] ***using*** the received data to generate a notification. The patent specification describes the method in these same terms, shown below in Figure 5:






FIG. 5

When evaluating this claim under Federal Circuit precedent, it is clear that this claim is "directed to" an abstract idea under the first prong of *Alice*.

As an initial matter, claim 15 is nothing more than a generic attempt to automate a process that could be (and previously was) performed entirely by a human without a computer, which has repeatedly been found to be an abstract idea under Federal Circuit precedent. *See, e.g., Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1324 (Fed. Cir. 2016) (finding an abstract idea where a claim "could all be performed by humans without a computer"); *Content Extraction*, 776 F.3d at 1347 (finding an abstract idea where "humans have always performed" the claimed functions); *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1279 (Fed. Cir. 2012) (finding claims abstract where "the [claimed] computer simply performs more efficiently what could otherwise be accomplished manually").

To illustrate with an example, a parent might be asked by her child whether she can watch a movie on a home theater. In the claim's terms, the parent could: [a] receive a selection of media content (*e.g.*, the name of a movie) along with the child's delivery preferences (*e.g.*, streaming accounts to which she has access); [b] contact the various streaming platforms to figure out which ones have the movie; [c] receive their responses; and [d] notify her child of the answer. Setting aside the generic computing components recited in claim 15, this ***human*** information-gathering process falls squarely within the scope of claim 15.

It is also exactly the kind of situation that the ’489 Patent was ***intended*** to address. For instance, ’489 Patent frames the problem it is addressing as follows:

> In today’s digital age, media content such as movies … [are] becoming available from an ever-increasing number of different content sources. … [T]he same movie may be shown in a movie theater, broadcast on television, released on physical media, … made available to certain entities …, or placed on an online source for download or streaming. … [And] a movie may only be shown in a movie theater for a limited period of time, followed by a period of time in which it is available via on-demand television or online streaming, before being released for download or on a physical media format. This increase in the number of different content sources, combined with the increase in disparate release schedules for media content, often leads to confusion among consumers.

’489 Patent at 1:17-33. Likewise, the ’489 Patent explains that “[t]he present disclosure relates generally to determining if media content is available from different content sources” and “notifying a user when the availability of the media content changes.” *Id.* at 1:13-16, 2:12-32, 16:20-17:28. Thus, the patent’s characterization of the alleged invention confirms that the functional process recited in claim 15 is the kind of ***human*** process that constitutes an abstract idea under the first prong of *Alice*.

In addition, claim 15 is fundamentally directed to gathering information about the availability of content from multiple sources and presenting that information to a user – and is therefore very similar to other claims the Federal Circuit has found ineligible. For example, in *Electric Power Group, LLC v. Alstom S.A.*, the Federal Circuit considered claims directed to “systems and methods for performing real-time performance monitoring of an electric power grid.” 830 F.3d 1350, 1351 (Fed. Cir. 2016). The claimed method recited receiving data or data streams from various sources, detecting and analyzing events from the data sources, displaying the results of that analysis, updating the results in real time, and deriving a reliability indicator based on the real-time measurements and other metrics. *Id.* at 1351-52. The court found the claims were directed to a “familiar class” of patent-ineligible concepts, namely, “the combination of th[e] abstract-idea processes … of gathering and analyzing information of a specified content, then displaying the results.” *Id.* at 1353-54. In reaching this conclusion, the Federal Circuit found that the fact that the collection and analysis was “limited to a particular content” did not

alter its conclusion because the type of information collected or analyzed "does not change its character as information." *Id.* at 1353.

Claim 15 is highly analogous to the claims found invalid in *Electric Power*. Like the claims in *Electric Power*, claim 15 recites the "familiar class" of abstract processes of gathering information and presenting the results. Specifically, claim 15 recites "receiving" a user's input (the "selection of media content and content delivery preferences"), "requesting" information about the availability of content, "receiving" the requested information, and then presenting that information to a user (in the form of a "notification" of availability). Claim 15 thus recites a combination of gathering information and then presenting that information to a user, which is highly similar to the combination of processes found ineligible in *Electric Power*. The fact that the challenged process is recited in the context of (and using information about) the availability of media content does not alter the fact that the claim is focused on the "familiar class … of gathering and analyzing information of a specified content." *See id.* at 1353.

*Electric Power*, moreover, is far from unique in holding that claims directed to gathering and presenting information to a user are abstract under the first prong of *Alice*. For instance, in *Interval Licensing*, the Federal Circuit held ineligible a claim directed to an "attention manager" that "provide[ed] information to a person without interfering with the person's primary activity." 896 F.3d at 1344. The claim comprised various instructions for enabling: "acquisition of a set of content data from a specified source"; "provision of a user interface that allows a person to request the set of content data"; "display of the image or images generated from the set of content data"; and control over when to display the acquired content, for how long, and then displaying it. *Id.* at 1340. The court found the claim abstract because it was "directed to … the result-centric construction of the claimed 'attention manager,'" and recited only "generic and conventional information acquisition and organization steps that are connected to, but do not convert, the abstract idea … into a particular conception of how to carry out that concept." *Id.* at 1344-46; *see id.* at 1345 (The claim "simply demands the production of a desired result … without any limitation on how to produce that result.").

Similarly, in *Intellectual Ventures I LLC v. Erie Indemnity Company*, the Federal Circuit found abstract claims directed to "creating an index and using that index to search for and retrieve data." 850 F.3d 1315, 1327 (Fed. Cir. 2017). The court again explained that claims merely reciting the abstract concepts of collecting, classifying, and filtering information are abstract—especially where, like here, the claimed invention is directed to "longstanding conduct that existed well before the advent of computers and the Internet." *Id.*; *see also Cogent Medicine, Inc. v. Elsevier Inc.*, 70 F. Supp. 3d 1058, 1063-64 (N.D. Cal. 2014) (claims directed to "maintaining and searching a library of information" held abstract because they were "little different than the basic concept of organizing a physical library" and merely "describe[d] a computerized method of performing the same task").

In addition, in *FairWarning IP, LLC v. Iatric Systems, Inc.*, the Federal Circuit invalidated claims directed to collecting information about access to a patient's personal health, analyzing that information to determine whether there was improper access, and providing a notification if improper access occurred. 839 F.3d 1089, 1093 (Fed. Cir. 2016). The court explained that the claimed method simply recited information collection and analysis (collecting access information and detecting misuse) and then presenting the results (notifying a user when misuse is detected). *Id.* at 1093-94; *see also West View Research, LLC v. Audi AG*, 685 F. App'x 923, 925 (Fed. Cir. 2017) (Claims that "do not go beyond receiving or collecting data queries, analyzing the data query, retrieving and processing the information constituting a response to the initial data query, and generating a visual or audio response to the initial data query" fall into the "familiar class of claims directed to a patent-ineligible concept.").

As these cases show, the Federal Circuit repeatedly has found that analogous claims reciting a process for gathering information and generating a display or notification based on that information are "directed to" an abstract idea.

Moreover, as discussed further in connection with the *Alice* step two analysis, the claimed solution is not directed to an improvement in computer functionality or to some other area of technology. Rather, the '489 Patent both describes and claims its solution using generic computer components as a means for carrying out the abstract idea and does not suggest that any of those

components are "improved from a technical perspective" or "would operate differently" from other components. *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 768 (Fed. Cir. 2019). The patent is, therefore, "directed to" an abstract idea under the first prong of *Alice*.

**1. *Alice* Step 2: Claim 15 Lacks an Inventive Concept**

The '489 Patent lacks an inventive concept that would transform it into a patentable invention under the second prong of *Alice*. Individually, the elements of claim 15 include only generic functional steps that are part of the abstract idea (like receiving user input, requesting information, and then presenting the results) and generic computer elements (like "one or more processors," a "network," and an "electronic device"). But it is now black letter law that neither generic functional steps from the abstract idea nor generic computer elements can provide an inventive concept under the second step of the *Alice* analysis. *See Berkheimer*, 890 F.3d at 1374 ("[T]he 'inventive concept' cannot be the abstract idea itself."); *SAP America, Inc., v. InvestPic, LLC*, 898 F.3d 1161, 1168-70 (Fed. Cir. 2018) (finding no inventive concept when the allegedly inventive aspects were "themselves in the realm of abstract ideas"); *ChargePoint*, 920 F.3d at 775 ("[T]he abstract idea itself … cannot supply the inventive concept at step two."); *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1256 (Fed.Cir.2014) ("recitation of generic computer limitations does not make an otherwise ineligible claim patent-eligible."); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) (explaining that sending data over a network is "not even arguably inventive"); *Mortgage Grader*, 811 F.3d at 1324-25 ("No such inventive concept is present here. Instead, the claims 'add' only generic computer components such as an 'interface,' 'network,' and 'database.' These generic computer components do not satisfy the inventive concept requirement.").

The '489 Patent also acknowledges that there is nothing inventive about the recited computer elements. For example, the '489 Patent teaches that the processor can be any type of general-purpose microprocessor, application specific integration circuit, any circuit containing processing components, any "other hardware configured for processing data," or "any one or more processors of any kind of digital computer." '489 Patent at 12:15-21, 18:51-54. Similarly, the required network can be "any form of computer network that relays information between

client [], server [], and content sources" and can include "any number of computing devices (e.g., computer, servers, routers, network switches, etc.) that are configured to receive and/or transmit data within network" or "any number of hardwired and/or wireless connections." *Id.* at 3:24-34. And these components are called on to perform their ordinary functions. *See id.*, cl. 15 (e.g., processor executes instructions and network used to communicate information).

Nor does claim 15 recite an unconventional arrangement of these computer elements. Indeed, the only potential "arrangements" are those between the processor and the network or the processor and an electronic device. Neither was even arguably inventive. To the contrary, the '489 Patent acknowledges the routine interaction between a processor and a network. *See, e.g., id.* at 3:24-26 (network is used to "relay[] information" between sources), 19:31-46 (explaining that the system components "can be interconnected by any form or medium of digital data communication, e.g., a communication network"). The processor and network, therefore, "merely provide a generic environment in which to carry out the abstract idea" of searching for information and notifying the user of availability. *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016). In sum, "[n]othing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information." *Elec. Power Grp.*, 830 F.3d at 1355.

There are no factual questions regarding the conventional nature of the claim. Beyond the specification's concessions, the Complaint does not identify any aspect of the claim that is allegedly inventive. Indeed, it contains *no* factual allegations directed to subject-matter eligibility.

### 2. The Remaining Claims Do Not Alter this Analysis

None of the remaining claims alter the eligibility analysis. The '489 Patent recites 20 claims, three of which are independent—claims 1, 8, and 15. Claim 1 mirrors claim 15, reciting a "method for generating a media content availability notification" comprising the steps of receiving a selection of media content and content delivery preferences (including preferred online content sources) at a processor, requesting availability data from the plurality of online

content sources over a network, receiving the requested data, and using that data to generate a notification for an electronic device. *See* ’489 Patent, cl. 1. And claim 8 merely implements this method on a generic “processing circuit” while including pricing information as part of the delivery preferences. The three independent claims are, therefore, “substantially similar in that they recite little more than the same abstract idea” of gathering information about the availability of content from multiple sources and presenting that information to a user. *Content Extraction*, 776 F.3d at 1348.

Nor do the dependent claims recite anything beyond that abstract idea. For example, multiple dependent claims add a pricing component for the content delivery preferences (*see* claims 2-3, 10, and 16-17) or a pricing indication in the notification (*see* claims 4, 11, and 18). Using financial information to help gather and present information about the availability of content does not change the eligibility analysis because, fundamentally, these are all still just steps for gathering and presenting information that can be performed by a human without a computer. Moreover, the Federal Circuit repeatedly has found claims abstract when they are directed to financial transactions. For example, in *Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1054 (Fed. Cir. 2017), the Federal Circuit considered claims that involved “maintaining a database of information about the items in a dealer’s inventory, obtaining financial information about a customer from a user, combining these two sources of information to create a financing package for each of the inventoried items, and presenting the financing packages to the user.” *Id*. The Federal Circuit explained that the claims were abstract because they were “directed to the abstract idea of processing an application for financing a purchase”—an idea it acknowledged to be “a fundamental economic practice.” The pricing claims of the ’489 Patent are no different and are abstract for the same reason.

The other dependent claims fair no better. Some of them provide “a search input field” where the user can enter the selection of media content (*see* claims 6, 13, and 19) or add that the selection of media content comprises “an indication of suggested media content from a social networking site” (*see* claims 7, 14, and 20). These claims, again, just add generic tools (like a

search input field) or an additional source of responsive information (social media). They do not change the nature of the claims or alter the eligibility analysis.

Finally, the last category of dependent claims are nearly identical to claim 15, but are directed to finding "related content for the selection of media content." (*see* claims 5 and 12). Again, these claims are just directed to steps for gathering and presenting information that can be performed by a human without a computer—that fact is not changed because they involve gathering information about content that is "related" to the selected content rather than just the selected content itself.

In sum, all of the dependent claims are "linked to the same abstract idea" as claim 15 and do not alter the eligibility analysis. *Content Extraction*, 776 F.3d at 1348.

**B. Google Fails to State a Plausible Claim for Infringement of the '375 Patent**

Google's Complaint also falls short of plausibly stating a claim to relief for direct or indirect infringement of the '375 Patent.[1] Specifically, Google's cause of action for infringement of the '375 Patent is insufficient because Google fails to allege that the Accused '375 Products include a required element of claim 1, which is the only claim Google has specifically identified in its Complaint. *E.g.*, Compl. at ¶¶ 57, 59-64; *see Bot M8 LLC v. Sony Corp. of Am.*, No. 19-CV-07027-WHA, 2020 WL 418938, at *3 (N.D. Cal. Jan. 27, 2020) ("As patent infringement requires the practice of every claim limitation, the failure to allege one limitation precludes liability.").

The third element of claim 1 requires "modifying a set of favorite items ***stored*** for the user ***in*** a ***client-side storage*** of the client device." '375 Patent at 15:57-58 (emphasis added). Google's allegation, however, merely repeats this claim language and then states "on information and belief, a first instance of the Sonos S1 Controller App or S2 App utilize a Sonos Music API for communication and authentication with a streaming music provider server and synchronization of certain user parameters, such as 'favorite' tracks associated with the user and ***stored in*** the ***server-***

---

[1] "There can be no inducement or contributory infringement without an underlying act of direct infringement." *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1333 (Fed. Cir. 2012) (quoting *Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1326 (Fed. Cir. 2004).

***side storage*** of the server." Compl. at ¶ 63. The required claim element of "modifying a set of favorite items" that are "***stored*** for a user ***in*** the ***client-side storage*** of the client device" is conspicuously absent from this allegation, which only makes reference to "'favorite' tracks" that are "***stored in*** the ***server-side storage***" and says nothing about "client-side storage."

Thus, Google fails to plausibly show that the Accused '375 Products meet each and every element of claim 1 of the '375 Patent.

**C. Google Fails to State a Plausible Claim for Infringement of the '586 Patent**

Google's Complaint also falls short of plausibly stating a claim to relief for direct or indirect infringement of the '586 Patent. Specifically, claim 1 of the '586 Patent, which is the only claim specifically identified by Google (*see* Compl. at ¶¶ 94, 96-102), recites an "audio-enabled wireless device" configured to, *inter alia*, "receive ***a communication packet***," "compare at least the identification code portion of ***the received communication packet***," and "relay ***the communication packet***." As indicated in bold italics, claim 1 of the '586 Patent expressly requires the "receiv[ing]," "compar[ing]," and "relay[ing]" of the ***same*** "communication packet." *See Sensor Elec. Tech., Inc. v. Bolb, Inc.*, No. 18-cv-05194-LHK, 2019 WL 4645338, at *47 (N.D. Cal. Sept 24, 2019) ("[T]he Federal Circuit has held that claim terms '[b]ased on [an] antecedent basis relationship ... carry the same meaning throughout the claims.'") (citing *HowLink Global LLC v. Network Commc'ns In''l Corp.*, 561 Fed. App'x 898, 903 (Fed. Cir. 2014)).

However, Google fails to sufficiently plead that the Accused '586 Products perform each of the "receive," "compare," and "relay" claim elements with respect to the ***same*** "communication packet." Instead, with respect to at least the "receive" and "compare" claim elements, Google identifies communication packets that are sent using different networking protocols and fails to allege or explain how the communication packets sent using these different networking protocols relate to one another. Specifically, with respect to the "receive" claim element, Google pleads that "the Accused '586 Products each transmit and receive data packets using transport methods including ***HTTP, HTTPS, MMS, and RTSP***, and use typical data packets for these transport methods … ." Compl. at ¶ 99 (emphasis added). In contrast, with

respect to the "compare" claim element, Google pleads that "the Accused '586 Products use the ***NTP protocol*** to ***send information*** between the Sonos products," which would involve a different type of communication packet from that sent using "HTTP, HTTPS, MMS, and RTSP." Compl. at ¶¶ 100, 101 (emphasis added). Further, with respect to the "relay" claim element, Google merely pleads that "the Accused '586 Products each have a controller that communicates with, or ***relays data*** to, other Sonos products," without alleging how this "relay[ed] data" relates to the particular communication packets identified in connection with the "receive" and "compare" elements. Compl. at ¶ 102.

These disjointed allegations identifying different (and unidentified) networking protocols, along with Google's failure to allege how communication packets sent using these different networking protocols relate to one another, fail to illustrate how the Accused '586 Products perform each of the "receive," "compare," and "relay" claim elements with respect to the same "communication packet," as required by claim 1 of the '586 Patent.

Accordingly, Google fails to plausibly show that the Accused '586 Products meet each and every element of claim 1 of the '586 Patent.

## VI. CONCLUSION

For these reasons, Sonos respectfully asks the Court to grant its motion to dismiss.

Dated: August 12, 2020

By: *_/s/ Clement Seth Roberts_*
CLEMENT SETH ROBERTS
ALYSSA CARIDIS

ORRICK, HERRINGTON & SUTCLIFFE LLP

GEORGE I. LEE
SEAN M. SULLIVAN
RORY P. SHEA
J. DAN SMITH

LEE SULLIVAN SHEA & SMITH LLP

*Attorneys for Defendant Sonos, Inc.*