1  CLEMENT SETH ROBERTS (STATE BAR NO. 209203)
   croberts@orrick.com
2  BAS DE BLANK (STATE BAR NO. 191487)
   basdeblank@orrick.com
3  ALYSSA CARIDIS (STATE BAR NO. 260103)
   acaridis@orrick.com
4  ORRICK, HERRINGTON & SUTCLIFFE LLP
   The Orrick Building
5  405 Howard Street
   San Francisco, CA  94105-2669
6  Telephone:    +1 415 773 5700
   Facsimile:    +1 415 773 5759
7
   GEORGE I. LEE (admitted *pro hac vice*)
8  lee@ls3ip.com
   SEAN M. SULLIVAN (admitted *pro hac vice*)
9  sullivan@ls3ip.com
   RORY P. SHEA (admitted *pro hac vice*)
10 shea@ls3ip.com
   J. DAN SMITH (admitted *pro hac vice*)
11 smith@ls3ip.com
   LEE SULLIVAN SHEA & SMITH LLP
12 656 W Randolph St., Floor 5W
   Chicago, IL 60661
13 Telephone:    +1 312 754 0002
   Facsimile:    +1 312 754 0003
14
   *Attorneys for Defendant Sonos, Inc.*
15

16                UNITED STATES DISTRICT COURT

17                NORTHERN DISTRICT OF CALIFORNIA

18                   SAN FRANCISCO DIVISION

19

20 GOOGLE LLC,                          Case No. 20-cv-03845-EMC

21            Plaintiff,                **SONOS, INC.'S MOTION TO DISMISS
                                        GOOGLE LLC'S SECOND CAUSE OF
22       v.                             ACTION PURSUANT TO FED. R. CIV.
                                        P. 12(B)(6) AND 35 U.S.C. § 101**
23 SONOS, INC.,
                                        Date: Thursday, October 15, 2020
24            Defendant.                Time: 1:30 p.m.
                                        Courtroom: 5, 17th Floor
25

26

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION ........................................................................................................ 1

STATEMENT OF THE RELIEF REQUESTED ............................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES .................................................... 1

I.     INTRODUCTION ................................................................................................ 1

II.    STATEMENT OF ISSUES ................................................................................. 1

III.   FACTUAL BACKGROUND .............................................................................. 2

IV.   LEGAL STANDARD ......................................................................................... 2

V.    THE '489 PATENT IS INVALID UNDER 35 U.S.C. § 101 ............................ 3

      A.     Alice Step One: Claim 15 is Directed to an Abstract Idea ..................... 3

      B.     Alice Step Two: Claim 15 Lacks an Inventive Concept ...................... 11

      C.     The Remaining Claims Do Not Alter this Analysis ............................. 15

      D.     Amendment Would be Futile ................................................................ 17

VI.   CONCLUSION ................................................................................................. 17

1

## <u>TABLE OF AUTHORITIES</u>

**Cases**

2

3

*Affinity Labs of Texas, LLC v. DirecTV, LLC,*
   838 F.3d 1253 (Fed. Cir. 2016) ................................................................................. 3

4

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l,*
   573 U.S. 208 (2014) ................................................................................... *passim*

5

6

*Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.),*
   687 F.3d 1266 (Fed. Cir. 2012) ......................................................... 5, 10, 12

7

*Berkheimer v. HP Inc.,*
   890 F.3d 1369 (Fed. Cir. 2018) ......................................................... 3, 11, 12

8

9

*buySAFE, Inc. v. Google, Inc.,*
   765 F.3d 1350 (Fed. Cir. 2014) ................................................................... 11

10

*Cellspin Soft, Inc. v. Fitbit, Inc.,*
   927 F.3d 1306 (Fed. Cir. 2019) ............................................................. 10, 12

11

12

*ChargePoint, Inc. v. SemaConnect, Inc.,*
   920 F.3d 759 (Fed. Cir. 2019) ............................................................... 11, 12

13

*Cleveland Clinic Found. v. True Health Diagnostics LLC,*
   859 F.3d 1352 (Fed. Cir. 2017) ................................................................... 4

14

15

*Cogent Medicine, Inc. v. Elsevier Inc.,*
   70 F. Supp. 3d 1058 (N.D. Cal. 2014) ......................................................... 8

16

17

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.,*
   776 F.3d 1343 (Fed. Cir. 2014) ........................................................ 4, 5, 15, 17

18

*Credit Acceptance Corp. v. Westlake Servs.,*
   859 F.3d 1044 (Fed. Cir. 2017) ................................................................. 14

19

20

*DDR Holdings, LLC v. Hotels.com, L.P.,*
   773 F.3d 1245 (Fed. Cir. 2014) ......................................................... 3, 9, 11

21

22

*Electric Power Group, LLC v. Alstom S.A.,*
   830 F.3d 1350 (Fed. Cir. 2016) ............................................................... 6, 7

23

*FairWarning IP, LLC v. Iatric Systems, Inc.,*
   839 F.3d 1089 (Fed. Cir. 2016) ............................................................... 8, 14

24

25

*Funk Bros. Seed Co. v. Kalo Inoculant Co.,*
   333 U.S. 127 (1948) ................................................................................... 10

26

*Genetic Techs. Ltd. v. Merial L.L.C.,*
   818 F.3d 1369 (Fed. Cir. 2016) ................................................................. 2

27

28

          SONOS, INC.'S MOTION TO DISMISS
20-cv-03845-EMC

*In re Bilski*,
   545 F.3d 943 (Fed. Cir. 2008) .................................................................................................... 2

*In re TLI Commc'ns LLC Patent Litig.*,
   823 F.3d 607 (Fed. Cir. 2016) .................................................................................................. 13

*In the Matter of Certain Audio Players & Controllers, Components Thereof, & Prod.
   Containing Same*,
   USITC Inv. No. 337-TA-1191 (Jan. 7, 2020) ............................................................................ 2

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
   792 F.3d 1363 (Fed. Cir. 2015) ............................................................................................ 3, 12

*Intellectual Ventures I LLC v. Erie Indemnity Company*,
   850 F.3d 1315 (Fed. Cir. 2017) ............................................................................................ 7, 8

*Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335 (Fed. Cir. 2018) ......................................... 7

*Juniper Networks v. Shipley*,
   No. C 09-0696 SBA, 2010 WL 986809 (N.D. Cal. Mar. 17, 2010) ........................................ 13

*Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*,
   811 F.3d 1314 (Fed. Cir. 2016) ............................................................................................ 5, 11

*OIP Techs., Inc. v. Amazon.com, Inc.*,
   788 F.3d 1359 (Fed. Cir. 2015) ............................................................................................ 2, 14

*Radware, Ltd. v. A10 Networks, Inc.*,
   No. C-13-02021-RMW, 2014 WL 61047 (N.D. Cal. Jan. 7, 2014) ........................................ 13

*SAP Am., Inc., v. InvestPic, LLC*,
   898 F.3d 1161 (Fed. Cir. 2018) .......................................................................................... 11, 12

*Secured Mail Sols. LLC v. Universal Wilde, Inc.*,
   873 F.3d 905 (Fed. Cir. 2017) ............................................................................................... 2, 3

*SiRF Tech., Inc. v. Int'l Trade Comm'n*,
   601 F.3d 1319 (Fed. Cir. 2010) .................................................................................................. 2

*Smartflash LLC v. Apple Inc.*,
   680 F. App'x 977 (Fed. Cir. 2017) .......................................................................................... 10

*Sonos, Inc. v. Google LLC*,
   2:20-CV-00169-JAK-DAM, 2020 WL 85166 (C.D. Cal. Jan. 7, 2020) ..................................... 2

*Sweaney v. Ada County*,
   119 F.3d 1385 (9th Cir. 1997) ................................................................................................. 17

*Trading Techs. Int'l, Inc. v. IBG LLC*,
   921 F.3d 1084 (Fed. Cir. 2019) .................................................................................... 14, 15, 16

SONOS, INC.'S MOTION TO DISMISS
20-cv-03845-EMC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Voip-Pal.com, Inc. v. Apple Inc.*,
   411 F. Supp. 3d 926 (N.D. Cal. 2019) ......................................................................... 9

*West View Research, LLC v. Audi AG*,
   685 F. App'x 923 (Fed. Cir. 2017) ...................................................................... 8, 14

**Statutes**

35 U.S.C. § 101 .......................................................................................................... *passim*

**Rules**

Fed. R. Civ. P. Rule 12 ............................................................................................. *passim*

1

**NOTICE OF MOTION**

2

TO ALL PARTIES AND THEIR ATTORNEYS:

3

 PLEASE TAKE NOTICE that on Thursday, October 15, 2020 at 1:30 p.m., or as soon

4

thereafter as counsel may be heard in Courtroom 5 on the 17th Floor of the San Francisco

5

Courthouse, Defendant Sonos, Inc. ("Sonos") will, and hereby does, move the Court to dismiss

6

Plaintiff Google LLC's ("Google's") claims for infringement of U.S. Patent No. 8,583,489 ('489

7

Patent; Dkt. 35-8) under Rule 12(b)(6).  This motion is made under Federal Rule of Civil

8

procedure 12(b)(6) because Plaintiff fails to state a claim upon which relief may be granted, and

9

is based upon this Notice and the Memorandum of Points and Authorities below, and upon such

10

oral and written evidence as may be presented at or before the hearing on this matter.

11

**STATEMENT OF THE RELIEF REQUESTED**

12

 Sonos moves to dismiss Google's claims for infringement of the '489 Patent under

13

Rule 12(b)(6) on the grounds that the patent is subject-matter ineligible under 35 U.S.C. § 101.

14

**MEMORANDUM OF POINTS AND AUTHORITIES**

15

**I.** **INTRODUCTION**

16

 Patent law protects only concrete and tangible inventions.  It does not protect abstract

17

ideas, even when they are claimed in a particular context or in connection with conventional

18

technology.  *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 223 (2014).  The '489 Patent

19

violates this principle.  It is directed to the abstract idea of gathering information about the

20

availability of content from multiple sources and presenting that information to a user.  To this,

21

the claims add only generic computer hardware, which the specification acknowledges to be both

22

conventional and conventionally arranged.  The Amended Complaint—drafted with Sonos's

23

original motion to dismiss in hand (*see* Dkt. Nos. 25, 35)—lacks any factual allegations that

24

might prevent the Court from resolving eligibility as a matter of law on a motion to dismiss.  For

25

these reasons, and because the Federal Circuit repeatedly has found analogous claims to be

26

impermissibly abstract, the Court should dismiss Google's Second Claim for relief.

27

**II.** **STATEMENT OF ISSUES**

28

 Whether Google's claim for infringement of the '489 Patent should be dismissed on the

SONOS, INC.'S MOTION TO DISMISS
20-cv-03845-EMC

1   grounds that it is subject-matter ineligible under 35 U.S.C. § 101.

2   **III.    FACTUAL BACKGROUND**

3         On January 7, 2020, Sonos filed an investigation before the United States International

4   Trade Commission against Google alleging that numerous Google products infringe five of

5   Sonos's patents.  *See In the Matter of Certain Audio Players & Controllers, Components Thereof,*

6   *& Prod. Containing Same*, USITC Inv. No. 337-TA-1191 (Jan. 7, 2020).  That same day, Sonos

7   also filed a district court complaint against Google, which was subsequently stayed.  *See Sonos,*

8   *Inc. v. Google LLC*, 2:20-CV-00169-JAK-DFM, 2020 WL 85166 (C.D. Cal. Jan. 7, 2020).

9         On June 11, 2020, Google brought the present suit against Sonos, alleging infringement of

10  five of Google's patents.  *See* Dkt. No. 1.  Sonos moved to dismiss Google's allegations related to

11  three of those patents—the '489, '375, and '586 Patents—on August 12, 2020.  *See* Dkt. No. 25.

12  On August 26, 2020, in response to Sonos's motion, Google filed an Amended Complaint.  Dkt.

13  No. 35 ("AC").  In that Amended Complaint, Google added allegations relating to the eligibility

14  of the '489 patent, but, as discussed further below, none of those allegations should prevent the

15  Court from finding that the patent is ineligible under Federal Rule of Civil Procedure 12(b)(6).

16  **IV.    LEGAL STANDARD**

17        "Whether a claim is drawn to patent-eligible subject matter under § 101 is a threshold

18  inquiry" and "an issue of law."  *In re Bilski*, 545 F.3d 943, 950 (Fed. Cir. 2008), *aff'd, Bilski v.*

19  *Kappos*, 130 S. Ct. 3218, 3225 (U.S. 2010) (describing § 101 as "a threshold test"); S*iRF Tech.,*

20  *Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1331 (Fed. Cir. 2010) ("patent-eligible subject matter

21  is an issue of law").  For this reason, where underlying factual disputes do not preclude it, a

22  district court may resolve patent eligibility on a motion to dismiss.  *See, e.g., OIP Techs., Inc. v.*

23  *Amazon.com, Inc*., 788 F.3d 1359, 1362 (Fed. Cir. 2015); *Genetic Techs. Ltd. v. Merial L.L.C.*,

24  818 F.3d 1369, 1373 (Fed. Cir. 2016) ("We have repeatedly recognized that in many cases it is

25  possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6)

26  motion.").  In considering whether factual allegations in the complaint preclude a finding of

27  ineligibility under Rule 12, the Court "need not accept as true allegations that contradict matters

28  properly subject to judicial notice," such as the information recited in the patent itself.  *Secured*

1   *Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017) (internal quotation

2   marks omitted).

3        The Supreme Court has set forth a two-part test for determining whether a patent recites

4   ineligible subject matter under § 101.  *Alice*, 573 U.S. at 218.  At step one, the Court must

5   determine if the patented claims are "directed to" an abstract idea.  *Id.*  "The 'abstract idea' step

6   of the [*Alice*] inquiry calls upon [the Court] to look at the focus of the claimed advance over the

7   prior art to determine if the claim's character as a whole is directed to excluded subject matter."

8   *Affinity Labs of Texas, LLC v. DirecTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016).  In

9   performing this analysis, courts often compare a claim to "the ideas found to be abstract in other

10  cases before the Supreme Court and [the Federal Circuit]."  *Intellectual Ventures I LLC v. Capital*

11  *One Bank (USA)*, 792 F.3d 1363, 1367 (Fed. Cir. 2015).

12       If the claim is directed to an abstract idea, the Court proceeds to step two and asks

13  whether the claim elements, considered "both individually and 'as an ordered combination,'"

14  recite an "inventive concept" that is "sufficient to ensure that the patent in practice amounts to

15  significantly more than a patent upon the [abstract idea] itself."  *Alice*, 573 U.S. at 217-18.  For

16  the purposes of this step-two analysis, the inventive concept cannot be either (i) an abstract idea

17  in itself or (ii) a generic computer implementation.  *Berkheimer v. HP Inc.*, 890 F.3d 1369, 1374

18  (Fed. Cir. 2018) ("[T]he 'inventive concept' cannot be the abstract idea itself."); *DDR Holdings,*

19  *LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1256 (Fed. Cir. 2014) ("[A]fter *Alice*, there can remain

20  no doubt: recitation of generic computer limitations does not make an otherwise ineligible claim

21  patent-eligible.").

22  **V.**     **THE '489 PATENT IS INVALID UNDER 35 U.S.C. § 101**

23          **A.**     ***Alice* Step One: Claim 15 is Directed to an Abstract Idea**

24       The '489 Patent is titled "Generating a Media Content Availability Notification" and

25  issued on November 12, 2013.  Google alleges that Sonos infringes claim 15 of the '489 Patent,

26  and the Amended Complaint identifies various elements of (unasserted) claims 8-12 and 16-17 as

27

28

SONOS, INC.'S MOTION TO DISMISS
20-cv-03845-EMC

relevant to eligibility.  *See* AC ¶¶ 42, 43, 45.  This motion uses claim 15 as representative,[1] but also addresses both the remaining claims and the specific elements Google referenced in the Amended Complaint.

Claim 15 of the '489 Patent is directed to the abstract idea of gathering information about the availability of content from different sources and presenting that information to a user via a notification.  *See* '489 Patent at 1:13-16.

The claim recites:

> 15.  One or more non-transitory computer-readable media having instructions therein, the instructions being executable by one or more processors to execute a method comprising:
>
> > [a] receiving, at the one or more processors, a selection of media content and content delivery preferences, wherein the content delivery preferences comprise a selection of a plurality of unique online content sources specified by a user interface and user account data for each of the plurality of unique online content sources;
> >
> > [b] requesting, over a network, content availability data from the plurality of unique online content sources based at least in part on the selection of media content and the user account data, wherein the content availability data indicates whether the selection of media content is available to a user account in the user account data;
> >
> > [c] receiving, at the one or more processors, the content availability data; and
> >
> > [d] using the content availability data to generate a notification for an electronic device, wherein the notification indicates that the selection of media content is available to at least one user account in the user account data from at least one of the plurality of unique online content sources.

Claim 15 recites four functional steps: [a] ***receiving*** a selection of media content and content delivery preferences that include preferred online sources; [b] ***requesting*** content availability data from those sources based, at least in part, on the selected content and delivery preferences; [c] ***receiving*** information on the availability of the selected content; and [d] ***using*** the received data to generate a notification.  The patent specification describes the method in these same terms, shown below in Figure 5:

---

[1] Claim 15 is representative because all of the claims of the '489 Patent "are substantially similar and linked to the same abstract idea."  *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.,*, 776 F.3d 1343, 1348 (Fed. Cir. 2014); *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1359-60 (Fed. Cir. 2017); *see infra* Section V.C.



FIG. 5

This claim is "directed to" an abstract idea under the first step of *Alice*.  As an initial matter, claim 15 is an attempt to automate a process that could be (and previously was) performed entirely by a human without a computer.  *See, e.g.*, *Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1324 (Fed. Cir. 2016) (finding an abstract idea where a claim's steps "could all be performed by humans without a computer"); *Content Extraction*, 776 F.3d at 1347 (finding an abstract idea where "humans have always performed" the claimed functions); *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1279 (Fed. Cir. 2012) (finding claims abstract where "the [claimed] computer simply performs more efficiently what could otherwise be accomplished manually").

To illustrate with an example, a parent might be asked by her child whether she can watch a movie on a home theater.   In the claim's terms, the parent could: [a] receive a selection of media content (*e.g.,* the name of a movie) along with the child's delivery preferences (*e.g.,* streaming accounts to which she has access); [b] contact the various streaming platforms to figure out which ones have the movie; [c] receive their responses; and [d] notify her child of the answer. Setting aside the generic computing components recited in claim 15, this ***human*** information-gathering process falls squarely within the scope of claim 15.

This example is not a distortion of the claim scope, but the very situation the patent was intended to address.  Indeed, the '489 Patent frames the problem it sought to address as follows:

> In today's digital age, media content such as movies … [are] becoming available from an ever-increasing number of different content sources. … [T]he same movie may be shown in a movie theater, broadcast on television, released on physical media, … made available to certain entities …, or placed on an online source for download or streaming. … [And] a movie may only be shown in a movie theater for a limited period of time, followed by a period of time in which it is available via on-demand television or online streaming, before being released for download or on a physical media format.  This increase in the number of different content sources, combined with the increase in disparate release schedules for media content, often leads to confusion among consumers.

'489 Patent at 1:17-33.  As the '489 Patent summarizes, "[t]he present disclosure relates generally to determining if media content is available from different content sources" and "notifying a user when the availability of the media content changes."  *Id.* at 1:13-16, 2:12-32, 16:20-17:28.  Thus, the '489 Patent's characterization of the alleged invention confirms that the functional process recited in claim 15 is the kind of ***human*** process that is embodied in our example and which constitutes an abstract idea under the first step of *Alice*.

Moreover, Google's ***own*** articulation of the problem the patent sought to address (i.e., "the ability to easily and efficiently access voluminous amounts of data that is geographically distributed, at different times, in different formats, with differing access restrictions" (AC ¶ 42)) confirms that the patent is directed to an ***information gathering*** process of the kind the Federal Circuit repeatedly has held to be abstract.  For example, in *Electric Power Group, LLC v. Alstom S.A.*, the Federal Circuit considered claims directed to "systems and methods for performing real-time performance monitoring of an electric power grid."  830 F.3d 1350, 1351 (Fed. Cir. 2016).  The method claimed in that case called for receiving data or data streams from various sources, detecting and analyzing events from the data, displaying the results of that analysis, updating the results in real time, and deriving a reliability indicator based on the real-time measurements and other metrics.  *Id.* at 1351-52.  The court found the claims were directed to a "familiar class" of patent-ineligible concepts, namely, "the combination of th[e] abstract-idea processes … of gathering and analyzing information of a specified content, then displaying the results."  *Id.* at 1353-54.  In reaching this conclusion, the Federal Circuit found that the fact that the collection and analysis was "limited to a particular content" did not alter its conclusion because the type of information collected or analyzed "does not change its character as information."  *Id.* at 1353.

Claim 15 is highly analogous to the claims found invalid in *Electric Power*.  Like the claims in *Electric Power*, claim 15 recites the "familiar class" of abstract processes of gathering information and presenting the results.  Specifically, claim 15 recites "receiving" a user's input (the "selection of media content and content delivery preferences"), "requesting" information about the availability of content, "receiving" the requested information, and then presenting that information to a user (in the form of a "notification" of availability).  Claim 15 thus recites a combination of gathering and presenting information that is highly similar to the process found ineligible in *Electric Power*.  That the process recited in claim 15 involves information about the availability of media content does not alter the fact that the claim is focused on the "familiar class … of gathering and analyzing information of a specified content."  *See id.* at 1353.

*Electric Power* is also far from unique in holding that claims directed to various methods of gathering and presenting information to a user are abstract under the first step of *Alice*.  For instance, in *Interval Licensing LLC v. AOL, Inc.*, the Federal Circuit held ineligible a claim directed to an "attention manager" that "provide[ed] information to a person without interfering with the person's primary activity."  896 F.3d 1335, 1344 (Fed. Cir. 2018).  The claim comprised various instructions for enabling: "acquisition of a set of content data from a specified source"; "provision of a user interface that allows a person to request the set of content data"; "display of the image or images generated from the set of content data"; and control over when to display the acquired content, for how long, and then displaying it.  *Id.* at 1340.  The Federal Circuit found this claim abstract because it recited only "generic and conventional information acquisition and organization steps that are connected to, but do not convert, the abstract idea … into a particular conception of how to carry out that concept."  *Id.* at 1344-46; *see id.* at 1345 (The claim "simply demands the production of a desired result … without any limitation on how to produce that result.").

Similarly, in *Intellectual Ventures I LLC v. Erie Indemnity Company*, the Federal Circuit found abstract claims directed to "creating an index and using that index to search for and retrieve data."  850 F.3d 1315, 1327 (Fed. Cir. 2017).  The court again explained that claims merely reciting the abstract concepts of collecting, classifying, and filtering information are abstract—

especially where, like claim 15 here, the claimed invention is directed to "longstanding conduct that existed well before the advent of computers and the Internet."  *Id.*; *see also Cogent Medicine, Inc. v. Elsevier Inc.*, 70 F. Supp. 3d 1058, 1063-64 (N.D. Cal. 2014) (claims directed to "maintaining and searching a library of information" held abstract because they were "little different than the basic concept of organizing a physical library" and merely "describe[d] a computerized method of performing the same task").

And in *FairWarning IP, LLC v. Iatric Systems, Inc.*, the Federal Circuit invalidated analogous claims directed to collecting information about access to a patient's personal health, analyzing that information to determine whether there was improper access, and providing a notification if improper access occurred.  839 F.3d 1089, 1093 (Fed. Cir. 2016).  The court explained that the claimed method simply recited information collection and analysis (collecting access information and detecting misuse) and then presenting the results (notifying a user when misuse is detected).  *Id.* at 1093-94; *see also West View Research, LLC v. Audi AG*, 685 F. App'x 923, 925 (Fed. Cir. 2017) (Claims that "do not go beyond receiving or collecting data queries, analyzing the data query, retrieving and processing the information constituting a response to the initial data query, and generating a visual or audio response to the initial data query" fall into the "familiar class of claims directed to a patent-ineligible concept.").  As these cases show, the Federal Circuit repeatedly has found that analogous claims reciting a process for gathering information and generating a display or notification based on that information are "directed to" an abstract idea.

Google's new allegations in its Amended Complaint do not change this conclusion.  As an initial matter, Google says that the problem addressed by the patent is "the ability to easily and efficiently access voluminous amounts of data that is geographically distributed, at different times, in different formats, with differing access restrictions" and then contends that this problem is "uniquely associated with the Internet and other large networks" (AC ¶ 42).  But, as the '489 Patent confirms, the problem addressed by the patent is a ***human*** problem, not an Internet-centric one.  In support of its conclusion, Google cites to the same paragraph from the specification as cited above (*supra* p. 6).  *See* AC ¶ 41 (citing '489 Patent at 1:17-34).  But that paragraph actually

SONOS, INC.'S MOTION TO DISMISS
20-cv-03845-EMC

1    *contradicts* Google's assertion that the problem is "uniquely associated with the Internet and

2    other large networks" because it expressly talks about the need to collect information from non-

3    network sources (e.g., movies that are playing in a theater, broadcast on television, and/or

4    released on physical media).  Thus, the '489 Patent itself defeats Google's claim that the ***problem***

5    is somehow unique to "the Internet and other large networks."[2]  More generally, the availability

6    of media from many different content sources is of course not a concept that is unique to the

7    Internet or other large networks—it predates the Internet.  By way of illustration, part of the job

8    of a historical research librarian was to field requests for certain media (e.g., books, microfilm,

9    and manuscripts), determine which sources were available from which libraries, identify the

10   lending restrictions and access requirements for those libraries, and notify the requestor about

11   where and how the desired materials were available.  These activities took place long before the

12   Internet.

13         However, even if Google were correct that the ***problem*** identified in the '489 Patent was

14   an Internet-centric problem, this does not alter the conclusion that the claims of the '489 Patent

15   are not directed to any technological solution or improvement and instead merely recite an

16   abstract idea under step one of *Alice*.[3]  In the Amended Complaint, Google attempts to identify

17   various "improvements" purportedly resulting from the '489 Patent.  *See* AC ¶¶ 42-43.  However

18   (i) what Google identifies are actually the supposed ***benefits*** of the invention rather than specific

19   technological improvements and (ii) the Federal Circuit has repeatedly held that the specific

20   alleged "improvements" Google advances do ***not*** make an abstract concept patent-eligible.

21         In particular, Google asserts that the '489 Patent provides users "the ability to identify

22   desired online media content availability without repeated user involvement and streamline its

23   ──────────────────

24   [2] Google's statement as to the ***nature*** of the problem addressed by the patent is not a "factual"
     assertion for purposes of Fed. R. Civ. P. 12, but an argument about how the problem should be
     ***characterized***.

25   [3] The Court should also note that even if the patent claims were directed to a problem "uniquely
26   associated with the Internet and other large networks," that would not end the inquiry because not
     all "Internet-centric problems" are patent eligible.  *DDR Holdings*, 773 F.3d at 1258 ("We
     caution, however, that not all claims purporting to address Internet-centric challenges are eligible
27   for patent."); *Voip-Pal.com, Inc. v. Apple Inc.*, 411 F. Supp. 3d 926, 972 (N.D. Cal. 2019) ("[T]he
     *DDR Holdings* court did not hold that claims that 'solve problems necessarily rooted in network
28   technology' are per se patent-eligible.").

SONOS, INC.'S MOTION TO DISMISS
                                                 20-cv-03845-EMC

delivery in a preferred manner" and "the ability to easily and efficiently access voluminous amounts of data."  AC ¶ 42; *see also* ¶ 43 (alleging the patented invention "improve[s] the accuracy and efficiency of the information provided via notification").  To start, Google's own summary of what the '489 Patent provides is itself an abstract idea.  Nonetheless, Google's allegations do not even purport to identify specific improvements to any particular technology, but instead make general assertions as to the ***benefits*** of the invention for the user.  But even patent-ineligible ideas have benefits.  As the Federal Circuit has explained, "providing a distinct advantage over alternatives is not the test for eligibility."  *Smartflash LLC v. Apple Inc.*, 680 F. App'x 977, 984 (Fed. Cir. 2017) (internal quotation marks omitted); *see also Funk Bros. Seed Co. v. Kalo Inoculant Co.*, 333 U.S. 127, 131-32 (1948) (holding patent claims ineligible despite the many advantages obtained by combining different strains of bacteria).  For this reason, a patent owner's assertion that a claim has ***benefits*** does not suggest (much less necessitate) that the claim is directed to eligible subject matter.

Moreover, the Federal Circuit has been clear that the specific benefits Google identifies do not weigh in favor of eligibility.  In particular, the Federal Circuit has held that automating human processes or performing those processes "more efficiently via a computer does not alter the patentability of the claimed subject matter."  *Bancorp*, 687 F.3d at 1278; *id.* at 1279 ("Using a computer to accelerate an ineligible mental process does not make that process patent-eligible."); *see also Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1316 (Fed. Cir. 2019), *cert. denied sub nom. Garmin USA, Inc. v. Cellspin Soft, Inc.*, 140 S. Ct. 907 (2020) ("[T]he need to perform tasks automatically is not a unique technical problem.").  Because the benefits Google claims in the Amended Complaint are ***expressly*** directed to computer automation (i.e., "without repeated user involvement") and the resulting "efficiency," they cannot constitute the kind of technological improvement that might render the '489 Patent eligible under § 101.

Accordingly, the claims of the '489 Patent are directed to an abstract idea, and Google's new allegations regarding the purported problem identified in the '489 Patent and the supposed benefits resulting from computer automation do not change this.  Nor does any other aspect of the claims reflect that the claimed solution provides a technical improvement.  Rather, as discussed

SONOS, INC.'S MOTION TO DISMISS
20-cv-03845-EMC

1  below in connection with the *Alice* step two analysis, the claims of the '489 Patent use purely

2  generic computer components as a means for carrying out the claimed abstract information-

3  gathering-and-notification process.  No part of the claims preclude user involvement (e.g., they do

4  not contain the word "automatically" or say that the recited steps are performed "without … user

5  involvement"),[4] and neither the claims nor the specification ever suggest that any of the

6  components used to carry out the abstract process are "improved from a technical perspective" or

7  "operate differently than [they] otherwise could."  *ChargePoint, Inc. v. SemaConnect, Inc.*, 920

8  F.3d 759, 768 (Fed. Cir. 2019).  Claim 15 is, therefore, "directed to" an abstract idea under the

9  first step of *Alice*.

10          **B.** *Alice* **Step Two: Claim 15 Lacks an Inventive Concept**

11          The '489 Patent lacks an inventive concept that would transform it into a patentable

12  invention under the second step of *Alice*.  Individually, the elements of claim 15 include only

13  generic functional steps that are part of the abstract idea (like receiving user input, requesting

14  information, and then presenting the results) and generic computer elements (like "one or more

15  processors," a "network," and an "electronic device").  But it is now black letter law that neither

16  functional steps that are part of an abstract idea nor generic computer elements can provide an

17  inventive concept under the second step of the *Alice* analysis.  *See Berkheimer*, 890 F.3d at 1374

18  ("[T]he 'inventive concept' cannot be the abstract idea itself."); *SAP Am., Inc., v. InvestPic, LLC*,

19  898 F.3d 1161, 1168-70 (Fed. Cir. 2018) (finding no inventive concept when the allegedly

20  inventive aspects were "themselves in the realm of abstract ideas"); *ChargePoint*, 920 F.3d at 775

21  ("[T]he abstract idea itself … cannot supply the inventive concept at step two."); *DDR Holdings*,

22  773 F.3d at 1256 ("recitation of generic computer limitations does not make an otherwise

23  ineligible claim patent-eligible"); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir.

24  2014) (explaining that sending data over a network is "not even arguably inventive"); *Mortg.*

25  *Grader*, 811 F.3d at 1324-25 ("[T]he claims 'add' only generic computer components such as an

---

26  [4] To give one example, consider the second limitation of claim 15 which calls for "requesting,
27  over a network, content availability data from the plurality of unique online content sources…."
    Nothing about this language requires the request to be generated without human involvement or
28  input.  If the request is made, the limitation is satisfied ***regardless*** of whether, e.g., the request
    was generated in response to a human button press or mouse click.

1    'interface,' 'network,' and 'database.'  These generic computer components do not satisfy the

2    inventive concept requirement.").

3         For that same reason, Google's allegations in the Amended Complaint cannot save the

4    claims.  Google does not identify an allegedly inventive concept in the Amended Complaint but

5    pleads that the '489 Patent's solution provides "the ability to identify desired online media

6    content availability without repeated user involvement and streamline its delivery in a preferred

7    manner even from protected sources."  AC ¶ 42.  But (even ignoring the fact that this is a

8    purported **benefit**, it is not actually recited in the **claims**, and it is itself a recitation of the abstract

9    idea) this cannot be the "inventive concept" because it is nothing more than the automation of an

10   abstract information gathering process.  *See Bancorp*, 687 F.3d at 1278; *id.* at 1279; *Cellspin*, 927

11   F.3d at 1316.

12        Google's remaining allegations simply break that (abstract) information gathering process

13   down into its component functional steps.  *See* AC ¶ 42 (highlighting the steps of claim 15—

14   "receiving … a selection of media content and content delivery preferences," "request[ing] over a

15   network (such as the Internet), content availability data," and "generati[ng] … a notification").

16   As the Federal Circuit has repeatedly held, "the abstract idea itself … **cannot** supply the inventive

17   concept at step two."  *ChargePoint*, 920 F.3d at 775 (emphasis added); *Berkheimer*, 890 F.3d at

18   1374 (same).  As a result, the individual functional steps in an abstract information gathering

19   process cannot provide an "inventive concept" under *Alice* step two.  *SAP America, Inc.,* 898 F.3d

20   at 1168-70 (finding no inventive concept when the allegedly inventive aspects were "themselves

21   in the realm of abstract ideas").  To put it another way, "steps that do nothing more than spell out

22   what it means to 'apply it on a computer' cannot confer eligibility."  *Intellectual Ventures I*, 792

23   F.3d at 1370.

24        The '489 Patent also acknowledges that there is nothing inventive about the recited

25   computer elements.  For example, the '489 Patent teaches that the processor can be any type of

26   general-purpose microprocessor, application specific integration circuit, any circuit containing

27   processing components, any "other hardware configured for processing data," or "any one or

28   more processors of any kind of digital computer."  '489 Patent at 12:15-21, 18:51-54.  Similarly,

SONOS, INC.'S MOTION TO DISMISS
20-cv-03845-EMC

the required network can be "any form of computer network that relays information between

client [], server [], and content sources" and can include "any number of computing devices (e.g.,

computer, servers, routers, network switches, etc.) that are configured to receive and/or transmit

data within network" or "any number of hardwired and/or wireless connections." *Id.* at 3:24-34.

And these components are called on to perform their ordinary functions. *See id.*, cl. 15 (e.g.,

processor executes instructions and network used to communicate information).

    Nor does claim 15 recite an unconventional arrangement of these computer elements.

Indeed, the only potential "arrangements" are those between the processor and the network or the

processor and an electronic device.  Neither was even arguably inventive.  To the contrary, the

'489 Patent acknowledges the routine interaction between a processor and a network.  *See, e.g.,*

*id.* at 3:24-26 (network is used to "relay[] information" between sources), 19:31-46 (explaining

that the system components "can be interconnected by any form or medium of digital data

communication, e.g., a communication network").  The processor and network, therefore,

"merely provide a generic environment in which to carry out the abstract idea" of searching for

information and notifying the user of availability.  *In re TLI Commc'ns LLC Patent Litig.*, 823

F.3d 607, 611 (Fed. Cir. 2016).  In sum, "[n]othing in the claims, understood in light of the

specification, requires anything other than off-the-shelf, conventional computer, network, and

display technology for gathering, sending, and presenting the desired information." *Elec. Power*

*Grp.*, 830 F.3d at 1355.

    In the Amended Complaint Google also cites portions of the '489 Patent's prosecution

history which show that the claimed elements were well-understood in the art.  *See* AC ¶ 44.[5]  As

---

[5] While "a court is generally confined to the pleadings on a motion to dismiss, a court may … consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Juniper Networks v. Shipley*, No. C 09-0696 SBA, 2010 WL 986809, at *5 (N.D. Cal. Mar. 17, 2010), *aff'd*, 643 F.3d 1346 (Fed. Cir. 2011) (internal quotation marks omitted).  Because Google incorporated by reference the '489 Patent's prosecution history into the Amended Complaint, the Court may consider it in deciding Sonos' motion to dismiss.  *See id.* at *5 ("Under the 'incorporation by reference' doctrine, the court may consider documents in situations where the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance." (internal quotation marks and citations omitted)).  The Court can also take judicial notice of the file history because it is part of a publicly available government record.  *See Radware, Ltd. v. A10 Networks, Inc.*, No.

Google pleads, the inventors of the '489 Patent distinguished their invention over related prior art, namely, Buchanan et al. (U.S. Pub No. 2005/0119936) and Grover et al. (U.S. Pub. No. 2008/0295131).  However, **both** prior-art references disclosed methods for delivering media content to users using the same generic components identified in the '489 Patent (e.g., a network, multimedia device, and processor).  And the prior art used those components in the same manner as the '489 Patent, confirming that those components and their arrangement was routine and well-understood at the time of the invention.

Even according to Google, the claimed invention was distinguished over those prior art references only because those references did not (a) "notify a user that selected media content had become available" or (b) allow a user to "specify a price threshold below which the user would desire to obtain that media content."  AC ¶ 44.  But neither distinction helps Google with respect to *Alice* step two.  As addressed above (*supra* p. 8), the Federal Circuit has held repeatedly that generating a notification based on collection of data does not transform the claims into eligible subject matter.  *See FairWarning IP*, 839 F.3d at 1093; *see also West View Research*, 685 F. App'x at 925.  Similarly, it is a bedrock principle under § 101 that "fundamental economic practice[s] long prevalent in our system of commerce"—such as price thresholds—are abstract ideas, ineligible for patenting without the addition of an inventive concept.  *See Alice*, 573 U.S. at 219; *Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1084, 1092-95 (Fed. Cir. 2019), *cert. denied*, 140 S. Ct. 954 (2020) (executing trade orders based on generated display of market information is a fundamental economic concept); *Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1054 (Fed. Cir. 2017) ("processing an application for financing a purchase" is a fundamental economic practice); *OIP Techs.,* 788 F.3d at 1363 (offer-based price optimization is a fundamental economic concept).  There is, quite simply, no credible argument that using a "price threshold" as part of gathering information on items available for purchase is anything other than an abstract, economic idea—and it is not, therefore, something that can qualify as an "inventive concept."

---

C-13-02021-RMW, 2014 WL 61047, at *3 (N.D. Cal. Jan. 7, 2014) ("[C]ourts have taken judicial notice of prior art references, patents, and file histories.").

SONOS, INC.'S MOTION TO DISMISS
20-cv-03845-EMC

1    Thus, Google's citations to the file history actually support the conclusion that the patent

2    is directed to an abstract idea and lacks an inventive concept.

3    **C.    The Remaining Claims Do Not Alter this Analysis**

4    None of the remaining claims alter the eligibility analysis and are thus similarly ineligible.

5    The '489 Patent recites 20 claims, three of which are independent—claims 1, 8, and 15.  Claim 1

6    mirrors claim 15, reciting a "method for generating a media content availability notification"

7    comprising the steps of receiving a selection of media content and content delivery preferences

8    (including preferred online content sources) at a processor, requesting availability data from the

9    plurality of online content sources over a network, receiving the requested data, and using that

10   data to generate a notification for an electronic device.  *See* '489 Patent, cl. 1.  And claim 8

11   merely implements this method on a generic "processing circuit" while including pricing

12   information as part of the delivery preferences.  Google even groups claims 8 and 15 together in

13   the Amended Complaint.  *See* AC ¶ 42.  The three independent claims are, therefore,

14   "substantially similar in that they recite little more than the same abstract idea" of gathering

15   information about the availability of content from multiple sources and presenting that

16   information to a user.  *Content Extraction*, 776 F.3d at 1348.

17   Nor do the dependent claims recite anything beyond that abstract idea.  For example,

18   Google highlights claims 10, 11, 16, and 17 as providing pricing parameters for prioritizing

19   content sources.  AC ¶ 43.  But adding a pricing component for the content delivery preferences

20   (*see* claims 2-3, 10, and 16-17) or a pricing indication in the notification (*see* claims 4, 11, and

21   18) does not change the abstract idea into something other than gathering and presenting

22   information to a user.  Nor does it alter the eligibility analysis.  Using financial information to

23   help gather and present information about the availability of content is still just gathering and

24   presenting information, and these are still steps that can be performed by a human without a

25   computer.  *See, e.g., Trading Techs.*, 921 F.3d at 1093 ("As a general rule, the collection,

26   organization, and display of … information on a generic display device is abstract." (internal

27   quotation marks omitted)).

28   Moreover, as addressed above, the Federal Circuit repeatedly has found claims abstract

SONOS, INC.'S MOTION TO DISMISS
20-cv-03845-EMC

1  when they are directed to financial transactions.  For example, in *Trading Techs.*, the Federal

2  Circuit considered claims directed to various graphical user interfaces used to facilitate electronic

3  trading.  *Id.* at 1087.  The three patents at issue disclosed generating displays of market

4  information, including graphs of bid and offer indications as well dynamic buy and sell orders,

5  that allowed the trader to execute trades in a quicker, more efficient manner.  *Id.* at 1088-91.  The

6  Federal Circuit found the claims of all three patents abstract, explaining that they merely

7  described receiving and displaying financial information and then using that displayed market

8  information to place an order, which was a "fundamental economic practice."  *Id.* at 1092-94.

9  And the court repeatedly emphasized that the claims' purported improvements were not technical

10  solutions to a technical problem because they merely "ma[de] the ***trader*** faster and more efficient,

11  not the computer."  *Id.* at 1090; *see id.* at 1091 (The alleged improvement "is focused on

12  improving the trader, not the functioning of the computer."); *Id.* at 1093, 1094 (same).  The same

13  is true here.  Not only do the pricing claims of the '489 Patent recite fundamental economic

14  practices, but allowing a user to input price thresholds does not improve the computer in any

15  manner; it merely makes it easier for the ***user*** to find affordable content.

16       The other dependent claims fare no better.  Dependent claim 9 only reiterates that the

17  content delivery preferences comprise the selection of sources specified by the user.  Again,

18  allowing the user to prioritize certain content sources does not alter the eligibility analysis.  That

19  is, allowing the user to narrow the content sources she is interested in does not change the fact

20  that the claims are still directed to gathering information about those content sources and

21  presenting the results.  Other dependent claims provide "a search input field" where the user can

22  enter the selection of media content (*see* claims 6, 13, and 19)[6] or add that the selection of media

23  content comprises "an indication of suggested media content from a social networking site" (*see*

24  claims 7, 14, and 20).  These claims, again, just add generic tools (like a search input field) or an

25  additional source of responsive information (social media).  They do not change the nature of the

26  claims or alter the eligibility analysis.

---

[6] The Court should note that the presence of these specified user interactions contradicts Google's assertion that the invention is fully automated (despite the absence of any "automation" language in the claims themselves).

SONOS, INC.'S MOTION TO DISMISS
20-cv-03845-EMC

1    Finally, the last category of dependent claims are nearly identical to claim 15, but are

2    directed to finding "related content for the selection of media content" (*see* claims 5 and 12).

3    Google highlights that the related content "differs from that media content selected by the user."

4    AC ¶ 43.  But, again, these claims are just directed to steps for gathering and presenting

5    information that can be performed by a human without a computer—that fact is not changed

6    because they involve gathering information about content that is "related" to the selected content

7    rather than just the selected content itself.

8    In sum, all of the dependent claims are "linked to the same abstract idea" as claim 15 and

9    do not alter the eligibility analysis.  *Content Extraction*, 776 F.3d at 1348.

10   **D.    Amendment Would be Futile**

11   Amendment is futile where "no set of facts can be proved under the amendment to the

12   pleadings that would constitute a valid and sufficient claim or defense."  *Sweaney v. Ada County*,

13   119 F.3d 1385, 1393 (9th Cir. 1997) (internal quotation marks omitted).  Google has already

14   amended its complaint and did so ***with Sonos's § 101 motion in hand***.  Yet Google's Amended

15   Complaint fails to plead any factual allegations that would impact the eligibility analysis.  Any

16   subsequent amendment to the Complaint cannot cure these deficiencies and would thus be futile.

17   Should Google request leave to amend a second time, it should be denied.

18   **VI.    <u>CONCLUSION</u>**

19   For these reasons, Sonos respectfully asks the Court to grant its motion to dismiss.

20

21

22

23

24

25

26

27

28

SONOS, INC.'S MOTION TO DISMISS
20-cv-03845-EMC

1    Dated:  September 9, 2020

2
                                        By:      /s/ Clement Seth Roberts
3                                                CLEMENT SETH ROBERTS
                                                 BAS DE BLANK
4                                                ALYSSA CARIDIS

5                                        ORRICK, HERRINGTON & SUTCLIFFE LLP

6                                        GEORGE I. LEE
                                         SEAN M. SULLIVAN
7                                        RORY P. SHEA
                                         J. DAN SMITH
8
                                         LEE SULLIVAN SHEA & SMITH LLP
9

10                                       *Attorneys for Defendant Sonos, Inc.*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SONOS, INC.'S MOTION TO DISMISS
                                                                20-cv-03845-EMC