1   QUINN EMANUEL URQUHART & SULLIVAN, LLP
      Charles K. Verhoeven (Bar No. 170151)
2     charlesverhoeven@quinnemanuel.com
    50 California Street, 22nd Floor
3   San Francisco, California 94111
    Telephone:    (415) 875-6600
4   Facsimile:    (415) 875-6700

5     David A. Nelson (admitted *pro hac vice*)
      davidnelson@quinnemanuel.com
6   191 N. Wacker Drive, Suite 2700
    Chicago, Illinois 60606
7   Telephone:    (312) 705-7400
    Facsimile:    (312) 705-7401

8
    Attorneys for GOOGLE LLC
9

10                  UNITED STATES DISTRICT COURT

11                 NORTHERN DISTRICT OF CALIFORNIA

12                    SAN FRANCISCO DIVISION

13   GOOGLE LLC,                          CASE NO. 3:20-cv-03845-EMC

14            Plaintiff,                  **PLAINTIFF GOOGLE LLC'S**
                                          **OPPOSITION TO DEFENDANT**
15       vs.                              **SONOS, INC.'S MOTION TO DISMISS**
                                          **THE SECOND CAUSE OF ACTION**
16   SONOS, INC.,
                                          Date: Thursday, October 15, 2020
17            Defendant.                  Time: 1:30 p.m.
                                          Courtroom: 5, 17th Floor
18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.   INTRODUCTION ................................................................................................................ 1

II.  STATEMENT OF THE ISSUES TO BE DECIDED ........................................................ 2

III. FACTUAL BACKGROUND ............................................................................................. 2

IV. STATEMENT OF LAW .................................................................................................... 3

V.  ARGUMENT ..................................................................................................................... 4

   A.  Sonos Has Not Proven By Clear and Convincing Evidence That the '489 Patent is

       Invalid Under 35 U.S.C. § 101 .................................................................................. 4

      1.  The '489 Claims Are Not Directed to an Abstract Idea ................................... 4

      2.  The '489 Patent Recites Inventive Concepts .................................................. 11

   B.  Sonos' Motion Raises Prospective Claim Construction Disputes ...................... 16

VI. CONCLUSION ................................................................................................................ 17

1

## **TABLE OF AUTHORITIES**

2

**Page(s)**

3

### **Cases**

4

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
  882 F.3d 1121 (Fed. Cir. 2018) ................................................................. 3, 10, 14, 17

5

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  573 U.S. 208 (2014) ............................................................................................ 3, 8, 15

6

*Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Can. (U.S.)*,
  687 F.3d 1266 (Fed. Cir. 2012) ........................................................................... 16

7

*Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*,
  827 F.3d 1341 (Fed. Cir. 2016) .............................................................. 12, 15, 16

8

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
  927 F.3d 1306 (Fed. Cir. 2019) ........................................................................... 14

9

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*,
  776 F.3d 1343 (Fed. Cir. 2014) ........................................................................... 15

10

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*,
  880 F.3d 1356  (Fed. Cir. 2018) ............................................................................. 3

11

12

*Data Engine Techs. LLC v. Google LLC*,
  906 F.3d 999 (Fed. Cir. 2018) ................................................................................. 3

13

*DDR Holdings, LLC v. Hotels.com, L.P.*,
  773 F.3d 1245 (Fed. Cir. 2014) ...................................................................... 11, 15

14

*Electric Power Group, LLC v. Alstom S.A.*,
  830 F.3d 1350 (Fed. Cir. 2016) ......................................................................... 7, 8

15

16

*Enfish, LLC v. Microsoft Corp.*,
  822 F.3d 1327 (Fed. Cir. 2016) ............................................................................. 4

17

*FairWarning IP, LLC v. Iatric Sys., Inc.*,
  839 F.3d 1089 (Fed. Cir. 2016) ...................................................................... 7, 8, 9

18

*FairWarning IP, LLC v. Iatric Sys., Inc.*,
  No. 8:14-2685, 2015 WL 3883958 (M.D. Fla. June 24, 2015) .............................. 8

19

*Finjan, Inc. v. Blue Coat Sys., Inc.*, for example,
  879 F.3d 1299 (Fed. Cir. 2018) ...................................................................... 10, 11

20

21

*Intellectual Ventures I LLC v. Capital One Bank, (USA)*,
  792 F.3d 1363 (Fed. Cir. 2015) ........................................................................... 16

22

*Intellectual Ventures I LLC v. Erie Indemnity Company*,
  850 F.3d 1315 (Fed. Cir. 2017) ...................................................................... 7, 10

23

24

*Interval Licensing LLC v. AOL, Inc.*,
  896 F.3d 1335 (Fed. Cir. 2018) ......................................................................... 7, 9

25

*Khn Sols. Inc. v. Vertisense Inc.*,
  No. 16-962, 2016 WL 5725013 (N.D. Cal. Sept. 30, 2016) ............................... 17

26

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
  566 U.S. 66 (2012) ................................................................................................... 3

27

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
  837 F.3d 1299 (Fed. Cir. 2016) ............................................................................. 3

28

*Mobile-Plan-It LLC v. Facebook Inc.*,
　No. 14-1709, 2015 WL 1801425 (N.D. Cal. Apr. 20, 2015) .............................................. 12, 13

*Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*,
　811 F.3d 1314 (Fed. Cir. 2016) ...................................................................................... 5

*Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*,
　827 F.3d 1042 (Fed. Cir. 2016) ...................................................................................... 3

*In re TLI Commc'ns LLC Patent Litig.*,
　823 F.3d 607 (Fed. Cir. 2016) ...................................................................................... 3

*Trading Techs. Int'l, Inc. v. CQG, Inc.*,
　675 F. App'x 1001 (Fed. Cir. 2017) .............................................................................. 15

### Statutory Authorities

35 U.S.C. § 101 ...................................................................................................... *passim*

35 U.S.C. § 282 ...................................................................................................... 3

## I.      INTRODUCTION

The inventions claimed in U.S. Patent No. 8,583,489 (the "'489 patent") are directed to a specific, ordered combination of elements that meets the requirements for patent eligibility under 35 U.S.C. § 101.  They generally require a processing circuit that receives a user specified selection of media content and selection of a plurality of unique online content sources and user account data for each of the plurality of unique online content sources, and a network over which content availability data is requested from the plurality of selected unique online content sources. They further require that a notification be generated that indicates the selection of media content is available to at least one user account in the user account data from at least one of the plurality of unique online content sources.  Through the methods described in the patent, the inventions will provide a notification to a user's electronic device when desired media content is available from an online content source to which the user has access.  In other words, the claimed inventions of the '489 patent set forth specific technical solutions to a specific technical problem that is unique to the Internet and other large networks connecting users with disparate content.

Defendant Sonos, Inc.'s ("Sonos") motion to dismiss does not discuss this invention. Sonos instead sets up a strawman, spending pages arguing about a purported invention that simply captures a human information-gathering process.  But those arguments have no application to the '489 patent, which does not merely describe automation of a human information-gathering process.  Instead, the claimed inventions of the '489 patent recite a specific combination of elements, applied to solve technical problems in searching and accessing network-based, online media content sources.  Although Sonos may dispute the scope of the '489 inventions in this litigation, a decision concerning this scope is not appropriately rendered within the context of a motion to dismiss.  The allegations in Plaintiff Google LLC's ("Google") First Amended Complaint ("FAC")—including those about the scope of the '489 claims and the technical problem that the patent solves—are presumed true at the pleading stage.  Taking these allegations as true, the '489 patent is directed to a non-abstract idea and includes inventive concepts.  Sonos' attempts to have the Court ignore these allegations should be rejected.

## II.    STATEMENT OF THE ISSUES TO BE DECIDED

Whether, after accepting as true all allegations in the FAC and construing them in the light most favorable to Google, Sonos has proven by clear and convincing evidence that the '489 patent does not claim eligible subject matter under 35 U.S.C. § 101.  And whether this determination should be deferred until after claim construction.

## III.    FACTUAL BACKGROUND

The '489 patent identifies a problem unique to "today's digital age."  '489 patent (FAC, Ex. 8, ECF No. 35-8) at 1:17-24.  As stated in the patent, at the time of the filing of the '489 application in 2011, "media content such as movies, video clips, television shows, music, etc., [was] becoming available from an ever-increasing number of different content sources."  *Id.*  The '489 inventors offered a number of technical solutions to problems, which arose at the time with this increase, to improve identification and monitoring of availability of media content spread over a plurality of online content sources.  They conceived of methods and systems that "easily and efficiently access voluminous amounts of data that is geographically distributed, at different times, in different formats, with differing access restrictions."  FAC ¶ 42 (ECF No. 35).

The USPTO issued the '489 patent on November 12, 2013.  *See* '489 patent at 1.  The patent includes twenty claims that describe specific systems and methods for determining whether media content is available from different, network-based content sources and notifying a user about the content's availability.  *See id.* at 1:13-16; 20:25-23:7.

Google filed this lawsuit against Sonos based on allegations that it infringes at least one claim of each of the '489 patent and four other patents.  On August 26, 2020, Google amended its complaint.  *See generally* FAC.  The amendments add detailed allegations about the '489 patent, the particular problem solved by the patent, and distinctions between the '489 inventions and the prior art.  *See id.* ¶¶ 41-44.  On September 9, Sonos filed a motion to dismiss Google's claim that Sonos infringes the '489 patent (ECF Nos. 38 and 39[1]).  The sole basis for the motion is Sonos' contention that the '489 patent does not claim eligible subject matter.  *See* Mot. at 1-2.

---

[1]  Sonos filed a corrected version of its motion to dismiss on September 10, 2020 (ECF No. 39). The citations to Sonos' motion throughout this brief are to the corrected version.

1   **IV.    STATEMENT OF LAW**

2   "[P]atent eligibility can be determined at the Rule 12(b)(6) stage[] . . . when there are no

3   factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law."

4   *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018).  But a

5   party asserting invalidity under 35 U.S.C. § 101 bears the burden of establishing invalidity by

6   clear and convincing evidence.  *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d

7   1356,1364 (Fed. Cir. 2018) (citing 35 U.S.C. § 282).  The challenger must first demonstrate that,

8   based on a review of the claims as a whole,  the claims are "abstract" and "directed to a patent-

9   ineligible concept."  *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 218 & n.3 (2014).  For

10  this inquiry, known as *Alice* step one, "it is not enough to merely identify a patent-ineligible

11  concept underlying the claim;" the challenger must show that the "patent-ineligible concept is

12  what the claim is 'directed to.'"  *Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*, 827 F.3d 1042, 1050

13  (Fed. Cir. 2016).  When performing the step one inquiry, the claims at issue must be read in light

14  of the specification to assess whether they are patent eligible.  *See Data Engine Techs. LLC v.*

15  *Google LLC*, 906 F.3d 999, 1011 (Fed. Cir. 2018).  Courts "'must be careful to avoid

16  oversimplifying the claims' by looking at them generally and failing to account for the specific

17  requirements of the claims."  *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313

18  (Fed. Cir. 2016) (quoting *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir.

19  2016)).

20       If the challenger carries its burden at step one, it must then show that the claims lack an

21  "inventive concept" and that the claim elements involve no more than "well-understood, routine,

22  [and] conventional activity."  *Aatrix Software*, 882 F.3d at 1128 (quoting *Mayo Collaborative*

23  *Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 73 (2012)).  This "inventive concept" inquiry—

24  *Alice* step two—analyzes contemporaneous historical facts based on "sources properly considered

25  on a motion to dismiss, such as the complaint, the patent, and materials subject to judicial notice."

26  *Id.*

27       The Supreme Court has instructed courts to "tread carefully in construing this exclusionary

28  principle lest it swallow all of patent law."  *Alice*, 573 U.S. at 217.  Within that context, a court

1  analyzing a computer-based invention must consider whether the "focus of the claims is on [a]

2  specific asserted improvement in computer capabilities . . . or, instead, on a process that qualifies

3  as an 'abstract idea' for which computers are invoked merely as a tool." *Enfish, LLC v. Microsoft*

4  *Corp.*, 822 F.3d 1327, 1335-36 (Fed. Cir. 2016).

5  **V.    ARGUMENT**

6      **A.    Sonos Has Not Proven By Clear and Convincing Evidence That the '489**

7          **Patent is Invalid Under 35 U.S.C. § 101**

8      Sonos argues that the '489 patent is directed to an abstract idea, and fails to recite an

9  inventive concept.  It is incorrect on both fronts.  The '489 patent is directed to a specific way of

10  enabling a computer to identify desired media content across a network from multiple unique

11  online content sources, and to notify a user of that content's availability and the unique online

12  content source to which the user has access and from which that content is available.  The patent

13  also discloses identifying to the user content that is related to the media content that the user has

14  identified as desirable.  It claims a particular way of solving the stated problem—dealing with the

15  large number of unique sources from which media content is available over the Internet (or other

16  large networks), where content stored at those sources might be accessible only to particular users

17  or to classes of users having a sufficient level of access rights, and the disparity in the release

18  schedules for such content—rather than broadly reciting the ultimate function of solving this

19  stated problem.

20          **1.    The '489 Claims Are Not Directed to an Abstract Idea**

21      In an effort to analogize the present case to others in which patents have been invalidated

22  as patent ineligible, Sonos overgeneralizes the claimed inventions.  Sonos characterizes the claims

23  as "an attempt to automate a process that could be (and previously was) performed entirely by a

24  human without a computer."  Mot. at 5.  To support this overgeneralization, Sonos argues that the

25  inventions of the '489 patent are simply an automated version of a parent's determination of

26  whether a child can watch a movie on a home theater.  *See id.*  According to Sonos, "the parent

27  could: [a] receive a selection of media content (e.g., the name of a movie) along with the child's

28  delivery preferences (e.g., streaming accounts to which she has access); [b] contact the various

1    streaming platforms to figure out which ones have the movie; [c] receive their responses; and [d]

2    notify her child of the answer.  Setting aside the generic computing components recited in claim

3    15, this human information-gathering process falls squarely within the scope of claim 15." *Id*.

4    (emphasis omitted).

5         Sonos' human information-gathering analogy fails to address the specific teachings of the

6    '489 patent and the language of the asserted claims.  In Sonos' analogy, a child asks a parent to

7    watch a movie on a home theater at a particular time.  The parent then uses a computer to search

8    streaming platforms individually and informs the child that the selection is or is not available.  If

9    the movie is not available, the parent notifies the child and that is the end of the inquiry.  Rather

10   than support Sonos' argument, this hypothetical highlights a distinction between the '489

11   inventions and those claims found patent ineligible in the cases upon which Sonos relies.  *See*

12   Mot. at 6-8 (describing the cases Sonos relies on).  Unlike the cases on which Sonos relies, the

13   "***human*** process" hypothetical that it proposes in its motion itself involves *using a computer* to

14   search *online content sources*.  *Id*. at 5-6.  Thus, by its own proposed analogy, Sonos

15   acknowledges that the '489 inventions are not merely automating a process previously performed

16   by hand or in the human mind—and that the inventions are not automating steps that "could *all* be

17   performed by humans without a computer."  Mot. at 5 (emphasis added) (quoting *Mortg. Grader,*

18   *Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1324 (Fed. Cir. 2016)).

19        More fundamentally, Sonos' analogy—and its characterizations throughout its motion—

20   ignores aspects of the '489 inventions.  The notifications in the '489 claims are not the same as a

21   mother simply informing her child that a movie is available to stream, in which the answer may be

22   that the identified movie is unavailable or that the movie is available but cannot be accessed by the

23   child.  Some implementations of the inventions described in the '489 specification provide for a

24   notification to be issued as content availability changes: "As media content becomes available or

25   unavailable, notifications may be generated using the content availability data and sent to one or

26   more user electronic devices. . . . For example, a user may receive a notification when media

27   content becomes available" or when there is "a change in accessibility data for media content that

28

1   is already available (e.g., a movie is now available for free instead of via pay-per-view, etc.)."

2   '489 patent at 17:18-28.  This is not a generic human process.

3        Nor do humans have the capacity to search a "plurality of unique online content sources"

4   in the manner described in the '489 patent.  '489 patent at 22:31.  The mother searching for her

5   child's movie selection will search one source, then another, then another.  The '489 patent

6   discloses the aggregation of media content availability information from unique content sources in

7   response to receiving a selection of media content from users.  *Id.* at 4:49-61.  This aggregation,

8   which increases efficiency and accuracy through focused searches, addresses problems stemming

9   from humans' limitations in manually searching for media content.  As such, Sonos' attempt to

10  reduce the '489 patent to mere automation of a human information-gathering process fails to

11  account for the actual inventions disclosed and claimed therein.

12       Sonos' arguments are also based on an incorrect reading of the '489 specification.  Sonos

13  claims that the '489 patent addresses "a ***human*** problem, not an Internet-centric one" because the

14  specification allegedly "expressly talks about the need to collect information from non-network

15  sources (e.g., movies that are playing in a theater, broadcast on television, and/or released on

16  physical media)."  Mot. at 8-9.  According to Sonos, this "***contradicts*** Google's assertion that the

17  problem [addressed by the '489 patent] is 'uniquely associated with the Internet and other large

18  networks.'"  *Id.*  Sonos is incorrect.  The '489 patent clearly states that "content sources 108, 110"

19  are "electronic devices," and "content sources 108, 110 may be computer servers (e.g., FTP

20  servers, file sharing servers, web servers, etc.) or other devices that provide media content to client

21  102 via network 106."  '489 patent at 4:5-10.  The '489 patent further states that "[i]n some cases,

22  content sources 108,110 may not provide media content via network 106, but provide information

23  about the availability of other media formats.  For example, a content source may provide a movie

24  schedule, a television schedule, an electronic programming guide, availability information

25  regarding a physical media format (e.g., a DVD, a Blu-Ray, a VHS tape, etc.), or other availability

26  data to server 104."  *Id.* at 4:10-17.  Therefore, even if the media itself is not stored in a network,

27  the '489 patent is clear that the information used to identify media content and to notify a user of

28

1    its availability is **network-based**.  This, again, reinforces the network-centric nature of the '489

2    patent and its claimed solution to the stated problem.

3         After misconstruing the scope of the patent, Sonos attempts to analogize the '489 claims to

4    those that courts have found patent ineligible.  But these arguments are similarly unavailing.

5    Neither *Electric Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350 (Fed. Cir. 2016), nor

6    *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089 (Fed. Cir. 2016), nor *Interval Licensing*

7    *LLC v. AOL, Inc.*, 896 F.3d 1335 (Fed. Cir. 2018), nor *Intellectual Ventures I LLC v. Erie*

8    *Indemnity Co.*, 850 F.3d 1315 (Fed. Cir. 2017), addressed claims like those at issue here.

9         In attempting to analogize the present claims to those at issue in *Electric Power*, Sonos

10   contends that "claim 15 recites the 'familiar class' of abstract processes of gathering information

11   and presenting the results."  Mot. at 7.  But in *Electric Power*, the claims merely recited "a process

12   of gathering and analyzing information of a specified content, then displaying the results" without

13   "any particular assertedly inventive technology for performing those functions."  830 F.3d at

14   1354.  In concluding that the *Electric Power* claims were patent ineligible, the Federal Circuit

15   referenced the underlying district court's reasoning that, "rather than claiming 'some specific way

16   of enabling a computer to monitor data from multiple sources across an electric power grid,' some

17   'particular implementation,' [the invalidated claims] 'purport to monopolize every solution to the

18   problem'—any way of effectively monitoring multiple sources on a power grid."  *Id.* at 1356.

19        This rationale is inapplicable to the claims in the '489 patent, which are directed to

20   "specific way[s] of enabling a computer," *Electric Power*, 830 F.3d at 1356, to provide a

21   particular solution to a problem—namely, specific ways to efficiently identify content media

22   online.  The claims do not purport to monopolize the identification of online media content.  The

23   '489 patent covers, for example, methods that include determining the accessibility of selected

24   media content to a particular user and notifying a user that selected media content is available.

25   *See, e.g.,* '489 patent at 20:26-47 (claim 1), 21:1-15 (claim 5), 21:23-47 (claim 8), 21:64-22:12

26   (claim 12), 22:21-43 (claim 15).  And Sonos nowhere explains how the *Electric Power* rationale

27   could apply to claims with the further requirement to identify related content to that selected by

28   the user (*see, e.g., id.* at 21:1-15 (claim 5), 21:64-22:12 (claim 12)), or to allow the user to set a

threshold price below which the user would desire to obtain that media content (*see, e.g., id.* at 20:48-54 (claim 2), 21:23-47 (claim 8), 22:44-51 (claim 16)).  Thus, *Electric Power* does not apply to the present case.

Sonos' reliance on the Federal Circuit's decision in *FairWarning*, in which the claims at issue were directed to the abstract "concept of analyzing records of human activity to detect suspicious behavior," is similarly misplaced.  *FairWarning*, 839 F.3d 1093 (quoting *FairWarning IP, LLC v. Iatric Sys., Inc.*, No. 8:14-2685, 2015 WL 3883958, at *2 (M.D. Fla. June 24, 2015)).  There, the patent covered "the broad concept of monitoring audit log data," and "[t]he claims . . . d[id] not propose a solution or overcome a problem specifically arising in the realm of computer [technology]."  *Id.* at 1097 (quotation marks omitted).  To the extent the claims were improvements, "it [wa]s th[e] incorporation of a computer, *not* the claimed rule, that purportedly 'improve[d] [the] existing technological process' by allowing the automation of further tasks."  *Id.* at 1095 (quoting *Alice*, 573 U.S. at 223).  In finding these claims patent ineligible, the Federal Circuit explained that "merely presenting the results of abstract processes of collecting and analyzing information, without more (such as identifying a particular tool for presentation), is abstract as an ancillary part of such collection and analysis."  *FairWarning*, 839 F.3d at 1093 (quoting *Electric Power*, 830 F.3d at 1354).

Again, this reasoning does not apply to the '489 patent, which provides a particular solution to the problem of determining the availability of content media distributed across unique content sources throughout a computing network.  FAC ¶ 44.  Its claims are directed to a specific way of using a computer to address the "increase in the number of different content sources, combined with the increase in disparate release schedules for media content," which "often leads to confusion among consumers."  '489 patent at 1:30-33.  The claimed inventions use targeted searching of aggregated content and specific computer processes, including: receiving a selection of media content and content delivery preferences, including a selection of a plurality of unique online content sources and user account data associated with these sources; searching over a network for media content based on the selected unique online content sources and associated user data; and receiving content availability data in response.  *See, e.g.*, *id.* at 2:64-3:15, 4:5-32, 4:33-

61, 5:11-29, 6:62-7:5, 7:34-45; *see also id.* at 20:26-47, 21:23-47, 22:21-43.  And based on these targeted searches, the inventions provide for a "particular tool for present[ing]," *FairWarning*, 839 F.3d at 1093, the results: namely, an "electronic notification for a user electronic device."  '489 patent at 4:62-5:10, 7:46-8:19, 8:34-9:7.  By, for example, targeting searches at aggregated content associated with specified unique online content sources to which the user has access, and responsively identifying content known to be desirable to the user when it becomes available, the '489 inventions employ specific tools to increase the efficiency and usefulness of online media searches across disparate sources.  This is not at all like patenting "the broad concept of monitoring audit log data."  *FairWarning*, 839 F.3d at 1097.

The fact that the problem addressed by the '489 patent is one faced by humans, who cannot manipulate large amounts of data that become available at different times, does not render patent ineligible the solution, which improves computer operation through the specific usage of certain data fields, including unique online content sources, user account data, prioritization selection, pricing, and the potential for identification of related content.  The '489 patent presents a specific solution to a particular problem, using specific network-related identified data fields—"the name of the content source, an address for the content source on the network, account information for the content source, whether the content source is a preferred source, or a priority rank for the content source," for example ('489 patent at 5:54-57)—and network-based searching.  It does not therefore raise the issues the Federal Circuit addressed in *Electric Power* and *FairWarning*.  In other words, this is not a case where the patent is directed to the broader function of content identification and selection, or merely automates a human's search for media content over the Internet.

*Interval Licensing* and *Intellectual Ventures* likewise addressed patent claims that bear little resemblance to those in the '489 patent.  In *Interval Licensing*, the court held that "providing someone an additional set of information without disrupting the ongoing provision of an initial set of information is an abstract idea."  896 F.3d at 1344.  The claims at issue "discuss[ed] only broad functions and [we]re not directed to any technological improvement for performing those functions."  *Id.* at 1346.  In *Intellectual Ventures*, the patent at issue "claimed [the] creation of an

1   index used to search and retrieve information stored in a database."  850 F.3d at 1327.  The court

2   held this abstract idea patent ineligible, but was careful to distinguish the idea from patent claims

3   that are "drawn to a specific search architecture that improves how computer databases function."

4   *Id.* at 1327-28.

5       Sonos elides this distinction in its motion.  The '489 claims relate to a particular way to

6   search for particular kinds of network-based information, but they are not directed to searching

7   and retrieving information generally.[2]  The patent employs a specific tool (targeted searches based

8   on content delivery preferences) to provide a specific solution (an electronic notification that is

9   generated when content is available) to a specific problem (media content spread across different

10  sources in a network having different access rights and non-synchronized times of availability).

11  Thus, the '489 patent is patent eligible according to the case law relied upon by Sonos.

12      Indeed, claims of this type—directed to *how* to implement the idea of improving

13  identification of content media over the Internet, rather than to the idea itself—have been found

14  patent eligible.  In *Finjan, Inc. v. Blue Coat Systems, Inc.*, for example, the Federal Circuit found a

15  method directed to providing computer security by scanning a downloadable (*i.e.,* an executable

16  application program) and attaching the results of that scan to the downloadable itself in the form of

17  a "security profile" to be patent eligible.  879 F.3d 1299, 1303-06 (Fed. Cir. 2018).  Although it

18  had previously deemed computerized virus-screening an abstract idea, the Federal Circuit found

19  that the claimed security profile was based on a "behavior-based" virus scan, as compared to

20  "code-matching" virus scans—a distinction which improved computer functionality.  *Id.* at 1304.

21

22

---

23  [2] Sonos rejects Google's allegations that the '489 patent addresses "the ability to easily and
    efficiently access voluminous amounts of data that is geographically distributed, at different times,

24  in different formats, with differing access restrictions" and that this problem is "uniquely
    associated with the Internet and other large networks."  Mot. at 8 (quoting FAC ¶ 42).  A

25  defendant cannot succeed in a Rule 12 motion by disputing the allegations in the pleading.  *See
    Aatrix Software*, 882 F.3d at 1125.  And Sonos' only answer to this fundamental defect in its

26  arguments is to characterize Google's allegations as "an argument about how the problem should
    be characterized."  Mot. at 9 n.2 (emphasis omitted).  But, under *Aatrix*, Google's factual

27  allegations regarding the problem stated in the '489 patent, and the inventive solution to that
    problem, as set forth in Google's Amended Complaint (FAC ¶ 42), must be deemed true for the

28  purposes of deciding Sonos' motion notwithstanding Sonos' attempts to ignore them.

The specific behavior-based improvement, the Federal Circuit explained, distinguished the claims from those failing to claim a particular way of programming or designing the software, but instead merely claiming the resulting system or being drawn to the idea itself.  Like the '489 inventions at issue here, the *Finjan* invention was "directed to a non-abstract improvement in computer functionality, rather than [an] abstract idea . . . writ large."  *Id.* at 1305.

Similarly, in *DDR Holdings, LLC v. Hotels.com, L.P.*, the Federal Circuit held patent eligible claims that "specify how interactions with the Internet are manipulated to yield a desired result—a result that overrides the routine and conventional sequence of events ordinarily triggered by the click of a hyperlink."  773 F.3d 1245, 1258 (Fed. Cir. 2014).  This, the Court explained, was different than "broadly and generically claim[ing] 'use of the Internet' to perform an abstract business practice."  *Id.*  The invention at issue—which sent an Internet user who clicks on an advertisement to a hybrid webpage, with the look and feel of the host site, but with information from a third-party advertiser—was not particularly " technologically complex."  *Id.* at 1259.  But it was "a specific way to . . . solve a problem faced by websites on the Internet."  *Id.*  Therefore, it was patent eligible.

The Federal Circuit has thus drawn a line between inventions directed to abstract ideas and inventions directed to specific, non-abstract implementations that improve an idea and present a limited, specific solution.  The claimed inventions of the '489 patent fall into the latter category.  They do not therefore recite an abstract idea under *Alice* step one, and that is a sufficient reason to deny Sonos' motion to dismiss in its entirety.  *See Finjan*, 879 F.3d at 1306 ("There is no need to set forth a further inventive concept for implementing the invention. The idea is non-abstract and there is no need to proceed to step two of *Alice*.").

### 2.    The '489 Patent Recites Inventive Concepts

If the Court decides to proceed past *Alice* step one, Sonos' motion should still be denied.  The '489 patent recites inventive concepts, satisfying *Alice* step two, and Sonos has not demonstrated otherwise.

At step two, Sonos argues "that neither functional steps that are part of an abstract idea nor generic computer elements can provide an inventive concept under the second step of the *Alice*

1   analysis." Mot. at 11.  It then asserts that "the elements of claim 15 include only generic

2   functional steps that are part of the  abstract idea (like receiving user input, requesting information,

3   and then presenting the results) and generic computer elements (like 'one or more processors,' a

4   'network,' and an 'electronic device')."  *Id.*  Again, this is incorrect and ignores the claim

5   language as a whole.  Sonos' oversimplification completely dismisses the inventive concept of the

6   '489 patent.  As discussed above, the patent discloses the use of specific information—*i.e.,*

7   identification of desired media content and "content delivery preferences," which are premised on

8   a selection of a plurality of unique online content sources and user account data for those

9   sources—to search for available content over a network, regardless of whether that content is

10   available at the time that the media content was initially identified.  *See, e.g.*, '489 patent at 22:21-

11   43.

12          Even if the '489 patent was directed to an abstract idea, inclusion of these inventive

13   concepts renders its claims patent eligible.  In *Bascom Global Internet Servs., Inc. v. AT&T*

14   *Mobility LLC*, the Federal Circuit analyzed a patent that was directed to filtering content on the

15   Internet—a concept well-known in the art.  827 F.3d 1341, 1348 (Fed. Cir. 2016).  However, the

16   *Bascom* claims were held patent eligible because they did not merely recite the abstract idea of

17   filtering content along with the requirement to perform it on the Internet, or otherwise preempt

18   filtering content on the Internet.  *Id.* at 1350.  Instead, the *Bascom* claims recited a specific,

19   discrete implementation of filtering content.  They "carve[d] out a specific location for the

20   filtering system (a remote ISP server) and require[d] the filtering system to give users the ability to

21   customize filtering for their individual network accounts," *id.* at 1352, much like the '489 claims

22   define specific methods and particular tools for media content identification and notification.  In

23   *Bascom*, inclusion of this "inventive concept . . . transform[ed] the abstract idea of filtering

24   content into a particular, practical"—and patent eligible—"application of that abstract idea."  *Id.*

25          In *Mobile-Plan-It LLC v. Facebook Inc.*, the court likewise rejected a Section 101

26   challenge because, for the purposes of the pleading stage, the patent claims included inventive

27   concepts.  No. 14-1709, 2015 WL 1801425, at *4 (N.D. Cal. Apr. 20, 2015).  There, the patentee

28   claimed an "invention [relating to] proxy communication between meeting attendees using a

wireless communication device." *Id.* at *1 (quotation marks omitted).  The court acknowledged

that "conceptually similar 'proxies' may have been employed for anonymous communication

purposes in a variety of other historical contexts." *Id.* at *4.  But it nevertheless found that "the

specific problem purportedly addressed by the . . . patent [in suit] relates to characteristics of email

communications, and to particular issues arising among conference attendees." *Id.*  Again, this is

similar to the '489 patent,  which addresses a problem specific to "today's digital age[:] media

content such as movies, video clips, television shows, music, etc., is becoming available from an

ever-increasing number of different content sources." '489 patent at 1:17-19.  As the *Mobile-

Plan-It* court explained, particular applications of ideas, as seen in the '489 patent, are patent

eligible inventive concepts.  *See Mobile-Plan-It,* 2015 WL 1801425, at *4.

      The '489 patent's inventive concepts are also evidenced by the prosecution history.[3]

During prosecution, the inventors focused on specific requirements of the claimed system that

distinguished it over the prior art.  In particular, the inventors distinguished the inventions of the

'489 patent from U.S. Patent Publication No. 2008/0295131 ("Grover"), which failed to disclose a

method for selecting a plurality of unique online content sources specified by a user interface

device and user account data for each of the plurality of unique online content sources.  FAC ¶ 44

(citing Amendment and Reply Under 37 C.F.R. 1.111, dated March 29, 2013, at 9); Mot. at 13-14.

The inventors further distinguished Grover for failing to disclose using content availability data to

generate a notification that indicates that the selection of media content is available to at least one

user account in the user account data.  FAC ¶ 44.  These identified distinctions over prior art—

relying on the use of content availability data identified using both a plurality of unique online

content sources specified by a user interface device and user account data for each such unique

content source, along with the generation of a notification (including when content media becomes

available at a later time)—are directed to an improvement in computer operation, rather than

merely use of a computer as a tool.

---

[3]   Sonos argues that the Court can consider the '489 patent's prosecution history when deciding
its motion to dismiss.  *See* Mot. at 13-14 n.5.

1   Sonos argues in its motion that both Grover and another piece of prior art, U.S. Patent

2   Publication No. 2005/119936 ("Buchanan"), "disclosed methods for delivering media content to

3   users using the same generic components identified in the '489 Patent." Mot. at 14. But the '489

4   inventions are not just methods for delivering media content to users using generic components,

5   and neither Grover nor Buchanan discloses the patent's inventive concepts. Grover discloses

6   delivery of media content in a way that allows a user to view content at a number of locations.

7   FAC ¶ 44. Buchanan discloses an advertiser sponsoring media content, such that the advertiser

8   pays for content if the viewer first watches one or more ads. *Id.* Neither publication discloses a

9   method of relying on the use of content availability data identified using both a plurality of unique

10  online content sources specified by a user interface device and user account data for each such

11  unique content source, and generating a notification (including when content media becomes

12  available at a later time).

13   And Sonos is again disputing factual allegations set forth in the FAC. Google has alleged

14  that the inventors of the '489 patent distinguished their invention over the Grover and Buchanan

15  prior art references cited by the examiner during prosecution. FAC ¶ 44. Notwithstanding, Sonos

16  argues that these references "show that the claimed elements were well-understood in the art."

17  Mot. at 13. However, while making this conclusory assertion, Sonos fails to offer any evidence

18  that the claimed features of the '489 patent, as described in the FAC, the '489 patent, and the file

19  history, were well-understood, routine, or conventional activities at the time of the filing of the

20  '489 application.[4] Without evidence for its conclusory claims, Sonos' repeated attempts to

21  controvert Google's factual allegations are deficient; the allegations in the FAC establish that there

22  are questions of fact that mandate denial of Sonos' motion.

23

24

25  _____

[4] "Whether the claim elements or the claimed combination are well-understood, routine, [or]
26  conventional is a question of fact,"*Aatrix Software*, 882 F.3d at 1128, assessed at the time of the
invention, *see Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1318-19 (Fed. Cir. 2019). Sonos'
27  motion includes no factual evidence supporting its contention that the '489 elements were well-
understood, and its argument on that point instead disputes both the allegations in Google's FAC
28  and the statements in the prosecution history. *Compare* Mot. at 13-14 *with* FAC ¶ 44.

1    Sonos mischaracterizes the scope of the '489 claims again when it argues that the

2    allegations distinguishing the '489 invention over the prior art are insufficient because "generating

3    a notification based on collection of data" or "fundamental economic practice[s]" are not patent

4    eligible.  Mot. at 14.  Courts consider "all claim elements, both individually and in combination"

5    when determining eligibility.  *Alice*, 573 U.S. at 218 n.3; *see also Bascom*, 827 F.3d at 1350

6    ("[A]n inventive concept can be found in the non-conventional and non-generic arrangement of

7    known, conventional pieces.").  And as discussed above, the '489 patent does not simply claim

8    notifications or price thresholds devoid of context or additional elements.  The inventions describe

9    *how* to implement a specific computer-based solution for improving the identification of content

10   media available from unique sources on a network that includes these elements.  That is inventive.

11   *See Trading Techs. Int'l, Inc. v. CQG, Inc.*, 675 F. App'x 1001, 1004 (Fed. Cir. 2017) (affirming a

12   holding that a specifically described "static price index" is "an inventive concept that allows

13   traders to more efficiently and accurately place trades using [an] electronic trading system" when

14   the index uses a "specific structure and concordant functionality" that is not a "conventional

15   computer implementation[] of known procedures").

16   Finally, the '489 claims do not raise preemption questions that prevent others from

17   searching for online content; there are specific requirements in the claims regarding how a

18   computer operates to identify content availability data.  Thus, with respect to *Alice* step two, the

19   '489 claims are closer to those at issue in *DDR Holdings*—which that court found to be a technical

20   solution to a problem unique to the Internet (creation of a hybrid webpage to avoid loss of page

21   views) that "solved that problem in a particular, technical way," *Bascom*, 827 F.3d at 1351

22   (discussing *DDR Holdings*)—than those at issue in *Content Extraction & Transmission LLC v.*

23   *Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343 (Fed. Cir. 2014), cited by Sonos (*see* Mot. at 5, 15).

24   The claims at issue in *Content Extraction* were "drawn to the basic concept of data recognition and

25   storage."  776 F.3d at 1347.  As the Federal Circuit explained in *Bascom*, the problem with "[t]he

26   claims in *Content Extraction*" was that they broadly covered "use of the claimed abstract idea on

27   well-known generic scanning devices and data processing technology."  *Bascom,* 827 F.3d at

28   1352.  The specific solution in *DDR Holdings*, which addressed "a problem arising in the realm of

1   computer networks, and provide[d] a solution entirely rooted in computer technology," was found

2   not to have the same problem.  *Id.* at 1346, 1351.  That is the case here: the '489 patent provides a

3   specific solution to a specific problem that arises when dealing with the large number of network-

4   based sources from which media content is available over the Internet, and does not broadly

5   preempt searching for media content.

6          The scope of the '489 claims is closer to those at issue in *Bascom*, as compared to those

7   broadly preempting use of a given idea on the Internet.  In *Bascom*, the claims at issue "d[id] not

8   preempt the use of the abstract idea of filtering content on the Internet or on generic computer

9   components performing conventional activities."  827 F.3d at 1352.  They "carve[d] out a specific

10   location for [a] filtering system (a remote ISP server) and require[d] the filtering system to give

11   users the ability to customize filtering for their individual network accounts."  *Id.*  In cases where

12   claims have been held patent ineligible, the claims were generally directed to "an abstract idea"

13   that merely made use of "the Internet, on a generic computer."  *Intellectual Ventures I LLC v.*

14   *Capital One Bank (USA)*, 792 F.3d 1363, 1371 (Fed. Cir. 2015); *see also Bascom,* 827 F.3d at

15   1352.  The '489 patent claims specific methodologies for improving identification of available

16   content and increasing the accuracy of Internet/network search inquiries returned to a user; it does

17   not cover all manner of media content searching or generic use of the Internet.

18          Therefore, the claims of the '489 patent recite an inventive concept and are patent eligible

19   under *Alice* step two.

20          **B.      Sonos' Motion Raises Prospective Claim Construction Disputes**

21          The arguments in Sonos' motion are predicated on its attempt to improperly broaden the

22   scope of the '489 patent's claims.  Because Sonos' arguments raise disagreement over the

23   meaning of claim terms and the scope of the claimed invention, this dispute raises questions of

24   claim construction.

25          Determining "patent eligibility requires a full understanding of the basic character of the

26   claimed subject matter."  *Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Can. (U.S.)*, 687

27   F.3d 1266, 1273-74 (Fed. Cir. 2012).  Accordingly, where "claim construction is necessary to

28   fully understand the basic character of the claimed subject matter, . . . dismissal [is] premature at

th[e pleading] stage." *Khn Sols. Inc. v. Vertisense Inc.*, No. 16-962, 2016 WL 5725013, at *2 (N.D. Cal. Sept. 30, 2016); *see also id.* ("[A] court may need to defer the § 101 analysis until after claim construction when a patentee identifies terms requiring construction and explains how resolution of construction disputes is material to resolving the § 101 challenge.").  Here, to the extent that Sonos seeks to describe the claimed inventions as broadly directed to "generic functional steps that are part of [an] abstract idea" and "generic computer elements," Mot. at 11, this assertion raises potential claim construction questions associated with the '489 claims.  For example, the asserted claims recite content delivery preferences including "a plurality of unique online content sources" and receiving "over a network" content availability data from these sources, which confirm that the '489 patent is directed to computing-network-specific problems rather than those traditionally addressed in a non-computing domain.  *See, e.g.*, '489 patent at 22:24-43; *see also id.* at 20:24-47.  The '489 patent claims further specify that the "content availability data" indicates "whether the selection of media content is available to a user account in the user account data," with this information being provided in a "notification."  *Id.* at 22:24-43; *see also id.* at 2:1-11.  These terms relate to network-based data that is specific to unique online content sources and user-specified account information.  Sonos, by attempting to expand the claims to cover a "***human*** information-gathering process," Mot. at 5, construes these terms too broadly.  To the extent Sonos wishes to press its alternative constructions, which lack basis in the patent claims, specification, prosecution history, or any other evidence, this at least raises claim construction questions that should not be addressed at the motion to dismiss stage.  *See Khn Sols.*, 2016 WL 5725013, at *2.

## VI.    CONCLUSION

Google respectfully submits that Sonos' motion to dismiss should be denied.  If the Court does grant Sonos' motion, Google respectfully requests leave to further amend its complaint.  *See Aatrix Software*, 882 F.3d at 1127 ("[A] proposed amended complaint, which alleges facts directed to the inventive concepts in [the] claimed invention, would not be futile.").

DATED:  September 23, 2020

QUINN EMANUEL URQUHART &
SULLIVAN, LLP


By */s/ David A. Nelson*
_____
Charles K. Verhoeven (Bar No. 170151)
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone:      (415) 875-6600
Facsimile:      (415) 875-6700
charlesverhoeven@quinnemanuel.com

David A. Nelson (admitted *pro hac vice*)
191 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606
Telephone:      (312) 705-7400
Facsimile:      (312) 705-7401
davidnelson@quinnemanuel.com

Attorneys for GOOGLE LLC