CLEMENT SETH ROBERTS (STATE BAR NO. 209203)
croberts@orrick.com
BAS DE BLANK (STATE BAR NO. 191487)
basdeblank@orrick.com
ALYSSA CARIDIS (STATE BAR NO. 260103)
acaridis@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone:     +1 415 773 5700
Facsimile:     +1 415 773 5759

GEORGE I. LEE (admitted *pro hac vice*)
lee@ls3ip.com
SEAN M. SULLIVAN (admitted *pro hac vice*)
sullivan@ls3ip.com
RORY P. SHEA (admitted *pro hac vice*)
shea@ls3ip.com
J. DAN SMITH (admitted *pro hac vice*)
smith@ls3ip.com
LEE SULLIVAN SHEA & SMITH LLP
656 W Randolph St., Floor 5W
Chicago, IL 60661
Telephone:     +1 312 754 0002
Facsimile:     +1 312 754 0003

*Attorneys for Defendant Sonos, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| GOOGLE LLC,<br><br>                    Plaintiff,<br><br>        v.<br><br>SONOS, INC.,<br><br>                    Defendant. | Case No. 20-cv-03845-EMC<br><br>**SONOS, INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6) AND 35 U.S.C. § 101**<br><br>Date: Thursday, October 15, 2020<br>Time: 1:30 p.m.<br>Courtroom: 5, 17th Floor |

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION .........................................**ERROR! BOOKMARK NOT DEFINED.**

II.     LEGAL STANDARD...................................**ERROR! BOOKMARK NOT DEFINED.**

III.    THE '489 PATENT IS INVALID UNDER 35 U.S.C. § 101......**ERROR! BOOKMARK NOT DEFINED.**

        A.      *Alice* Step One: Claim 15 Does Not Claim a Technological Improvement...**Error! Bookmark not defined.**

        B.      *Alice* Step Two: Claim 15 Lacks an Inventive Concept ......**Error! Bookmark not defined.**

        C.      Claim Construction is Unnecessary ......................**Error! Bookmark not defined.**

        D.      Amendment Would be Futile ................................**Error! Bookmark not defined.**

IV.     CONCLUSION ...........................................**ERROR! BOOKMARK NOT DEFINED.**

# TABLE OF AUTHORITIES

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.,*
  882 F.3d 1121 (Fed. Cir. 2018) ........................................................................... 2

*Alice Corp. Pty. v. CLS Bank Int'l,*
  573 U.S. 208 (2014) ................................................................................... *passim*

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.,*
  788 F.3d 1371 (Fed. Cir. 2015) ......................................................................... 13

*Ass'n for Molecular Pathology v. Myriad Genetics, Inc.,*
  569 U.S. 576 (2013) ........................................................................................... 12

*Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.),*
  687 F.3d 1266 (Fed. Cir. 2012) ........................................................................... 3

*Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC,*
  827 F.3d 1341 (Fed. Cir. 2016) .................................................................... 11, 12

*BSG Tech LLC v. Buyseasons, Inc.,*
  899 F.3d 1281 (Fed. Cir. 2018) ....................................................................... 3, 9

*buySAFE, Inc. v. Google, Inc.,*
  765 F.3d 1350 (Fed. Cir. 2014) ....................................................................... 8, 9

*Cellspin Soft, Inc. v. Fitbit, Inc.,*
  927 F.3d 1306 (Fed. Cir. 2019), *cert. denied sub nom.*, 140 S. Ct. 907 (2020) ...................... 2

*ChargePoint, Inc. v. SemaConnect, Inc.,*
  920 F.3d 759 (Fed. Cir. 2019), *cert. denied*, 140 S. Ct. 983 (2020) ......................................... 4

*Cleveland Clinic Found. v. True Health Diagnostics LLC,*
  859 F.3d 1352 (Fed. Cir. 2017) ......................................................................... 14

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n,*
  776 F.3d 1343 (Fed. Cir. 2014) ......................................................................... 14

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.,*
  880 F.3d 1356 (Fed. Cir. 2018) ........................................................................... 1

*Customedia Techs., LLC v. Dish Network Corp.,*
  951 F.3d 1359 (Fed. Cir. 2020) ....................................................................... 4, 8

*CyberFone Sys., LLC v. Cellco P'ship,*
  885 F. Supp. 2d 710 (D. Del. 2012), *aff'd sub nom.*, 558 F. App'x 988 (Fed. Cir. 2014) ...... 14

*Data Engine Techs. LLC v. Google LLC,*
  Case No. 17-1135, Dkt. No. 34 (Fed. Cir. July 21, 2017) ................................. 9, 10

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*DDR Holdings, LLC v. Hotels.com, L.P.,*
    773 F.3d 1245 (Fed. Cir. 2014) ................................................................ 6, 7, 10

*Elec. Power Grp., LLC v. Alstom S.A.,*
    830 F.3d 1350 (Fed. Cir. 2016) ................................................................ 5, 10, 11

*Enfish, LLC v. Microsoft Corp.,*
    822 F.3d 1327 (Fed. Cir. 2016) ........................................................................ 5

*Finjan, Inc. v. Blue Coat Sys., Inc.,*
    879 F.3d 1299 (Fed. Cir. 2018) ........................................................................ 6

*In re Rosenberg,*
    813 F. App'x 594 (Fed. Cir. 2020) .................................................................... 5

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.,*
    566 U.S. 66 (2012) ......................................................................................... 12

*Microsoft Corp. v. I4I Ltd. P'ship,*
    564 U.S. 91 (2011) ........................................................................................... 1

*Mobile-Plan-It LLC v. Facebook Inc.,*
    No. 14-CV-01709-RS, 2015 WL 1801425 (N.D. Cal. Apr. 20, 2015) ............... 12, 13

*OIP Techs., Inc. v. Amazon.com, Inc.,*
    788 F.3d 1359 (Fed. Cir. 2015) ................................................................... 10, 13

*Personal Web Techs., LLC v. Google LLC et al.,*
    No. 13-1317, Dkt. No. 361 (N.D. Cal. Nov. 22, 2019) ................................. 3, 9, 11

*Reese v. Sprint Nextel Corp.,*
    774 F. App'x 656 (Fed. Cir. 2019), *cert. denied*, 140 S. Ct. 2507 (2020) ........... 14

*SAP Am., Inc. v. InvestPic, LLC,*
    898 F.3d 1161 (Fed. Cir. 2018), *cert. denied*, 139 S. Ct. 2747 (2019), *reh'g
    denied,* 140 S. Ct. 27 (2019) ....................................................................... 9, 12

*SiRF Tech., Inc. v. Int'l Trade Comm'n,*
    601 F.3d 1319 (Fed. Cir. 2010) ........................................................................ 1

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC,*
    874 F.3d 1329 (Fed. Cir. 2017) ....................................................................... 12

*Ultramercial, Inc. v. Hulu, LLC,*
    772 F.3d 709 (Fed. Cir. 2014) ........................................................................ 10

*WhitServe LLC v. Donuts Inc.,*
    809 F. App'x 929 (Fed. Cir. 2020) .................................................................... 8

**Statutes**

35 U.S.C. § 101 ................................................................................................................... *passim*

SONOS, INC.'S MOTION TO DISMISS
20-cv-03845-EMC

1   **I.        INTRODUCTION**

2            Google's opposition to Sonos's motion to dismiss is a smoke screen.  Google's arguments

3   are all either squarely foreclosed by Federal Circuit precedent or fly in the face of what Google

4   has *itself* told this and other courts about how § 101 should be applied.  The claims challenged by

5   this motion are of the exact kind the Federal Circuit has found to be abstract, and both the claims

6   and the specification refute the notion that they contain an inventive concept of the kind that

7   might save them under the second step of the *Alice* analysis.  And, because Google has already

8   amended its complaint with Sonos's motion in hand, there is no reason to think that Google can

9   plead itself into a claim.  The Court should, therefore, find that all asserted claims of U.S. Patent

10  8,583,489 are directed to patent ineligible subject matter under 35 U.S.C. § 101.

11  **II.       LEGAL STANDARD**

12           Google relies on two erroneous legal standards.

13           ***First***, Google incorrectly asserts that Sonos must prove ineligibility by clear and

14  convincing evidence, a standard for proving facts, even though eligibility is unquestionably an

15  issue of law.  Dkt. No. 42 ("Opp.") at 2, 3; *SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d

16  1319, 1331 (Fed. Cir. 2010) ("patent-eligible subject matter is an issue of law").  For support,

17  Google cites a statement from *Core Wireless Licensing S.A.R.L. v. LG Electronics, Inc.*, saying

18  that invalidity must be proven by clear and convincing evidence.  880 F.3d 1356, 1364 (Fed. Cir.

19  2018).  But Google doesn't bother to mention that the *Core Wireless* court made this

20  pronouncement while addressing the parties' ***anticipation*** arguments.  *Id.*  As the court

21  recognized, anticipation is a "question[] of fact," while "[t]he ultimate determination of patent

22  eligibility under 35 U.S.C. § 101 is an issue of law."  *Id.* at 1361.  Indeed, although the *Core*

23  *Wireless* panel did address eligibility in the opinion, it did ***not*** suggest or imply that ineligibility

24  had to be proven by clear and convincing evidence.  *Id.* at 1361-63.  As the Supreme Court has

25  made clear, "[w]here the ultimate question of patent validity turns on the correct answer to legal

26  questions"—as § 101 eligibility does—"today's strict standard of proof has no application."

27  *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 114-15 (2011) (Breyer, J., concurring).  And even

28  if the Court were to conclude that this strict burden of proof applies to subsidiary issues

SONOS, INC.'S MOTION TO DISMISS
20-cv-03845-EMC

1   underlying the legal question—it does not (*see, e.g., id.*)—the issue is ***irrelevant*** here because (as

2   discussed below) Google has not identified any legitimate factual disputes that might prevent

3   granting this motion.

4     ***Second***, Google asserts that, "under *Aatrix*," allegations in the Amended Complaint must

5   be taken as true regardless of whether they find support in the patent.  Opp. at 10 n.2; *see also id.*

6   at 1.  Not so.  The court in *Aatrix Software, Inc. v. Green Shades Software, Inc.,* said that

7   "plausible factual allegations" in the complaint must be taken as true.  882 F.3d 1121, 1125 (Fed.

8   Cir. 2018).  But the court did not hold that ***all*** allegations—even those untethered to or

9   contradicted by the patent—must be accepted.  In fact, the Federal Circuit has subsequently

10  elaborated that it "do[es] not read *Aatrix* to say that any allegation about inventiveness, wholly

11  divorced from the claims or the specification, defeats a motion to dismiss."  *Cellspin Soft, Inc. v.*

12  *Fitbit, Inc.*, 927 F.3d 1306, 1317 (Fed. Cir. 2019), *cert. denied sub nom.*, 140 S. Ct. 907 (2020).

13  Only "plausible and specific factual allegations that aspects of the claims are inventive are

14  sufficient."  *Id.*

15  **III.**  **THE '489 PATENT IS INVALID UNDER 35 U.S.C. § 101**

16    **A.**  ***Alice* Step One: Claim 15 Does Not Claim a Technological Improvement**

17    The '489 Patent is directed to the abstract idea of gathering information about the

18  availability of content from different sources and presenting that information to a user via a

19  notification.[1]  Google describes the claims in this same manner, explaining that they are directed

20  to "the aggregation of media content availability information from unique content sources" and

21  then "notifying a user that selected media content is available."  Opp. at 6, 7; *see also id.* at 2 (the

22  claims are directed to "determining whether media content is available from different, network-

23  based content sources and notifying a user about the content's availability").  The importance of

24  this admission cannot be overstated—*i.e.*, Google has expressly ***admitted*** that the patent is

25  directed to the abstract data-gathering process that Sonos articulated in its motion.

26    Because it cannot reasonably dispute Sonos's characterization of the claims, Google tries

27

28  ---
[1] Claim 15 is representative of all claims of the '489 Patent as discussed in Sonos's opening brief.
*See* Dkt. No. 39 ("Mot.") at 4 n.1, 15-17.  Google does not substantively dispute this.

SONOS, INC.'S MOTION TO DISMISS
20-cv-03845-EMC

1  to defend them by arguing that the claims are eligible because they recite a technological

2  improvement and are "network-centric."  Opp. at 5-7, 9-11.  Google is wrong on both counts.

3       To start, there is ***no*** support—in the claims, specification, or Google's initial or amended

4  complaint—for Google's allegation that the patent is directed to a ***technological*** improvement.

5  Google highlights purported benefits of the '489 Patent, including that the claimed method

6  "easily and efficiently accesses voluminous amounts of data that is geographically distributed, at

7  different times, in different formats, with differing access restrictions," Opp. at 2 (quoting Dkt.

8  No. 35 ("FAC") ¶ 42), and "increases efficiency and accuracy through focused searches," *id.* at 6.

9  *See also id.* at 9 (the '489 Patent "increase[s] the efficiency and usefulness of online searches

10  across disparate sources").  But these are purported ***benefits***, not technological advances.  The

11  two are not the same, and the Federal Circuit has recognized that even abstract ideas have

12  benefits.  For example, in *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1288 (Fed. Cir.

13  2018), the court found abstract claims directed to a method of indexing on a database that the

14  plaintiff argued "improved the quality … and organization of information in the database" and

15  "allow[ed] users to quickly and efficiently access" more information.  The court explained that

16  the identified ***benefits*** were "not equivalent to an ***improvement*** in the database's functionality."

17  *Id.* (emphasis added).

18       The benefits to which Google points are also not the result of any technological solution

19  articulated by the claims.  Rather, the claimed solution is to simply use computers in their normal

20  and ordinary capacity to accomplish a task faster than a human could.  *See* Opp. at 6 (Google

21  conceding that the patent "addresses problems stemming from humans' limitations in manually

22  searching for media content").  The law is, however, clear that simply using a computer to speed

23  up a task is not a technological advance.  *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada*

24  *(U.S.)*, 687 F.3d 1266, 1279 (Fed. Cir. 2012) (finding claims ineligible where "the [claimed]

25  computer simply performs more efficiently what could otherwise be accomplished manually").[2]

26  _____

27  [2] Google agrees that "the abstract idea analysis does not hinge on whether the claim involves a
computer – [the] Federal Circuit has found many computer-implemented claims directed to an
abstract idea.  Rather, the first prong considers whether the claims ***at their heart*** are directed to an

28  abstract idea."  *Interval Licensing LLC v. AOL, Inc.*, Case No. 10-1385-MJP, Dkt. No. 379 at 1;
*see also Personal Web Techs., LLC v. Google LLC et al.*, Case No. 13-1317-EJD, Dkt. No. 361 at

SONOS, INC.'S MOTION TO DISMISS
20-cv-03845-EMC

1    Moreover, where (as here) the patent is directed to a non-technical solution and merely improves

2    "a user's experience while using a computer application," it is not directed to patent-eligible

3    subject matter.  *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1365 (Fed. Cir.

4    2020).

5        Nowhere in its opposition or in the amended complaint does Google identify a claimed

6    (and specific) improvement in the operation or functioning of a computer.  Nor is such an

7    improvement resident in the claims.  Google argues that the claims are eligible because they "use

8    targeted searching of aggregated content and specific computer processes."  Opp. at 8.  But the

9    claims do not use targeted searching, nor would this matter.  Neither the claims nor the

10   specification ever use any form of the word "target."  At most, the claims call for "requesting"

11   data from multiple sources "based at least in part on the selection of media content and the user

12   account data."  *See, e.g.*, '489 Patent, cl. 15.  But asking for information based ("at least in part")

13   on who the user is and what the user wants is not a "targeted search methodology" any more than

14   the email I can send around my office asking if anyone has a tie that they are willing to lend me.

15   And insofar as Google *says* the claims recite a hardware improvement, Google is wrong.  The

16   claims do not recite an improved network or processing circuit, that such components "operate

17   differently than [they] otherwise could," or "that the invention involved overcoming some sort of

18   technical difficulty in [] network capability."  *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d

19   759, 768 (Fed. Cir. 2019), *cert. denied*, 140 S. Ct. 983 (2020).

20       Even if one were inclined to characterize the claims as involving a "targeted search

21   methodology," nothing about this supposed methodology is technological, let alone a

22   technological *advance*.  At most, the claims recite generic use of particular kinds of data as part

23   of a generic request for information.  They recite no technological use of such kinds of data, such

24   as, *how* such data might actually be used to narrow down possible search results, in what order

25   such data should be considered, or how any returned information might be ranked or analyzed.

26

27

28   12 (N.D. Cal. Nov. 22, 2019) (Google arguing that "[t]he use of computers to implement [the
     claimed] methods does not change the analysis" under step one.).

SONOS, INC.'S MOTION TO DISMISS
20-cv-03845-EMC

1   Instead, the claims broadly recite receiving and requesting generic information.[3]  Claims are

2   directed to abstract ideas when they do no more than make generic use of conventional data in a

3   similar way as was done prior to the Internet.  The '489 Patent claims are thus abstract, and

4   Google cannot save them by pointing to particular **types** of data received or requested.  *See, e.g.,*

5   *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) (collecting and

6   analyzing information, "including when limited to a particular content (which does not change its

7   character as information), [i]s within the realm of abstract ideas"); *In re Rosenberg*, 813 F. App'x

8   594, 597 (Fed. Cir. 2020) ("the Board did not err in concluding that the claimed collection and

9   analysis of a particular **type** of information … does not affect the eligibility analysis" (emphasis

10  added, citations omitted)).

11      Similarly, the claims do not recite "specific computer processes" for searching for data.

12  In fact, the "four step" process to which Google refers is just the four-step (i) receive (ii) request,

13  (iii) receive (iv) notify method recited in claim 15.  Opp. at 8-9.  None of those steps (taken alone

14  or together) recites a ***technological*** improvement to the functioning of the computer or network.

15  Instead, the claim merely uses a traditional computer network as a ***tool*** to carry out an abstract

16  and human-centric data-gathering process which the claim recites in broad, functional terms.  *See*

17  *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335-36 (Fed. Cir. 2016) (distinguishing between

18  claims that recite a "specific asserted improvement in computer capabilities" and those that are

19  directed to "an 'abstract idea' for which computers are invoked merely as a tool").

20      Google tries to obscure this point by saying that the claimed steps "employ specific tools

21  to increase the efficiency and usefulness of online media searches across disparate sources."

22  Opp. at 9.  But Google does not (because it cannot) point to any "specific tool" and later

23  acknowledges that the "specific tool" is just "targeted searches based on content delivery

24  preferences."  *Id*. at 10.  The logical house of cards thus collapses, because (i) searching for

25  information is not a specific tool; and (ii) the claims do not recite some novel, technological

26  method or any improvement to how computers request and receive responsive information.

27
[3] It is worth noting that, because the request is made ***to*** third party content sources, it is not clear
28  how or why Google thinks that the requestor has control over how the search is performed, much
    less how the patent calls for an improvement to search technology.

SONOS, INC.'S MOTION TO DISMISS
20-cv-03845-EMC

1   Moreover, Google cannot point to the specification for support in this case because the

2   specification is clear that the invention is not limited to any particular hardware structures, types

3   of computers, or implementation.  *See, e.g.,* '489 Patent, 17:45-50, 18:43-46, 18:51-54, 19:11-30,

4   19:40-46.

5         For this reason, the '489 Patent is unlike the patents at issue in *Finjan* and *DDR Holdings*.

6   In *Finjan, Inc. v. Blue Coat Sys., Inc.*, the patent disclosed a "behavior-based" approach to virus

7   scanning that was patent-eligible because it "employ[ed] a new kind of file that enable[d] a

8   computer security system to do things it could not do before."  879 F.3d 1299, 1304-05 (Fed. Cir.

9   2018).  That is, the disclosed security system changed the way computers operate.  Similarly, in

10  *DDR Holdings, LLC v. Hotels.com, L.P.*, the claimed solution changed the manner in which

11  computer networks operate.  773 F.3d 1245, 1258-59 (Fed. Cir. 2014).  Ordinarily, upon clicking

12  a hyperlink on a host website, the website visitor would be transported to a third-party website

13  associated with that link.  *Id.*  But contrary to that "normal, expected manner" of network

14  operation, the *DDR Holdings* patent disclosed systems and methods for "generat[ing] and

15  direct[ing] the visitor to [a] … hybrid web page that presents product information from the third-

16  party and visual 'look and feel' elements from the host website."  *Id.* at 1259.  The patent thus

17  altered the way computer networks operate and recited "an invention that [was] not merely the

18  routine or conventional use of the Internet."  *Id.*  In contrast to *Finjan* and *DDR Holdings*, the

19  '489 Patent does ***not*** alter the way computers or computer networks operate, instead it makes use

20  of (generically) claimed computers and networks arranged in their ordinary configuration to

21  request and receive (at most) specific kinds of information.  *See, e.g.,* Opp. at 6 ("The '489 patent

22  discloses the aggregation of media content availability information from unique content sources

23  in response to receiving a selection of media content from users.  This aggregation, which

24  increases efficiency and accuracy through focused searches, addresses problems stemming from

25  humans' limitations in manually searching for media content.").

26        Google's argument that the patent is "network-centric" is belied by the level of generality

27  at which the claims make use of networks.  The claims say ***nothing*** about the operation of the

28  network—they merely call for use of a network to transmit data, with no specificity whatsoever

SONOS, INC.'S MOTION TO DISMISS
20-cv-03845-EMC

1    about how the network operates.  And the specification confirms that the claims are not "network-

2    centric" because, like the claims, the specification is agnostic to the network.  *See, e.g.*, '489

3    Patent, 19:40-46.  Nor do the claims solve a problem specifically arising in the context of

4    networks.  Indeed, Google concedes that the '489 Patent is directed to solving a ***human*** problem,

5    not a network-centric one, and does not identify any technological solution to this human

6    problem.  *See* Opp. at 6 (the patent "addresses problems stemming from humans' limitations in

7    manually searching for media content"), 9 ("the problem addressed by the '489 patent is one

8    faced by humans, who cannot manipulate large amounts of data that becomes available at

9    different times.").

10          The '489 Patent is thus highly distinguishable from the cases on which Google seeks to

11   rely.  For example, in *DDR Holdings*, the Federal Circuit found the claimed hybrid web page

12   "necessarily rooted in computer technology to overcome a problem ***specifically arising in the***

13   ***realm of computer networks*.**"  773 F.3d at 1257 (emphasis added).  The court explained that the

14   patent had to "account for the ephemeral nature of an Internet 'location' [and] the near-

15   instantaneous transport between these locations made possibly by standard Internet

16   communication protocols."  *Id.* at 1258.  Thus, the problem the invention sought to address

17   specifically arose in the context of the Internet and had no similar application in the brick and

18   mortar world.  *Id.*  The '489 Patent, on the other hand, is not dealing with an "ephemeral"

19   problem inherent to a computer network but instead the much more mundane and "human"

20   problem of locating desired media content.  Nor does the claimed solution offer anything more

21   than the same solution that existed outside the computer context.  As explained in Sonos's

22   opening brief:

23          [T]he availability of media from many different content sources is of course not a
            concept that is unique to the Internet or other large networks—it predates the
24          Internet.  By way of illustration, part of the job of a historical research librarian
            was to field requests for certain media (*e.g.*, books, microfilm, and manuscripts),
25          determine which sources were available from which libraries, identify the lending
            restrictions and access requirements for those libraries, and notify the requestor
26          about where and how the desired materials were available.  These activities took
            place long before the Internet.
27

28

                                                        SONOS, INC.'S MOTION TO DISMISS
                                                        20-cv-03845-EMC

1   Mot. at 9.[4]  Thus, instead of supplying a computer-specific solution to a computer-specific

2   problem, the '489 Patent merely uses generic computer solutions to alleviate an existing human

3   problem.

4          Google fails to even acknowledge this pre-Internet example.  Instead, Google takes issue

5   with Sonos's parent-child analogy, asserting that it only shows that the underlying claimed

6   method "itself involves ***using a computer*** to search ***online content sources***."  Opp. at 5

7   (emphasis in original).  Googles misses the point.  The '489 Patent is directed to a human

8   information-gathering process that uses computers in their ordinary and general capacity—to do

9   things faster than humans.  The Federal Circuit has held repeatedly that "it is not enough … to

10  merely improve a fundamental practice or abstract process by invoking a computer merely as a

11  tool."  *Customedia Techs.*, 951 F.3d at 1364; *see also WhitServe LLC v. Donuts Inc.*, 809 F.

12  App'x 929, 933 (Fed. Cir. 2020) ("And use of standard computers and networks to carry out [the

13  abstract] functions—more speedily, more efficiently, more reliably—does not make the claims

14  any less directed to that abstract idea.").  Thus, the fact that the analogy "involves using a

15  computer to search online content sources," *i.e.*, ***as a tool***, does not make the process any less

16  abstract.  Indeed, because the technology is entirely inconsequential, the parent could just as

17  easily search aggregated movie times in a newspaper or call various Blockbuster stores without

18  doing any harm to the analogy.  Nor does the type of notification make the claims "network-

19  centric."  A parent can (*e.g.*, via a white board in the kitchen, or a note under the door) update

20  their child when the selected media later becomes available or becomes "available for free instead

21  of via pay-per-view, etc."  Opp. at 5-6.

22         Google also argues that the '489 Patent is network-centric because the content sources are

23  "electronic devices" and the notification is "network-based."  Opp. at 6-7.  But, Google itself has

24  established, through litigation, that this is wrong.  For example, in *buySAFE, Inc. v. Google, Inc.*,

25  _____

26  [4] In other cases Google has argued that a patent is directed to an abstract idea when "[e]ach
    element of the asserted claims simply denotes the steps a human could take to perform the
27  underlying abstract idea" and that "[r]eciting these [steps] in the context of a generic 'computer
    readable medium' cannot save the claims from abstraction."  *Interval Licensing*, Dkt. No. 372 at 6
28  (citing *Alice*, 573 U.S. at 226).  Google's position here is, to put it mildly, in substantial tension
    with that argument.

SONOS, INC.'S MOTION TO DISMISS
20-cv-03845-EMC

765 F.3d 1350, 1355 (Fed. Cir. 2014), Google was sued based on a patent that called for receiving

requests and responsively providing transaction performance guarantees for online commercial

transactions.  *Id.*  The Court held the claims invalid, ***agreeing*** with Google that "[t]he claims'

invocation of computers adds no inventive concept" and the fact that the claims involved a

computer that "receives and sends the information over a network—with no further

specification—is not even arguably inventive."  *Id.*  The same is true here.  The fact that the

claims involve "electronic devices" and send a "network-based" notification doesn't satisfy *Alice*

any more than it did in *buySAFE.*

Similarly, the fact that the method uses "certain data fields, including unique online

content sources, user account data, prioritization selection, pricing, and the potential for

identification of related content" (Opp. at 9) does not help Google.  Again, none of these

limitations relate to a ***technological*** improvement as to ***how*** the (generically recited) computers

operate but instead just point to the ***type*** of information being processed.  The Federal Circuit,

however, has expressly rejected the notion that eligibility turns on the kind of information being

processed.  For example, in *BSG Tech*, 899 F.3d at 1287, the Federal Circuit discussed various

cases in which claims were found abstract even though they involved collecting ***certain kinds*** of

data.  The Federal Circuit noted that the ineligibility findings in these cases "reflect that a claim is

not patent eligible merely because it applies an abstract idea in a narrow way."  *Id.*  The same is

true here.  The fact that the '489 Patent's data is "limited to particular content" or comes from "a

particular source" does not "make [its] collection and analysis other than abstract."  *SAP Am., Inc.

v. InvestPic, LLC,* 898 F.3d 1161, 1168 (Fed. Cir. 2018), *cert. denied*, 139 S. Ct. 2747 (2019),

*reh'g denied*, 140 S. Ct. 27 (2019) (citations omitted).

Similarly, even assuming Google is correct that "humans [do not] have the capacity to

search a 'plurality of unique online content sources' in the manner described in the '489 patent,"

that is irrelevant.  Opp. at 6; *see also id.* at 9 (humans "cannot manipulate large amounts of data

that become available at different times").  As Google itself has (successfully) argued, a claim is

not saved from abstraction simply because "humans cannot perform the necessary mental

calculations in the context of the [patent]."  *Data Engine Techs. LLC v. Google LLC*, Case No.

SONOS, INC.'S MOTION TO DISMISS
20-cv-03845-EMC

17-1135, Dkt. No. 34 at 41 (Fed. Cir. July 21, 2017); *see also Personal Web*, Dkt. No. 364 at 13 (Google explaining that "there is no need" to show that humans "could easily perform" the claimed method without a computer to establish ineligibility).  Indeed, "relying on a computer to perform routine tasks more quickly or more accurately" is the entire reason why generic computers are employed as tools, and the Federal Circuit has made clear that doing so does not "render a claim patent eligible."  *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015).  As Google has noted in other cases, even the claims at issue in *Alice* used a computer to process information in ways humans could not.  *Data Engine Techs.*, Dkt. No. 34 at 41.

Even if the '489 Patent were Internet-centric,[5] the Federal Circuit has "caution[ed]…that not all claims purporting to address Internet-centric challenges are eligible for patent."  *DDR Holdings*, 773 F.3d at 1258.[6]  For example, in *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 714 (Fed. Cir. 2014), the patentee asserted that its patent was "directed to a specific method of advertising and content distribution that was previously unknown and never employed on the Internet before."  But the Internet-centric nature of the patent "alone could not render [the] claims patent-eligible."  *DDR Holdings*, 773 F.3d at 1258 (citing *Ultramercial*, 772 F.3d at 714-16).  The court explained that "the use of the Internet is not sufficient to save otherwise abstract claims from ineligibility under §101," and "[n]arrowing the abstract idea … to the Internet is an attempt to limit the use of the abstract idea to a particular technological environment, which is insufficient to save a claim."  *Ultramercial*, 772 F.3d at 716 (internal quotation marks omitted).  What ***can*** save the claims is "specify[ing] how interactions with the Internet are manipulated to yield a desired result—a result that overrides the routine and conventional" operation of the computer.  *DDR Holdings*, 773 F.3d at 1259.  But as established above, the '489 Patent involves no such improvement or modification to the routine and conventional operation of networked computers.

---

[5] The claim does not mention the Internet and, as noted previously, the specification is clear that the claimed "network" includes, *e.g.*, local area networks and is not limited to the Internet.

[6] Google agrees, having argued that "being rooted in computing technology is not itself enough to confer patent eligibility.  The claims must still pass the *Alice* two-part test and recite ***how*** the purported result is obtained using more than conventional computing technology."  *Interval Licensing*, Dkt. No. 379 at 10.

SONOS, INC.'S MOTION TO DISMISS
20-cv-03845-EMC

Finally, Google is wrong when it tries to distinguish the claims held ineligible in *Electric Power*.  Like the claimed information gathering process at issue there, "the advance [the '489 Patent] purport[s] to make is a process of gathering … information of a specified content, then displaying the results, and not any particularly assertedly inventive technology for performing those functions."  830 F.3d at 1354.  Google attempts to distinguish *Electric Power* on the ground that the court found those claims ineligible in part because they did not claim a "specific way of enabling a computer to monitor data" whereas the '489 Patent purportedly recites a specific manner of identifying online media content.  Opp. at 7 (quoting *Electric Power*, 830 F.3d at 1356).  But the '489 Patent recites no such specificity.  Instead, exemplary claim 15 recites four functional, results-oriented steps without describing **how** these results are to be achieved.  That is, claim 15 calls for "requesting" content availability data over a network and "receiving" data at a processor without specifying how the functions of "requesting" and "receiving" data are executed.  Similarly, the claim calls for "using the content availability data to generate a notification" without specifying **how** the data is used, or **how** the notification is generated.  Thus, claim 15 is drafted in the same kind of functional, results-oriented language used in the claims found invalid in *Electric Power*.

The claims of the '489 Patent are thus directed to an abstract idea under *Alice* step one.

### B.    *Alice* Step Two: Claim 15 Lacks an Inventive Concept

The '489 Patent lacks an inventive concept.  Google asserts that the inventive concept is "the use of specific information—*i.e.*, identification of desired media content and content delivery preferences, which are premised on a selection of a plurality of unique online content sources and user account data for those sources—to search for available content over a network, regardless of whether that content is available at the time that the media content was initially identified."  Opp. at 12.  But that cannot be the inventive concept.

As an initial matter, "[a]n inventive concept that transforms the abstract idea into a patent-eligible invention must be significantly more than the abstract idea itself."  *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1349 (Fed. Cir. 2016) (citing *Alice*, 573 U.S. at 223).  Google's alleged "inventive concept" simply reframes the abstract idea to which the

1   claims are directed—*i.e.*, gathering information about the availability of content from different

2   sources and presenting that information to a user via a notification.  *See Personal Web Techs.*,

3   Dkt. No. 361 at 9 (Google agreeing that, "when searching for the 'inventive concept' at step two

4   of *Alice*, the focus must turn to 'whether the claim limitations ***other than the invention's use of***

5   ***the ineligible concept*** to which it was directed were well-understood, routine, and

6   conventional.'").

7          In addition, Google's phrasing of the purported "inventive concept" departs substantially

8   from the claims themselves.  Neither claim 15, nor any of the others, says anything (one way or

9   the other) about searching for content "regardless of whether that content is available at the time

10  that the media content was initially identified."  Thus, Google cannot point to this idea as part of a

11  purported "inventive concept" under the second step of the *Alice* inquiry.  *See Two-Way Media*

12  *Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1338 (Fed. Cir. 2017) ("To save a patent

13  at step two, an inventive concept must be evident ***in the claims***.") (emphasis added).

14         Google claims this same "inventive concept" is evidenced by the prosecution history—

15  asserting that the patentee distinguished the '489 Patent over the prior art based on its method of

16  selecting a plurality of unique online content sources and user account data, and using content

17  availability data to generate a notification.  Opp. at 13-14.  But "[w]hat is needed is an inventive

18  concept in the non-abstract application realm," and Google's distinction is just another

19  articulation of the abstract idea to which the claim is directed.  *SAP Am.*, 898 F.3d at 1168.  The

20  fact that Google attempted to distinguish this abstract idea from the prior art does not change the

21  fact that it is an abstraction.  To the contrary, the law is clear that the ***novelty*** of an abstract idea is

22  legally irrelevant.  *See Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 71, 73

23  (2012); *Ass'n for Molecular Pathology v. Myriad Genetics Inc.*, 569 U.S. 576, 591 (2013)

24  ("Groundbreaking, innovative, or even brilliant discovery does not by itself satisfy the § 101

25  inquiry.").

26         The '489 Patent is also unlike *Bascom* and *Facebook*.  In *Bascom*, the court found the

27  ordered combination of the claim limitations inventive because it described a non-conventional

28  way of arranging the various elements to recite "a technology-based solution (not an abstract-

SONOS, INC.'S MOTION TO DISMISS
20-cv-03845-EMC

1    idea-based-solution implemented with generic technically components in a conventional way) to

2    filter content on the Internet that overc[ame] existing problems with other Internet filtering

3    systems."  827 F.3d at 1350, 1351.  That is, despite using generic computer, network, and Internet

4    components, "none of which is inventive by itself," the patent disclosed an ***arrangement*** of those

5    elements that could not "be said, as a matter of law, to have been conventional or generic."  *Id.* at

6    1349-50.  Similarly, in *Mobile-Plan-It LLC v. Facebook, Inc.*, the court found that "both the

7    nature of the problem being addressed, and the solution[] offered by the patent relate[d] to

8    specific features of electronic communication" that "offer[ed] more than a list of steps human

9    beings were routinely carrying out long before the patent existed."  No. 14-CV-01709-RS, 2015

10   WL 1801425, at *4 (N.D. Cal. Apr. 20, 2015).

11          In contrast, the '489 Patent discloses a conventional arrangement of generic components,

12   such as a "processing circuit" and a "network" (Opp. at 1; *see also* '489 Patent, 3:24-34, 12:15-

13   21, 18:51-54), that addresses a problem "faced by humans" and does not recite any technological

14   solution or change the way in which computers operate.  Opp. at 9; *see also id.* at 6 (the patent

15   "addresses problems stemming from humans' limitations in manually searching for media

16   content"), 8 (the patent "provides a particular solution to the problem of determining the

17   availability of content media distributed across unique content sources throughout a computing

18   network").

19          Finally, Google suggests that the '489 Patent is eligible because it does not preempt the

20   entire abstract idea.  Opp. at 15-16.  Even accepting that as true, the Federal Circuit has

21   repeatedly held that "the absence of complete preemption does not demonstrate patent eligibility."

22   *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1379 (Fed. Cir. 2015); *OIP Techs.,*

23   *Inc. v. Amazon.com, Inc.*, 788 F3d 1359, 1362-63 (Fed. Cir. 2015) ("And that the claims do not

24   preempt all price optimization or may be limited to price optimization in the e-commerce setting

25   do not make them any less abstract.").  And, in other cases, Google itself has taken exactly the

26   opposite position, arguing that "the absence of complete preemption does not demonstrate patent

27   eligibility.'"  *Interval Licensing*, Dkt. No. 379 at 12 (quoting *Ariosa*, 788 F.3d at 1379).

28          The '489 Patent fails to recite any inventive concept that transforms it into a patent-

SONOS, INC.'S MOTION TO DISMISS
20-cv-03845-EMC

1  eligible invention.

2        **C.     Claim Construction is Unnecessary**

3       Google's claim construction arguments are a strawman.  The Federal Circuit has

4  repeatedly determined eligibility without the need for claim construction.  *See, e.g., Content*

5  *Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir.

6  2014) ("[C]laim construction is not an inviolable prerequisite to a validity determination under

7  § 101."); *Reese v. Sprint Nextel Corp.*, 774 F. App'x 656, 659 (Fed. Cir. 2019), *cert. denied*, 140

8  S. Ct. 2507 (2020) ("[The court can evaluate subject matter eligibility under § 101 without formal

9  claim construction.").

10      In *this* case, Google does not propose any specific claim constructions or even explain

11  how claim construction might alter the eligibility analysis.  The Court may therefore conclude

12  that it can proceed without the need for claim construction.  *See Cyberfone Sys., LLC v. Cellco*

13  *P'ships*, 885 F. Supp. 2d 710, 715 (D. Del. 2012), *aff'd* 558 F. App'x 988 (Fed. Cir. 2014)

14  (because "plaintiff did not explain how claim construction might alter [the court's § 101]

15  analysis … the court concludes that it may proceed without the benefit of claim construction");

16  *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017)

17  ("Cleveland Clinic provided no proposed construction of any terms or proposed expert testimony

18  that would change the § 101 analysis.  Accordingly, it was appropriate for the district court to

19  determine that the testing patents were ineligible under § 101 at the motion to dismiss stage.").

20      It is not even clear what Google's claim construction argument *is*.  Google says that the

21  claims are not directed to "generic computer elements" or "generic functional steps that are part

22  of [an] abstract idea" because the claims recite "content delivery preferences including 'a

23  plurality of unique online content sources' and receiving 'over a network' content availability

24  data from these sources."  Opp. at 17.  This, Google argues, somehow shows that the patent is

25  directed to "computing-network-specific problems."  *Id.*  But Google never connects any of these

26  arguments to any claim construction issue.  For example, Google does not propose a construction

27  of "processing circuit" or "network," much less explain how either term might be interpreted as

28  anything other than generic given the statements in the specification.  *See, e.g.*, '489 Patent,

SONOS, INC.'S MOTION TO DISMISS
20-cv-03845-EMC

18:43-50 (describing possible processing circuits), 19:40-46 (describing possible networks).

Google's mere denial that these components are generic is not a claim construction dispute.

**D.  Amendment Would be Futile**

Google has already amended its complaint once with Sonos's § 101 motion in hand and has still failed to present facts that would render the patent eligible.  The patent is clearly invalid as a matter of law and the Court should find that additional amendment would be futile.

**IV.  CONCLUSION**

Sonos respectfully asks the Court to grant its motion to dismiss.

Dated:  September 30, 2020

By: _____ */s/ Clement Seth Roberts* _____
CLEMENT SETH ROBERTS
BAS DE BLANK
ALYSSA CARIDIS

ORRICK, HERRINGTON & SUTCLIFFE LLP

GEORGE I. LEE
SEAN M. SULLIVAN
RORY P. SHEA
J. DAN SMITH

LEE SULLIVAN SHEA & SMITH LLP

*Attorneys for Defendant Sonos, Inc.*

SONOS, INC.'S MOTION TO DISMISS
20-cv-03845-EMC