QUINN EMANUEL URQUHART &
SULLIVAN, LLP
 Charles K. Verhoeven (Bar No. 170151)
 charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone:     (415) 875-6600
Facsimile:      (415) 875-6700

 David A. Nelson (admitted *pro hac vice*)
 davidnelson@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606
Telephone:     (312) 705-7400
Facsimile:      (312) 705-7401

Attorneys for GOOGLE LLC

CLEMENT SETH ROBERTS (STATE
BAR NO. 209203)
croberts@orrick.com
BAS DE BLANK (STATE BAR NO.
191487)
basdeblank@orrick.com
ALYSSA CARIDIS (STATE BAR NO.
260103)
acaridis@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE
LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone: +1 415 773 5700
Facsimile: +1 415 773 5759

GEORGE I. LEE (admitted pro hac vice)
lee@ls3ip.com
SEAN M. SULLIVAN (admitted pro hac
vice)
sullivan@ls3ip.com
RORY P. SHEA (admitted pro hac vice)
shea@ls3ip.com
J. DAN SMITH (admitted pro hac vice)
smith@ls3ip.com
LEE SULLIVAN SHEA & SMITH LLP
656 W Randolph St., Floor 5W
Chicago, IL 60661
Telephone: +1 312 754 0002
Facsimile: +1 312 754 0003

Attorneys for Defendant Sonos, Inc.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| GOOGLE LLC,<br><br>          Plaintiff,<br><br>               v.<br><br>SONOS, INC.,<br><br><br>          Defendants. | Civil Action No. 3:20-CV-03845-EMC<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Date:   October 8, 2020<br>Time:   9:30 a.m.<br>Ctrm:   Courtroom 5, 17th Floor<br>        450 Golden Gate Avenue,<br>        San Francisco, CA 94102<br>Judge:  Hon. Edward M. Chen<br><br><br>JURY TRIAL DEMANDED |

**INTRODUCTION**

Pursuant to this Court's June 30, 2020 Notice (D.I. 20), the Standing Order for All Judges of the Northern District of California, and Civil Local Rule 16-9, Plaintiff Google LLC and Defendants Sonos, Inc. ("Sonos") submit this Joint Case Management Statement.

**I.      JURISDICTION AND SERVICE:**

Google filed this action on June 11, 2020 (D.I. 1).  This is an action for patent infringement under the patent laws of the United States, Title 35 of the United States Code.  The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).  Venue is proper in this judicial district pursuant to 28 U.S.C. § 1400(b).  Sonos has been served.

**II.     FACTS:**

Google seeks a finding that Sonos infringes the asserted claims of U.S. Patent Nos. 7,065,206 ("'206 patent"), 7,899,187 ("'187 patent"), 8,583,489 ("'489 patent"), 10,140,375 ("'375 patent") and 10,229,586 ("'586 patent") (collectively, the "patents in suit").

Google filed this action on June 11, 2020, alleging Sonos' infringement of the five patents in suit.  (D.I. 1).  Sonos initially moved to dismiss the second, third, and fifth causes of action (infringement on '489, '375, and '586) on August 12, 2020.  (D.I. 25.)  Google subsequently filed an Amended Complaint on August 26, 2020.  (D.I. 35.)  Sonos withdrew its initial motion to dismiss on August 28, 2020, and filed a motion to dismiss the Amended Complaint on September 10, 2020. (D.I. 39.)  In its motion, Sonos moved only to dismiss the claims for infringement on the '489 patent, as set forth in Google's second cause of action.  (*Id.*)  That motion is pending.

**III.    DISPUTED LEGAL ISSUES:**

The Parties have identified the following principal issues currently in dispute:

1.      Whether Sonos directly infringes one or more claims of each patent in suit under 35 U.S.C. § 271(a), and/or indirectly infringes one or more claims of each patent in suit under 35 U.S.C. §§ 271(b) or (c);

2.      Whether the patents in suit are valid and enforceable;

3.      Whether Sonos' alleged infringement has been willful, entitling Google to enhanced damages;

4.     Whether Google is entitled to damages and other costs, and if so, the amount of damages and other costs to which Google is entitled;

5.     Whether Google is entitled to injunctive relief; and

6.     Whether this case is exceptional under 35 U.S.C. § 285, entitling the prevailing party to attorneys' fees.

**IV.   MOTIONS:**

**(a) Pending Motions**

On September 10, 2020, Sonos filed a partial motion to dismiss under Fed. R. Civ. P. 12(b)(6) directed at the '489 patent.  (D.I. 39).  Google filed its opposition to Sonos' partial motion on September 23, 2020.  (D.I. 42).  Sonos filed its reply on September 30, and the motion is noticed for hearing on October 15, 2020.

**(b) Anticipated Motions**

Google and Sonos anticipate moving for summary judgment and may file other dispositive and non-dispositive motions as the case progresses.  The parties anticipate filing a joint motion for a protective order governing the confidentiality of information and the review of source code in this matter, as well as a joint motion for an order governing the treatment of electronically stored information (ESI) in discovery.

**V.   AMENDMENT OF PLEADINGS:**

The Parties agree that the Parties may amend their pleadings, including the parties, claims or defenses, consistent with the Federal Rules of Civil Procedure or with leave of the Court upon a showing of good cause.

Google does not currently intend to amend the operative Complaint but reserves the right to request leave of the Court to do so should it discover additional information.

Sonos intends to answer upon resolution of its pending motion to dismiss.

**VI.   EVIDENCE PRESERVATION:**

Each party has reviewed the ESI Guidelines and each party believes that it has taken appropriate and reasonable measures to preserve evidence relevant to each party's claims and defenses in this matter.

**VII.   DISCLOSURES**:

The Parties served initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1)(A) on October 1, 2020.

**VIII.   DISCOVERY**:

The Parties have yet to serve any discovery requests in this case.

On September 21, 2020, Sonos represented to Google that it had made available for inspection the source code of the accused products (as they existed in January 2020) pursuant to the Northern District of California's Patent Local Rule 2-2 Interim Model Protective Order.

On September 28, 2020, Sonos represented to Google that it had made available for inspection the source code available for (1) the accused products as of May 2014 (i.e. six year prior to the date of the Complaint) and (2) the accused products as of September 2020, also pursuant to the Northern District of California's Patent Local Rule 2-2 Interim Model Protective Order.

Google and Sonos have been discussing the process for source code review in this case.  The parties' correspondence on this issue is attached as Exhibit 1.  Related issues are discussed in Section XV (pages 6-13) of this Joint Case Management Statement.

**A.     Changes to the timing, form, or requirement for disclosures (Fed. R. Civ. P. 26(f)(3)(A)):**

The Parties served initial disclosures on October 1, 2020.  The Parties did not propose any change to the form or requirement for such disclosures.

**B.     The subjects on which discovery may be needed (Fed. R. Civ. P. 26(f)(3)(B)):**

The parties anticipate that the scope of discovery will encompass the factual and legal issues identified in Sections II and III above, and the requested relief discussed in Section XI below, including related and subsidiary factual and legal issues and matters.

The Parties reserve the right to amend the subjects for discovery that may be sought pending further discovery in this matter.

**C.     Any issues about disclosure, discovery, or preservation of electronically stored information, including the form or forms in which it should be produced (Fed. R. Civ. P. 26(f)(3)(C)):**

The Parties anticipate presenting an ESI order to the Court to govern the discovery of electronically stored information.  The parties have exchanged draft proposed ESI orders and will present agreed-on terms to the Court, along with any points of disagreement requiring the Court's guidance.

**D.    Any issues about claims of privilege or of protection as trial-preparation materials (Fed. R. Civ. P. 26(f)(3)(D)):**

The Parties agree that absent a specific showing of need, documents created on or after Jan. 7, 2020 that are subject to a claim of attorney-client privilege, work product immunity, or any other privilege or immunity do not need to be included in the Parties' privilege logs.  Subject to the foregoing, the parties agree that issues of privilege or work product shall be addressed as provided in the Federal Rules of Civil Procedure, Federal Rule of Evidence 502 and the Protective Order and/or ESI Order to be entered in this action

**E.    Changes that should be made to the limitations on discovery (Fed. R. Civ. P. 26(f)(3)(E)):**

To the extent not limited below, and unless otherwise agreed to by the parties, the parties agree that discovery is subject to the limitations set forth in the Federal Rules of Civil Procedure, Local Rules of this Court and the ESI Order and Protective Order to be entered in this action. If a party requests discovery that exceeds any of the limitations set forth below, the parties agree to meet and confer in good faith to attempt to resolve the issue without intervention of the Court. If the parties are unable to reach agreement, a party may seek leave from the Court for the additional discovery.

The Parties agree to serve interrogatories, document requests, deposition notices, requests for admission, and responses thereto, on each other via email.  The Parties further agree that service of a complete copy of these documents via email on or before midnight Pacific time shall count as same-day service.

- **Interrogatories to Parties.**
    - o   The parties agree that the limitations of Federal Rule of Civil Procedure 33 apply.
- **Requests for Admission**
    - o   Google proposes that the limitations of Federal Rule of Civil Procedure 36 apply.

- o   Sonos proposes that each side may serve up to 50 Requests for Admission. Requests for Admission related to the authentication of documents are exempt from this limitation.

- **Depositions**
  - o   The parties agree that each party is limited to 100 hours in its depositions of fact witnesses in this litigation, including individual and 30(b)(6) witnesses, and excluding expert depositions.  Furthermore, either party may request additional hours for good cause.  All other requirements of Federal Rule of Civil Procedure 30 apply.

**F.      Any other orders that the court should issue under Rule 26(c) or under Rule 16(b) and (c):**

The Parties anticipate presenting a stipulated protective order governing the discovery of confidential information, including source code, to the Court.

**G.      Production of ESI:**

The Parties met and conferred and have begun negotiating a protocol for ESI production.

**IX.     CLASS ACTIONS:**

These matters are not class actions.

**X.     RELATED CASES:**

The parties are engaged in other litigations at the United States International Trade Commission (Inv. No. 337-TA-1191) and in the Central District of California (2:20-cv-00169-JAK-DFM) (stayed pending resolution of the ITC litigation).  Those suits involve Sonos patents not at issue in this case, and have not been designated as related.  The parties are also engaged in foreign litigation involving Google patents.

**XI.     RELIEF:**

Google requests that the Court grant:

- Judgment in Google's favor against Sonos on all causes of action alleged in Google's First Amended Complaint;

- Damages for Sonos' infringement of the patents in suit in an amount to be proven at trial;
- An injunction prohibiting further infringement of the patents in suit by Sonos;
- Judgment that this is an exceptional case, and corresponding enhancement of all damages awarded for Sonos' infringement of the patents in suit;
- Costs of suit incurred herein;
- Prejudgment interest;
- Attorneys' fees and costs; and
- Such other and further relief as the Court may deem to be just and proper.

Sonos seeks the relief that will be set forth in its Answer—including at least entry of judgment in its favor and adverse to Google on all issues.

## XII.   SETTLEMENT AND ADR:

Per ADR L.R. 3-5, the Parties have discussed the selection of an ADR process and have certified that they intend to stipulate to an ADR process.

The Parties are already scheduled to conduct mediation in October (in connection with the pending litigation at the International Trade Commission) and propose scheduling additional mediation if necessary and appropriate after the Court issues its claim construction order in this case.

## XIII.   CONSENT TO MAGISTRATE:

The Parties do not consent to disposition of this case by a Magistrate Judge.

## XIV.   OTHER REFERENCES:

The Parties do not believe that this case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

## XV.   NARROWING OF ISSUES:

The parties dispute whether the Court should impose a deadline for Google to provide infringement contentions that contain pinpoint citations to Sonos' source code.

**Sonos's Position**: Sonos asks the Court to order Google to promptly provide infringement contentions that contain "'pinpoint citations' to the [Sonos source] code identifying the location of

1  each limitation." *Genentech, Inc. v. Trustees of Univ. of Pa.*, No. C 10-2037-LHK (PSG), 2010 WL

2  11509141, at *2 (N.D. Cal. Dec. 13, 2010).

3       The purpose of infringement contentions is to "require parties to crystallize their theories of

4  the case early in the litigation," *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355,

5  1364 (Fed. Cir. 2006) (citation and internal quotation marks omitted), so as to "further the goal of

6  full, timely discovery and provide all parties with adequate notice of and information with which to

7  litigate their cases," *Genentech, Inc. v. Trustees of Univ. of Pa.,* Case No. C 10–2037 LHK(PSG),

8  2012 WL 424985, at *1 (N.D. Cal. Feb. 9, 2012) (citation and internal quotation marks omitted).

9  "The rules thus seek to balance the right to develop new information in discovery with the need for

10  certainty as to the legal theories." *O2 Micro*, 467 F.3d at 1366. District courts have wide discretion

11  in enforcing the PLR. *Id*. at 1365-66; *SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1292

12  (Fed. Cir. 2005).

13       This Court's Patent Local Rules ("PLR") require Google to explain "specifically where and

14  how each limitation of each asserted claim is found" within each accused product. "This burden

15  cannot be met simply by parroting claim language or referencing screenshots and/or website

16  content." *Finjan, Inc. v. Proofpoint, Inc.*, 2015 WL 1517920, at *6. Rather, where, as here, an

17  accused product "includes computer software based upon source code made available to the

18  patentee, patentees must provide 'pinpoint citations' to the code identifying the location of each

19  limitation." *Genentech*, 2010 WL 11509141, at *2 (citation omitted); *Vasudevan Software, Inc. v.*

20  *Int'l Bus. Machines Corp.*, No. C 09-cv-05897-RS (HRL), 2011 WL 940263, at *7 (N.D. Cal. Feb.

21  18, 2011) ("[T]he authority is clear that a plaintiff should provide citations once a plaintiff has had

22  a sufficient opportunity to review the source code[.]"). "The bottom line is that, after a plaintiff-

23  patentee has had a reasonable opportunity to review the source code for the defendant's accused

24  software product, the patentee's time for trolling the proverbial waters for a theory of infringement

25  comes to an end, and the patentee must fish or cut bait with respect to its specific theory of

26  infringement by providing PICs to the defendant that clearly identify and explain how the source

27  code for the accused product infringes upon specific claims for the patent-in-suit." *Diagnostic Sys.*

28  *Corp. v. Symantec Corp.*, No. SACV 06-1211 DOC (ANx), 2009 WL 1607717, at *5 (C.D. Cal.

1    June 5, 2009).  During the meet-and-confer leading to this case management report, Sonos asked

2    Google if it would agree to promptly provide pinpoint source code citations.  Google declined,

3    saying only that it would amend its contentions at some unspecified point in the future to provide

4    some unspecified level of detail. Sonos explained that it was not seeking to create any scheduling

5    pressures and offered to reasonably delay the deadlines for the PLR 3-1 disclosures until Google

6    felt it had sufficient time to review the Sonos source code. Google declined to offer any compromise.

7          Thereafter, on September 21, 2020—without waiting for discovery requests—Sonos made

8    its source code available for inspection in the office of Sonos's outside counsel[1] under this Court's

9    Patent Local Rule 2-2 Interim Model Protective Order.  Then, on September 28, Sonos made

10   available additional code that included both (1) code for the accused products as of June 2014 and

11   (2) code for the accused product as of September 2020.

12          The bottom line is that Google has access to the code, and the Court should therefore require

13   Google to comply with both the PLR and the authorities cited above by including pinpoint source

14   code citations in its infringement contentions.[2] *See Big Baboon Corp. v. Dell, Inc.*, 723 F. Supp. 2d

15   1224, 1228 (C.D. Cal. 2010) ("Once source code has been provided to the plaintiffs, . . . courts have

16   required plaintiffs to supplement their infringement charges with pinpoint citations."); *Am. Video

17   Graphics, L.P. v. Elec. Arts, Inc.*, 359 F. Supp. 2d 558, 561 (E.D. Tex. 2005) (requiring source-code

18   level supplementation within 30 days of code availability).  Indeed, where a patent defendant makes

19   its source code available for inspection prior to the case management conference, courts in this

20   District have ordered that a patentee's PLR 3-1 contentions must contain pinpoint source code

21   citations.  *See Finjan, Inc. v. Check Point Software Techs., Inc.*, No. 18-CV-02621-WHO, ECF No.

22

23   _____

24   [1] Google's outside counsel and/or experts have been reviewing Sonos's code at the office of
     Sonos's outside counsel for months in connection with the ongoing ITC investigation.  Google is
25   familiar with that office's Covid protective measures and has never raised any issue relating to the
26   same.

27   [2] If, despite its continued access to Sonos's source code, Google asserts that it cannot provide
     pinpoint citations by the deadline for serving its infringement contentions, the Court should order
28   Google to supplement its infringement contentions with pinpoint source code citations within a
     reasonable time (such as 30 days) thereafter.

29 (N.D. Cal. Aug. 10, 2018).[3]   In this case, Sonos is not even asking the Court to require the PLR 3-1 contentions to include source code citations, instead Sonos is asking for such contentions within a reasonable amount of time from when it made the code available.

Requiring prompt pinpoint source code citations not only follows this and other Court's precedent, but it will also help narrow issues in this case.   Google is asserting five patents (that include a total of 97 claims) against Sonos.   Each of the patents is rooted in software functionality. In order to understand what is actually accused—and therefore what is in dispute—it is necessary to understand what source code Google contends meets each claim limitation.   This is not a situation where Sonos is making a unilateral ask of Google—*Sonos already made its code available.*   Nor is Sonos trying to jam Google up.   By the time Google's PLR 3-1 infringement contentions will be due, Google will have had access to Sonos's source code for roughly a month. If Google believes it needs more time than that to provide source code level contentions, it should inform Sonos and the Court how much additional time is necessary.   For example, Sonos would be fine with an order that requires amended contentions with source code pincites in an additional 30 or 60 days (meaning Google will have had two or three months with the Sonos code—more time than other many patent plaintiffs receive).[4]   But there needs to be a reasonable and firm deadline by which Google must provide the type of contentions this Court requires.

Moreover, while Sonos does not believe it infringes *any* of the asserted patents, for several of the patents Sonos cannot even understand what possible infringement theory Google may have to lead it to believe Sonos infringes.   In other words, Google must be reading its patents in a way that is not clear on their face.   The only way for Sonos to understand Google's read—particularly in

---

[3] The *Finjan* court ultimately struck the plaintiff's Second Amend Infringement Contentions. That decision was due in no small part to the plaintiff serving 5,135 claim charts, totaling more than 185,000 pages. It was not a reflection of an "unmanageable" case procedure as Google claims.

[4] Below, Google acknowledges that "Courts in this District routinely allow parties to review source code … for 90 days and then *amend* existing infringement contentions."   This is exactly in line with what Sonos proposes here.   If Google agrees to provide pinpoint source code citations 60 days after its PLR 3-1 contentions, it will have had access to Sonos's code for 90 days. (After Sonos submitted its portion of this statement, Google edited the aforementioned sentence to add "and other P.L.R. 3-4 materials" despite the cited cases not mentioning those materials.)

1   light of the software-centric nature of this case—is for Google to provide infringement contentions

2   with specific source code citations.  Absent understanding Google's infringement reads, Sonos is

3   prejudiced in its efforts to (1) search for prior art that is reflective of Google's theories and (2)

4   prepare claim construction positions.

5       **Google's Position**: Google believes that the Court should apply this District's Patent Local

6   Rules.  Those rules set a detailed, fair procedure for exchanging information and contentions that

7   has worked in countless cases.  A plaintiff first discloses its infringement contentions at the outset

8   of the case, including an identification of the accused instrumentalities.  P.L.R. 3-1.  The defendant

9   then produces, "with the 'invalidity contentions'" (P.L.R. 3-4), information about those accused

10  instrumentalities, including "[s]ource code, specifications, schematics, flow charts, artwork,

11  formulas, or other documentation" on the accused instrumentalities, in response to the disclosed

12  infringement theories.  P.L.R. 3-4.  The plaintiff then has a chance to amend its contentions for good

13  cause.  P.L.R. 3-6.  There is no need or basis for deviating from this standard process here.

14      The Patent Local Rules do not include Sonos' proposed requirement that Google perform an

15  accelerated source code review, during a pandemic, to "promptly provide" infringement contentions

16  with "pinpoint citations" to source code – or its request that this entire review occur before Sonos

17  discloses its invalidity contentions (a position Sonos appears to still advance).[5]  The Patent Rules

18  set a different order of events for good reason.  All parties need to put their preliminary cards on

19  table to guide discovery, narrow issues, enter claim construction, and streamline disputes.

20      Sonos' requested procedure is unwarranted in this case, unsupported by case law, and

21  ineffective in practice.

22

23

24      [5]  At the initial Rule 26(f) meet and confer, Sonos proposed to require P.L.R. 3-1 contentions
    include source code pincites, and delay those contentions for some period of time – effectively

25  staying Sonos's invalidity contentions for an equivalent period.  Ex. 1 at 6.  Sonos nominally
    claims to have abandoned that position, yet still asserts it cannot disclose invalidity theories or

26  claim construction positions until source code pincites are provided.  *See supra* at 9-10 (alleging
    that the "only way for Sonos to understand Google's read—particularly in light of the software-

27  centric nature of this case—is for Google to provide infringement contentions with specific source
    code citations," and that absent those citations, Sonos will be unable "to (1) search for prior art

28  that is reflective of Google's theories and (2) prepare claim construction positions") .

Sonos has provided no justification for requiring Google to include source code citations in its initial infringement contentions. Sonos claims that it "cannot even understand what possible infringement theory Google may have to lead it to believe Sonos infringes" certain patents. But Google has not yet disclosed its infringement theories under P.L.R. 3-1, so there is no reason to think that these contentions will fail to provide Sonos with any understanding of Google's infringement positions. Nor is Sonos's purported lack of understanding a basis to deviate from the procedures that guide all patent cases pursuant to this District's Patent Local Rules. This litigation has not yet reached the point at which either party has a full understanding of the other's theory of the case. Sonos, for its part, has not even answered the complaint.

Sonos likewise provides no reason to believe that "access to Sonos's source code for roughly a month" is sufficient to provide the pinpoint citations it is requesting. Sonos purports to have made available a complete set of relevant source code for all accused products from at least three points in time. This could well include millions of lines of code with no relation to this case or the patents-in-suit. Indeed, Sonos claims that the available code is the "exact code" it produced in a separate International Trade Commission action. *See* Ex. 1 at 5. But that case involves different patents, claims, and functionalities, suggesting that Google will need to dig through large volumes of code simply to locate the portions relevant to the issues in this case (namely, disparate code for the Sonos Player software and other software running on Sonos speaker products; the S1/S2 Controller software applications; software running on back-end Sonos servers communicating with controller applications and speaker products; and hardware code for processing audio inputs on Sonos speaker products).[6] The ITC case involves Sonos' patents, not Google's patents, and the source code relevant to the Sonos patents is not the source code relevant to Google's patents in this case.

To date, Sonos has taken an unhelpful approach in efforts to commence source code review, rendering the code inaccessible to Google by preventing Google from retaining source code

---

[6] The ITC action is also governed by a restrictive protective order that forecloses use of information obtained in that Investigation in any other case (including this one). As a result, the availability of the code in the ITC action does nothing to support an accelerated review in this case, even if the functionalities at issue in the ITC case and in this case were identical (they are not).

1   reviewers with near-term bandwidth.  Despite Google's requests, Sonos has not disclosed to date

2   the volume of code it has made available or how many languages are used in that code.  *See* Ex. 1

3   at 1 (responding, "Is there a reason you are unable or unwilling to send someone from, e.g., your

4   Silicon Valley office to look at the code and answer your own questions?").  This undisclosed

5   volume of code is available on just one computer (though Sonos is "open to discussing" more).  *Id.*

6   at 2.  And despite the ongoing COVID pandemic, Sonos has been unable to certify that safety

7   precautions requested by potential source code review consultants would be available for in-person

8   review, or certify that the offices in which the code is kept have proper air filters or circulation –

9   frustrating Google's ability to retain reviewers for near-term in-person review.  *See id.* at 2-3.

10  Sonos' suggestion that this code can be reviewed in "roughly a month" cannot be meaningfully

11  evaluated when Sonos will not disclose how much code it is producing or provide information

12  needed to select and retain a team of reviewers.

13         Sonos also has not yet produced technical documentation on the accused instrumentalities ,

14  such as architectural diagrams, design documents, and other high-level technical documentation.

15  Those materials are required under P.L.R. 3-4.  They are necessary for Google to obtain before a

16  meaningful code review can occur.   Yet Sonos has not produced those materials, and proposes not

17  to produce them until late in the process, along with its P.L.R. 3-3 invalidity contentions (which

18  Sonos seeks to delay until after source code review is complete).

19         Even if it were *possible* to review Sonos' code in one month, Sonos does not point to any

20  authority that justifies such a truncated review window at such an early stage in a case.  Courts in

21  this District routinely allow parties to review source code for 90 days after production of source

22  code and other P.L.R. 3-4 materials and then *amend* existing infringement contentions, giving those

23  parties a fair opportunity to review a defendant's full P.L.R. 3-4 production, including technical

24  documentation and source code.  *See Speedtrack, Inc. v. Amazon.com, Inc.*, 2018 WL 3328423, at

25  *5-6 (N.D. Cal. July 6, 2018) (allowing 90 days to review source code and amend contentions);

26  *Radware Ltd. v. F5 Networks, Inc.*, 2014 WL 3728482, at *2 (N.D. Cal. 2014) (three-month review

27  deemed acceptable).   The same rules should apply in this case.   Google should have a fair

28  opportunity to review Sonos's full P.L.R. 3-4 production, including both technical documentation

1   and source code, and then amend Google's P.L.R. 3-1 disclosures consistent with the requirements

2   of P.L.R. 3-6.

3         The cases Sonos itself cites as purported support actually undercut Sonos's request.  They

4   address *supplemental* infringement contentions, rather than initial contentions – and thus addressed

5   source code review that occurred *after* plaintiff's initial infringement contentions had already been

6   served.  *See Big Baboon Corp. v. Dell, Inc.*, 723 F. Supp. 2d 1224, 1228 (C.D. Cal. 2010); *Am.*

7   *Video Graphics, L.P. v. Elec. Arts, Inc.*, 359 F. Supp. 2d 558, 561 (E.D. Tex. 2005).  Tellingly,

8   Sonos' cases are also primarily from different districts that have not adopted this District's Patent

9   Local Rules (rules that Sonos is asking to displace).

10         Indeed, Sonos identifies only a single example of anything resembling its requested

11   procedure being employed in the Northern District of California—and the example demonstrates

12   how flawed Sonos' procedure is.  *See Finjan, Inc. v. Check Point Software Techs., Inc.*, No. 18-CV-

13   02621-WHO, ECF No. 29 (N.D. Cal. Aug. 10, 2018) ("*Finjan*").  In *Finjan*, the same attorneys who

14   are representing Sonos in this case asked the Court to order plaintiff to provide, in its P.L.R. 3-1

15   contentions, "'pinpoint citations' to the code identifying the location of each limitation" in the clams

16   at issue.  *See Finjan*, ECF No. 28, at 5.  Over a year later, the Court had to appoint a special master

17   to resolve the disputes over infringement contentions that had metastasized.  The Court wrote,  "I

18   intend to appoint a master . . . to address the open issues involving Finjan's infringement

19   contentions. . . . I cannot effectively and timely address those issues and attend to the remainder of

20   my docket.  Given the scope of this litigation and the way it is being litigated, I have determined

21   that it is fair to impose the likely expenses on the parties."  *Finjan*, ECF No. 248, at 1; *see also*

22   *Finjan*, ECF No. 255 (resolving part of the parties' dispute over infringement contentions).

23         There is no need to adopt the procedure here that rendered *Finjan* unmanageable.  Google

24   respectfully requests that the Court apply the Patent Local Rules as written.  If the Court does decide

25   to set a deadline by which Google must amend its infringement contentions to cite specific lines of

26   source code, Google respectfully requests that it be allowed 90 days from the date when Sonos

27   completes its obligations pursuant to P.L.R. 3-4 in this case.

28

# XVI.   EXPEDITED TRIAL PROCEDURES:

This matter is not the type of case that that can be handled under the Expedited Trial Procedure of General Order No. 64 Attachment A.

# XVII.  SCHEDULING:

The Parties propose the schedule below based on the local patent rules of this Court.

| Event | Agreed Proposed Deadlines |
|---|---|
| | |
| **Initial Case Management Conference** | **October 8, 2020** |
| | |
| Deadline for the Parties to Submit a Proposed ESI Stipulation | October 8, 2020 |
| Deadline for the Parties to Submit a Proposed Protective Order | October 8, 2020 |
| Pat. L.R. 3-1 & 3-2.  Disclosure of Asserted Claims and Infringement Contentions and Accompanying Document Production by Google | October 22, 2020 |
| Pat. L.R. 3-3 and 3-4.  Invalidity Contentions and Accompanying Document Production by Sonos | December 7, 2020 |
| Pat. L.R. 4-1.  Exchange of Proposed Terms for Claim Construction | December 21, 2020 |
| Pat. L.R. 4-2.  Exchange of Preliminary Constructions and Extrinsic Evidence | January 11, 2021 |
| Pat. L.R. 3-8.  Damages Contentions by Google | January 26, 2021 |
| Pat. L.R. 4-3.  Joint Claim Construction and Pre-Hearing Statement | February 5, 2021 |
| Disclosure of claim construction expert witness reports, if any | January 6, 2021 |
| Pat. L.R. 3-9.  Responsive Damages Contentions by Sonos | February 22, 2021 |
| Pat. L.R. 4-4.  Completion of Claim Construction Discovery | March 8, 2021 |
| Pat. L.R. 4-5(a).  Opening Claim Construction Brief by Google | March 22, 2021 |
| Pat. L.R. 4-5(b).  Responsive Claim Construction Brief by Sonos | April 5, 2021 |

| Pat. L.R. 4-5(c).  Reply Claim Construction Brief by Google | April 12, 2021 |
|---|---|
| Technology Tutorial | Subject to the convenience of the Court's calendar |
| Pat. L.R. 4-6.  Claim Construction Hearing (Markman) | Subject to the convenience of the Court's calendar |
| Parties to submit proposed schedule for fact discovery deadline, expert discovery, dispositive and Daubert motions, pretrial, and trial. | 14 days after the Court's claim construction ruling |
| Final election of asserted claims to no more than 10 claims | 28 days after the Court's claim construction ruling |

The Parties agree that it is not necessary to enter a schedule beyond the dates above at this early stage of the case.  The Parties instead request an opportunity to submit an agreed-on schedule, or competing scheduling proposals if an agreement cannot be reached, for the Court to consider within 14 days of the Court's claim construction ruling.

Notwithstanding that request, to the extent the Court intends to enter additional deadlines now, the Parties submit the proposal below:

| Event | Agreed Proposed Deadlines |
|---|---|
| Proposed Date for Designation of Experts | Estimated 90 days after the Court's claim construction ruling |
| Close of fact discovery | Estimated 150 days after the Court's claim construction ruling |
| Deadline to file discovery motions relating to fact discovery | 7 days after the close of fact discovery |
| Opening expert reports | 21 days after the close of fact discovery |
| Rebuttal expert reports | 42 days after opening expert reports |
| Close of expert discovery | 28 days after rebuttal expert reports |
| Opening summary judgment/Daubert briefs | 28 days after close of expert discovery |
| Responsive summary judgment/Daubert briefs | 14 days after Opening summary judgment/Daubert briefs |
| Reply summary judgment/Daubert briefs | 7 days after Answering summary judgment/Daubert briefs |
| Hearing on summary judgment/Daubert briefs | Subject to the convenience of the Court's calendar |

| Pretrial Conference | Subject to the convenience of the Court's calendar |
| Trial | Subject to the convenience of the Court's calendar |

## XVIII. TRIAL:

Both Parties have requested trial by jury.

The parties' best estimate of the length of trial is approximately ten Court days for this trial, assuming each trial day starts at 8:30 a.m. and ends at 2:00 p.m. as noted in the Court's Guidelines for Trial in Civil Cases (Jury and Bench) at 1.  The parties acknowledge that this may change depending on the nature of the defenses and counterclaims Sonos may bring in its forthcoming Answer.

## XIX.   DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS:

Each party has filed the Certification of Interested Entities or Persons required by Civil Local Rule 3-15.

On June 11, 2020, Google filed its Certificate of Interested Parties and Entities pursuant to Civil Local Rule 3-15. (D.I. 3.)  Google stated, pursuant to Civil L.R. 3-15, that Google LLC, XXVI Holdings Inc. (holding company of Google LLC), and Alphabet Inc. (holding company of XXVI Holdings Inc.) either (i) have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) have a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding.

On August 12, 2020, Sonos filed its Certificate of Interested Entities.  Sonos stated, "Pursuant to Civil L.R. 3-15, the undersigned certifies that as of this date, other than the named parties, there is no such interest to report."

## XX.   PROFESSIONAL CONDUCT

All attorneys of record for the Parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

## XXI.   OTHER ISSUES

The Parties do not believe that any other issues are appropriate for inclusion in this Joint Case Management Statement.

**XXII. ADDITIONAL INFORMATION PURSUANT TO PATENT LOCAL RULE 2-1(B)**

    **A.    Local Rules.**

The Parties' proposed schedule is set forth in Section XVII, above.

    **B.    Scope and Timing of Any Claim Construction Discovery.**

The Parties' proposed schedule set forth in Section XVII, above, includes a proposed deadline for claim construction discovery.

    **C.    Format of the Claim Construction Hearing.**

The Parties propose that the Claim Construction Hearing consist of a three-hour presentation, with 90 minutes allotted to Google and 90 minutes allotted to Sonos.

    **D.    How the Parties Intend to Educate the Court on the Technology at Issue.**

**Google's Position:** The Parties propose educating the Court on the technology at issue through a tutorial immediately preceding the Claim Construction Hearing.  The Parties propose that the Court allow Google to make a presentation no longer than 45 minutes, followed by a presentation by Sonos of no longer than 45 minutes.

**Sonos's Position**: Sonos is happy to provide a technical tutorial if the Court thinks it will be useful, but leaves that determination to the Court.  In the event the Court thinks tutorials would be useful, Sonos believes such tutorials should be submitted to the Court sufficiently in advance of any claim construction hearing to allow the Court an opportunity to review the tutorials prior to the hearing.  Otherwise, Sonos is confident that the parties can explain any necessary technology in their respective claim construction briefing.

    **E.    Non-Binding, Good-Faith Estimate of Damages Range.**

Google has suffered and continues to suffer harm as a result of Sonos' misappropriation of Google's patents.  Google seeks damages in an amount adequate to compensate for Sonos' infringement, and at least a reasonable royalty on the Sonos devices that practice the patents at issue.  Google may seek other relief available under applicable law.

It would be premature to estimate the amount of damages at this time absent further

investigation, discovery and disclosure by Defendants, and analysis by expert consultants. Information needed for a damages computation is in the possession, custody or control of Sonos and has not yet been produced.  Google will provide a preliminary assessment of damages in its 3-8 disclosures or will otherwise identify any additional information that may be needed to comply with those disclosures at that time.  Google intends to rely on a damages expert, who will provide a computation of damages at the time for expert disclosures.

Plaintiffs reserve the right to supplement, modify or add to this response as circumstances dictate and in accordance with the Federal Rules and order issued by the Court.

1    Dated:  October 1, 2020                           Respectfully submitted,

2     /s/ Patrick Curran                                 /s/ Clem Roberts
      Patrick Curran                                     Attorneys for SONOS INC.
3     Attorneys for GOOGLE LLC

4     QUINN EMANUEL URQUHART &                           ORRICK, HERRINGTON & SUTCLIFFE
      SULLIVAN, LLP                                      LLP
5

6     *Counsel for Plaintiff Google LLC.*                *Counsel for Defendant Sonos Inc.*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **ECF ATTESTATION**

2       I, Patrick Curran, am the ECF User whose ID and password are being used to file this JOINT

3   CASE MANAGEMENT STATEMENT. In compliance with General Order 45, X.B., I hereby attest

4   that Counsel for Sonos has concurred in this filing.

5   Dated:  October 1, 2020                      Patrick Curran

6                                        QUINN EMANUEL URQUHART &
                                        SULLIVAN, LLP

7                                By:    */s/ Patrick Curran*

8                                    Patrick Curran

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28