# EXHIBIT 7

1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

9
10
11

GOOGLE LLC,

12

        Plaintiff,

13

        v.

14

SONOS, INC.,

15
16

        Defendant.

17
18

Civil Action No. 3:20-CV-03845-EMC

**DECLARATION OF PAUL MIN IN**
**SUPPORT OF CERTAIN OF**
**GOOGLE'S PROPOSED CLAIM**
**CONSTRUCTIONS**

19
20
21
22
23
24
25
26
27
28

1)    I, Paul S. Min, Ph.D., provide the following Declaration.  If called to testify as a witness in this action, I would testify competently regarding the matters set forth below.

## I.    INTRODUCTION

2)    I have been retained by counsel for Plaintiff Google LLC ("Google") as an expert witness in this litigation to provide opinions concerning certain claim terms in U.S. Patent No. 10,229,586 (the "'586 Patent").  In particular, I have been asked to analyze what a person of ordinary skill in the art would understand certain claim terms to mean at the time of the invention, and to respond to the proposed constructions provided by Google and Defendant Sonos, Inc. ("Sonos").

3)    I am being compensated at my standard billing rate of $500 per hour for time spent on this matter.  My compensation is in no way dependent on the outcome of this matter or the particular testimony or opinions that I provide.

4)    The opinions expressed in this Declaration are my preliminary opinions based on my review to date of the evidence produced at this stage of the case.  My opinions are subject to change based on additional opinions that Defendant's experts may present and information I may receive in the future.  I reserve my right to amend or update my opinions as appropriate in response to any future discovery or developments.  With this in mind, based on the analysis I have conducted and for the reasons set forth below, I have preliminarily reached the conclusions and opinions in this Declaration.  In preparing this Declaration, I have considered the materials specifically cited herein as well as my own experience in the field.

5)    At a hearing or at trial I may use as exhibits various documents produced in this case that refer or relate to the matters discussed in this Declaration.  I have not yet selected the particular exhibits that might be used.  I may also rely on visual aids and may rely on analogies concerning elements of the patents discussed above, the accused products, the references cited in this report, or any related technologies.  In addition, I may create or assist in the creation of certain demonstrative evidence to assist me in testifying, and I reserve the right to do so, such as demonstrations of devices and software to further support the positions in this Declaration.

## II.    EXPERT QUALIFICATIONS

6)      Attached hereto as Exhibit A is my CV.  I summarize in this section my educational background, career history, publications, and other relevant qualifications.  My qualifications can be found in my *curriculum vitae* attached as Exhibit A, including details about my employment history, fields of expertise, and publications.

7)      I received a B.S. degree in Electrical Engineering in 1982, an M.S. degree in Electrical Engineering in 1984, and a Ph.D. degree in Electrical Engineering in 1987 from the University of Michigan in Ann Arbor.  I received several academic honors, including my B.S. degree with honors, a best graduate student award and a best teaching assistant award during my M.S. study, and a best paper award from a major international conference for reporting results from my Ph.D. thesis.

8)      After receiving my Ph.D., I worked at Bellcore in New Jersey from August 1987 until August 1990.  At Bellcore, I was responsible for evolving the public switched telephone network (PSTN) into a multi-services voice and data network that incorporated packet switches, optical technologies, and wireless technologies.

9)      In September 1990, I joined the faculty at Washington University in St. Louis.  In July 1996, I was promoted to an Associate Professor of Electrical Engineering with tenure.  I am currently a Senior Professor at Washington University of the Electrical and Systems Engineering.  I have also served as the Chair of the Graduate Curriculum (2000-2002) and the Chair of the Undergraduate Curriculum (2011-2014) for the Electrical and Systems Engineering department.

10)      At Washington University, I have conducted research in communication, computing, and related electronic hardware and software.  I have received several grants from the U.S. Federal Agencies, including the National Science Foundation and the Defense Advanced Research Project Agency, and numerous contracts from companies and organizations around the world.  Specifically related to the technology matters in this litigation, I have researched a variety of communication, computing, and electronic technologies, including wireless communication, broadband communication, transmission and switching, integrated circuit design, software application and protocol design, and system prototype.  I have an extensive background and

experience in each of these technologies.

11)     As a faculty member at Washington University, I have taught a number of courses in electronics, communication, and computing at both the undergraduate and graduate levels.  For example, I have taught electronic circuits (Washington University ESE 232), communication theory (Washington University ESE 471), transmission and multiplexing (Washington University ESE 571), and signaling and control of communication networks (Washington University ESE 572).

12)     I have supervised more than 50 students, 12 of whom received a doctoral degree under my guidance.  Doctoral theses that I have supervised relate to wireless communication, broadband communication, transmission and switching, integrated circuit design, software application and protocol design, and system prototype.  In particular, my students and I have published a number of peer-reviewed articles on transmission and switching, electronic circuit and integrated circuit design, resource allocation, scheduling, modulation, mobility management, switching and transmission, and multiplexing.  Several of these articles received accolades in the field.  For example, in 2011, we received a best paper award in 3G WCDMA-related mobility and resource management at the prestigious Mobility 2011 international conference.

13)     In addition to my responsibilities as a university faculty member, I have founded two companies.  In May 1997, I founded MinMax Technologies, Inc., a fabless semiconductor company that developed switch fabric integrated circuit chips for the Internet.  In March 1999, I founded Erlang Technology, Inc., a fabless semiconductor company that focused on the design and development of integrated circuit chips and software for the Internet.  One of Erlang's products received a best product of the year award in 2004 from a major trade journal for the electronics industry.  In these companies, I have designed a number of circuits and software protocols, including high speed interface devices with transmission media, which address the issues of the packet framing, a key technology aspect of this litigation.

14)     Outside my own start-up companies, I have also served in various technology and business advisor roles for other companies and organizations around the world.  I was the main technical author for one of two winning proposals to the Korean government for CDMA wireless

service licenses (1996).  I was responsible for designing a commercial scale IS-95 CDMA cellular network, which I understand to be one of the earliest such networks deployed in the world.  I worked with numerous engineers and scientists around the world to implement this commercial-scale cellular network before IS-95 CDMA was widely accepted.  This provided me with extensive insight into various components of CDMA technology, which extensively use various transmission technologies incorporating packet framing techniques.  I have also been involved in a semiconductor company that specializes in semiconductor memories such as flash EEPROMs as a board member and as a technical advisor (2007-2011).  Again, these activities involved the transmission of communication signals, for which the packet framing is a key issue.

15)    I am a member of and have been actively involved in a number of professional organizations.  For example, I have served as the Chair of the Saint Louis Section of the IEEE with more than 3,000 members (2014), and a member of the Eta Kappa Nu Honor Society for electrical engineers.  I have also been an Ambassador of the McDonnell International Scholars Academy (2007-2013).

16)    In my 30+ years of experience with telecommunications technology, I have acquired significant knowledge about telecommunications systems industry standards, standard setting organizations such as Bellcore, IEEE, ATM Forum, IETF, ITU, 3GPP, and the rules and document policies that those organizations have in place to develop industry standards.

17)    I am a named inventor on eleven U.S. patents, many of which focus on algorithm and device designs.  I have extensively published technical papers in international conferences and journals, technical memoranda and reports, and given a number of seminars and invited talks. I have organized several international conferences and served as an international journal editor.

## III.    LEGAL UNDERSTANDING

18)    I understand that claim construction is for the Court to decide.

19)    I understand that claim terms should be given their ordinary and customary meaning within the context of the patent in which the terms are used, i.e., the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention in light of what the patent teaches.

20)     I understand that to determine how a person of ordinary skill would understand a claim term, one should look to those sources available that demonstrate what a person of skill in the art would have understood disputed claim language to mean.  Such sources include the words of the claims themselves, the remainder of the patent's specification, the prosecution history of the patent (all considered "intrinsic" evidence), and "extrinsic" evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art.

21)     I understand that words or terms should be given their ordinary and accepted meaning unless it appears that the inventors were using them to mean something else.  This determination is made by consulting the claims, the patent specification, and the prosecution history.  Additionally, the specification and prosecution history must be consulted to confirm whether the patentee has acted as its own lexicographer (i.e., provided its own special meaning to any disputed terms), or intentionally disclaimed, disavowed, or surrendered any claim scope.  I also understand that the specification acts as a dictionary when it expressly defines claim terms or when it defines claim terms by implication.

22)     A claim construction analysis must begin and remain centered on the claim language itself.  Additionally, the context in which a term is used in the asserted claim can be highly instructive.  Likewise, other claims of the patent in question, both asserted and unasserted, can inform the meaning of a claim term.  For example, because claim terms are normally used consistently throughout the patent, the usage of a term in one claim can often illuminate the meaning of the same term in other claims.  Differences among claims can also be a useful guide in understanding the meaning of particular claim terms.

23)     I understand that a person of ordinary skill in the art is deemed to read a claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification.  For this reason, the words of the claim must be interpreted in view of the entire specification.  The specification is the primary basis for construing the claims.  Ultimately, the interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim as set forth in the patent itself.

24)     In addition to consulting the specification, I understand that one should also consider the patent's prosecution history.  The prosecution file history provides evidence of how both the Patent Office and the inventor(s) understood the terms of the patent, particularly in light of what was known in the prior art.  Further, where the specification describes a claim term broadly, arguments and amendments made during prosecution may require a more narrow interpretation.

25)     I understand that while intrinsic evidence is of primary importance, extrinsic evidence, i.e., evidence external to the patent and prosecution history, including expert opinions, dictionaries, and learned treatises, can also be considered.  For example, technical dictionaries may help one better understand the underlying technology and the way in which one of skill in the art might use the claim terms.  Extrinsic evidence should not be considered, however, divorced from the context of the intrinsic evidence.

## IV.     LEVEL OF ORDINARY SKILL IN THE ART

1.     I understand that claim interpretation is from the perspective of a person of ordinary skill in the art at the time of the invention.

2.     I understand that the '586 patent was filed on May 13, 2018, but claims priority to a string of continuation applications the earlies of which was continuation application No. 10/856,231 filed on May 27, 2004.  Accordingly, for purposes of this declaration, I treat the relevant time of the invention to be May 2004.

3.     I am familiar with the knowledge of a person of ordinary skill in the field related to the subject matter of the '586 Patent in the May 2004 time period.  In forming my opinion, I considered several things, including the various approaches to wireless devices and networks employed in the art, the type of problems encountered, and the rapidity with which innovations were made.  I also considered the sophistication of the technology involved, and the educational background and experience of those actively working in the field.  Finally, I placed myself back in the relevant time period, and considered the engineers that I had taught and worked with in the communications industry.

4.      In my opinion, a person of ordinary skill in the art relevant to the '586 Patent at the time of its invention would have had a bachelor of science degree in Electrical Engineering, Computer Science or similar subject matter, or at least two years of work or research experience in the fields of computer hardware and software, wireless networking, or an equivalent subject matter.

26)      I meet this criteria and consider myself a person with at least ordinary skill in the art pertaining to the '586 Patent.  I was such a person at the time of invention of the '586 Patent.

## V.      OPINIONS REGARDING CLAIM TERMS

27)      Set forth below are my opinions regarding the specific claim terms on which I have been asked to opine.  I understand that while other claim terms for the '586 Patent may be in dispute, I have only been asked to render expert opinions regarding the claim terms set forth in this Declaration, and I express no opinion regarding any other claim terms at this time.

### A.      Preamble of Claims 1 and 15

28)      The preamble of claim 1 recites "An audio-enabled wireless device configured for bi-directional wireless communication in a wireless mesh network, the wireless device comprising: . . . ."  The preamble of claim 15 recites "A wireless mesh network system, comprising: . . . ."  I understand that Google has taken the position that the preambles of these claims is limiting, while Sonos has taken the position that the preambles are not limiting.

29)      It is my opinion that the preambles of claims 1 and 15 provide necessary context regarding the environment in which the recited "audio-enabled wireless devices" of claims 1 and 15 must be configured to operate within.

30)      Specifically, the preambles of both claims set forth the requirement that the devices be capable of operation within a "wireless mesh network," and the preamble of claim 1 sets forth the requirement that the devices be capable of "bi-directional wireless communication."  Both of these requirements are key, defining features of the "audio-enabled wireless devices" claimed by the Patent.

31)      The '586 Patent describes that one purpose of the "[t]he present invention" was to provide "a relatively low cost, robust, wireless sensor system that provides an extended period of

operability without maintenance." '586 Patent at 2:6-10.  Indeed, one disclosed embodiment of the invention is a monitoring system for detecting dangerous conditions such as fires and gas leaks and providing appropriate alerts.  *Id.* at 1:46-48.  Thus, the capability to operate in a robust and reliable network environment is an important feature of the claimed wireless devices.

32)      The '586 Patent discusses one possible approach to ensuring redundancy in wireless network paths between nodes:

> In one embodiment, the computer 113 uses the signal strength information to re-route wireless communications traffic in the sensor system 100.  Thus, for example, if the repeater unit 110 goes offline or is having difficulty communicating with the sensor unit 102, the computer 113 can send instructions to the repeater unit 111 to add the ID of the sensor unit 102 to the database of the repeater unit 111 (and similarly, send instructions to the repeater unit 110 to remove the ID of the sensor unit 102), thereby routing the traffic for the sensor unit 102 through the router unit 111 instead of the router unit 110.

'586 Patent at 9:23-33.

33)      The '586 Patent further describes that "[t]he present invention relates to a wireless sensor unit system providing bi-directional communication between a sensor and a repeater or base unit . . . ." '586 Patent at 1:38-39.  Thus, the ability of the claimed wireless devices to operate bi-directionally (i.e., in two directions), as opposed to merely in a listen/relay mode, is another defining feature of the invention.

34)      These important features of the invention of the '586 Patent are captured in the preambles of claims 1 and 15.  For example, the concept of wireless devices operating within a robust and reliable network is captured in the "wireless mesh network" term in the preambles of claims 1 and 15.  As discussed in the subsequent section, a "wireless mesh network" is a network with the capability to connect network nodes via multiple wireless paths.  Further, the requirement for devices capable of engaging in "bi-directional" (i.e., two-way) communication, as opposed to mere listen/relay devices, is captured in the preamble of claim 1.

35)      For these reasons, it is my opinion that the preambles of claims 1 and 15 should be considered limiting.

**B.    "Wireless Mesh Network"**

36)      The term "wireless mesh network" appears in the preambles of claims 1 and 15,

which for the reasons discussed in the prior section I treat as limiting.  I understand that the parties have advanced the following competing constructions for the term "wireless mesh network":

| "Wireless Mesh Network" | |
|---|---|
| **Google Proposed Construction** | a network with the capability to connect network nodes via multiple wireless paths. |
| **Sonos Proposed Construction** | a series of nodes that are configured to communicate with one another, where each node functions as a router and repeater. |

37)     As a person of ordinary skill in the art would recognize, the term "wireless mesh network" was used at the relevant time to describe a network with the capability to connect network nodes via multiple wireless paths.  The capability for multiple wireless paths improved the reliability of the network by affording a degree of redundancy.  This capability ensured that when one or more paths between nodes becomes unavailable or inoperable, an alternative path can be accessed to ensure continued network connectivity.

38)     This capability of connecting network nodes via multiple paths is described in the intrinsic evidence of the '586 Patent.  Specifically, the Patent teaches:

> In one embodiment, the sensor units 102-106 and/or the repeater units 110-111 measure the signal strength of the wireless signals received (e.g., the sensor unit 102 measures the signal strength of the signals received from the repeater unit 110, the repeater unit 110 measures the signal strength received from the sensor unit 102 and/or the base unit 112). The sensor units 102-106 and/or the repeater units 110-111 report such signal strength measurement back to the computer 113. The computer 113 evaluates the signal strength measurements to ascertain the health and robustness of the sensor system 100. In one embodiment, the computer 113 uses the signal strength information to re-route wireless communications traffic in the sensor system 100. Thus, for example, if the repeater unit 110 goes offline or is having difficulty communicating with the sensor unit 102, the computer 113 can send instructions to the repeater unit 111 to add the ID of the sensor unit 102 to the database of the repeater unit 111 (and similarly, send instructions to the repeater unit 110 to remove the ID of the sensor unit 102), thereby routing the traffic for the sensor unit 102 through the router unit 111 instead of the router unit 110.

'586 Patent at 9:23-33.  In other words, in the disclosed embodiment, a root node is capable of monitoring the signal strength associated with a path through a given repeater and, when appropriate, re-routing communications through a different repeater unit to ensure continued connectivity.

39)     I have analyzed dictionary definitions from the relevant time that were identified

by Google as extrinsic evidence, and this evidence supports the conclusion that a "wireless mesh network" is a network with the capability to connect network nodes via multiple wireless paths. *See* McGraw-Hill Dictionary of Scientific and Technical Terms (Sixth Edition) (2003) [GOOG-GVS-00006786] at 1316 ("mesh network: A communications network in which each node has at least two links to other nodes."); Wiley Electrical and Electronics Engineering Dictionary (2004) [GOOG-GVS-00006792] at 464 ("mesh network: A communications network in which each node can be reached by at least two pathways."); IBM Dictionary of Computing (1994) [GOOG-GVS-00006779] at 427 ("mesh network: A network in which there are at least two nodes with two or more paths between them."); Microsoft Computer Dictionary (Fifth Edition) (2002) [GOOG-GVS-00006790] at 335 ("mesh network: A communications network having two or more paths to any node.").

40)      The definition from the Computer Desktop Encyclopedia (Ninth Edition) (2001) [GOOG-GVS-00006776]  at 599, is particularly instructive.  That definition notes that while a "fully meshed network" could be understood as one in which every node has a direct connection to every other node, such an architecture is "very elaborate and expensive."  Thus, as a practical matter, a "wireless mesh network" was understood to include one that was only "partially meshed."  This is consistent with my understanding that while a "wireless mesh network" must have a degree of redundancy, it may be necessary to traverse multiple nodes in order to obtain an alternative path from a given node to any other node (i.e., there is no requirement that every node be capable of forming a direct connection with every other node in the network).

41)      I do not agree that the construction proposed by Sonos ("a series of nodes that are configured to communicate with one another, where each node functions as a router and repeater") is appropriate.  First, this construction implies that a "mesh network" must comprise a "series of nodes," but a person of ordinary skill in the art would not understand a "mesh network" to necessarily be limited to nodes arranged in "series."  Second, this construction does not necessarily require multiple paths through the network, and does not necessarily capture the requirement for multiple paths that is a characteristic of "wireless mesh networks."  Third, this construction proposed by Sonos is also too narrow in the sense that it places a requirement on the "nodes" of

the network, requiring *every* node to function as both a "router" and a "repeater."

42)    I have reviewed the extrinsic evidence identified by Sonos and it is my opinion that it does not support the construction advanced by Sonos.  For example:

a.    While the reference Wireless Mesh Networks, Gilbert Held, 2005 at pp. 1-6 ("Held") [SONOS-GVS-00012641], describes a "fully" meshed network in which each node can communicate with every node, the reference goes on to identify a number of constraints with such networks and teaches the emergence in the 1970s and 1980s of a more "cost-effective partial mesh network structure" in which "instead of each node being directly interconnected to every other node, they simply had two or more links to other nodes to provide an alternate routing and traffic balancing capability."  Held at 3.

b.    The references I.F. Akyildiz, X. Wang, A Survey on Wireless Mesh Networks, IEEE Radio Communications (September 2005) at p. 23 ("Akyildiz I") [SONOS-GVS-00012696], and I.F. Akyildiz, X. Wang, W. Wang, Wireless Mesh Networks: A Survey, Computer Networks (2004) at pp. 445-487 ("Akyildiz II") [SONOS-GVS-00012653], are two similar references that describe a number of different "mesh" network configurations.  Both articles describe mesh networks as having two types of nodes: mesh routers and mesh clients.  Akyildiz I at 523; Akyildiz II at 447.  Both articles make clear that there are examples of wireless mesh networks in which mesh clients may not necessarily act as a router or repeater.  *E.g.* Akyildiz II at Figs. 6, 7 &7; Akyildiz I at 527 (describing "hierarchical routing" for wireless mesh networks).

c.    The reference P. Beckman, S. Verma and R. Rao, "Use of mobile mesh networks for inter-vehicular communication," 2003 IEEE 58th Vehicular Technology Conference. VTC 2003-Fall (IEEE Cat. No.03CH37484), Orlando, FL, 2003, pp. 2712-2715 Vol. 4, doi: 10.1109/VETECF.2003.1286061 at p. 2713 ("Beckman") [SONOS-GVS-00012649], merely describes a "wireless mesh" network as "multipoint-to-multipoint" network "in which any connected node can

Case No. 3:20-cv-03845-EMC
DECLARATION OF PAUL MIN

communicate directly *or indirectly* with any other connected node."  Beckman at 2712 (emphasis added).  The article does not suggest that every node in a "wireless mesh network" must function as both a router and repeater.

    d.    Finally, the reference, P. Whitehead, "Mesh networks; a new architecture for broadband wireless access systems," RAWCON 2000. 2000 IEEE Radio and Wireless Conference (Cat. No.00EX404), Denver, CO, USA, 2000, pp. 43-46, doi: 10.1109/RAWCON.2000.881849 at ¶ 1 ("Whitehead") [SONOS-GVS-00012520], merely describes a "mesh" system as a "Multipoint to Multipoint" system in which "[t]here are no base stations, only repeaters most of which normally corresponds with a subscriber location."  Whitehead at 43.  The reference does not state that every node (i.e., "subscriber location") must necessarily function as a router and repeater, and instead suggests that "[t]he connection from a service access point to a particular subscriber is via *one or more* successive paths."  *Id.*



**Fig. 1 Mesh System Topology**

43)    Finally, I note that certain of Sonos's own patent filings use the term "mesh network" much more broadly than the construction that Sonos proposes here.  Indeed, while Sonos's proposed construction, requiring each node to function as a router and repeater, would apparently exclude networks having endpoints, Sonos's own patent filings repeatedly describe networks with endpoints as "mesh networks."  For example:

    a.    U.S. Patent No. 9,244,516 [GOOG-GVS-00006795] describes a "mesh network" as involving "point-to-point paths 1220-1228 between devices (e.g. the media playback devices and the wireless router device."  '516 Patent at 24:15-20.

"Relative to the controllers 1216 and 1218, only media playback device 1206 has a direct route to the controllers because the wireless router broadcasts packets over its wired and wireless interfaces." *Id.* at 24:17-20.  Thus "[m]edia playback devices 1208-1214 are connected to the controllers indirectly through at least on other media playback device (i.e., media playback device 1206).



FIGURE 12

b.     Similarly, U.S. Patent No. 9,516,440 [GOOG-GVS-00006830] depicts a "mesh networking topology" in Figure 6.   '440 Patent at 12:40-42.   The network is described as comprising only a single "example router 610" that "supports both wired and wireless communication."  *Id.* at 12:1-4.  The Patent teaches that "[i]n addition to receiving and processing data (e.g., rendering received audio data), nodes of a meshed network are ***sometimes*** required to act as a bridge or relay to spread data to other nodes."  *Id.* at 12:42-45 (emphasis added).  But, the Patent places no requirement that *every* node actually function as both a router and repeater in all cases.  Indeed, node 614 of Figure 6 is depicted as a node that only communicate through the root node of the network to prevent "looping" of data. *Id.* 13:5-14:39.

44)     In sum, while the extrinsic evidence supports the view that a "wireless mesh network" must have alternative paths, it does not support the view that every single node of the

network must necessarily function as a router and repeater, as Sonos suggests.  A "wireless mesh" network can include a network wherein some of the nodes act as repeaters and facilitate multiple independent paths to other, end-point nodes in the network.

45)    For these reasons, it is my opinion that the term "wireless mesh network" should be construed to mean: "A network with the capability to connect network nodes via multiple wireless paths."

### C.    "Reset Element"

46)    The term "reset element" appears in each of independent claims 1, 9, and 15.  I understand that the parties have advanced the following competing constructions for the term "wireless mesh network":

| "Reset Element" | |
|---|---|
| **Google Proposed Construction** | an element for resetting the configuration of the controller |
| **Sonos Proposed Construction** | hardware and/or software that functions to return a device to a prescribed state |

47)    It is my opinion that "reset element" should be construed to mean: "An element for resetting the configuration of the controller."

48)    The requirement that the "reset element" be an element for resetting the configuration of the controller is implied by the context of the claim.  After reciting the "reset element," independent claim 1, for example recites a "controller" that is "operatively coupled to . . . the reset element." '586 Patent.  Because the "reset element" must be "operatively coupled" to the "controller," a person of ordinary skill in the art would understand that its intended function was linked to the functionality of the claimed "controller."

49)    This is further supported by the specification.  In describing Figure 2, the '586 Patent provides that "[a] reset device (e.g., a switch) 208 is provided to the controller 202.  '586 Patent at 9:40-41.  As Figure 2 demonstrates, the "reset device" is coupled only to the "controller" and not any other hardware of the unit, which reinforces the conclusion that the claimed "reset element" is for resetting the controller as opposed to some other component.



FIG. 2

50)     Finally, my conclusion is supported by the Patent's description for the functionality of the claimed "reset element."  As the Patent teaches:

> In one embodiment, the sensor unit 102 includes a reset function.   In one embodiment, the reset function is activated by the reset switch 208."   In one embodiment, the reset function is active for a prescribed interval of time.  During the reset interval, the transceiver 203 is in a receiving mode and can receive the identification code from an external programmer."

'586 Patent at 6:23-29.   As a person of ordinary skill in the art would recognize, this passage describes how the "reset" functionality causes the controller to place the transceiver into a "receive" mode for prescribed interval of time, allowing for reception of an "identification code," which is the code used to achieve the wireless networking/packet relay function of the claimed controller.   Thus, the Patent clearly links the "reset" functionality to the configuration of the claimed "controller."

51)     It is my opinion that the "reset element" construction advanced by Sonos ("hardware and/or software that functions to return a device to a prescribed state") is not appropriate.   First, Sonos's proposed construction fails to link the functionality of the "reset element" specifically to the controller as the claims and intrinsic evidence require.   Second, Sonos's proposed construction purports to limit the "reset element" to an element that "return[s]"

a device to a "prescribed state."   This limitation is unwarranted, as it implies that the reset functionality is limited to restoring the device to some previous condition, which improperly excludes the possibility that the reset functionality could initialize the device in the first instance.

52)      I have reviewed the reference IEEE 100 – The Authoritative Dictionary of IEEE Standards Terms, Seventh Edition (2000) [SONOS-GVS-00012704], which Sonos cites as extrinsic evidence and which provides one definition for "reset switch" (i.e., "A machine-operated device that restores normal operation to the control system after a corrective action.  *See also*: photoelectric control.").  This definition appears to be specific to the context of control systems, such as photoelectric control systems.  This definition therefore arises in a different context than that of the invention described in the intrinsic evidence of the '586 Patent and is therefore not particularly helpful in determining the understanding of the term "reset element" to a person of ordinary skill in the art at the relevant time.

53)      For these reasons, it is my opinion that "reset element" should be construed to mean: "An element for resetting the configuration of the controller."

**D.    "Preamble Portion"**

54)      The term "preamble portion" appears in each of independent claims 1, 9, and 15.  I understand that the parties have advanced the following competing constructions for the term "preamble portion":

| "Reset Element" | |
|---|---|
| **Google Proposed Construction** | plain and ordinary meaning |
| **Sonos Proposed Construction** | a series of bits that is used to initiate and synchronize the receiving device |

55)      It is my opinion that "preamble portion" should be given its plain and ordinary meaning.  The term is well understood in the art, and neither the claims nor the intrinsic evidence given the term "preamble portion" any special meaning.

56)      For example, the '586 Patent merely describes the "preamble portion" of a packet as one of many different portions in an exemplary packet structure.  '586 Patent at 11:1-5 ("FIG. 5 shows one embodiment [of] a communication packet 500 used by the sensor units, repeater units,

and the base unit.  The packet 500 includes a preamble portion 501, an address (or ID) portion 502, a data payload portion 503, and an integrity portion 504.").



FIG. 5

57)      As a person of ordinary skill in the art would recognize, a "preamble portion" of a data packet can take many different forms and serve many different functions in wireless networking.  For some protocols, a "preamble" portion may take the form of a simple flag or start-frame bit, that signifies the beginning of a packet.  In other implementations, a preamble may include additional timing, identification, or authentication information.  The form, content, and function of a "preamble portion" will naturally depend on the specific network implementation.

58)      It is my opinion that the "preamble" construction advanced by Sonos ("a series of bits that is used to initiate and synchronize the receiving device") is not appropriate.  There is nothing in the intrinsic evidence, or in the understanding of a person of ordinary skill in the art, to support the conclusion that a "preamble portion" must have "a series of bits," as opposed to taking the form of a single bit.

59)      There is also nothing in the intrinsic evidence, or in the understanding of a person of ordinary skill in the art, to support the conclusion a "preamble portion" must necessarily perform a synchronization and initiation function of the receiving device, as the construction proposed by Sonos suggests.  While initiation and/or synchronization may be possible functions that a preamble might perform in *some* implementations, not all preambles provide both of these functionalities and there is no reason why a person of ordinary skill in the art would include these requirements.

60)      To take just one example, in wireless cellular communication systems, such as the

3G W-CDMA networks which was widely deployed prior to the priority date of the '586 patent, mobile units would use a "preamble" in a physical random-access procedure for making initial connection to the base station. In this procedure, the mobile device selects a signature (i.e., preamble) from the available signatures for the Access Service Class ("ASC") and then transmits the selected preamble signature to the base station with no other information. The base station receiving the preamble signature associates the mobile unit with the specific preamble signature. Notably, in this procedure, the mobile unit does not transmit anything other than the preamble itself. The preamble also is not used to initiate or synchronize the receiving base station. To the contrary, the only purpose of sending a preamble by the mobile unit during the random access procedure is to let the base station know there is a mobile unit, with this known preamble signature, that is trying to make a connection with the base station.

61)     I have reviewed the extrinsic evidence identified by Sonos and it is my opinion that it does not support the construction advanced by Sonos. For example:

a.    IEEE Std. 802.11a-1999 (R2003), Part 11: Wireless LAN Medium Access Control (MAC) and Physical Layer (PHY) Specifications (June 12, 2003) [SONOS-GVS-00012524] at p. 7, merely describes the encoding of the preamble field for a specific packet protocol. Even that specific implementation describes the preamble as "composed of 10 repetitions of a 'short training sequence' (used for AGC convergence, diversity selection, timing acquisition, and coarse frequency acquisition in the receiver) and two repetitions of a 'long training sequence' (used for channel estimation and fine frequency acquisition in the receiver) . . . ."

b.    A Beginner's Guide to Ethernet 802.3, Engineer-to-Engineer Note, EE-269 (June 6, 2005) [SONOS-GVS-00012615] at pp. 14-17, describes the encoding of the preamble field for a different specific packet protocol. This document describes the preamble as containing "8 bytes to prepare the data stream. The first 7 bytes provides the synchronization of the PHY and the 8th byte (SFD). The bit combination '11' signals the start of value data." *Id.* at 15.

c.    Newton's Telecom Dictionary (2004) [SONOS-GVS-00012829] at 654, describes

the encoding of the preamble field that is used specifically in Ethernet local area networks.   As that definition states, in the context of Ethernet networks, the preamble is a "very specific bit sequence" that "serves to alert each Ethernet-attached device to the fact that a data frame is travelling across the circuit.   Once alerted to this fact, the preamble is used by all attached devices to synchronize on the rate of transmission of the data bits across the circuit."  This definition does not limit the term "preamble" in all network contexts, nor does it mention any functionality to "initiate" a receiving device as Sonos's proposed construction would require.

d.      IEEE 100 – The Authoritative Dictionary of IEEE Standards Terms, Seventh Edition   (2000)   [SONOS-GVS-00012833]   provides   that   a   "preamble"   may comprise "a sequence of bits at the start of each new transmission to allow synchronization of clocks and other physical layer circuitry at other stations." While this definition mentions synchronization of clocks as one possible function of a preamble, it does not limit the term to synchronization of a receiving device specifically, nor does it mention any functionality to "initiate" a receiving device as Sonos's proposed construction would require.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on February 5, 2021, in  St. Louis, Missouri.

Paul S. Min, Ph.D.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

Paul S. Min, Ph.D.
Washington University in Saint Louis
(Webpage : https://ese.wustl.edu/faculty/Pages/Paul-Min.aspx)

psm@wustl.edu
+1 (314) 853-6200 (phone)

Campus Box 1223
Academy Building Room 218A
St. Louis, MO 63130

## Education

| Year | College or University | Degree |
|------|----------------------|--------|
| 1987 | The University of Michigan | Ph.D. in Electrical Engineering |
| 1984 | The University of Michigan | M.S. in Electrical Engineering |
| 1982 | The University of Michigan | B.S. in Electrical Engineering |

## Professional Experience

From:           1990
To:             Present
Organization:   Washington University, St. Louis

Summary:

| | |
|---|---|
| 2015 - | Senior Professor - Department of Electrical Systems Engineering |
| 2011 – 2014 | Chair – Undergraduate Curriculum, Department of Electrical and Systems Engineering |
| 2000 – 2002 | Chair – Graduate Curriculum, Department of Electrical and Systems Engineering |
| 2002 - 2014 | Associate Professor - Department of Electrical and Systems Engineering |
| 1997 - 2008 | On leave from full-time duty at Washington University – as Presidents of MinMax Technologies and Erlang Technology.) |
| 1996 - 2002 | Associate Professor - Department of Electrical Engineering |
| 1996 | Promoted with Tenure |

1

Paul S. Min, Ph.D. Curriculum Vitae

1990 - 1996    Assistant Professor - Department of Electrical Engineering

Teaching
Experience
- "Transmission System and Multiplexing," Washington University, ESE 571
- "Electrical Laboratory I," Washington University, EE 250.
- "Communication Theory," Washington University, ESE 471.
- "Reliability and Quality Control," Washington University, ESE 405/505
- "Signaling and Control of Communications Networks," Washington University,  ESE 572.
- "Introduction to Electronic Circuits,"  Washington University, ESE232
- "Queueing Systems and Discrete Stochastic Processes," Washington University, EE 536 / CS 567.
- "Digital Computer," Washington University, EE 260M / CS 260.
- "Data Networks," Washington University, EE 530.
- "Electrical Circuit Analysis," Washington University, ESE 230.
- "Computer/Communications System Analysis I," Washington University, EE 557/ CS 557.
- "Computer/Communications System Analysis II," Washington University, EE558 / CS 558.
- "Digital Systems Laboratory," Washington University, EE 455 / CS 455.

From:          1999
To:            2008
Organization:  Erlang Technology, Inc., St. Louis, Missouri
Title:         Founder and President
Summary:       Up to 70 employees, $40M in total capital raised from 5 VCs and 3 Corporations
               Received "Product of Year" Award from Analog Zone Magazine in 2004

From:          1997
To:            1999
Organization:  MinMax Technologies, Inc., St. Louis, Missouri
Title:         Founder and President
Summary:       Fabless semiconductor company, designing high performance switching ASICs

From:          September 1987
To:            August 1990
Organization:  Bellcore, New Jersey
Title:         Member of Technical Staff
Summary:       Member of New Network Architecture Development Group

From:          1983
To:            1987

Paul S. Min, Ph.D. Curriculum Vitae

Organization: Department of Electrical Engineering, The University of Michigan
Title: Graduate Instructor
Summary: Instructor for senior level Electrical Engineering Laboratory Class. Received a Best "Best Graduate Instructor Award" from the Department of Electrical Engineering

## Professional Affiliations, Achievements & Awards

- Technical Program Committee, COMCAS 2019, Tel Aviv, November 2019.
- Technical Program Committee, COMCAS 2017, Tel Aviv, November 2017.
- Technical Program Committee, COMCAS 2015, Tel Aviv, October 2015.
- Past-Chair, Saint Louis Section of the Institute of Electrical and Electronics Engineers (IEEE), 2015.
- Member of Executive Committee, Saint Louis Section of the IEEE, 2010-2015.
- Chair, Saint Louis Section of the IEEE, 2014.
- Technical Program Committee, COMCAS 2013, Tel Aviv, October 2013.
- Vice Chair, Saint Louis Section of the IEEE, 2013
- Treasurer, Saint Louis Section of the IEEE, 2012.
- The Best Paper Award at MOBILITY 2011, October 2011, Barcelona, Spain.
- Counselor, Student Chapter of the Year, the Institute of Electrical and Electronics Engineers, 2011.
- Award of Appreciation, Saint Louis Section of the Institute of Electrical and Electronics. Engineers, 2011, for contribution to various activities of the Saint Louis Section the Institute of Electrical and Electronics Engineers.
- Secretary, Saint Louis Section of the IEEE, 2010.
- Counselor, Student Chapter of the Year, the Institute of Electrical and Electronics Engineers, 2010.
- Wall Street Journal Businessmen of Year, 2003.
- American Men and Women of Science, listed in 1997.
- Member, Eta Kappa Nu (Honor Society for Electrical Engineers), inducted in 1992
- Outstanding Achievement Award, Bellcore, 1990.
- 18th ISATA Award of Technical Excellence, the best paper award at ISATA 1988.
- Rockwell Fellow, Rockwell International, 1985, 1986.
- Outstanding Graduate Student Award, the University of Michigan, 1985.
- Outstanding Teaching Award, the University of Michigan, 1984, 1986.
- Member of Honor's College, the University of Michigan, 1979, 1980.
- Honor's Convocation, the University of Michigan, 1979.

- Outstanding Freshman Award, the University of Michigan, 1979.
- Woodhaven Rotary Club Scholarship, Woodhaven Rotary Club, 1978.
- Second Place Winner, the State of Michigan Mathematics Prize Competition, 1977.
- International Program Committee, *IASTED International Conference on Communications, Internet and Information Technology (CIIT 2005*), Cambridge, Massachusetts from October 31-November 2, 2005.
- International Program Committee, *IASTED International Conference on Communications 2003*, Scottsdale, Arizona, 2003.
- International Program Committee, *Wireless and Optical Communications 2003*, Banff, Canada, 2003.
- International Program Committee, Session Chair, *Wireless and Optical Communications 2002*, Banff, Canada, 2002.
- Invited participant, *NSF Workshop on Enhancing International Cooperation in CS/CE Research and Education*, Portland, 1997.
- Session Chair, *the 1993 Conference on Information Sciences and Systems,* Baltimore, March 1997.
- Member, Board of Editors, *Journal of Network and Systems Management*, 1996-1998.
- Program Committee, *International Symposium on Integrated Network Management*, San Diego, 1997.
- Guest Editor, *Journal of Network and Systems Management, Special Issue on Routing in Broadband Networks*, December 1995 and June 1996.
- Invited participant, *ARPA Workshop on Survivability of Large Scale Systems*, Washington D.C., 1996.
- Special Event Organizer, *International Symposium on Integrated Network Management,* Santa Barbara, 1995.
- Organizing Committee, *International Symposium on Integrated Network Management*, Santa Barbara, 1995.
- Local Arrangements Chair, *IEEE Information Theory Workshop on Information Theory Multiple Access and Queueing*, St. Louis, 1995.
- Chair, *Communications Chapter, St. Louis Section of the IEEE*, 1995.
- Participant, *IEEE Information Theory Workshop on Information Theory, Multiple Access and Queueing*, St. Louis, 1995.
- Participant, *ARPA/AFOSR Non-Linear Optics and Communication Workshop,* Denver, 1994.
- Participant, *CNRI Giga Bit Network Workshop*, Washington D.C., 1993.
- Participant, *IFIP/IEEE International Workshop on Distributed Systems*, New Jersey, 1993.
- Program Committee, *International Conference on Computer Communications and Networks,* San Diego, 1992.
- Session Chair, *ISMM International Conference*, New Orleans, 1990.
- Senior Member, *IEEE*.
- Member, *IEEE Committee on Network Operations and Management*.

4

Paul S. Min, Ph.D. Curriculum Vitae

- Member, *IEEE Committee on Computer Communications*.
- Registered Specialist, *Hong Kong Research Grant Council*.
- Reviewer, *IEEE Transactions on Communications*.
- Reviewer, *IEEE Transactions on Networking*.
- Reviewer, *IEEE Journal on Selected Areas in Communications*.
- Reviewer, *Journal of Network and Systems Management*.
- Reviewer, *Telecommunication Systems*.
- Reviewer, Computers and Electrical Engineering.
- Reviewer, *ETRI Journal*.
- Reviewer, *IEEE Transactions on Automatic Control*.
- Reviewer, *IEEE Communications*.
- Book Reviewer, *Prentice Hall*.
- Book Reviewer, *Morgan Kaufmann Publishers, Inc.*
- Book Reviewer, *Irwin Publishing Co.*

**University Activities:**

- Undergraduate Studies Committee, School of Engineering and Applied Science (2012 – Present)
- Faculty Advisor for IEEE Student Chapter (2009 – Present)
- Ambassador for McDonnell International Scholar Academy (2007 – 2013)
- Web Development Committee (2006 – 2008)
- University Judicial Board (1998 - 2000)
- Resource Generation Committee (1994 - 1995)
- Top 20 Committee (1992 - 1995)
- Telecommunications Committee, Chair (1991 - 1997)
- Library Planning Committee (1991 - 1992)
- Computer Engineering Committee (1990 - 1996)
- Communications Curriculum Committee (1990 - 1992)
- Resources Committee (1990 - 1992)

## Patents

| Patent No. | Date | Title |
|---|---|---|
| 10,623,323 | 04/14/20 | Network Devices and a Method for Signature Pattern Detection |
| 10,284,476 | 05/07/19 | Hierarchical Pattern Matching Devices and Methods |
| 7,110,411 | 09/19/06 | Method of and Apparatus for WFQ Scheduling Using a Plurality of |

Paul S. Min, Ph.D. Curriculum Vitae

|   |   | Scheduling Queues to Provide Fairness, High Scalability, and Low Computational Complexity |
|---|---|---|
| 7,106,738 | 09/12/06 | Method of and Apparatus for High Speed Packet Switching Using Train Packet Queuing and Providing High Scalability |
| 6,859,455 | 02/22/05 | Method of and Apparatus for Building and Using Multi-Dimensional Index Trees for Multi-Dimensional Data Objects |
| 6,614,789 | 09/02/03 | Method of and Apparatus for Matching Strings of Different Lengths |
| 6,359,885 | 3/19/02 | Multi-Channel Packet Switching Apparatus Having Traffic Flow Controlling and Checking Functions |
| 6,128,292 | 10/03/00 | Packet Switching Apparatus with Multi-Channel and Multi-Cast Switching Functions and Packet Switching System Using the Same |
| 5,788,161 | 12/13/98 | Network Designer for Communication Networks |
| 5,526,352 | 06/11/95 | Integrable Low Complexity Multi-Channel Switch |
| 5,440,549 | 08/08/95 | Nonblocking Multi-Channel Switching with Multicasting Capability |

## Publications

- Yu, Qixiang, Luo, Z, and Min, P.S., "Intrusion Detection in Wireless Sensor Networks for Destructive Intruders."  Proceedings of the APSIPA 2015 conference. December 16-19, 2015.
- Hung, C.P., and Min, P.S., "Simple Web Application Framework." Submitted for publication in the IEEE Transactions on Cloud Computing.
- Luo, Z., and Min, P.S., "Parallel Implementation of Energy-Based Target Localization Methods in Wireless Sensor Networks." Proceeding of the 2014 IEEE SOUTHEASTCON.
- Yu, Q., Luo, Z., and Min, P.S., "Intrusion Detection in Wireless Sensor Networks for Destructive Intruder." Proceeding of 2014 International Conference on Smart Computing (SMARTCOMP 2014).
- Luo, Z., and Min, P.S., "Survey of Target Localization Methods in Wireless Sensor Networks," 19th IEEE International Conference on Networks (ICON 2013), Singapore, December 11-13, 2013.
- Hung, C.P., and Min, P.S., "Deriving and Visualizing the Lower Bounds of Information Gain for Prefetch Systems," 19th IEEE International Conference On Networks (ICON 2013), Singapore, December 11-13, 2013.
- Hung, C.P., and Min, P.S., "Access LUT without CAM - Improved Pearson Hashing for Collision Reduction," 19th IEEE International Conference On Networks (ICON 2013), Singapore, December 11-13, 2013.
- Luo, Z and Min, P.S., "Target Localization in Wireless Sensor Networks for Industrial Control with Selected Sensors."  International Journal of Distributed Sensor Networks, Volume 2013 (2013), Article ID 304631.
- Hung, C.P., and Min, P.S. "Performance Evaluation of Distributed Mobile Application Virtualization Services," International Journal on Advances in Internet Technology, Vol. 5, no. 3&4, 2012, pp. 65-83.

Paul S. Min, Ph.D. Curriculum Vitae

- Hung, C.P. and Min, P.S., "Performance evaluation of distributed application virtualization services using the UMTS mobility model," MOBILITY 2011 The First International Conference on Mobile Services, Resources, and Users, 23-29 Oct. 2011.

- Hung, C.P. and Min, P.S., "Service Area Optimization For Application Virtualization Using UMTS Mobility Model," International Conference on Internet Computing, pp. 128-134, Las Vegas, July 18-21, 2011.

- Hung, C.P. and Min, P.S., "Application Virtualization Using UMTS Mobility Model," ICOMP'11, September, 2011.

- Hung, C.P. and Min, P.S., "Infrastructure Arrangement for Application Virtualization Service," the 9th International Information and Telecommunication Technologies Symposium, Vol.1, pp. 78-85, Rio de Janeiro, December 2010.

- Hung, C.P. and Min, P.S., "Probabilistic Approach to Network-Based Virtual Computing," the 9th International Information and Telecommunication Technologies Symposium, Vol.1, pp. 117-124, Rio de Janeiro, December 2010.

- Shiravi, A. and Min, P. S., "On the Latency Bound of Proportional Nested-DRR with Credit Adjusting," *2007 Workshop on High Performance Switching and Routing HPSR 2007*, July 2007.

- Shiravi, A. and Min, P. S., "LOOFA-PB: A Modified LOOFA Scheduler for Variable-Length Packet Switching." *2007 IEEE International Conference on Communications (ICC 2007),* Glasgow, June 2007.

- Shiravi, A., Kim, Y. G., and Min, P. S., "Congestion Prediction of Self-Similar Network through Parameter Estimation," *Proceedings of 2006 IEEE/IFIP Network Operations & Management Symposium*, April 2006, Vancouver.

- Shiravi, A., Kim, Y. G., and Min, P. S., "Traffic Dispatching Algorithm in Three-Stage Switch," *Proceedings of 5th International Conference on Networking*, April 2006, Mauritius.

- Shiravi, A., Kim, Y. G., and Min, P. S., "Proportional Nested Deficit Round Robin with Credit Adjusting," *Proceedings of 2nd Int'l Conf. on Quality of Service in Heterogeneous Wired/Wireless Networks (QShine 2005)*, Orlando, August 2005.

- Shiravi, A., Kim, Y. G., and Min, P. S., "Proportional Nested Deficit Round Robin: Improving the Latency of Packet Scheduler with an O(1) Complexity," *Proceedings of International Workshop on Advanced Architectures and Algorithms for Internet Delivery and Applications (AAA-IDEA 2005),* Orlando, June 2005

- Kim, Y. G., Shiravi, A., and Min, P. S., "Prediction-Based Routing through Least Cost Delay Constraint," *Proceedings of IEEE IPDPS 2004*, Santa Fe, April 2004.

- Kim, Y. G. and Min, P. S., "On the Prediction of Average Queuing Delay with Self-Similar Traffic," *Proceedings of IEEE GLOBECOM 2003*, San Francisco, December 2003.

- Hu, C., Saidi, H., Yan, P. Y., and Min, P.S., "A Protocol Independent Policer And Shaper Using Virtual Scheduling Algorithm," *Proceedings of ICCCAS 2002*.

7

Paul S. Min, Ph.D. Curriculum Vitae

- Hu, C., Saidi, H., and Min, P.S., "DB_WFQ: An Efficient Fair Queueing Using Binary Counter," *Proceeding of Coins 2002*.

- Yoon, U. and Min, P.S., "Performance Analysis of Radio Link Control Mechanism in W-CDMA System", IEEE VTC'01 Fall, October 2001, New Jersey

- Akl, B., Hegde, M.V., Naraghi-Pour, M., and Min, P.S., "Multi-Cell CDMA Network Design," *IEEE Transaction on Vehicular Technology*, Volume 50, No. 3, pp. 711-722, May 2001.

- Yoon, U., Park, S., Min, P.S., "Performance Analysis of Multiple Rejects ARQ at RLC (Radio Link Control) for Packet Data Service in W-CDMA System," *IEEE Globecom*, November 2000, San Francisco.

- Yoon, U., Park, S., Min, P.S., "Performance Analysis of Multiple Rejects ARQ for RLC (Radio Link Control) in the Third Generation Wireless Communication," *WCNC*, September 2000, Chicago.

- Yoon, U., Park, S., Min, P.S., "Network Architecture and Wireless Data Service Protocol based on Mobile IP toward the Third Generation Wireless Communication," *3G Wireless*, June 2000, San Francisco, pp. 211-215

- R.G. Akl, M.V. Hegde, M. Naraghi-Pour, P.S. Min, "Multi-Cell CDMA Network Design," *IEEE International Conference on Communications*, June 2000.

- R.G. Akl, M.V. Hegde, M. Naraghi-Pour, P.S. Min, "CDMA Network Design to Meet Non-uniform User Demand," *International Teletraffic Congress*, March 2000.

- R.G. Akl, M.V. Hegde, M. Naraghi-Pour, P.S. Min, "CDMA Network Design," *IEEE Transactions on Vehicular Technology*.

- R.G. Akl, M.V. Hegde, M. Naraghi-Pour, P.S. Min, "Cell Placement in a CDMA Network," *IEEE Wireless Communications and Networking Conference*, September 1999, Volume 2, pp. 903-907.

- R.G. Akl, M.V. Hegde, P.S. Min, "Effects of Call Arrival Rate and Mobility on Network Throughput in Multi-Cell CDMA," *IEEE International Conference on Communications*, June 1999, Volume 3, pp. 1763-1767.

- Hegde, M.V., Schmid, O.A., Saidi, H., and Min, P.S., "Real-Time Adaptive Bandwidth Allocation for High-Speed ATM Switches," accepted, *International Conference on Communications*, June 1999.

- Akl, B.G., Hegde, M.V., and Min, P.S., "Effects of Mobility on Network Throughput in Multicell CDMA Networks," accepted, *International Conference on Communications*, June 1999.

- Akl, B.G., Hegde, M.V., Min, P.S., and Naraghi-Pour, M., "Flexible Allocation of Capacity in Multi-Cell CDMA Networks," accepted, *Vehicular Technology Conference*, June 1999.

- R.G. Akl, M.V. Hegde, M. Naraghi-Pour, P.S. Min, "Flexible Allocation of Capacity in Multi-Cell CDMA Networks," *IEEE Vehicular Technology Conference*, May 1999, Volume 2, pp. 1643-1647.

8

- Oh, M.S., and Min, P.S., "Reliability Analysis for One-Turn and Deflection Crossbar Architectures and Distributed Fault Recovery Scheme," *Proceedings of GLOBECOM 97*, Phoenix, November 1997.

- Kim, K.B., Yan, P.Y., Kim, K.S., Schmid, O., and Min, P.S., "A Growable ATM Switch with Embedded Multi-Channel Multicasting Property," *Proceedings of GLOBECOM 97*, pp. 222-226, Phoenix, November 1997.

- Kim, K.B., Yan, P.Y., Kim, K.S., Schmid, O., and Min, P.S., "MASCON: A Single IC Solution to ATM Multi-Channel Switching with Embedded Multicasting," *Proceedings of ISS 97*, pp. 451-458, Toronto, September 1997.

- Maunder, A.S., and Min, P.S., "Investigation of Rate Control in Routing Policies for B-ISDN Networks," *Proceedings of the 15th International Teletraffic Congress*, Washington D.C., June 1997.

- Yan, P.Y., Kim, K.B., Kim, K.S., and Min, P.S., "A Large Scale ATM Switch System Using Multi-Channel Switching Paradigm," *Proceedings of ATM Workshop*, Lisbon, Portugal, May 1997.

- Yan, P.Y., Kim, K.S., Min, P.S., and Hegde, M.V., "Multi-Channel Deflection Crossbar (MCDC): A VLSI Optimized Architecture for Multi-Channel ATM Switching," *Proceedings of IEEE INFOCOM 97*, Kobe, Japan, April 1997.

- Maunder, A., Rayes, A., and Min, P.S., "Analysis and Rate Controlling Link: Leaky Bucket with Finite Servers," *Proceedings of the 1997 Conference on Information Sciences and Systems*, Baltimore, March 1997.

- Shin, S.W., Min, P.S., and Kim, J.H., "Real Time Traffic Management System at Korean Mobile Telecom," *Proceedings of 19th Annual Pacific Telecommunications Conference*, pp. 113-121, Honolulu, Hawaii, January 1997.

- Min, P.S., Hegde, M.V., Chandra, A., and Maunder, A.S., "Analysis of Banyan Based Copy Networks with Internal Buffering," *Journal of High Speed Networks*, Volume 5, No. 3, pp. 259-275 November 1996.

- Vargas, C., Hegde, M.V., Naraghi-Pour, M., and Min, P.S., "Shadow Prices for Least Loaded Routing and Aggregated Least Busy Alternate Routing," *IEEE Transactions on Networking*, Volume 4, No. 5, pp. 796-807, October 1996.

- Shin, S.W., Kwon, S.M., and Min, P.S., "Capacity Analysis of CDMA with Nonuniform Cell Loading and Sizes," *Proceedings of the 34th Annual Allerton Conference*, October 1996.

- Hegde, M.V., Min, P.S., and Sohraby, K., "Note from Guest Editors," *Journal of Network and Systems Management*, Volume 4, No. 2, pp. 101-102, June 1996.

- Rayes, A. and Min, P.S., "Application of Shadow Price in Capacity Expansion of State Dependent Routing," *Journal of Network Systems Management*, Volume 4, No. 1, pp. 71-93, March 1996.

- Min, P.S., "PCS Revolution in the United States," Electronics News, No. 2277, January 22, 1996.  Translated and published in Korean.

- Hegde, M.V., Min, P.S., and Sohraby, K., "Guest Editorial," *Journal of Network and Systems Management*, Volume 3, No. 4, pp. 347-349, December 1995.

- Min, P.S., Hegde, M.V., Saidi, H., and Chandra, A., "Nonblocking Copy Networks in Multi-Channel Switching," *IEEE Transactions on Networking*, Volume 3, No. 6, pp. 857-871, December 1995.

- Rayes, A. and Min, P.S., "Capacity Expansion of Least Busy Alternate Routing with Shadow Price," *Proceedings of GLOBECOM 95*, Singapore, November 1995.

- Min, P.S., Hegde, M.V., Chandra, A., and Maunder, A., "Throughput and Delay for Copy Networks with Internal Buffers," *Proceedings of the 33rd Annual Allerton Conference*, October 1995.

- Min, P.S., Hegde, M.V., Saidi, H., and Chandra, A., "Fanout Splitting in Nonblocking Copy Networks with Shared Buffering," *Proceedings of the 33rd Annual Allerton Conference*, October 1995.

- Min, P.S., Hegde, M.V., and Rayes, A., "Estimation of Exogenous Traffic Based on Link Measurements in Circuit-Switched Networks," *IEEE Transactions on Communications*, Volume 43, No. 8, pp. 2381-2390, August 1995.

- Maunder, A., Rayes, A., and Min, P.S., "Analysis of Routing Policies in Broadband Networks." Invited paper. *Canadian Journal of Electrical and Computer Engineering*, Special Issue on Planning and Designing of Broadband Networks, Volume 20, No. 3, pp. 125-136, July 1995.

- Min, P.S., Hegde, M.V., Saidi, H., and Chandra, A., "Architecture and Performance of Nonblocking Copy Networks with Multi-Channel Switching," *Proceedings of APCC 95*, pp. 531-535, Osaka, Japan, June 1995.

- Saidi, H., Min, P.S., and Hegde, M.V., "A New Structural Property of Statistical Data Fork," *IEEE Transactions on Networking*, Volume 3, No. 3, pp. 289-298, June 1995.

- Min, P.S., Saidi, H., and Hegde, M.V., "A Nonblocking Architecture for Broadband Multi-Channel Switching," *IEEE Transactions on Networking*, Volume 3, No. 2, pp. 181-198, April 1995.

- Min, P.S., Hegde, M.V., Saidi, H., and Chandra, A., "Multi-Channel Copy Networks: Architecture, Performance Model, Fairness, and Cell Sequencing," *Proceedings of IEEE INFOCOM 95*, pp. 931-938, Boston, April 1995.

- Min, P.S., Hegde, M.V., and Chandra, A., "Analysis of Packet Movements in Internally Buffered Copy Networks," *Third ORSA Telecommunications Conference*, p. 141, Boca Raton, Florida, March 1995.

- Maunder, A. and Min, P.S., "Routing for Multi-Rate Traffic with Multiple Qualities of Service," *Proceedings of the Third International Conference on Computer Communications and Networks*, pp. 104-108, San Francisco, September 1994.

- Saidi, H. and Min, P.S., "Performance Benefits of Multi-Channel Switching," *Proceedings of the 32nd Annual Allerton Conference*, pp. 583-592, September 1994.

- Min, P.S., "Book Review: `Telecommunications Network Management into the 21st Century'," *IEEE Communications*, Volume 32, No. 7, pp. 5-8, July 1994.

Paul S. Min, Ph.D. Curriculum Vitae

- Saidi, H., Min, P.S., and Hegde, M.V., "Guaranteed Cell Sequence in Nonblocking Multi-Channel Switching," *Proceedings of IEEE INFOCOM 94*, Toronto, pp. 1420-1427, June 1994.

- Min, P.S., Hegde, M.V., Saidi, H., and Chandra, A., "Shared Buffering in Nonblocking Copy Networks," *Proceedings of the 1994 IEEE International Symposium on Information Theory*, Norway, p. 406, June 1994.

- Min, P.S., Hegde, M.V., and Rayes, A., "Real Time Traffic Estimation in Circuit-Switched Networks," *Proceedings of the 14th International Teletraffic Congress*, France, pp. 1175-1184, June 1994.

- Hegde, M.V., Min, P.S., and Rayes, A., "State Dependent Routing: Traffic Dynamics and Performance Benefits," *Journal of Network and Systems Management*, Volume 2, No. 2, pp. 125-149, June 1994.

- Saidi, H., Min, P.S., and Hegde, M.V., "Control of Packet Flow in Statistical Data Forks," *Proceedings of the 1994 International Conference on Communications*, New Orleans, pp. 415-419, May 1994.

- Saidi, H., Min, P.S., and Hegde, M.V., "Nonblocking Multi-Channel Switching in ATM Networks," *Proceedings of the 1994 International Conference on Communications*, New Orleans, pp. 701-705, May 1994.

- Maunder, A. and Min, P.S., "Analysis and Development of Routing Schemes for Multi-Rate, Multi-Point Traffic," *Proceedings of the 1994 Conference on Information Sciences and Systems*, Princeton, pp. 1041-1046, March 1994.

- Min, P.S., Hegde, M.V., and Chandra A., "Internal Buffering in Banyan-Based Copy Networks," *Proceedings of the 1994 Conference on Information Sciences and Systems*, Princeton, pp. 209-214, March 1994.

- Rayes, A. and Min, P.S., "Capacity Expansion in State Dependent Routing Schemes," *Proceedings of the 1994 Conference on Information Sciences and Systems*, Princeton, pp. 237-241, March 1994.

- Vargas, C., Hegde, M.V., Naraghi-Pour, M., and Min, P.S., "Shadow Prices for State Dependent Routing," *Proceedings of the 1994 Conference on Information Sciences and Systems*, Princeton, pp. 243-248, March 1994.

- Saidi, H., Min, P.S., and Hegde, M.V., "Non-Blocking Multi-Channel Switching." Invited paper. *Proceedings of the 31st Annual Allerton Conference*, pp. 335-344, September 1993.

- Min, P.S., Hegde, M.V., and Rayes, A., "Model Based Estimation of Exogenous Traffic," *Proceedings of the 1993 Conference on Information Sciences and Systems*, Baltimore, pp. 126-131, March 1993.

- Hegde, M.V., Min, P.S., and Rayes, A., "Performance Analysis of State Dependent Routing," *Proceedings of the 1993 Conference on Information Sciences and Systems*, pp. 695-700, Baltimore, March 1993.

- Hegde, M.V. and Min, P.S., "Telephone Networks," Magill Survey of Science Applied Science, Salem Press, pp. 2624-2630, 1992.

Paul S. Min, Ph.D. Curriculum Vitae

- Saidi, H., Min, P.S., and Hegde, M.V., "Assignment of $2^k$ Trunk Groups in Multi-Channel Switches Using Generalized Binary Addresses," *Proceedings of the 30th Annual Allerton Conference*, pp. 652-661, September 1992.

- Hegde, M.V. and Min, P.S., "Performance Analysis of State Dependent Routing." Invited paper. *Second ORSA Telecommunications Conference*, Boca Raton, Florida, February 1992.

- Rizzoni, R. and Min, P.S., "Detection of Sensor Failures in Automotive Engines," *IEEE Transactions on Vehicular Technology*, Volume 40, No. 2, pp. 487-500, May 1991.

- Min, P.S. and Hegde, M.V., "End-to-End Planning Models for Optimal Evolution of Telecommunications Network," *Proceedings of IEEE INFOCOM 90*, San Francisco, pp. 200-206, June 1990.

- Min, P.S., "Validation of Controller Inputs in Electronically Controlled Engines." Invited paper. *Proceedings of the 1990 American Control Conference*, pp.2887-2890, San Diego, May 1990.

- Min, P.S. and Youn, C., "Generic Equipment Models (GEM) for Consistent Planning of Telecommunications Networks," *Proceedings of the 1990 ISMM International Conference*, New Orleans, pp. 190-194, March 1990.

- Min, P.S., "Robust Application of Beard-Jones Detection Filter," *Advances in Computing and Control*, Springer-Verlag, Volume 130, pp. 162-173, 1989.

- Min, P.S. and Ribbens, W.B., "A Vector Space Solution to Incipient Sensor Failure Detection," *IEEE Transactions on Vehicular Technology*, Volume 38, No.3, pp. 148-158, August 1989.

- Min, P.S., "Robust Application of Beard-Jones Detection Filter," *Proceedings of the 1989 American Control Conference*, Pittsburgh, pp. 859-864, June 1989.

- Rizzoni, G. and Min, P.S., "Real Time Detection Filters for the On-board Diagnosis of Incipient Failures," *Proceedings of the 1989 International Symposium on Allied Technology and Automation*, pp. 1445-1466, Paper No. 89131, Florence, Italy, June 1989.

- Min, P.S., "Diagnosis of On-Board Sensors in Internal Combustion (IC) Engines," *Proceedings of the 1989 American Control Conference*, Pittsburgh, pp. 1065-1070, June 1989.

- Min, P.S., "Detection of Incipient Sensor Failures in Internal Combustion Engines," *Proceedings of the 1988 International Symposium on Allied Technology and Automation*, Paper No. 88038, Florence, Italy, June 1988.

## Testimony Provided or Expected to Provide as Expert Witness

Matter:      Patent Infringement for Fiber Optic Devices
Law Firm:   Cooley

Case Name:   Certain High-Density Fiber Optic Equipment and Components Thereof,
             U.S.I.T.C. Inv. No. 337-TA-1194
             Testifying Expert for AFL Communications, Panduit, FS.Com, Wirewerk, and
             Siemon
             Completed in October 2020.
             (Expert reports submitted, deposed, and testified during trial.)


Matter:      Patent Infringement for Optical Transport Networks
Law Firm:    Venerble
Case Name:   Huawei Technologies Co. Ltd v Verizon Communications, Inc., et. al., 2:20-cv-
             0030
             Testifying Expert for Verizon.
             Retained in March 2020.
             (IPR declarations submitted.)


Matter:      Patent Infringement for Wireless Communication
Law Firm:    McDermott Will & Emery
Case Name:   Bell Northern Research LLC v. ZTE. (Case No. 3:18-cv-01786 - S.D. Cal)
             Testifying Expert for ZTE.
             Retained in July 2019.
             (IPR declarations submitted.)


Matter:      Patent Infringement for Wireless Communication
Law Firm:    Jones Day
Case Name:   Bell Northern Research LLC v. Kyocera Corp. (Case No. 3:18-cv-1785 - S.D.
             Cal)
             Testifying Expert for Kyocera.
             Completed in May 2019.
             (Claim construction declaration submitted, and deposed.)


Matter:      Patent Infringement for Electronic Payment Systems
Law Firm:    Paul Hastings
Case Name:   ID Tech Corp. v. Samsung Electronics Co., Ltd., et al. (Case No. No. 8:17-cv-1748-
             DOC-JDE (C.D. Cal))
             Testifying Expert for Samsung.
             Retained in January 2019.
             (Expert reports submitted, and deposed.)


Matter:      Patent Infringement for Internet Switching
Law Firm:    Maynard Cooper
Case Name:   Parity Networks, LLC v. Juniper Networks, Inc., Case No. 6:17-CV-00495-RWS-
             KNM (U.S.D.C.E.D. Tx.)
             Testifying Expert for Juniper.
             Retained in April 2018.
             (IPR declarations submitted.)

Paul S. Min, Ph.D. Curriculum Vitae

Matter:          Patent Infringement for Internet Switching
Law Firm:        Morgan Lewis
Case Name:       Parity Networks, LLC v. Hewlett Packard Enterprise Company, Case No. 6:17-
                 CV-00682 (U.S.D.C.E.D. Tx.)
                 Testifying Expert for Hewlett Packard Enterprise Company.
                 Retained in September 2018.
                 (IPR declarations submitted.)


Matter:          Inter Parte Rexamination for Covered Business Method
Law Firm:        Reed Smith LLP
Case Name:       NASDAQ v. Miami International
                 Expert for Miami International.
                 Retained in February 2018.
                 (Expert declarations submitted, and deposed.)


Matter:          Patent Infringement for Mobile Devices
Law Firm:        Quinn Emanuel
Case Name:       Qualcomm v. Apple, Case No. 3:17-cv-00108-GPC-MDD (U.S.D.C.S.D. Cal.)
                 Testifying Expert for Qualcomm.
                 Completed in April 2019.
                 (Expert reports submitted, and deposed.)


Matter:          Patent Infringement for Communication Devices
Law Firm:        Venable
Case Name:       Sycamore IP Holdings LLC v. Verizon Communications Inc, Case No. 2:16-cv-
                 591-JRG-RSP (U.S.D.C. E.D. Texas)
                 Testifying Expert for Verizon and Level 3.
                 Completed in September 2017.
                 (Expert reports submitted, and deposed.)


Matter:          Patent Infringement for Mobile Devices
Law Firm:        Alston Bird
Case Name:       Huawei Technologies Co. Ltd. V. Nokia Solutions and Networks, Case No. 2:16-
                 cv-0056-JRG-RSP (U.S.D.C. E.D. Texas)
                 Testifying Expert for Nokia.
                 Completed in December 2017.
                 (Expert reports submitted.)


Matter:          Patent Infringement for Mobile Devices
Law Firm:        Quinn Emanuel
Case Name:       Huawei Technologies Co. Ltd. V. Samsung Electronics C. Ltd, Case No. 3:16-cv-
                 02787 (U.S.D.C. N.D. Cal)
                 Testifying Expert for Samsung.
                 Completed in March 2019.

Paul S. Min, Ph.D. Curriculum Vitae

(Expert reports submitted, and deposed.)


| | |
|---|---|
| Matter: | Arbitration for Licensing |
| Law Firm: | Alston Bird |
| Case Name: | Nokia v. LG Electronics, International Chamber of Commerce Arb. No. 21326 |

Testifying Expert for Nokia.
Completed in October 2016.
(Expert reports submitted.)


| | |
|---|---|
| Matter: | Patent Infringement for Mobile Devices |
| Law Firm: | Ropes and Gray |
| Case Name: | Godo Kaisha IP Bridge 1 v. TCL Communication Technology Holdings, Case No. 15-634-SLR-SRF (U.S.D.C.S.D. Delaware.) |

Testifying Expert for IP Bridge.
Completed in October 2018.
(Expert reports submitted, and deposed.)


| | |
|---|---|
| Matter: | Patent Infringement for Mobile Devices |
| Law Firm: | Paul Hastings |
| Case Name: | Odyssey Wireless, Inc,. v. Samsung Electronics Co., Ltd., et al, Case No. 3:15-cv-1738-H-RBB (U.S.D.C.S.D. Cal.) |

Testifying Expert for Samsung.
Completed in October 2016.
(Expert reports submitted.)


| | |
|---|---|
| Matter: | Patent Infringement for Mobile Devices |
| Law Firm: | Greenberg Traurig |
| Case Name: | Mobile Telecommunications Technologies LLC v. Amazon.com, Inc., 2:13-cv-883-JRG-RSP (U.S.D.C. E.D. Texas) |

Testifying Expert for Amazon.
Completed in April 2015.
(Expert reports submitted, and deposed.)


| | |
|---|---|
| Matter: | Patent Infringement for Mobile Devices |
| Law Firm: | Mayer Brown |
| Case Name: | Mobile Telecommunications Technologies LLC v. LG Electronics Mobilecomm U.S.A., Inc., 2:13-cv-947-JRG-RSP (U.S.D.C. E.D. Texas) |

Testifying Expert for LG Electronics Mobilecomm.
Completed in February 2016.
(Expert reports submitted, and deposed.)

Paul S. Min, Ph.D. Curriculum Vitae

| | |
|---|---|
| Matter: | Patent Infringement for Semiconductor Devices |
| Law Firm: | Mayer Brown |
| Case Name: | Inter Parte Reexamination for U.S. Patent Nos. 6,895,520 and 6,899,332 |
| | Expert for LG Electronics. |
| | Completed in February 2016. |
| | (Expert declaration submitted, and deposed.) |

| | |
|---|---|
| Matter: | Patent Infringement in Vehicular Electronics |
| Law Firm: | Gardner, Linn, Burkhart & Flory, L.L.P |
| Case Name: | *Magna Electronics Inc. v. TRW Automotive Holdings Corp. et al.*, Civil Action No. 1:12-cv-00654 (Western District of Michigan), and relating to the action styled *Magna Electronics Inc. v. TRW Automotive Holdings Corp. et al.*, Civil Action No. 1:13-cv-00324 (Western District of Michigan). |
| | Testifying Expert for Magna Electronics |
| | Completed in February 2016. |
| | (Expert reports submitted, and deposed.) |

| | |
|---|---|
| Matter: | Patent Infringement in Electronic Circuits |
| Law Firm: | Ropes and Gray |
| Case Name: | Certain Devices Containing Non-Volatile Memory and Products Containing the Same (USITC Inv. Nos. 337-TA-922) |
| | Testifying Expert for Spansion Inc. |
| | Completed in February 2015. |
| | (Expert reports submitted.) |

| | |
|---|---|
| Matter: | Trade Secret Misappropriation in Software Method for Cable Television Advertisement |
| Law Firm: | Brownstein Hyatt Farber Schreck |
| Case Name: | Cross MediaWorks v. EMT Holdings, USDC Southern District of New York, Case No. 1:14-cv-00561-VSB |
| | Testifying Expert for Cross MediaWorks. |
| | Completed in April 2015. |
| | (Testified during injunction hearing.) |

| | |
|---|---|
| Matter: | Patent Infringement in Vehicular Electronics |
| Law Firm: | Steptoe and Johnson |
| Case Name: | Certain Vision-Based river Assistance System Cameras and Components Thereof (USITC Inv. Nos. 337-TA-899 and 907) |
| | Testifying Expert for Magna Electronics |
| | Completed in February 2015. |
| | (Expert reports submitted, deposed, and testified during trial.) |

| | |
|---|---|
| Matter: | Patent Infringement for Vehicular System |
| Law Firm: | Susman Godfrey |

Case Name:   Eagle Harbor Holdings, LLC, and Mediustech, LLC, v. Ford Motor Company,
3:11-cv-05503-BHS (U.S.D.C. Western District of Washington at Tacoma)
Testifying Expert for Mediustech.
Completed in March 2015.
(Expert reports submitted, deposed, and testified during trial.)

Matter:      Patent Infringement for Communication Networks
Law Firm:    Davis Polk & Wardwell LLP
Case Name:   Sprint Communications Company L.P., v. Comcast Cable Communications, LLC,
Comcast IP Phone, LLC, and Comcast Phone of Kansas, LLC. 2:11-cv-02684-
KHV-DJW (U.S.D.C. Kansas)
Testifying Expert for Comcast.
Retained in March 2012.
(Expert reports submitted, and deposed.)

Matter:      Patent Infringement for Communication Networks
Law Firm:    Quinn Emanuel
Case Name:   France Telecom S.A. v. Marvell Semiconductor, Inc., 12-Civ-4986 (S.D.N.Y.)
Testifying Expert for Marvell.
Completed in September 2014.
(Expert reports submitted, deposed, and testified during trial.)

Matter:      Wireless Image Distribution
Law Firm:    Jones Day
Case Name:   *Inter Partes* Review of U.S. Patent No. 8,437,797
Expert for Google Inc.
Completed in November 2014.
(Expert declaration submitted.)

Matter:      Nonvolatile Semiconductor Memories
Law Firm:    Jones Day
Case Name:   *Inter Partes* Review of U.S. Patent Nos. 8,301,833 and 8,516,187
Expert for SanDisk.
Completed in May 2014.
(Expert declaration submitted.)

Matter:      Communication Protocols for Wireless Device
Law Firm:    Dorsey & Whitney, LLP
Case Name:   Certain Point-To-Point Network Communication Devices and Products
Containing Same (USITC Inv. No. 337-TA-892)
Testifying Expert for Toshiba
Completed in May 2014.
(Expert reports submitted, and deposed.)

Matter:      Patent Infringement for Wireless Networks
Law Firm:    Ropes and Gray

17

Case Name:   In the Matter of Certain Wireless Devices With 3G and/or 4G Capabilities and Components Thereof (USITC Inv. No. 337-TA-868) InterDigital Comms., Inc. v. Huawei Techs. Co., Ltd., No. 13-00008 (D. Del., filed January 2, 2013), InterDigital Comms., Inc. v. ZTE Corp., No. 13-00009 (D. Del., filed January 2, 2013), InterDigital Comms., Inc. v. Nokia Corp., No. 1:13-cv-00010 (D. Del., filed January 2, 2013), InterDigital Comms., Inc. v. Samsung Elec. Co., Ltd., No. 13-00011 (D. Del., filed January 2, 2013)
Testifying Expert for Joint Defense Group.
Completed in February 2014.
(Expert reports submitted, deposed, and testified during trials.)

Matter:   Patent Infringement for Mobile Communication
Law Firm:   Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P.
Case Name:   Certain Digital Media Devices, Including Televisions, Blu-Ray Disc Players, Home Theater Systems, Tablets and Mobile Phones, Components Thereof and Associated Software (USITC Inv. No. 337-TA-882)
Testifying Expert for LG Electronics, Inc.
Completed in February 2014.
(Expert reports submitted, deposed, and testified during trial.)

Matter:   Patent Infringement for Wireless Networks
Law Firm:   Vinson & Elkins LLP
Case Name:   Wi-LAN USA, Inc. and Wi-LAN, Inc. v. Telefonaktiebolaget LM Ericsson and Ericsson, Inc. (USDC: Southern District of FL - Case #1: 12-cv-23569), Wi-LAN USA, Inc. and Wi-LAN, Inc. v. Alcatel-Lucent USA, Inc. (USDC: Southern District of FL - Case #1: 12-cv-23568-Altonaga/Simonton)
Testifying Expert for Wi-LAN.
Completed in May 2015.
(Expert reports submitted, and deposed.)

Matter:   Patent Infringement for Data Storage
Law Firm:   Ropes and Gray, Weil Gotshal
Case Name:   Summit Data Systems, LLC v. EMC Corporation., et al. 1:10-cv-00749-GMS (U.S.D.C. Delaware)
Testifying Expert for EMC Corporation and Netapp, Inc.
Completed in December 2012.
(Expert reports submitted, and deposed.)

Matter:   Patent Infringement for Wireless Mobile Device
Law Firm:   Ashurst Australia
Case Name:   Samsung v. Apple, Australian Federal Court Proceeding No. NSD 1243 of 2011
Testifying Expert for Samsung Electronics.
Completed in December 2012.
(Expert reports submitted, deposed, and testified during trial.)

Matter:   Patent Infringement for Wireless Mobile Devices

Paul S. Min, Ph.D. Curriculum Vitae

Law Firm:       Quinn Emanuel
Case Name:   Apple Inc. v. Samsung Electronics Co., Ltd., et al., 4:11-cv-01846-LHK (N.D. Cal.) and Samsung Electronics Co., Ltd., et al. v. Apple Inc., 4:11-cv-02079 (N.D. Cal.)
Testifying Expert for Samsung Electronics.
Completed in July 2012.
(Expert reports submitted, and deposed.)

Matter:         Patent Infringement for Wireless Mobile Device
Law Firm:       Quinn Emanuel
Case Name:   Certain Electronic Devices, Including Wireless Communication Devices, Portable Music And Data Processing Devices, And Tablet Computer, U.S.I.T.C. Inv. No. 337-TA-794
Testifying Expert for Samsung Electronics.
Completed in June 2012.
(Expert reports submitted, deposed, and testified during trial.)

Matter:         Patent Infringement for Portable Storage Device
Law Firm:       White and Case
Case Name:   CERTAIN UNIVERSAL SERIAL BUS ("USB") PORTABLE STORAGE DEVICES, INCLUDING USB FLASH DRIVES AND COMPONENTS THEREOF, US International Trade Commission Investigation No. 337-TA-788
Testifying Expert Witness for Trek
Completed in May 2012.
(Expert reports submitted, and deposed.)

Matter:         Copyright Infringement for Petroleum Processing Software
Law Firm:       Osha Liang LLP
Case Name:   Aspen Technology, Inc. v. Tekin A. Kunt and M3 Technology, Inc., Case Number:  H-10-1127, US District Court, Texas, Houston Division.
Testifying Expert for M3 Technology, Inc.
Completed in May 2012.
(Expert reports submitted, deposed, and testified during trial.)

Matter:         Trade Secret Misappropriation for DC-DC converter
Law Firm:       Covington & Burling, Haynes Boone
Case Name:   Certain DC—DC Controllers and Products Containing Same, US International Trade Commission Investigation No. 337-TA-698
Testifying Expert for UPI.
Completed in March 2012.
(Expert reports submitted, deposed, and testified during trial.)

Matter:         Patent Infringement for Parallel Processor
Law Firm:       Orrick, Herrington, & Sutcliffe. Kirkland and Ellis.
Case Name:   BIAX Corporation v. Nvidia and Sony Civil Action No. 09-cv-01257-PAB-MEH
Testifying Expert for Nvidia and Sony

Paul S. Min, Ph.D. Curriculum Vitae

Completed in March 2012.
(Expert reports submitted, and deposed.)

Matter:       Patent Infringement for Call Center Technology
Law Firms:    Duffy, Sweeney, and Scott.  Foley Lardner.
Case Name:    Ronald Katz Technology Licensing v. Citizens Financial Group 7-ML-1816-C
              RGK (FFM)
              Testifying Expert Witness for Citizens Financial Group.
              Completed in 2011.
              (Expert reports submitted, and deposed.)

Matter:       Patent Infringement for Storage Area Network
Law Firm:     DLA Piper
Case Name:    Network Appliance, Inc., v. Sun Microsystems, Inc., Case Number:  C-07-06053
              EDL, US District Court, Northern District of California, San Francisco Division.
              Testifying Expert for Sun Microsystems, Inc.
              Completed in 2010.
              (Expert reports submitted, and deposed.)

Matter:       Patent Infringement for Flat Panel Display Controller
Law Firm:     Jones Day
Case Name:    Certain Video Displays, Components Thereof, and Products Containing Same, US
              International Trade Commission Investigation No. 337-TA-687
              Testifying Expert for Vizio, Inc.
              Completed in 2010.
              (Expert reports submitted, deposed, and testified during trial.)

Matter:       Patent Infringement for Call Center Technology
Law Firms:    Foley Lardner
Case Name:    Ronald Katz Technology Licensing v. US Bank 7-ML-1816-C RGK (FFM)
              Testifying Expert Witness for US Bank
              Completed in May 2009.
              (Expert reports submitted, and deposed.)

Matter:       Patent Infringement for USB to VGA Converter
Law Firm:     Wang Hartmann, Gibbs, & Cauley, P.C.
Case Name:    Displaylink Corporation v. Magic Control Technology Corporation, Case No.
              5:07-CV-01998-RMW, US District Court, Northern District of California, San
              Francisco Division.
              Testifying Expert for Magic Control Technology Corporation
              Completed in 2009.
              (Expert reports submitted, and deposed.)

Matter:       Patent Infringement for Flash Memory
Law Firm:     Jones Day and Wilson Sansini

Paul S. Min, Ph.D. Curriculum Vitae

| | |
|---|---|
| Case Name: | Certain Flash Memory Controllers, Drives, Memory Card, and Media Players and Products Containing Same.  US International Trade Commission Investigation No. 337-TA-619 |
| | Testifying Expert for SanDisk Corporation. |
| | Completed in 2008. |
| | (Expert reports submitted, deposed, and testified during trial.) |

| | |
|---|---|
| Matter: | Patent Infringement for Semiconductor Packaging |
| Law Firm: | Jones Day |
| Case Name: | Certain Semiconductor Chips with Minimized Chip Package Size and Products Containing the Same.  US International Trade Commission Investigation No. 337-TA-605 |
| | Testifying Expert for Freescale Semiconductor |
| | Completed in 2008. |
| | (Expert reports submitted, deposed, and testified during trial.) |

| | |
|---|---|
| Matter: | Patent Infringement for Automatic Switching System |
| Law Firms: | Jones Day, and Heller Ehrman, LLP. |
| Case Name: | ATEN International Co., Ltd and ATEN Technology, Inc.  v. Belkin Corporation, Belkin Logistics, Inc. and  Emine Technology Co., Ltd.  US International Trade Commission Investigation No. Ltd 337-TA-589 |
| | Testifying Expert for Belkin Corporation, Belkin Logistics, Inc., and Emine Technology Co., Ltd. |
| | Completed in 2007. |
| | (Expert reports submitted, deposed, and testified during trial.) |

| | |
|---|---|
| Matter: | Patent Infringement for Dual Mode Communication |
| Law Firm: | Wilmer Cutler Pickering Hale and Dorr, LLP |
| Case Name: | Broadcom Corporation v. Qualcomm Incorporated SACV05-467-JVS (RNBx) |
| | Testifying Expert Witness for Broadcom Corporation |
| | Completed in 2007. |
| | (Expert reports submitted, deposed, and testified during trial.) |