1  CLEMENT SETH ROBERTS (STATE BAR NO. 209203)
   croberts@orrick.com
2  BAS DE BLANK (STATE BAR NO. 191487)
   basdeblank@orrick.com
3  ALYSSA CARIDIS (STATE BAR NO. 260103)
   acaridis@orrick.com
4  EVAN D. BREWER (STATE BAR NO. 304411)
   ebrewer@orrick.com
5  ORRICK, HERRINGTON & SUTCLIFFE LLP
   The Orrick Building
6  405 Howard Street
   San Francisco, CA 94105-2669
7  Telephone:    +1 415 773 5700
   Facsimile:    +1 415 773 5759
8
9  GEORGE I. LEE (*pro hac vice*)
   lee@ls3ip.com
10 SEAN M. SULLIVAN (*pro hac vice*)
   sullivan@ls3ip.com
11 RORY P. SHEA (*pro hac vice*)
   shea@ls3ip.com
12 J. DAN SMITH (*pro hac vice*)
   smith@ls3ip.com
13 LEE SULLIVAN SHEA & SMITH LLP
   656 W Randolph St., Floor 5W
14 Chicago, IL 60661
   Telephone:    +1 312 754 0002
15 Facsimile:    +1 312 754 0003
16 *Attorneys for Defendant Sonos, Inc.*

17                    UNITED STATES DISTRICT COURT

18                  NORTHERN DISTRICT OF CALIFORNIA

19                     SAN FRANCISCO DIVISION

20

21 GOOGLE LLC,                          Case No. 3:20-cv-03845-EMC

22            Plaintiff,                **SONOS, INC.'S MOTION FOR
                                        JUDGMENT ON THE PLEADINGS
23       v.                             REGARDING GOOGLE LLC'S THIRD
                                        CAUSE OF ACTION PURSUANT TO
24 SONOS, INC.,                         FED. R. CIV. P. 12(C) AND 35 U.S.C.
                                        § 101
25            Defendant.
                                        Date: January 6, 2022
26                                      Time: 1:30 p.m.
                                        Courtroom: 5, 17th Floor
27

28

                                        SONOS'S MOT. FOR JUDGEMENT ON THE PLEADINGS
                                        3:20-cv-03845-EMC

1

### TABLE OF CONTENTS

2  NOTICE OF MOTION ....................................................................................................... 1

3  STATEMENT OF THE RELIEF REQUESTED ............................................................. 1

4  MEMORANDUM OF POINTS AND AUTHORITIES .................................................. 1

5  I.   INTRODUCTION ....................................................................................................... 1

6  II.   STATEMENT OF ISSUES ...................................................................................... 2

7  III.   FACTUAL BACKGROUND ................................................................................. 2

8  A.   The Asserted Patent.............................................................................................. 2

9  B.   The Litigation........................................................................................................ 2

10  C.   The Asserted Claims ........................................................................................... 3

11  IV.   LEGAL STANDARD ............................................................................................. 3

12  V.   ARGUMENT ............................................................................................................. 4

13  A.   The Alice Step 1: the '375 Patent is Directed to an Abstract Idea...................... 4

14  i.   *Claim 1 Is Directed To Abstract Data Manipulation* ........................................ 4

15  ii.   *Courts Consistently Find Analogous Claims Abstract* ................................. 6

16  iii.   *The Cases Finding Claims Eligible at Step 1 Are Not Analogous*.............................. 11

17

18  B.   *Alice* Step 2: the '375 Patent Lacks an Inventive Concept ................................ 12

19  C.   The Remaining Claims Do Not Alter the Analysis............................................. 14

20  VI.   CONCLUSION ........................................................................................................ 16

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affinity Labs of Texas, LLC v. DirecTV, LLC,*
  838 F.3d 1253 (Fed. Cir. 2016) ................................................................ 4

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l,*
  573 U.S. 208 (2014) ................................................................... *passim*

*Berkheimer v. HP Inc.,*
  890 F.3d 1369 (Fed. Cir. 2018) ........................................................... 4, 12

*In re Bilski,*
  545 F.3d 943 (Fed. Cir. 2008) ................................................................ 3

*Boom! Payments, Inc. v. Stripe, Inc.,*
  No. 19-CV-00590-VC, 2019 WL 6605314 (N.D. Cal. Nov. 19, 2019) ................................ 16

*buySAFE, Inc. v. Google, Inc.,*
  765 F.3d 1350 (Fed. Cir. 2014) ............................................................. 4

*ChargePoint, Inc. v. SemaConnect, Inc.,*
  920 F.3d 759 (Fed. Cir. 2019) ................................................. 6, 11, 12, 13

*Clarilogic, Inc. v. FormFree Holdings Corp.,*
  681 Fed. App'x 950 (Fed. Cir. 2017) ......................................................... 9

*Cleveland Clinic Found. v. True Health Diagnostics LLC,*
  859 F.3d 1352 (Fed. Cir. 2017) .............................................................. 3

*Cogent Medicine, Inc. v. Elsevier Inc.,*
  70 F. Supp. 3d 1058 (N.D. Cal. 2014) ........................................................ 9

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.,*
  776 F.3d 1343 (Fed. Cir. 2014) ........................................................... 3, 16

*DDR Holdings, LLC v. Hotels.com, L.P.,*
  773 F.3d 1245 (Fed.Cir.2014) ......................................................... 4, 12, 13

*Dropbox, Inc. v. Synchronoss Techs., Inc.,*
  815 F. App'x 529 (Fed. Cir. 2020) .......................................................... 6

*Elec. Power Grp., LLC v. Alstom S.A.,*
  830 F.3d 1350 (Fed. Cir. 2016) ..................................................... *passim*

*Enfish, LLC v. Microsoft Corp.,*
  822 F.3d 1327 (Fed. Cir. 2016) ............................................................ 11

*FairWarning IP, LLC v. Iatric Systems, Inc.,*
  839 F.3d 1089 (Fed. Cir. 2016) ............................................................ 10

*Genetic Techs. Ltd. v. Merial LLC,*
  818 F.3d 1369 (Fed. Cir. 2016) ............................................................. 3

ii

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
    792 F.3d 1363 (Fed. Cir. 2015)................................................................................ 4

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*,
    850 F.3d 1332 (Fed. Cir. 2017).............................................................................. 10

*Intellectual Ventures I LLC v. Erie Indemnity Company*,
    850 F.3d 1315 (Fed. Cir. 2017)................................................................................ 9

*Interval Licensing LLC v. AOL, Inc.*,
    896 F.3d 1335 (Fed. Cir. 2018).............................................................................. 10

*Magna Mirrors of Am., Inc. v. Dura Glob. Techs.*,
    LLC, No. 10-12283, 2011 WL 1120265 (E.D. Mich. Mar. 24, 2011)..................... 3

*Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*,
    811 F.3d 1314 (Fed. Cir. 2016)......................................................................... 8, 13

*MyMail, Ltd. v. OoVoo, LLC*,
    No. 17-CV-04487-LHK, 2020 WL 2219036 (N.D. Cal. May 7, 2020) ................. 16

*Prism Techs. LLC v. T-Mobile USA, Inc.*,
    696 F. App'x 1014 (Fed. Cir. 2017) ..................................................................... 16

*RingCentral, Inc. v. Dialpad, Inc.*,
    372 F. Supp. 3d 988 (N.D. Cal. 2019) ...................................................... 6, 7, 8, 11

*SAP Am., Inc., v. InvestPic, LLC*,
    898 F.3d 1161 (Fed. Cir. 2018).............................................................................. 12

*SiRF Tech., Inc. v. Int'l Trade Comm'n*,
    601 F.3d 1319 (Fed. Cir. 2010)................................................................................ 3

*In re TLI Commc'ns LLC Patent Litig.*,
    823 F.3d 607 (Fed. Cir. 2016)............................................................................... 13

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014)......................................................................... 15, 16

*West View Research, LLC v. Audi AG*,
    685 F. App'x 923 (Fed. Cir. 2017) .................................................................. 10, 11

*Whitepages, Inc. v. Isaacs*,
    196 F. Supp. 3d 1128 (N.D. Cal. 2016) ................................................................ 15

**Statutes**

35 U.S.C. § 101 ..................................................................................... 1, 2, 3, 4

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ................................................................................... 3

Fed. R. Civ. P. 12(c) .............................................................................. 1, 2, 3

Fed. R. Evid. 201 ............................................................................................. 3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS:

      PLEASE TAKE NOTICE that on January 6, 2022 at 1:30 p.m., or as soon thereafter may be heard in Courtroom 5 on the 17th Floor of the San Francisco Courthouse, Defendant Sonos, Inc. ("Sonos") will, and hereby does, move for judgment on the pleadings regarding Plaintiff Google LLC's ("Google") claim for infringement of U.S. Patent No. 10,140,375 ('375 Patent; Dkt. No. 1-12) under Fed. R. Civ. P. 12(c). This motion is made under Federal Rule of Civil procedure 12(c) because the '375 Patent is directed to patent-ineligible subject matter and therefore Sonos is entitled to judgment on the pleadings regarding the Third Claim for Relief in Google's Amended Complaint and is based upon this Notice, the Memorandum of Points and Authorities, the Declaration of Evan D. Brewer ("Brewer Decl."), and exhibits thereto, all documents in the Court's file, and such other written or oral argument as may be presented at or before the time this motion is heard by the Court.

**STATEMENT OF THE RELIEF REQUESTED**

      Sonos requests that this Court dismiss Google's claim for infringement of the '375 Patent under Fed. R. Civ. P. 12(c) and 35 U.S.C. § 101.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

      Patent law does not protect abstract ideas, even when they are claimed in a particular context or in connection with conventional technology. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 223 (2014). The '375 Patent violates this principle. It is directed to the abstract idea of collecting, organizing, and presenting information in response to user input. To this, the claims add only generic computer hardware, which the specification acknowledges to be conventionally arranged. The specification also admits that propogating changes to maintain consistency (*i.e.*, synchronization) and search (*i.e.*, presenting information in response to a query) were well-known in the art of the time. This Court, and the Federal Circuit have found analogous claims to be impermissibly abstract under 35 U.S.C. § 101. Now that the Court has construed the disputed claims, there is no reasonable debate as to the scope and subject matter of the '375 Patent. The

1 Court should find the '375 Patent invalid as directed to an unpatentable abstract idea and dismiss

2 Google's Third Claim for relief under Federal Rule of Civil Procedure 12(c).

3 **II.    STATEMENT OF ISSUES**

4 Whether Google's claim for infringement of the '375 Patent should be dismissed on the

5 ground that the '375 Patent is subject-matter ineligible under 35 U.S.C. § 101.

6 **III.    FACTUAL BACKGROUND**

7 **A.    The Asserted Patent**

8 The '375 Patent, entitled "Personalized Network Searching," was filed on December 26,

9 2017 as the latest in a chain of continuations which began on December 3, 2003. *See* Declaration

10 of Evan Brewer ("Brewer Decl.") Ex. A ('375 Patent). The patent issued on November 27, 2018.

11 The '375 family of patents includes U.S. Pat Nos. 9,679,067, 8,886,626, 8,612,415, 8,166,017,

12 8,015,170, and 7,523,096. *Id*. Each shares a nearly identical specification and title. As a result,

13 much of the specification relates to alleged inventions that are not claimed in the '375 Patent. For

14 example, the specification discusses the concept of creating "ratings" of bookmarks, *see, e.g.*,

15 '375 Patent at 6:15-22, but this concept is claimed in other patents in the family, and not in the

16 '375 Patent. *See, e.g*., Brewer Decl., Ex. B (U.S. Pat. No. 8,015,170), at claim 19 (claiming a

17 device that assigns ratings, changes ratings, and takes actions based on the ratings).

18 **B.    The Litigation**

19 On June 11, 2020, Google brought this suit against Sonos, alleging infringement of five

20 patents. *See* Dkt. No. 1. Google filed an Amended Complaint on August 26, 2020. Dkt. No. 35

21 ("Compl."). Two of the patents have been dismissed—one for lack of subject-matter eligibility

22 and one voluntarily. *See* Dkt. Nos. 60 and 107 (dismissing U.S. Patent Nos. 8,583,489 and

23 7,065,206 respectively).

24 On June 7, 2021, the Court issued a claim construction order that addressed two terms

25 from the '375 Patent. *See* Dkt. No. 108. The Amended Complaint does not identify any aspect of

26 the asserted claims of the '375 Patent that is allegedly inventive, nor does it contain factual

27 allegations directed to subject-matter eligibility.

28

SONOS'S MOT. FOR JUDGEMENT ON THE PLEADINGS
3:20-cv-03845-EMC

1

**C.  The Asserted Claims**

2      Google's Amended Complaint alleges that Sonos infringes "one or more claims of the

3  '375 Patent," but discusses only claim 1 as representative of Sonos's alleged infringement.

4  Compl. ¶¶ 61-68. Google's infringement contentions assert that Sonos infringes claims 1-11 and

5  13-20. Of these, claims 1 and 17 are independent.

6      This motion, like Google's Amended Complaint, focuses on claim 1 as representative.

7  Claim 1 is representative because the asserted claims "are substantially similar and linked to the

8  same abstract idea." C*ontent Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776

9  F.3d 1343, 1348 (Fed. Cir. 2014) (explaining that addressing each claim is "unnecessary" when

10  the claims are "substantially similar and linked to the same abstract idea"); *Cleveland Clinic*

11  *Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1359-60 (Fed. Cir. 2017); *see infra*

12  Section V.C. Thus, for example, Google's infringement contentions simply say "see claim 1"

13  when charting the parallel limitations in the other independent claim.[1] The remaining dependent

14  claims are also linked to the same abstract idea and contain only small differences and additions,

15  all of which are discussed below in Section V.C.

16  **IV.  LEGAL STANDARD**

17      "Whether a claim is drawn to patent-eligible subject matter under § 101 is a threshold

18  inquiry" and "an issue of law." *In re Bilski*, 545 F.3d 943, 950 (Fed. Cir. 2008), *aff'd, Bilski v.*

19  *Kappos*, 561 U.S. 593, 602 (U.S. 2010) (describing § 101 as "a threshold test"); *SiRF Tech., Inc.*

20  *v. Int'l Trade Comm'n,* 601 F.3d 1319, 1331 (Fed. Cir. 2010) ("patent-eligible subject matter is an

21  issue of law"). For this reason, the Federal circuit has "repeatedly recognized that in many cases it

22  is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6)

23  motion." *Genetic Techs. Ltd. v. Merial LLC*, 818 F.3d 1369, 1373 (Fed. Cir. 2016). Similarly, a

24  district court may wait until after claim construction and then resolve the issue of patent eligibility

25

26

27  [1] Courts have considered infringement contentions on a motion under Fed. R. Civ. P. 12(c). *See, e.g.*, *Magna Mirrors of Am., Inc. v. Dura Glob. Techs.*, LLC, No. 10-12283, 2011 WL 1120265, at *3 (E.D. Mich. Mar. 24, 2011). The Court may also take judicial notice of Google's

28  infringement contentions. *See, e.g.*, Fed. R. Evid. 201.

under § 101 by way of a motion for judgment on the pleadings. *See e.g., buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1352 (Fed. Cir. 2014).

The Supreme Court has set forth a two-part test for determining whether a patent recites ineligible subject matter under § 101. *Alice*, 573 U.S. at 218. At step one, the Court must determine if the patented claims are "directed to" an abstract idea. *Id.* "The 'abstract idea' step of the [*Alice*] inquiry calls upon [the Court] to look at the focus of the claimed advance over the prior art to determine if the claim's character as a whole is directed to excluded subject matter." *Affinity Labs of Texas, LLC v. DirecTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016). In performing this analysis, courts often compare a claim to "the ideas found to be abstract in other cases before the Supreme Court and [the Federal Circuit]." *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1367 (Fed. Cir. 2015).

If the claim is directed to an abstract idea, the Court proceeds to step two and asks whether the claim elements, considered "both individually and 'as an ordered combination,'" recite an "inventive concept" that is "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [abstract idea] itself." *Alice*, 573 U.S. at 217-18. However, the inventive concept cannot be either (i) an abstract idea in itself or (ii) a generic computer implementation. *Berkheimer v. HP Inc.*, 890 F.3d 1369, 1374 (Fed. Cir. 2018) ("[T]he 'inventive concept' cannot be the abstract idea itself."); *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1256 (Fed.Cir.2014) ("[A]fter *Alice*, there can remain no doubt: recitation of generic computer limitations does not make an otherwise ineligible claim patent-eligible.").

## V.   ARGUMENT

### A.   The Alice Step 1: the '375 Patent is Directed to an Abstract Idea

#### i.   *Claim 1 Is Directed To Abstract Data Manipulation*

The '375 Patent is entitled "Personalized Network Searching." Despite its name, the '375 Patent claims a method for propogating changes to and searching a set of bookmarks. This motion uses claim 1 as representative but, for thoroughness, addresses the small variances found in the other asserted claims. Claim 1 recites:

1. A computer-implemented method performed by at least one processor, the computer-implemented method comprising:

[a] identifying a user;

[b] receiving user input from the user through an interface of a client device, the user input indicating a modification to a set of favorite items for the user;

[c] in response to receiving the user input:

modifying the set of favorite items stored for the user in a client-side storage of the client device, the modification to the set of favorite items initiating a synchronization process to synchronize the set of favorite items modified responsive to the user input with a server-side storage system configured to synchronize favorite items for the user with one or more other client devices, the server-side storage system remote from the client-side storage;

[d] presenting through a single interface of the client device, in response to a query from the user, a combined search results set generated via one or more search sub-processes, the combined search results set including at least two of:

one or more favorite items from the set of favorite items synchronized for the user;

one or more search results from a first global index; or

one or more search results from a second global index.

As shown above, claim 1 recites a method consisting of four functional steps: [a] identifying a user; [b] receiving user input indicating a modification to a set of favorites; [c] modifying the set of favorites and propagating those modifications to other locations where the set of favorites is stored (*i.e.*, the claimed "synchronization process"); and [d] in a response to a user query, presenting search results from either two global indices or one global index and the user's set of favorites.[2] The first three of these functional steps comprise a method of file synchronization, while the final step calls for presenting search results in response to a query. Under the Court's claim construction, that final step can be met by presenting information returned only from "global" indices, such as an index of the Internet as maintained by the Google search engine. *See* Dkt. No. 108, at 16-18. Together, much like the claims found patent ineligible in *Electric Power*, these four steps are directed purely to abstract data manipulation—*i.e.*, to

---

[2] The Court construed "combined search results set" such that it may *optionally* include personalized search results but may also include *only* global index search results. *See* Dkt. No. 108, at 16-18.

1    collecting, organizing, and presenting information in response to user input. *See Elec. Power*

2    *Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1351 (Fed. Cir. 2016).

3         This conclusion can also be shown by noting that the claims do not provide a *technical*

4    *solution*. For example, insofar as the problem the first several claim limitations seek to solve is to

5    align the favorite items on the client and server sides, they say nothing about *how* to solve that

6    problem and instead mearly say that the result happens. Similarly, insofar as Google contends that

7    the problem addressed by the last limitation is efficiently searching multiple indexes or presenting

8    results from multiple searches in a comprehensible way, the claims do not say *how* that result is

9    achieved – only that it does happen. *See, Dropbox, Inc. v. Synchronoss Techs., Inc.*, 815 F. App'x

10   529, 533 (Fed. Cir. 2020) ("The patent has to describe *how* to solve the problem in a manner that

11   encompasses something more than the 'principle in the abstract.'"); *ChargePoint, Inc. v.*

12   *SemaConnect, Inc.*, 920 F.3d 759, 769 (Fed. Cir. 2019) (invention not patent eligible if the

13   "claims were drafted in such a result-oriented way that they amounted to encompassing the

14   'principle in the abstract' no matter how implemented") (internal quotation marks and citation

15   omitted).

16              *ii.   Courts Consistently Find Analogous Claims Abstract*

17        On its face, claim 1 is directed to functions that could be performed by a human without a

18   computer, which is the type of claim courts routinely find to be directed to patent-ineligible

19   abstract ideas. *See RingCentral, Inc. v. Dialpad, Inc.*, 372 F. Supp. 3d 988, 1004 (N.D. Cal.

20   2019). In fact, this Court recently invalidated analogous claims in *RingCentral* that are directed to

21   strikingly similar subject matter (*i.e.*, propagating information stored at different locations), but

22   the *RingCentral* claims were far more specific as to how the propagation was to be performed

23   than the claims at issue here.[3] *Id.* The Court explained that, despite their detail, the "functions

24

25   ---
     [3] One representative claim at issue in *RingCentral* recited, *inter alia*, "a synchronization
     application configured to: [1] send a network request to the server over the data network; [2]

26   receive a network response [including state information about stored messages]; [3] identify state
     information about the plurality of client messages in the client message storage module; [4]

27   perform a discrepancy assessment between the state information about the plurality of server
     messages and the state information about the plurality of client messages; [5] create a list of one
     or more synchronization actions based on results of the discrepancy assessment; and [6] perform

28   the synchronization actions in the list." *RingCentral*, 372 F. Supp. 3d at 1002-1003.

1   described in the claims could all be performed by humans" and therefore, the claims were

2   "directed to patent-ineligible abstract ideas." *Id.*

3       [I]magine a person who has two mobile devices (i.e., clients),
        which can receive both voicemail and fax messages, but who also
4       keeps a master copy of his or her voicemail and fax messages on a
        desktop computer (i.e., the equivalent of a server copy). Imagine
5       further that messages on all of those devices are stored in various
        electronic folders or mailboxes (i.e., clusters). That person could
6       decide at any time to synchronize the messages stored on the
        desktop with the messages on one or both of the mobile devices. To
7       do so, the person – or an assistant to whom he or she made a
        synchronization request – could compare each folder or mailbox on
8       the desktop with each folder or mailbox on the first mobile device,
        noting any discrepancies, including when the desktop and mobile
9       device showed different read or unread statuses for a particular
        message. The person could then synchronize the desktop copy with
10      the copy on the first mobile device, making changes only where
        required, and then repeat the process for the second mobile device.
11

12   *Id.*

13       The same analysis applies to the '375 Patent. Setting aside the generic computer

14   components, claim 1 recites abstract information collection, analysis, and presentation that could

15   be performed by a person without the use of a computer and that provides no technical solution to

16   any technical problem.

17       For example, imagine a family that keeps a hardcopy of the Yellow Pages that has a

18   section devoted to restaurants. Imagine further that the family keeps a Post-it Note attached to the

19   Yellow Pages that identifies each family member's favorite restaurants. Now imagine the

20   daughter dined at one of her identified favorite restaurants, and upon return, the father looked at

21   his daughter (*i.e.*, [a] identifying a user) and asked how her experience was at her favorite

22   restaurant. She responded that she had a horrible experience and vowed never to return (*i.e.*, [b]

23   receiving an indication to modify a set of favorites for the user). In response to that conversation,

24   the father committed to memory that the restaurant was no longer one of his daughter's favorites

25   (*i.e.*, [c] modifying the set of favorite items stored for the user in a client-side storage) and then

26   proceeded to use a pencil and eraser to update the Post-it Note to reflect his daughter's changed

27   list of favorite restaurants for the rest of the family to see (*i.e.*, [c] initiating a synchronization

28   process to synchronize the set of favorite items with a server-side storage). Sometime later, in

1    response to a request from the daughter for a dinner recommendation, the father recommended a

2    couple of restaurants, one from the daughter's favorite restaurants listed on the Post-it Note and

3    one found in the Yellow Pages (*i.e.*, [d] presenting, in response to a query, combined search

4    results).

5            Tellingly, *all* of these information collecting, analyzing, and presenting activities are age-

6    old human-centric processes; people have kept lists mentally as well as on paper, propagated the

7    information on those lists, and combined information from various sources to answer questions

8    since the preindustrial age, if not earlier.[4] As such, claim 1 of the '375 Patent, like the

9    *RingCentral* claims, is directed to a patent-ineligible abstract idea. *See also, e.g.*, *Mortg. Grader,*

10   *Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1324 (Fed. Cir. 2016) (finding an abstract

11   idea where a claim's steps "could all be performed by humans without a computer").

12           As alluded to above, the Federal Circuit also invalidated analogous claims in *Electric*

13   *Power,* 830 F.3d at 1351. The method claimed in that case called for receiving data from various

14   sources, detecting and analyzing events based on the data, displaying the results of that analysis,

15   updating the results in real time, and deriving a reliability indicator based on the real-time

16   measurements and other metrics. *Id*. at 1351-52. The court found the claims were directed to a

17   "familiar class" of patent-ineligible concepts; "the combination of th[e] abstract-idea processes ...

18   of ***gathering and analyzing information*** of a specified content, then ***displaying the results***." *Id.*

19   at 1353-54 (emphasis added). Specifically, the Federal Circuit explained that: (i) information is an

20   intangible, and so "collecting information, including when limited to a particular content (which

21   does not change its character as information) [is] within the realm of abstract ideas"; (ii)

22   "analyzing information by steps people go through in their minds, or by mathematical algorithms,

23   without more, [are] essentially mental processes within the abstract-idea category"; and (iii)

24   "presenting the results of abstract processes of collecting and analyzing information, without

25

26

_____

27   [4] Zenodotus of Ephesus, for example, is famous for curating and collating the Homeric poems
     while serving as the first librarian at the Library of Alexandria. You can readily imagine him
     performing the claimed steps, including providing search results from what might have been the
28   first true "global index."

1   more (such as identifying a particular tool for presentation), is abstract as an ancillary part of such

2   collection and analysis." *Id*. at 1353-54.

3        Like the claims in *Electric Power*, claim 1 of the '375 Patent is directed to the "familiar

4   class" of abstract processes, namely gathering and analyzing information and presenting the

5   results. *Id*. As in *Electric Power*, claim 1 of the '375 Patent does "not go beyond requiring the

6   collection, analysis, and display of available information in a particular field, [and] stating those

7   functions in general terms, without limiting them to technical means for performing the functions

8   that are arguably an advance over conventional computer and network technology." *Id*. at 1351;

9   *see also Clarilogic, Inc. v. FormFree Holdings Corp*., 681 Fed. App'x 950, 954 (Fed. Cir. 2017)

10  ("[A] method for collection, analysis, and generation of information reports, where the claims are

11  not limited to how the collected information is analyzed or reformed, is the height of

12  abstraction."). And, as in *Electric Power*, the fact that claim 1 is "limited to a particular content"

13  (*i.e.*, to favorites and bookmarks)[5] does not change the result because the type of information

14  collected or manipulated "does not change its character as information."  *Elec. Power*, 830 F.3d at

15  1353.

16        Similarly, in *Intellectual Ventures I LLC v. Erie Indemnity Company*, the Federal Circuit

17  found abstract claims directed to "creating an index and using that index to search for and retrieve

18  data." 850 F.3d 1315, 1327 (Fed. Cir. 2017). The court explained that claims which "merely

19  collect, classify, or otherwise filter data" are abstract. *Id.* Claim 1 of the '375 Patent has slightly

20  different functional steps, but it is directed to the same *kind* of search and retrieval process found

21  abstract in *Intellectual Ventures I LLC*. *See also, e.g., Cogent Medicine, Inc. v. Elsevier Inc.*, 70 F.

22  Supp. 3d 1058, 1063-64 (N.D. Cal. 2014) (claims directed to "maintaining and searching a library

23  of information" held abstract because they were "little different than the basic concept of

24  organizing a physical library" and merely "describe[d] a computerized method of performing the

25

26

---

27  [5] Only steps [b] and [c] of claim 1 are even limited to the context of favorites and bookmarks.
Step [a] just says to identify a user and step [d] encompasses searching "global indices," which
28  includes searching the Internet generally. *See, e.g.*, '375 Patent at 4:14-16 (discussing use of the
"Google search engine" for performing the final step in claim 1); *see also* Dkt. No. 108 at 16-18.

SONOS'S MOT. FOR JUDGEMENT ON THE PLEADINGS
                                                  3:20-cv-03845-EMC

1    same task"); *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1340 (Fed.

2    Cir. 2017) (holding abstract claims "directed to ... collecting, displaying, and manipulating data").

3         *Interval Licensing* is also analogous. In that case the Federal Circuit held ineligible a

4    claim directed to an "attention manager" that "provide[ed] information to a person without

5    interfering with the person's primary activity." *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d

6    1335, 1344 (Fed. Cir. 2018). The claim comprised various instructions for enabling: (i)

7    "acquisition of a set of content data from a specified source"; (ii) "provision of a user interface

8    that allows a person to request the set of content data"; (iii) "display of the image or images

9    generated from the set of content data"; and (iv) control over when to display the acquired

10   content, for how long, and then displaying it. *Id.* at 1340. The court found the claim abstract

11   because it was "directed to … the result-centric construction of the claimed 'attention manager,'"

12   and recited only "generic and conventional information acquisition and organization steps that are

13   connected to, but do not convert, the abstract idea … into a particular conception of how to carry

14   out that concept." *Id.* at 1344-46; *see id.* at 1345. The same is true here. Claim 1 recites steps for

15   (i) acquiring data (*i.e.*, modifications to a set of favorites and the search results), (ii) providing a

16   user interface that allows the user to request data (the "interface of a client device"), and (iii)

17   display the acquired content (*i.e.*, by presenting the results of a search, which may include

18   information stored in the set of favorites). Claim 1 is therefore abstract in the same way and for

19   the same reason as the claims in *Interval Licensing*.

20        Likewise, in *FairWarning IP, LLC v. Iatric Systems, Inc.* the Federal Circuit invalidated

21   claims directed to collecting information about access to a patient's personal health, analyzing

22   that information to determine whether there was improper access, and providing a notification if

23   improper access occurred. 839 F.3d 1089, 1093 (Fed. Cir. 2016). The court explained that the

24   claimed method simply recited information collection and analysis (collecting access information

25   and detecting misuse) and then presenting the results (notifying a user when misuse is detected).

26   *Id.* at 1093-94. The '375 Patent is similar but requires less because the data collection and

27   organization steps do not affect the subsequent presentation step aside from the fact that the

28   presented data *may* be from the set of favorites or bookmarks. *See West View Research, LLC v.*

1   *Audi AG*, 685 F. App'x 923, 925 (Fed. Cir. 2017) (claims that "do not go beyond receiving or

2   collecting data queries, analyzing the data query, retrieving and processing the information

3   constituting a response to the initial data query, and generating a visual or audio response to the

4   initial data query" fall into the "familiar class of claims directed to a patent-ineligible concept.").

5                   *iii.   The Cases Finding Claims Eligible at Step 1 Are Not Analogous*

6               Otherwise abstract ideas may sometimes be eligible for patenting where the challenged

7   claims are directed to a specific technical improvement in computer functionality. For example, in

8   *Enfish, LLC v. Microsoft Corp.*, claims directed to a "self-referential" database that improved the

9   way computers stored and retrieved data in memory were held to be patent-eligible. 822 F.3d

10  1327, 1334-39 (Fed. Cir. 2016). The patent at issue in *Enfish* specifically claimed a particular

11  technical implementation of a self-referential table, reciting limitations which defined the tables'

12  structure. *Id*. at 1337-38.

13              The claims of the '375 Patent are not analogous. Unlike *Enfish*, the claims of the '375

14  Patent do not recite a novel data structure or a technical improvement to a computer. Put

15  differently, nothing in claim 1 is concerned with improving the functioning of a client device,

16  server, computer application, bookmark management or search from a ***technical*** standpoint.

17  What's more, nothing in the specification of the '375 Patent contends that the claimed functions

18  provide a technological improvement. *See, e.g.*, *RingCentral*, 372 F. Supp. 3d at 1003

19  (contrasting specification corresponding to claims Court ultimately found patent-ineligible with a

20  different specification which had an "'express focus' on technological improvements" and was

21  found patent-eligible). Nor does the Amended Complaint allege that the claims of the '375 Patent

22  are directed to a specific technical improvement in computer functionality. *See generally,* Compl.

23  at ¶¶ 61-68. Thus, for example, neither the patent nor the Amended Complaint suggest that any of

24  the recited computer components are "improved from a technical perspective" or "would operate

25  differently" from other similar components. *ChargePoint*, 920 F.3d at 768. To the contrary, and

26  as discussed further in connection with the second step of the *Alice* analysis, the '375 Patent goes

27  out of its way to stress that both the hardware and software components recited in the claim are

28  generic and conventional.

SONOS'S MOT. FOR JUDGEMENT ON THE PLEADINGS
3:20-cv-03845-EMC

1    Claims have also been found eligible at step one where they are directed to a specific

2    technical solution to a technical problem, as in the case of, *e.g., DDR Holdings, LLC v.*

3    *Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014), where the claims were directed to an "Internet-

4    centric" solution. In that case, the Federal Circuit found patent-eligible claims directed to a

5    system for "generating a composite web page that combines certain visual elements of a 'host'

6    website with content of a third-party merchant," giving "the viewer of the page the impression

7    that she is viewing pages served by the host website." *Id.* at 1248. The Federal Circuit found the

8    claims eligible because they were specifically directed to providing an "Internet-centric" solution

9    and did so through a claimed technique that "[overrode] the routine and conventional sequence of

10   technical events ordinarily triggered by the click of a hyperlink." *Id.* at 1258-59.

11   The claims of the '375 Patent lack any technical improvements or solutions that might

12   render them patent eligible on step one of *Alice*. At most (and only *if* the "global indices" recited

13   in the claims are interpreted as limited to Internet indices, which Google has not alleged), the

14   claims call for performing abstract data processing tasks on data that merely *comes from the*

15   *Internet*. After all, claim 1 does not even require *searching* the global indices, only *presenting*

16   *information* retrieved from them. Within the context of claim 1, the "global indices" are used only

17   as (passive and generic) repositories of information that play no *technological* role in the claimed

18   solution.

19   The Court should therefore hold that representative Claim 1 of the '375 patent is "directed

20   to" an abstract idea under the first prong of *Alice*.

## B. *Alice* Step 2: the '375 Patent Lacks an Inventive Concept

22   The '375 Patent lacks an inventive concept that would transform it into a patentable

23   invention under the second prong of *Alice*. It is by now "black letter" law that neither generic

24   functional steps from the abstract idea nor generic computer elements alone can provide an

25   inventive concept under the second step of the *Alice* analysis. *See Berkheimer*, 890 F.3d at 1374

26   ("[T]he 'inventive concept' cannot be the abstract idea itself."); *SAP Am., Inc., v. InvestPic, LLC*,

27   898 F.3d 1161, 1168-70 (Fed. Cir. 2018) (finding no inventive concept when the allegedly

28   inventive aspects were "themselves in the realm of abstract ideas"); *ChargePoint*, 920 F.3d at 775

SONOS'S MOT. FOR JUDGEMENT ON THE PLEADINGS
3:20-cv-03845-EMC

1   ("[T]he abstract idea itself … cannot supply the inventive concept at step two."); *DDR Holdings,*

2   773 F.3d at 1256 ("recitation of generic computer limitations does not make an otherwise

3   ineligible claim patent-eligible."); *Mortgage Grader*, 811 F.3d at 1324-25 ("No such inventive

4   concept is present here. Instead, the claims 'add' only generic computer components such as an

5   'interface,' 'network,' and 'database.' These generic computer components do not satisfy the

6   inventive concept requirement."). Yet that is all the challenged claims contain.

7          The elements recited in the claim for *implementing* claim 1 are also generic computer

8   components arranged in a conventional manner. In particular, claim 1 includes "a client device," a

9   "server," a "network," an "application program," "bookmarks" or "favorite items," and "global

10  indices" that are arranged in conventional ways. The specification admits that these elements are

11  conventional and nowhere asserts that the applicant invented, for example, a new or improved

12  component such as a server or global index system.[6] And the patent discloses only two

13  "arrangements" of these components: one featuring client devices (*i.e.*, computers, smart phones,

14  etc.) connected to a server in the ordinary way and one in which the methods can be implemented

15  within a single computer system. '375 Patent at Fig. 1, 3:5-13. Thus, there is nothing in the claims

16  might constitute a novel component or some sort of novel arrangement of conventional

17  components.

18         The '375 Patent also acknowledges that the interaction between the recited components is

19  conventional and routine. *See, e.g., id*. at 3:59-4:12 (client devices communicate over a network,

20  including by transmitting queries to a server device via the network). And because they are

21  conventionally arranged, the recited computer elements "merely provide a generic environment in

22  which to carry out the abstract idea." *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611

23  (Fed. Cir. 2016). In sum, "[n]othing in the claims, understood in light of the specification,

24  requires anything other than off-the-shelf, conventional computer, network, and display

25  technology for gathering, sending, and presenting the desired information." *Elec. Power*, 830

26  F.3d at 1355.

27  ───────────────
    [6] '375 Patent at 3:16-19, 3:44-48 (client device can be any kind of computer); 4:20-23 (server can
28  be any kind of computer) 5:34-36 (bookmarks are conventional); 8:61-62 ("Conventional search
    engines search global search objects, such as global search indices.").

1    There are no factual questions regarding the conventional nature of the claim. Beyond the

2    specification's concessions, the Amended Complaint does not identify any aspect of the claim as

3    allegedly inventive. In fact, it contains *no* factual allegations directed to subject-matter eligibility.

4    **C.      The Remaining Claims Do Not Alter the Analysis**

5            None of the remaining claims alter the eligibility analysis. Aside from claim 1, the '375

6    Patent contains only one other independent claim, namely claim 17. Claim 17 mirrors claim 1,

7    reciting "[a] system to synchronize bookmarks among devices" comprising a series of generic

8    computer components (e.g., first and second client devices, a server, and first and second

9    application programs) configured to perform the same data manipulation functions recited by

10   claim 1.[7] *Compare* '375 Patent, cl. 1 and cl. 17. Google's infringement contentions reflect this

11   parallelism – *i.e.*, for each limitation in claim 17 Google simply cites the parallel element of claim

12   1 or (in a few cases) to the parallel limitations of claims that depend from claim 1.

13           The only potentially relevant difference between claims 1 and 17 is that claim 17 calls for

14   two (generic) client devices – the first of which receives the user's request to modify a bookmark

15   and sends it to the server, while the second conforms its local copy of bookmarks to match those

16   at the server and presents the search results. In other words, where claim 1 calls for propagating

17   changes to maintain conformity between a client and a server and then presenting search results

18   on that client, claim 17 calls for doing the same thing between *two* clients and a server and then

19   presenting the search results on one client. But that makes no difference to the patent-eligibility

20   analysis – *i.e.* a person can just as easily harmonize three lists as two lists and the additional

21   hardware and software recited in claim 17 is simply *used as a tool* for performing the recited

22   information exchange and organization.

23           None of the '375 Patent's dependent claims change the analysis or add an "inventive

24   concept" to the abstract idea. Instead, each of the dependent claims adds either a basic variation

25   on the abstract idea in claims 1 and 17 or the kind of minor bells and whistles that have been

26   _____

27   [7] Although claim 1 requires a "set of favorite items" and claim 17 a "set of bookmarks," the
     specification makes clear that these terms are interchangeable. *See, e.g.*, '375 Patent at 4:50-55
     (explaining that a list of favorites may be saved as a list of bookmarks and that bookmarks are

28   often referred to as favorites). Similarly, dependent claims 10 and 18 specifically equate the two,
     requiring that favorites be stored as bookmarks and that bookmarks comprise favorite items.

found to be insignificant in the *Alice* analysis. *See, e.g., Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715-16 (Fed. Cir. 2014) (claims are not meaningfully limited when they contain only insignificant or token pre- or post-solution activity). In particular:

Claim 2 specifies that the client device is one of a variety of generic devices such as a "digital assistant," "smart phone," or "laptop computer." The recitation of these components does nothing to change the analysis. *See Alice*, 573 U.S. 208, 226 (finding that the recitation of "specific hardware" consisting of a "data processing system," a "communications controller," and a "data storage unit" were "purely functional and generic" and simply "configured to implement the [abstract] idea.").

Claims 3-5 and 19 require that the set of favorite items or bookmarks comprise an "identifier" to a "resource," or an "audio file." But these are just exemplary data types *to be manipulated* by the claimed process and therefore do not change the nature of the claims.

Claims 6-9 include additional steps regarding the modification of the set of favorite items, such as by adding or deleting an item in the set. But these are just additional acts of data manipulation which, again, cannot satisfy the second prong of the *Alice* analysis.

Claims 10 and 18 require favorite items be stored as bookmarks and bookmarks as favorite items, respectively, which again are just slight variations to the *type* of information being manipulated by the claim.

Claims 11, 13, and 14 call for the use of conventional technologies in connection with the claimed application such as HTML, Javascript and ActiveX. The reference to these well-known technologies does not alter the character or focus of the claims – and there is no allegation in the Amended Compliant that any of these technologies are unconventional or relevant to the analysis. *See, e.g., Whitepages, Inc. v. Isaacs*, 196 F. Supp. 3d 1128, 1133 (N.D. Cal. 2016), aff'd, 698 F. App'x 613 (Fed. Cir. 2017) (finding patent-ineligible claims directed to the abstract idea of "looking up a name associated with a phone number" which merely "employ[ed] industry-standard technology to perform a longstanding business practice, with no asserted improvement other than to use generic internet applications to obtain certain customer side advantages.").

1    Claims 15 and 16 recite authentication limitations requiring the user be identified or

2    authorized in some manner without providing any technical detail as to how identification or

3    authorization might take place other than by use of some non-specific and abstract "user

4    identifier." But these yet again are no more than generic, functional steps for manipulating

5    information which could be performed by a person without a computer. *See, e.g.*, *Prism Techs.*

6    *LLC v. T-Mobile USA, Inc*., 696 F. App'x 1014, 1016-18 (Fed. Cir. 2017) (finding claims directed

7    to "systems and methods that control access to protected computer resources by authenticating

8    identity data" patent-ineligible); *Boom! Payments, Inc. v. Stripe, Inc.*, No. 19-CV-00590-VC,

9    2019 WL 6605314, at *1 (N.D. Cal. Nov. 19, 2019), aff'd, 839 F. App'x 528 (Fed. Cir. 2021)

10   (finding claims directed to the abstract idea of authenticating internet sales patent-ineligible).

11   And claim 20 requires the display of some indication that a bookmark has been modified.

12   This is insignificant or token pre- or post-solution activity that does not alter the eligibility

13   analysis. *See, e.g.*, *MyMail, Ltd. v. OoVoo, LLC*, No. 17-CV-04487-LHK, 2020 WL 2219036, at

14   *18 (N.D. Cal. May 7, 2020), aff'd, No. 2020-1825, 2021 WL 3671364 (Fed. Cir. Aug. 19, 2021)

15   (performing routine functions such as "determining" or "displaying" with conventional

16   components supplies no inventive concept that would render claims patent-eligible) (citing

17   *Ultramercial*, 772 F.3d at 716.

18   In sum, like claim 1, the limitations in the dependent claims are all "linked to the same

19   abstract idea" and do not alter the eligibility analysis. *Content Extraction*, 776 F.3d at 1348.

20   **VI.   <u>CONCLUSION</u>**

21   Now that the Court has had the benefit of claim construction, Sonos respectfully asks the

22   Court to grant its motion and enter judgment on the pleadings as to Google's Third Cause of Action.

23

24

25

26

27

28

16

1  Dated: December 1, 2021                    By:   /s/ Evan D. Brewer

2                                                  CLEMENT SETH ROBERTS
                                                   ALYSSA CARIDIS
3                                                  EVAN D. BREWER

4                                             ORRICK, HERRINGTON & SUTCLIFFE LLP

5                                                  GEORGE I. LEE
                                                   SEAN M. SULLIVAN
6                                                  RORY P. SHEA
                                                   J. DAN SMITH

7                                             LEE SULLIVAN SHEA & SMITH LLP

8
                                                   *Attorneys for Defendant Sonos, Inc.*
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SONOS'S MOT. FOR JUDGEMENT ON THE PLEADINGS
3:20-CV-03845-EMC