QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

David A. Nelson (*pro hac vice*)
davenelson@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606
Telephone:     (312) 705-7400
Facsimile:      (312) 705-7401

*Attorneys for GOOGLE LLC*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| GOOGLE LLC, <br><br> Plaintiff, <br><br> v. <br><br> SONOS, INC., <br><br> Defendant. | Civil Action No. 3:20-CV-03845-EMC <br><br> **GOOGLE LLC'S RESPONSE TO SONOS, INC.'S MOTION TO STAY PENDING** *INTER PARTES* **REVIEW** <br><br> Judge: Hon. Edward M. Chen <br> JURY TRIAL DEMANDED |

## I. INTRODUCTION

Defendant Sonos, Inc. ("Sonos") moves to stay the entirety of Plaintiff Google LLC's ("Google") action against Sonos, pending *inter partes* review ("IPR") on only two of the three patents-in-suit: U.S. Patent Nos. 10,229,586 (the "'586 patent") and 10,140,375 (the "'375 patent"). The third patent-in-suit, U.S. Patent No. 7,899,187 ("the '187 patent"), is not the subject of any IPR, instituted or otherwise.[1]

Google does not oppose a stay as to the '586 patent and the '375 patent, where IPRs are pending.[2] But a stay of all proceedings—including as to the '187 patent, where no IPR has even been filed—is not warranted. The parties and the Court have expended considerable resources briefing, arguing, and construing terms for multiple claims of the '187 patent. Regardless of the outcome in IPRs pending on *other* patents, the asserted '187 patent claims will have to be addressed in *this* suit. And the technology at issue for the '187 patent is not related to the technology at issue for the '586 and '375 patents. Under those circumstances, there is no efficiency to be gained from the overbroad stay Sonos requests, and Google would be prejudiced by a stay of this entire suit. Accordingly, while the parties agree on a stay as to the '586 and '375 patents, the Court should deny Sonos's request to stay as to the '187 patent.

## II. BACKGROUND

The three patents-at-issue are the '586 patent, the '375 patent, and the '187 patent. The '187 patent is directed to digital rights management – specifically, the problem of confidentiality and security of protected digital content. (D.I. 108 at 2.) The '375 patent, in contrast, is directed to methods

---

[1] The three asserted patents are collectively referred to herein as the "Asserted Patents" or "Patents-In-Suit." The Sonos motion to stay (D.I. 126) is referred to herein as the "Motion."

[2] Google notes, however, that such a stay should only last through final written decision (FWD) on the '375 and '586 IPRs, and should not continue through the duration of a potentially lengthy appeal process Sonos might initiate; once the '375 and '586 patents emerge from IPR following FWD, litigation should recommence promptly on those patents.

and systems for personalized network searching and synchronizing bookmarks between a client device and a server (*id.*) and the '596 patent is directed at wireless mesh networks and devices using those networks. (*Id.* at 3.)

For all three asserted patents, the Parties asked the Court to construe eight terms. (D.I. 66 at App. A; D.I. 107.) On June 7, 2021, this Court issued a Claim Construction Order addressing disputed terms in the patents in suit. (D. I. 108.)

The parties have engaged in the discovery process and have each produced voluminous documents (including source code made available for inspection) and have propounded and responded to interrogatories and requests for production. (D.I. 128.) On October 8, 2021, Google noticed Sonos' deposition pursuant to Rule 30(b)(6). (*Id.*) On November 5, 2021, Sonos responded with certain objections, and the parties are meeting and conferring on Sonos' objections to that deposition notice. (*Id.*) Discovery is ongoing.

Sonos filed its motion to stay without any advance notice or meet-and-confer efforts. Following receipt of Sonos' motion Google informed Sonos that Google would agree to stay as to the '375 or '586 patents, with the stay lasting until final written decision on those instituted IPRs. But Google also explained that a stay as to the '187 patent was not warranted; no IPRs are pending on that patent. Google asked Sonos if this counter-proposal would resolve the dispute. Sonos did not agree to the more limited stay Google proposed. This opposition brief as to the '187 patent followed.

**III.   LEGAL STANDARD**

"There is no per se rule that patent cases should be stayed pending reexaminations, because such a rule would invite parties to unilaterally derail litigation." *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, No. C 12-05501, 2014 WL 121640, at *2 (N.D. Cal. Jan. 13, 2014) (quoting *Esco Corp. v. Berkeley Forge & Tool, Inc.*, No. C 09-1635, 2009 WL 3078463, at *2 (N.D. Cal. Sept. 28,

2009)) (quotation marks omitted). "In determining whether to stay a case pending *inter partes* review, the court considers three factors: (1) how much the litigation has progressed; (2) whether a stay will simplify the issues in question and trial of the case; (3) whether a stay would prejudice the non-moving party." *Netlist, Inc. v. Smart Storage Sys., Inc.*, No. 13-CV-5889-YGR, 2014 WL 4145412, at *1 (N.D. Cal. Aug. 21, 2014). "The burden lies with the moving party to persuade the court that a stay is appropriate." *Id.*

## IV.   ARGUMENT

Google agrees to a stay as to the '375 and '586 patents, where instituted IPRs are pending. But all relevant factors weigh against a stay as to the '187 patent, where no IPRs are pending (indeed, no IPRs were ever filed), and where the technology at issue is unrelated to the technology claimed in the '375 or '586 patents. Google's claims against Sonos for infringement of the '187 patent will need to be resolved *regardless* of the outcome of the '375 and '586 IPRs. Under these circumstances, where pending IPRs would not resolve a well-developed patent dispute (the '187 dispute) unrelated to the patents facing IPRs, that separate patent dispute should proceed to trial.

### A.   The Stage of the Litigation Weighs Against a Stay

The parties and the Court have expended considerable resources briefing, arguing, and construing terms in the '187 patent. The parties have also already prepared and exchanged invalidity and infringement contentions, produced documents, and answered contention interrogatories for that patent. (D.I. 108 at 6-15 (adopting constructions for "Domain Information," "Logic Circuitry," and "Private Key").) Under those circumstances, courts have denied a stay of an entire litigation. *See Interwoven, Inc. v. Vertical Computer Sys., Inc.*, No. C 10-04645 RS, 2012 WL 761692, at *4 (N.D. Cal. Mar. 8, 2012) (denying stay where parties had fully briefed and received order on claim construction; "the parties have fully briefed the issue of claim construction, attended a Markman hearing, and received a claim construction order. . . . Both the parties and the Court have expended

sufficient resources and time to render a stay untenable at this point."); *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, No. C 12-05501 SI, 2014 WL 121640, at *2 (N.D. Cal. Jan. 13, 2014) (denying motion to stay when claim construction was complete); *Aylus Networks, Inc. v. Apple Inc.*, No. C-13-4700 EMC, 2015 WL 12976113, at *1 (N.D. Cal. June 2, 2015) (denying stay where "the Court has already construed the disputed terms of the patent-in-suit").

The cases on which Sonos relies are inapposite. In *Bosch*, no "claim construction dates [had] been set," and in *AT&T Intellectual Property I*, the claim construction hearing had not yet been held, whereas here, the claim construction stage has concluded. *Robert Bosch Healthcare Sys., Inc. v. Cardiocom, LLC*, No. C-14-1575 EMC, 2014 WL 3107447, at *4 (N.D. Cal. July 3, 2014); *AT & T Intell. Prop. I v. Tivo, Inc.*, 774 F. Supp. 2d 1049, 1052 (N.D. Cal. 2011). (D.I. 108 (Claim Construction Order).)

Sonos' authorities also do not apply because the '187 patent is wholly distinct from the '586 patent and the '375 patent. The '187 patent is directed to a digital rights management system that allows for easy and secure enrollment of a device into a domain of devices. The '187 patent describes using "domain information" such as "the domain name, private domain password, and desired domain action," *id.* at 3:47-50, and providing this domain information to a key issuer external to the domain, which responds by providing a DRM certificate. *Id.* at 3:51-54, 4:42-48. The rights issuer uses the DRM certificate to authenticate the device and pass licenses to the desired digital content to the user. *Id.* at 3:57-62, 4:48-56. As detailed in Google's infringement contentions, the functionality that infringes the '187 patent relates to adding new Sonos devices to previously-established Sonos "households"—a process that involves registration of the new device as part of the "household" associated with a common account, to access protected digital content.

In contrast, the '375 patent is directed to a personalized search functionality that synchronizes favorite items on a client device with a server, and then searches both the set of

synchronized favorite items and a global database. '375 patent at Abstract, Figs. 2-3 & accompanying discussion. The results of a "personalized search" and a search of one or more "global indexes" are provided together in a "combined search results set" on the display of a client device. *Id.* at 2:61-66 & claim 1. This has no relationship to obtaining access to DRM-protected content using domain information.

Similarly, the '586 patent is directed to relaying communications in a wireless sensor system. '586 patent at 4:33-59, claim 1. Devices within the network relay communications traffic to other devices in the network, by comparing an "identification code" of a received communication packet with a "table" of identifiers, and determining whether to relay the packet based on this comparison. *Id.* at 5:4-9, 7:4-13, 10:44-49. The invention "use[s] signal strength information to re-route wireless communications traffic in the sensor system" when a device goes offline or has difficulty communicating along a given network path. *See id.* at 9:23-33. Again, this has no relationship to DRM content or access thereto.

The functionality that infringes the '375 and '586 patents is entirely distinct from the functionality that infringes the '187 patent. Because Google accuses different functionalities, there is no meaningful overlap between the documents and source code at issue in Google's infringement contentions for the three patents. Google has already identified for Sonos the source code that infringes its '187 patent, and that source code is distinct from the code showing infringement of the '375 and '586 patents.[3]

---

[3] The technologies' descriptions in the Claim Construction Order also reflect the differences among them. (D.I. 108 at 2 ("The '187 patent addresses the problem of confidentiality and security of protected digital content."); *id.* at 3 ("The '596 patent is directed at using devices within a wireless mesh network.").) Like the '586 patent, the ''375 patent is directed to different technology than the '187 patent: bookmark search and sync. (*Id.* (The '375 "patent is directed to methods and systems for personalized network searching, synchronizing bookmarks between a client device and a server.").)

Thus, in *PersonalWeb* is inapposite. There, all asserted patents "involve[d] data storage systems that use 'substantially unique identifiers' to identify and access data," whereas here, the '187 patent is wholly distinct from the '586 patent and the '375 patent. *PersonalWeb Techs., LLC v. Apple Inc.*, 69 F. Supp. 3d 1022, 1027 (N.D. Cal. 2014). Likewise, in *Contour* and *Motson*, the IPR process had the potential to invalidate all asserted claims, but here, that is impossible; all asserted claims of the '187 patent would remain unaffected regardless of the outcome for unrelated IPRs on other patents.[4]

Because the Court has already construed the terms for the '187 claims in dispute—as requested by the Parties—this factor weighs against a stay.

### B. The IPR Process Cannot Resolve Google's Claims Regarding the '187 Patent

A stay of the case as to the '187 patent will not simplify the issues. Courts in this district routinely deny motions to stay as to all patents in suit under those circumstances, since a stay would not sufficiently simplify the issues in the case. *See, e.g.*, *Adaptix, Inc. v. HTC Corp.*, No. 5:14-CV-02359-PSG, 2015 WL 12839246, at *3 (N.D. Cal. Aug. 5, 2015) (denying stay where IPR instituted on only on one of two asserted patents); *Aylus Networks*, 2015 WL 12976113, at *1 (denying stay where two asserted claims were not subject to IPR); *Xilinx, Inc. v. Invention Inv. Fund I LP*, No. 5:11-CV-00671 EJD, 2012 WL 6003311, at *4 (N.D. Cal. Nov. 30, 2012) (denying stay where four of twelve asserted patents were not undergoing reexamination). Nonetheless, Sonos asserts four reasons why the IPRs regarding the '586 patent and the '375 patent will supposedly simplify the issues for the entire case. None have merit.

*First*, Sonos argues that "largely the same Sonos products and technology" are at issue for

---

[4] Sonos also relies on *Gould* to argue that the stage of the case factor weighs in favor of Sonos (D.I. 126 at 5), but *Gould* does not include analysis of the stage of the case as part of its reasoning in affirming the lower court's stay order. *See generally Gould v. Control Laser Corp.*, 705 F.2d 1340 (Fed. Cir. 1983).

all three asserted patents, including the "same code base." (Mot. at 6 (note omitted).) But different aspects of that code – indeed, entirely different functionality – is at issue for the '187 patent. Sonos does not explain how there would be duplication absent a stay, given that the patents in suit are each directed at *different* technologies. Because the cases on which Sonos relies operate on the "overlap" premise, they are inapposite. *KLA-Tencor Corp. v. Nanometrics, Inc.*, No. C 05-03116 JSW, 2006 WL 708661, at *4 (N.D. Cal. Mar. 16, 2006) ("When there are overlapping issues between the reexamined patents and other patents in suit, courts have found staying the entire case to be warranted."); *PersonalWeb Techs.*, 69 F. Supp. 3d at 1028 (all of the asserted patents "involve[d] data storage systems that use 'substantially unique identifiers' to identify and access data"); *Bosch*, 2014 WL 3107447, at *5 ("However, as made apparent at the hearing, the patents-in-suit are sufficiently related such that judicial economy would not be served by such bifurcation.")[5]

*Second*, Sonos argues that "any claim that the PTAB finds invalid would not need to be litigated before this Court." (D.I. 126 at 7.) This ignores the different patents at issue and proves Google's point as to the '187 patent. No matter the outcome of the IPR proceedings, those proceedings relate *only* to the '586 patent and the '375 patents; all asserted '187 claims will be unaffected by IPR and will still need to be litigated in this Court. Again, Sonos relies on cases where overlap existed that is not present here, rendering them inapposite. *Symantec Corp. v. Zscaler, Inc.*, No. 17-CV-04426-JST, 2018 WL 3539267, at *2 (N.D. Cal. July 23, 2018) ("The asserted but non-instituted claims overlap to a great degree with the instituted claims."); *Bosch*, 2014 WL 3107447, at *5 ("However, as made apparent at the hearing, the patents-in-suit are sufficiently related such

---

[5] As part this argument, Sonos shoehorns in an argument that "that Sonos products already have been adjudged not to infringe the claims of the European counterpart of the '187 patent in Germany" (D.I. 126 at 7, emphasis removed). This is a highly disingenuous claim; Sonos is referencing a different patent, with a different claim construction, in a different jurisdiction—and with a different discovery standard (indeed, no discovery at all). Even putting those issues aside, a party's characterization of its supposed chances of success is not a relevant consideration on a motion to stay.

-7-

that judicial economy would not be served by such bifurcation.")

*Third*, Sonos argues that "the PTAB's order will 'facilitate trial by providing the court with the expert opinion of the PTAB and clarifying the scope of the claims.'" (Mot. at 8) (quoting *Bosch* and relying on *Evolutionary Intel., LLC v. Millenial Media, Inc.*, No. 5:13-cv-04206-EJD, 2014 WL 2738501 (N.D. Cal. June 11, 2014)). But again, in *Bosch*, the Court held that "the patents-in-suit [were] sufficiently related such that judicial economy would not be served by such bifurcation." *Bosch*, 2014 WL 3107447, at *5. There is no such relationship here. (*See* Pages 4-5, *supra*.) Sonos' reliance on *Evolutionary Intel* is also misplaced; there *all* patents-in-suit were being reviewed by the PTO, whereas here, the IPRs relate only to the '586 patent and the '375 patents, and there will be no opinion rendered on the '187 claims. *Evolutionary Intel., LLC*, 2014 WL 2738501. *Evolutionary Intel* is also distinguishable given that there, the court had "not yet invested significant resources into familiarizing itself with the technology," whereas here, that has already occurred. *Id.*

*Finally*, Sonos argues that it will be barred from offering arguments regarding invalidity that it raised or "reasonably could have raised" in the IPR proceedings once the PTO issues its final written decision on the merits. (D.I. 126 at 8.) Because the review relates only to the '586 patent and the '375 patent, Sonos' claims of efficiency are again false promises. Sonos would not be raising validity arguments as to the '187 patent during IPR proceedings on the '586 and '375 patents. *AT & T Intell. Prop. I v. Tivo, Inc.*, 774 F. Supp. 2d 1049, 1053 (N.D. Cal. 2011) (noting that simplification of issue would be substantial given potential effect on invalidity arguments).

For the foregoing reasons, there is no reason to believe that the IPR proceedings will simplify the issues as to the '187 patent. This factor weighs against a stay.

### C.  Google Will Suffer Undue Prejudice and Disadvantage From a Stay

"In assessing the final factor—whether a stay will unduly prejudice or tactically disadvantage the nonmoving party—courts assess four subfactors: '(1) the timing of the petition for

review; (2) the timing of the request for the stay; (3) the status of review proceedings; and (4) the relationship of the parties.'" *NetFuel, Inc. v. Cisco Sys. Inc.*, No. 5:18-CV-02352-EJD, 2020 WL 836714, at *2 (N.D. Cal. Feb. 20, 2020). The first three subfactors weigh heavily against a stay, given that such would freeze proceedings on the '187 patent despite the fact that the '187 patent is not related to either the '375 patent or the '586 patent. Any delay as to the '187 patent would prejudice Google, since the delay in these proceedings with impose delays absent any basis to do so – no efficiency exists justifying any delay in remedying Sonos's ongoing infringement.

The fourth subfactor—the relationship of the parties, who Sonos itself contends are direct competitors—bears special attention here. Sonos recognizes that "when the parties are direct competitors, the risk of prejudice to the non-moving party is higher than it would be otherwise." (D.I. 126 at 10 (citation omitted).) Sonos also recognizes that "infringement among competitors can cause harm in the marketplace that is not compensable by readily calculable money damages." (*Id.* (citation omitted).) Indeed, "[s]taying a case while such harm is ongoing usually prejudices the patentee that seeks timely enforcement of its right to exclude." *Avago Techs. Fiber IP (Singapore) Pte. Ltd. v. IPtronics Inc.*, No. 10-CV-02863-EJD, 2011 WL 3267768, at *5 (N.D. Cal. July 28, 2011).

Sonos nonetheless makes the head-scratching claim that somehow "Sonos is not a competitor of Google, [but] Google *is* a competitor of Sonos," for purposes of the risk of prejudice analysis. (D.I. 126 at 11 n. 7. (emphasis in original).) This is nonsensical. Competition is not a one-way street, and if Sonos takes the position that Sonos and Google compete for some of the same customers, Sonos's own stay request starts from the premise that Sonos and Google *are* direct competitors. *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, No. C 12-05501 SI, 2014 WL 121640, at *3 (N.D. Cal. Jan. 13, 2014). There is no logical or legal support for the one-way competitor relationship Sonos espouses. Sonos has claimed multiple times in this dispute that

Google is a competitor, including in its own stay motion (D.I. 126 at 11); it cannot walk away from that now.  Where, as here, the party moving for the stay itself takes the position that the litigation at issue is between competitors, the prejudice from an overbroad stay of an entire litigation counsels against a complete stay.[6]

On balance, the four subfactors indicate that Google would suffer prejudice were the request for a stay be granted, resulting in the third factor weighing against a stay.

## V.     CONCLUSION

For the foregoing reasons, the Court should deny Sonos' motion to stay the case as to the '187 patent pending *inter partes* review.

Respectfully submitted,

Dated:  December 14, 2021

By: */s/ Patrick D. Curran*
QUINN EMANUEL URQUHART & SULLIVAN, LLP
Charles K. Verhoeven (Bar No. 170151)
charlesverhoeven@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111-4788
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

David A. Nelson (*pro hac vice*)
davenelson@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606
Telephone:     (312) 705-7400
Facsimile:     (312) 705-7401

Attorneys for GOOGLE LLC

---

[6] Sonos further argues that Google's choice not to seek a preliminary injunction weighs against prejudice. (D.I. 126 at 11-12.) Courts have rejected this argument, noting that "a party may decide to forego seeking a preliminary injunction for a variety of reasons having nothing to do with its view of the merits." *Verinata*, 2014 WL 121640, at *3 (marks omitted) (collecting cases).

## ATTESTATION

I, Sean Taheri, am the ECF user whose ID and password are being used to file the foregoing document. In compliance with Civil L.R. 5-1(i)(3), I hereby attest that Patrick D. Curran has concurred in this filing.

Dated: December 14, 2021          /s/ Sean Taheri
                                  Sean Taheri