**Pages 1 - 16**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Edward M. Chen, Judge

```
GOOGLE LLC,                    )
                               )
        Plaintiff,             )
                               )
   VS.                         )   NO. C 20-03845 EMC
                               )
SONOS, INC.,                   )
                               )
        Defendant.             )
_____)
```

                            San Francisco, California
                            Tuesday, November 22, 2022

**TRANSCRIPT OF REMOTE ZOOM VIDEO CONFERENCE PROCEEDINGS**

**APPEARANCES VIA ZOOM:**

For Plaintiff:
            QUINN EMANUEL URQUHART & SULLIVAN LLP
            111 Huntington Avenue, Suite 520
            Boston, Massachusetts 02199
        **BY:  PATRICK D. CURRAN, ATTORNEY AT LAW**

For Defendant:
            ORRICK, HERRINGTON & SUTCLIFFE LLP
            The Orrick Building
            405 Howard Street
            San Francisco, California 94105
        **BY:  CLEMENT S. ROBERTS, ATTORNEY AT LAW**

            ORRICK, HERRINGTON & SUTCLIFFE LLP
            355 South Grand Avenue, Suite 2700
            Los Angeles California 90071
        **BY:  ALYSSA M. CARIDIS, ATTORNEY AT LAW**

Also Present:        **Patrick Weston, Google LLC**


REPORTED REMOTELY BY: Ana Dub, RMR, RDR, CRR, CCRR, CRG, CCG
                     CSR No. 7445, Official U.S. Reporter

|  |  |
|---|---|
| 1 | **Tuesday - November 22, 2022**                                    **3:33 p.m.** |
| 2 | **P R O C E E D I N G S** |
| 3 | ---o0o--- |

4   **THE CLERK:** Court is now in session. The Honorable Edward
5   M. Chen presiding.
6       Now calling Civil Case 20-3845, Google LLC vs. Sonos, Inc.
7       Will counsel please state your appearances for the record,
8   starting with the plaintiff.
9       **MR. CURRAN:** Thank you, Your Honor. Patrick Curran, Quinn
10  Emanuel, for plaintiff, Google. With me today is Google
11  in-house counsel Patrick Weston.
12      **THE COURT:** Hi. Good afternoon, Mr. Curran.
13      **MR. ROBERTS:** And good afternoon, Your Honor. This is
14  Clem Roberts from the Orrick firm, along with Alyssa Caridis,
15  for the defendant, Sonos.
16      **THE COURT:** All right. Good afternoon.
17      So let's talk about the schedule going forward and,
18  I guess, the proposal, which is somewhat of an usual proposal,
19  about an OSC why the Court should not enter judgment.
20      I guess let me ask Sonos. Why shouldn't we just tee this
21  up as a normal summary judgment motion as would normally be
22  done if you believe that you're entitled to judgment as a
23  matter of law?
24      **MR. ROBERTS:** So we could, Your Honor.
25      And what we have here is, I think, a relatively unusual

1  problem, and we're trying to figure out what the best way to go
2  forward is.
3       If I could spend one minute just summarizing what we see
4  as the problem being.  Obviously, as we put in our papers, four
5  of the five patents have gone.  We're down to one patent.
6       That one patent, the Court has given us a construction of
7  the term "private key"; and in the Court's construction,
8  without trying to parse it too finely, it said it has to be an
9  input to a cryptographic function, meaning it has to be a
10 cryptographic key.
11      The issue we have is, the things they are pointing to --
12 and, by the way, they have not amended their contentions since
13 the Court handed down that construction.
14      But the things that they are pointing to in Sonos's
15 product are the same thing they've accused in three other cases
16 with three other countries:  Dutch, France, and Germany.  And
17 in two of those cases -- we have the orders -- the courts
18 rejected the allegation of infringement because the specific
19 things that they pointed to those courts said are not
20 cryptographic keys.
21      So literally, the very factual question at issue on their
22 motion -- which is "Are these functions, these AuthToken
23 functions, data structures, are they cryptographic keys?" --
24 we've had two international courts literally say they're not
25 under parallels of this same patent.

1     And we could do this as a summary judgment motion.  The
2 problem is, Your Honor, if we brought it as a summary judgment
3 motion, we'd get a 56(f), and then we'd be back into discovery.
4     And what we are really trying to do is, if there's a basis
5 here for this to go forward that's somehow different from the
6 other courts that have ruled on this exact same thing, then we
7 ought to know what it is and be clear about what it is.
8     If there --
9     **THE COURT:**  I'm not sure I understand your position about
10 why would the Court succumb to a 56(f).  If you say that the
11 issue is so clear as a matter of law, certainly, you would
12 argue that you don't need 56(f); let's just go forward.
13     **MR. ROBERTS:**  Yes, Your Honor, we would agree.  But my
14 understanding is that in most cases when people say, "We need
15 additional discovery," courts are inclined to grant it.  But if
16 your preference is for us to go forward and do it on an early
17 summary judgment motion, I'm perfectly comfortable doing that.
18     I guess my point was simply that, you know, we don't want
19 to go through a whole host of discovery on something where
20 their theory is the exact same theory as they brought twice;
21 they've lost it twice; and it's just vexatious at this point.
22     **THE COURT:**  All right.  Let me hear Google's response.
23     **MR. CURRAN:**  Thank you, Your Honor.
24     First, I have to take issue with the idea that, as we've
25 just heard, this is the exact same thing being litigated in the

1  U.S. as we saw in the foreign proceedings.  There are two
2  really fundamental problems with that argument.
3      First, in the foreign proceedings, there was a very
4  different, in fact, the opposite claim construction, because
5  European law is different than U.S. law, particularly on issues
6  of lexicography.
7      What we haven't heard from counsel is what they know well.
8  In the German case, the Court said the opposite of what the
9  U.S. court said.  Sonos proposed the same construction in the
10 U.S. and in Germany.  And in Germany, Sonos proposed that a
11 private key would be limited to using a key to decrypt data or
12 generate digital signatures, the very same construction that
13 was offered in the U.S.  And that was rejected 17 months ago as
14 legally incorrect.  We didn't get a motion for reconsideration,
15 any claim of manifest disregard of law.  It's simply the right
16 outcome in the U.S. under a different legal standard.
17     So the idea that the same issue has been litigated is
18 legally misleading.  It's also highly factually misleading
19 because in the German and French proceedings, there is no
20 discovery.  No one ever looked at source code.  No one ever had
21 depositions of the sort we've been asking for and that, until a
22 few weeks ago, Sonos said we were about to get.
23     So this is not the same issue, legally or factually,
24 that's been examined by any foreign court; and there's no
25 reason to deviate from regular U.S. procedures, factually or

1    legally, to resolve this issue.
2        **THE COURT:** Let me forecast. If Sonos were to bring a
3    Rule 56 motion, it sounds like you would be seeking further
4    discovery under Rule 56(f), that this is not ripe for a ruling?
5        **MR. CURRAN:** That's right, Your Honor.
6        And as Sonos knows, over the last eight to ten weeks,
7    we've been talking with them fairly regularly about three
8    specific factual depositions for source code engineers that
9    Sonos identified. And those depositions are highly relevant to
10   the operation of the accused source code.
11       You heard counsel say that contentions hadn't been amended
12   since the claim construction order. What you haven't heard was
13   that source code had been cited extensively and amendments
14   offered to the infringement contentions just before the *Markman*
15   proceeding when the claim constructions on each side were
16   clear.
17       Sonos has a very clear record. It hasn't complained one
18   time in 17 months about what code is at issue. And we've been
19   asking for depositions of the engineers and an identification
20   of the engineers who know about that code, and Sonos has
21   provided those names, and we've been working with them to get
22   those depositions.
23       And in the joint status report on page 2, in the joint
24   section, Sonos admitted (as read):
25           "The parties are working on scheduling

```
 1          deposition dates in the upcoming weeks for Sonos's
 2          witnesses."
 3          That discovery is still relevant, and we're still seeking
 4   that discovery.
 5          THE COURT:  So if that discovery is had, there are
 6   three -- is it three witnesses that you are seeking to
 7   discover -- to depose?
 8          MR. CURRAN:  The three witnesses that Sonos has identified
 9   so far, yes, Your Honor.
10          THE COURT:  All right.  Would that be, then, sufficient to
11   tee this up for a Rule 56 motion?
12          MR. CURRAN:  So I think, Your Honor, the answer is
13   probably no, and here's why.
14          If we're going to be doing Rule 56 motions, we could do
15   them at any point that Your Honor would like to have them; but
16   what makes sense from our perspective -- because Sonos itself
17   admits what it's seeking here is partial theory-by-theory
18   rounds of dispositive motions.  They say this in their papers.
19          They say:  You have two infringement theories.  I've
20   decided I don't like one of them.  I want to have Rule 56
21   practice on one of them now, OSC practice.  And then I'll give
22   you some discovery, they say.  And then we'll come back at the
23   end for another round of summary judgment practice.
24          That piecemeal approach doesn't make sense.  We should get
25   the fact discovery done.  The same witnesses, a lot of the same
```

1  code, a lot of the same documents.  We'll get the expert
2  reports in.  And if they want to do an early round of just
3  technical discovery, wrap that up and do dispositive motions,
4  that's fine.  We may agree on more than we disagree on there.
5      But that's the orderly presentation of evidence that ought
6  to occur rather than some sort of piecemeal start-and-stop
7  approach to '187 technical discovery.
8      **MR. ROBERTS:**  Your Honor, if I could respond briefly.
9      **THE COURT:**  Yeah.  But before you do that, what is the --
10 remind me what the timeline is.  Do we have a schedule for
11 completion of discovery?
12     **MR. CURRAN:**  We don't, Your Honor.  And until this
13 submission from Sonos, we hadn't met and conferred on that yet.
14     We have been trying to complete '187 technical discovery,
15 and there hasn't been a deadline for that.  And Sonos has
16 mentioned several times to us:  Well, there's no rush.  There's
17 no deadline for completing this.
18     We could work with Sonos, we think, collaboratively to
19 figure out what is the right goalpost for completing technical
20 discovery factually, what's the right goalpost for doing the
21 expert discovery; and there could be one, we think, orderly
22 round of dispositive motions on both sides.
23     **MR. ROBERTS:**  Your Honor, if I could respond briefly.
24     **THE COURT:**  Yeah.
25     **MR. ROBERTS:**  A couple of things.

1  The first, I literally have the German decision up in
2 front of me, and Mr. Curran is misrepresenting it.  If you'd
3 like me to submit a machine translation or a certified
4 translation, I'd be happy to.  But I'm reading from the
5 translation.
6       (As read):
7            "The fact that the identifiers 'AuthToken' and
8       'Private Key' received by the challenged Sonos
9       devices are a cryptographic key cannot be affirmed on
10      the basis of the applicant's factual submissions."
11           (As read):
12           ". . . it is clear from the board's point of
13      view that a private key in accordance with the patent
14      must be a cryptographic key."
15      It doesn't say anything about some specific private and
16 public.  It's not applying some very specific claim
17 construction.  It's saying it has to be a cryptographic key,
18 which these are not.
19      The French decision, which I also have right in front of
20 me, says that -- and, again, this is a translation -- (as
21 read):
22           "By the intervention for the purposes of
23      securing the process of a key issuer distinct from
24      the domain" -- it talks about what's required -- "an
25      intervention by which the issuing of a key allowing

1           the decryption of the content would be triggered.
2           The private key described in Sonos's system does not
3           have this purpose, nor does the token."
4      And they say, very simply, that the AuthToken and the
5 thing that they're calling "private key" do not have the
6 purpose of being inputs to a cryptographic function, which is
7 literally exactly this Court's claim construction, first.
8      Second -- I apologize, Mr. Curran.  I'd like to respond to
9 all of your points.
10     Second, the purpose of the initial disclosures in this
11 district is to frame the theories for discovery.  And
12 concomitant with that is, we need to understand -- I mean, if
13 their theory is that AuthToken is a cryptographic key,
14 notwithstanding the fact that they have been told twice that it
15 is not, we should know that.  If Mr. Curran has some other
16 theory to suggest "Oh, no, here's the claim construction and
17 here's how it works," then they should explain that.  We should
18 at least understand what their theory is, especially --
19     **THE COURT:**  Have there not been disclosures already?
20     **MR. ROBERTS:**  There have been disclosures, but I'm hearing
21 new things from Mr. Curran about how he's interpreting his
22 disclosures right here and now that I've not heard before and
23 that are not at all clear.
24     What I have are the same theories that were rejected in
25 multiple courts around the world.

1  **THE COURT:** All right. Mr. Curran?

2  **MR. CURRAN:** Your Honor, very briefly, I'll just quote
3  from page 41 of the German decision. Here's what the German
4  court said (as read):

5  ". . . as the interpretation has [moreover]
6  shown" -- interpretation of the patent -- "in order
7  to qualify as cryptographic within the meaning of the
8  patent-in-suit, the private key would have to be used
9  to decrypt data or to generate [sic] digital
10 signatures . . . ."

11 That was the German court's understanding of the scope of
12 the patent. That is, word for word, a recitation of and
13 acceptance of the claim construction that Sonos proposed and
14 that was rightly rejected in this Court 17 months ago.

15 And tellingly, Your Honor -- maybe silence is the most
16 telling thing -- for 17 of those months, we did not hear from
17 Sonos that there was any confusion about the contentions that
18 had been disclosed or any lack of understanding about those
19 contentions, and they were able to identify to us the three
20 Sonos engineers most knowledgeable about that code and about
21 their own contentions.

22 **THE COURT:** So what further discovery --

23 **MR. ROBERTS:** Your Honor?

24 **THE COURT:** Hold on.

25 I'm not going to resolve this issue right here. But what

1  I want to know is what other discovery will be needed on
2  Google's part, other than the deposition of these three
3  engineers, in order to tee up this issue.
4      **MR. CURRAN:**  Yes, Your Honor.  We would like discovery of
5  the persons most knowledgeable at Sonos regarding this code.
6  Sonos has identified names, and the depositions will reveal if
7  those are the right names or not.  But taking their word for
8  it, that would be pretty far along, we think.  And so the
9  documents that would exist -- and perhaps those engineers will
10 identify additional ones.  But a full accounting of the
11 documents we've asked for and the witnesses who wrote this code
12 should really be what we need, unless there is some curve ball
13 they're going to point out there.
14     We think we're pretty far along on how much discovery
15 would be needed here.  We get the depositions done.  We see if
16 there's some additional trove of documents.  If there is, let's
17 get that done quickly.  And then we're done with fact
18 discovery.
19     **THE COURT:**  So the PMK is in addition, or that encompasses
20 the three witnesses that you are --
21     **MR. CURRAN:**  Good question, Your Honor.  And that's what
22 the parties have been talking about.
23     We've now come to rest on the understanding -- correct me
24 if I'm wrong -- that the 30(b)(6) topics will be spread across
25 these three individuals and that they would like to resolve

1  objections to 30(b)(6) topics before making them available.
2      **THE COURT:** All right.  So, Mr. Roberts, I understand
3  you'd prefer just to go straight to it and have this dismissed,
4  but it doesn't sound extremely burdensome to me to complete
5  these PMK depositions, if it's three individuals, and I guess
6  respond to relative discovery.  And that way, it'll be teed up,
7  we won't have to worry about whether there's going to be a
8  56(f) response or not, because the last thing I want to do is
9  do this in iterative stages.
10     **MR. ROBERTS:** Yeah, I understand that, Your Honor.
11     You know, I'm not sure that it's going to be three
12 witnesses.  If we really -- if the answer is that they get
13 three witnesses and then we can tee this up, that's fine.  But
14 what I heard from Mr. Curran during the argument today is three
15 witnesses and then maybe there are some other documents and
16 then maybe we want this and then maybe we want that.
17     So if the Court's view is that what we ought to do is come
18 to an agreement on a concrete set of discovery that's going to
19 be limited in scope that allows us to tee this up, I'd be
20 willing to work with Mr. Curran offline and try to come back
21 with a proposal for it that would do that.
22     I hear Your Honor loud and clear that you don't want to be
23 doing this iteratively.
24     What we don't want is -- and this is where my fear is
25 coming from, is Google is an enormous company.  They are

1  litigating many, many cases around the world in an effort to
2  put pressure on Sonos, including litigating the same patent in
3  four different jurisdictions, and that proposes unique burdens.
4  And so what we're asking for is some way of protecting
5  ourselves from the cost and burden.
6      Google would be delighted to litigate all the way through
7  and then lose because it would still have imposed millions of
8  dollars of cost on Sonos, which is clearly its effort to do so,
9  as we know, because they filed on the same patent in four
10 different countries around the world and continue to pursue
11 this case, even after having lost on three of them, and they
12 continue to pursue this patent, even after having lost on the
13 other four patents that they filed in this case, and then they
14 went and filed seven more patents in the ITC. So we know that
15 that's what they're willing to do.
16     **THE COURT:** All right. So that's what I want you all to
17 do. I'd like you to meet and confer and come up with an
18 efficient, tailored discovery now that you sort of know the
19 issues. Obviously, Sonos thinks no discovery should be
20 required. I don't want to get into that and have two rounds of
21 motion practice just on that question. I'd like you to meet
22 and confer and come up with a succinct plan of discovery.
23     And it sounds to me like -- just as a ballpark, three PMK
24 depositions sounds like enough to me, from nothing I know about
25 this. But just use it as a rule of thumb.

1    I don't want you to come back and say:  Well, we've got a
2    big fight.  I want to take ten more depositions, and that kind
3    of thing.  Come back with a plan.  And if it's going to be some
4    documents, make it clear what it is that's centrally required,
5    and with a proposed schedule for summary judgment, because
6    I think that's what Sonos wants.
7         And I'd entertain that, but I want to entertain that on
8    the merits and not have to fuss with a 56(f) question.  So if
9    you could do that and get back to me.
10        Now, obviously, if you have some dispute, you can -- as
11   our joint letter discovery process frames these things, I
12   suppose I'll have to resolve that.  I'm hoping we don't come to
13   that.  I'm hoping the two of you can get this resolved and come
14   up with a joint plan.
15        So that's what I'm going to order.  Meet and confer, come
16   up with a succinct, focused discovery plan leading to summary
17   judgment.
18       **MR. ROBERTS:**  Thank you, Your Honor.  So I'm clear on
19   this, we're not going to come back with a full case schedule.
20   We're going to come back with a proposed set of discovery and
21   timing for doing this thing.  Is that correct?
22       **THE COURT:**  That's what I'm hearing.  That's what I intend
23   to do.
24       **MR. CURRAN:**  And, Your Honor, if I might clarify, that
25   will be a plan for getting us to summary judgment on the '187

1  patent generally, not theory by theory or contention by
2  contention, but one round, orderly summary judgment motion
3  practice on the '187 patent.
4       **THE COURT:**  I would like to address the '187 in one fell
5  swoop, yes.
6       **MR. CURRAN:**  Thank you, Your Honor.
7       **THE COURT:**  Okay?
8       So I will wait to get your proposed schedule, discovery
9  plan and proposed briefing schedule.  I'll set a control date
10 for a status just in case for some reason you all don't respond
11 and I don't forget about this case.
12      So why don't we just set as a control date a status
13 conference 90 days out.  I'm sure by then we'll have a schedule
14 in place.  Then I can lift -- I can vacate that.
15      So, Ms. Sharma, do you have a --
16      **THE CLERK:**  February 21st.
17      **THE COURT:**  Okay.  The 21st at 2:30.  And, as I say, once
18 you submit something, I can vacate that.  All right?
19      **MR. ROBERTS:**  Thank you, Your Honor.
20      **THE COURT:**  Good.  Thank you.
21      **MR. CURRAN:**  Thank you.
22      **THE COURT:**  Appreciate it.
23      **MR. ROBERTS:**  Thank you.  Bye.
24      **THE COURT:**  Thank you.
25              (Proceedings adjourned at 3:53 p.m.)

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE: Monday, December 12, 2022

*Ana Dub*

_____

Ana Dub, CSR No. 7445, RDR, RMR, CRR, CCRR, CRG, CCG
Official United States Reporter