QUINN EMANUEL URQUHART & SULLIVAN, LLP
David A. Nelson (admitted *pro hac vice*)
davidnelson@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606
Telephone:     (312) 705-7400
Facsimile:     (312) 705-7401

Patrick D. Curran (Bar No. 241630)
patrickcurran@quinnemanuel.com
111 Huntington Ave., Suite 520
Boston, Massachusetts 02199
Telephone:     (617) 712-7100
Facsimile:     (617) 712-7200

*Attorneys for Google LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| GOOGLE LLC,<br><br>              Plaintiff,<br><br>       v.<br><br>SONOS, INC.,<br><br>              Defendant. | Case No. 3:20-cv-03845-EMC<br><br>**GOOGLE LLC'S OPPOSITION TO SONOS INC.'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF '187 PATENT ASSERTED CLAIMS**<br><br>Date:        October 5, 2023<br>Time:        1:30 p.m.<br>Place:       Courtroom 5, 17th Floor |

1

**TABLE OF CONTENTS**

2

**Page**

3  I.      INTRODUCTION ................................................................................................1

4  II.     BACKGROUND ................................................................................................1

5         A.      Overview of Asserted Patent ................................................................1

6         B.      Accused Sonos Products ......................................................................2

7         C.      Google's Infringement Allegations ......................................................3

8                 1.      Authentication Theory of Infringement ....................................3

9                 2.      Strong Encryption Theory of Infringement ..............................4

10  III.    LEGAL STANDARD ........................................................................................4

11  IV.     ARGUMENT .....................................................................................................6

12         A.      Summary Judgment Should Be Denied for Infringement Under Google's
                  Authentication Theory ..........................................................................6

13

14                1.      Sonos's AuthToken "Private Key" Argument, At Most, Raises A
                         Genuine Dispute of Material Facts ...........................................6

15                        (a)     The Asserted Claims Do Not Require Inputting the Private
                                 Key Into A Cryptographic Algorithm .............................6

16

17                        (b)     Sonos Misconstrues "Based On" To Assert No Infringement ..........8

18                2.      Sonos Has Raised, At Best, A Genuine Dispute Of Material Fact
                         Regarding Whether Sonos's System Performs The Preamble Of
                         Claim 1 ....................................................................................13

19

20         B.      Summary Judgment Of Non-Infringement Should Also Be Denied Under
                  Google's Strong Encryption Theory ....................................................17

21                1.      At Best, Sonos Raises A Genuine Dispute Of Material Facts As To
                         Whether The Accused Private Device Key Is "Utilized By All
22                       Devices Within The Domain of Devices" ................................17

23                2.      At Best, Sonos Raises A Genuine Dispute Of Material Facts As To
                         Whether The Accused Private Device Key Is "Based On" The
24                       Household ID ...........................................................................22

25                3.      At Best, Sonos Raises A Genuine Dispute of Material Fact As To
                         Whether the Method of Claim 1 Is Performed .......................23

26

27  V.      CONCLUSION ................................................................................................25

28

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adams Respiratory Therapeutics, Inc. v. Perrigo Co.,*
    616 F.3d 1283 (Fed. Cir. 2010) ............................................................................................ 18

*AFG Industries, Inc. v. Cardinal IG Co., Inc.,*
    375 F.3d 1367 (Fed. Cir. 2004) ............................................................................................ 21

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) .............................................................................................................. 5

*Ateliers de la Haute-Garonne v. Broetje Automation-USA Inc.,*
    No. 09-cv-598-LPS, 2011 WL 722937 (D. Del. Feb. 23, 2011) .......................................... 17

*Baldwin Graphic Systems, Inc. v. Siebert, Inc.,*
    512 F.3d 1338 (Fed. Cir. 2008) ............................................................................................ 15

*CCS Fitness, Inc. v. Brunswick Corp.,*
    288 F.3d 1359 (Fed. Cir. 2002) ............................................................................................ 19

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) .............................................................................................................. 5

*E-Pass Tech., Inc. v. 3Com Corp.,*
    473 F.3d 1213 (Fed. Cir. 2007) ............................................................................................ 24

*Eon Corp. IP Holdings LLC v. Silver Spring Networks, Inc.,*
    815 F.3d 1314 (Fed. Cir. 2016) ...................................................................................... 19, 20

*Fantasy Sports Props., Inc. v. Sportsline.com, Inc.,*
    287 F.3d 1108 (Fed. Cir. 2002) ........................................................................................ 5, 22

*Goldman v. Standard Ins. Co.,*
    341 F.3d 1023 (9th Cir. 2003) ......................................................................................... 12, 23

*Invitrogen Corp. v. Clontech Labs., Inc.,*
    429 F.3d 1052 (Fed. Cir. 2005) ............................................................................................ 7

*Lucent Technologies, Inc. v. Gateway, Inc.,*
    580 F.3d 1301 (Fed. Cir. 2009) ...................................................................................... 15, 24

*Mirror Worlds, LLC v. Apple Inc.,*
    692 F.3d 1351 (Fed. Cir. 2012) ............................................................................................ 5

*NetFuel, Inc. v. Cisco Sys. Inc.,*
    438 F. Supp. 3d 1031 (N.D. Cal. 2020) ........................................................................... 5, 25

*Paice LLC v. Toyota Motor Corp.*,
     504 F.3d 1293 (Fed. Cir. 2007) ............................................................. 21

*Pitney Bowes, Inc. v. Hewlett–Packard Co.*,
     182 F.3d 1298 (Fed. Cir. 1999) ............................................................... 5

*Quintal Research Grp., Inc. v. Nintendo of Am., Inc.*,
     C 13-00888 SBA (N.D. Cal. Jul. 17, 2015) ..................................... 21, 22

*Radware, Ltd. v. F5 Networks, Inc.*,
     147 F. Supp. 3d 974 (N.D. Cal. 2015) ..................................................... 5

*Texas Instruments Inc. v. Cypress Semiconductor Corp.*,
     90 F.3d 1558 (Fed. Cir. 1996) ............................................................... 21

*Thorner v. Sony Comput. Entm't Am. LLC*,
     669 F.3d 1362 (Fed. Cir. 2012) ............................................................. 19

*Tinnus Enterprises, LLC v. Telebrands Corp.*,
     846 F.3d 1190 (Fed. Cir. 2017) ................................................... 7, 13, 14

*Transonic Sys., Inc. v. Non-Invasive Med. Techs. Corp.*,
     143 F. App'x 320 (Fed. Cir. 2005) ................................................. 12, 23

**<u>Rules</u>**

Fed. R. Civ. P. 56(a) ...................................................................................... 4

## I.   __INTRODUCTION__

Sonos's motion for summary judgment of noninfringement ("Motion" or "Mot.") ignores substantial evidence and relies on new and unsupported interpretations of the asserted claims to manufacture non-infringement arguments. Viewing all the evidence, in the light most favorable to Google (as required), reveals genuine issues of material fact concerning every issue Sonos raises.

Google's expert—Dr. Alan Sherman—has analyzed the accused Sonos Player products in detail, reviewing source code, engineering documents, and Sonos's witness testimony. He offered a detailed report setting forth his opinions that the accused Sonos Player products satisfy each limitation of the asserted claims and the detailed bases for these opinions. Sonos's efforts to rebut Dr. Sherman's evidence-based opinions raise, at most, disagreements over credibility and points for cross-examination. Sonos's disagreements with Dr. Sherman's opinions, and the evidence he relies upon, do not raise disputes that can be resolved on summary judgment.

Beyond ignoring evidence, Sonos's Motion advances new and unsupported interpretations of the claims, never advanced during the claim construction process. Those belated claim constructions lack merit. Sonos's proposed constructions lack support in the plain meaning of the asserted claims and the intrinsic evidence.

## II.   __BACKGROUND__

### A.   __Overview of Asserted Patent__

The '187 patent describes a method and apparatus for "performing domain-based digital-rights management with easy and secure device enrollment." *See* Ex. A[1] ('187 patent) at 1:8-10. To prevent piracy of digital content, content distributors implement digital-rights management (DRM) to manage rules related to accessing and processing digital items. *Id*. at 1:18-24. Figure 1 of the '187 patent provides an exemplary block diagram of a DRM system, which includes user equipment 101, key issuer 105, rights issuer 103, and network 107. *Id*. at 3:8-12; *see also* Figure 1.

---

[1] All numbered exhibits herein refer to the exhibits to the Declaration of Sean Taheri In Support of Google LLC's Opposition to Sonos Inc.'s Motion For Summary Judgment of Non-Infringement of '187 Patent Asserted Claims. All lettered exhibits herein refer to the exhibits to Sonos's Motion.

The focus of the '187 patent is to allow a user to easily and efficiently add additional user equipment to an existing domain of devices. *See* Ex. A ('187 patent) at 1:8-10. To achieve this, the user equipment provides "domain information" to the "key issuer." *See id.* at Figure 3. New "user equipment" then receives a "private key" that is used by all "user equipment" in the domain to access digital content. *Id*. Claim 10 of the '187 patent is directed to this concept:

> 10. An apparatus comprising:
>
> communication circuitry receiving domain information from a device existing within a domain of devices, which share rights associated with a common account, for use in accessing protected digital content within a digital-rights management system;
>
> storage for storing the domain information; and
>
> logic circuitry for providing the domain information to a key issuer, which is separate from the domain of devices, causing the key issuer to issue a private key for use in accessing protected digital content to the apparatus, wherein the private key is based on the domain information and is utilized by all devices within the domain of devices.

**B.**   **Accused Sonos Products**

Google accuses the following Sonos devices of infringing the asserted claims: Sonos One, One SL, Play:1, Play:3, Five, Play:5, Arc, Playbar, Playbase, Beam, Move, Connect:Amp, Amp, Connect, and Port (collectively "the accused Sonos Player products"). These devices are commonly referred to by Sonos as "Player" devices. Mot. 2.

The accused Sonos Player products are programmed so that a new Sonos Player product will join a household, receiving information from other products in the household to assist the new product with the process. Ex. 1 (Sherman Rpt.) ¶¶ 105, 108-126. This information includes identification information for the household that the new product is joining (e.g., the household ID), as well as authentication and/or other cryptographic functions that are used by the new product to authenticate to Sonos server(s). *Id*. ¶¶ 108-126, 134-137, 152-161. A new Sonos Player product is also capable of adding third-party content provider services (e.g., Spotify, Apple Music or Amazon Music) when that device joins the household. Ex. 1 (Sherman Rpt.) ¶¶ 108, 123-126, 134-137, 152-161.

**C.      Google's Infringement Allegations**

As Dr. Sherman explains, each Sonos Player device is designed to support a three-step process when being added to an existing household: (1) ████████████████████████████ ████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████; (2) ████████████████████ ████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████ ██████████████████████ and (3) provide the household info to a third-party music service provider to obtain an authentication token ("AuthToken") that is needed to access audio associated with the user's account from that music service. *Id*. ¶¶ 108-126, 134-137, 152-161. This process practices the '187 patent claims in multiple ways. Google asserts two theories of infringement—the "***Authentication Theory***" and "***Strong Encryption Theory***" in Dr. Sherman's report—that are each described below. Both theories are directed to adding a new Player device to a common subnet (which Sonos refers to as a "household") using software Sonos installs on Sonos Players so that those player devices can be added to an existing household.

1.      Authentication Theory of Infringement

Google's "Authentication Theory" relates to the software resident on each accused Sonos Player device that provides the capability for the Player devices that have been added as a new device to an existing household ████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ Ex. 1 (Sherman Rpt.) ¶¶ 152-161. Executing this software, a new Sonos device joining a household can be operated to add a third-party content provider, like Spotify, and associate that content provider with the household. *Id*. This is done by the accused Sonos Player product sending the household information to the third-party music service, which issues an "AuthToken" that is associated with the household ID. *Id*. ¶ 157. The AuthToken "securely transmits information about user identities between applications and websites" and "allows internet users to access applications, services, websites, and application programming interfaces (APIs) without having to enter their login credentials each time they visit." *Id*. ████████████████████████████████████████████████████

1 ████████████████████████████████████████████████████████

2 ████████████████████████████████████ Sonos's technical expert, Dr.

3 Wicker, showed the accused Sonos Player devices are added to a household and add a third-party

4 music service (Spotify) by personally using the accused Sonos Player device (the Sonos Move) and

5 taking screenshots of the process. Ex. 2 (Wicker Rpt.) ¶¶ 99-103, 121-123

2.    <u>Strong Encryption Theory of Infringement</u>

7     Google's "Strong Encryption Theory" is directed to software capable of implementing

8 ██████████████████, which is directed to the first two-steps of the three-step process described

9 above. In particular, software resident on each Sonos Player device can be executed to implement

10 the addition of a new device to a household and, as part of this process, ████████████████

11 ████████████████████████████████████████████████████████

12 ████████████████████████████████████████████████████████

13 ████████████████████████████████████████████████████████

14 ████████████████████████

15        ████████████████████████████████████████████████

16 ████████████████████████ However, "[i]n a household with multiple Sonos players, the

17 players can be grouped together to play music in synchrony—for example, speakers located in a

18 consumer's kitchen, patio, and dining room can play the same song in a synchronized manner." Mot.

19 2. A "group" of Sonos Player devices will play the same music content in synchrony. *Id.* ██████

20 ████████████████████████████████████████████████████████

21 ████████████████████████████████████████████████████████

22 ████████████████████████████████████████████████████████

23 ████████████████████████████████████████████████████████

24 ████████████████████████████████████████████████████████

25 ████████████████████████████████████████████████████████

26 **III.   <u>LEGAL STANDARD</u>**

27     Summary judgment is appropriate where "there is no genuine dispute as to any material fact

28 and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine

-4-

1   if it could reasonably be resolved in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*,

2   477 U.S. 242, 248 (1986). A fact is material if it could affect the case outcome. *Id.*

3       The burden of establishing the absence of a genuine issue of material fact lies with the

4   moving party, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986), and the court must view the

5   evidence in the light most favorable to the non-movant, *Anderson*, 477 U.S. at 255. The nonmoving

6   party need not show that the issue will be conclusively resolved in its favor. *Id.*, 248-49. All that is

7   required is the identification of sufficient evidence to create a genuine dispute of material fact,

8   thereby "requir[ing] a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.*

9   (internal quotation marks omitted).

10      On summary judgment, the court draws all reasonable factual inferences in favor of the

11  nonmoving party. *See Anderson*, 477 U.S. at 255. "Credibility determinations, the weighing of the

12  evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a

13  judge." *Id.* In patent infringement cases, to obtain summary judgement of non-infringement a

14  defendant must show that there is no genuine issue whether the accused device is encompassed by

15  the claims. *See Radware, Ltd. v. F5 Networks, Inc.*, 147 F. Supp. 3d 974, 1001 (N.D. Cal. 2015)

16  (citing *Pitney Bowes, Inc. v. Hewlett–Packard Co.*, 182 F.3d 1298, 1304 (Fed. Cir. 1999)

17  ("[S]ummary judgment of non-infringement can only be granted if, after viewing the alleged facts

18  in the light most favorable to the non-movant, there is no genuine issue whether the accused device

19  is encompassed by the claims."); *see also NetFuel, Inc. v. Cisco Sys. Inc.*, 438 F. Supp. 3d 1031,

20  1034 (N.D. Cal. 2020) (same). Because evidence of the nonmovant is to be believed on summary

21  judgment, and because a plaintiff may establish infringement by relying on circumstantial evidence,

22  defendants face a *very* high burden to show that there truly is no genuine issue to be weighed and

23  decided by a factfinder. *See Mirror Worlds, LLC v. Apple Inc.*, 692 F.3d 1351, 1359 (Fed. Cir.

24  2012); *Fantasy Sports Props., Inc. v. Sportsline.com, Inc.*, 287 F.3d 1108, 1113 (Fed. Cir. 2002)

25  (quoting *Anderson*, 477 U.S. at 255 ("The evidence of the nonmovant is to be believed, and all

26  justifiable inferences are to be drawn in his favor")).

27

28

1   IV.   **ARGUMENT**

2        Sonos's Motion relies on noninfringement arguments that ignore the substantial evidence of

3   infringement Google has identified, further basing its arguments on belated and incorrect claim

4   constructions. None of Sonos's arguments meet its burden to justify summary judgment of

5   noninfringement. At most, Sonos's arguments raise genuine disputes of material fact that fail to

6   support a grant of its present Motion.

7        A.   **Summary Judgment Should Be Denied for Infringement Under Google's**
         **Authentication Theory**

8

9        Sonos fails to show an absence of disputed material facts sufficient to support a finding of

10  noninfringement under Google's Authentication Theory. Instead, each of Sonos's arguments

11  misstates the evidence and misconstrues the asserted claims. Sonos asserts two primary

12  noninfringement arguments for the asserted method (claims 1, 3, and 4) and apparatus (claims 10

13  and 12) claims: (1) the accused AuthToken is not a "private key", and (2) the accused AuthToken

14  is not based on the domain information. With respect to method claims 1, 3 and 4, Sonos additionally

     argues that the preamble is not practiced. Each of these arguments fail.

15       1.   Sonos's AuthToken "Private Key" Argument, At Most, Raises A Genuine
              Dispute of Material Facts
16

17       With respect to the asserted apparatus and method claims, Sonos contends the AuthToken

18  that the accused Sonos Player devices receive from a third-party music service is not the claimed

19  "private key."

20            (a)   The Asserted Claims Do Not Require Inputting the Private Key Into
                    A Cryptographic Algorithm
21

22       Sonos first argues the identified "AuthToken" cannot be the claimed "private key" because,

23  it claims, there is no evidence the AuthToken is actually *input* into a cryptographic algorithm (Mot.

24  7-10), and without such evidence, the AuthToken is purportedly merely data—not the claimed

25  "private key." Mot. 9-10. This is wrong, legally and factually. This evidence is not required as a

26  matter of law. And even if it were required, it exists in the record; Sonos simply ignores it.

27       ***First***, as a matter of law, Sonos's argument rests on the false premise that the claims require

28  the step of inputting an AuthToken into a cryptographic algorithm to meet the Court's definition of

a "private key." Mot. 7-10. There is no such requirement in any asserted claim. The asserted claims only require *receipt* of a "private key," which is characterized as a value having the *properties* set forth in the Court's construction: "a non-public key that is used as an input to a cryptographic algorithm designed such that, without the key, the output of the algorithm cannot be computed." The identified "AuthToken" meets these requirements.

      *Sonos's own expert*, Dr. Wicker, acknowledged that *"[t]he act of actually using the key in a cryptographic algorithm is not a step or a limitation of the claim."* Ex. 3 (Wicker Dep. Tr.) 133:4-17. The asserted claims merely require receipt of a "private key," which is clearly met by the accused AuthToken, as confirmed by both parties' experts. Ex. 4 (Sherman Dep. Tr.) 104:9-18, 114:13-25; Ex. 3 (Wicker Dep. Tr.) 152:1-153:17, 145:17-146:20. Thus, contrary to Sonos's assertions, third-party source code detailing the specific cryptographic algorithm used by third-party content providers is not required for any asserted claim—and Sonos's assertion that Dr. Sherman is relying on "speculation" as to what third-party content providers do with the AuthToken is incorrect and a straw man. Dr. Sherman is not relying on the actual step of inputting the AuthToken into a third-party cryptographic algorithm. Dr. Sherman says what Dr. Wicker says—this evidence is not required by the claims.[2]

---

      [2] Sonos's reliance on *Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052, 1080 (Fed. Cir. 2005) is inapposite. In that case, the expert provided a speculative opinion that the accused product would behave differently from how the evidence showed it behaved. No such contrary evidence exists here. Instead, here, the evidence of record establishes that the Sonos Player devices are programmed to receive an AuthToken, the function of which (and reason for its existence) is to operate as an input to a cryptographic algorithm—something both experts agree that it does. Ex. 4 (Sherman Dep. Tr.) 104:9-18, 114:13-25; Ex. 3 (Wicker Dep. Tr.) 152:1-153:17, 145:17-146:20. The AuthToken's purpose is to "securely transmit[] information about user identities between applications and websites" and "allow[] internet users to access applications, services, websites, and application programming interfaces (APIs) without having to enter their login credentials each time they visit." Ex. 1 (Sherman Rpt.) ¶ 157. The AuthToken must be an input to a cryptographic algorithm, because the algorithm is required to verify the AuthToken. *Id.* Therefore, even if the AuthToken was required to be input into a cryptographic algorithm (it is not), the evidence supports a finding that this input occurs given the purpose of the AuthToken. *See, e.g.*, *Tinnus Enterprises, LLC v. Telebrands Corp.*, 846 F.3d 1190, 1204 (Fed. Cir. 2017) (accused infringer's internal documents providing instructions for a product "are at least circumstantial evidence of infringement for any claim elements taught by those materials" and holding "[a] patentee is entitled to rely on circumstantial evidence to establish infringement").

-7-

1    ***Second***, as a matter of fact—and separate from any third-party music service cryptographic

2    algorithm—the evidence of record establishes that the AuthToken ***is also*** input into a cryptographic

3    algorithm on the Sonos Player device that receives the AuthToken from the music service. ████

4    ████████████████████████████████████████████████████████████████████████████████

5    ████████████████████████████████████████████████████████████████████████████████

6    ████████████████████████████████████████████████████████████████████████████████

7    ████████████████████████████████████████████████████████████████████████████████

8    ████████████████████████████████████████████████████  This alone meets the

9    "private key" definition under Sonos's misapplication of the claims.

10   Construing the claims properly, and viewing the evidence in the light most favorable to

11   Google (as it must be viewed at this stage), the verification of the ████████████  by the third-

12   party music services also confirms that the AuthToken is a claimed "private key." This verification

13   requires that the ████████████  be input in a cryptographic algorithm, as confirmed by both

14   Google's and Sonos's experts. ████████████████████████████████████████████████

15   ████████████████████████████████████████████████████████████████████████████████

16   ████████████████████████████████████████████████████████████████████████████████

17   ████████████████████████████████████████████████████████████████████████████████

18   ████████████████████████████████████████████████████████████████████████████████

19   ████████████████████████████████████████████████████████████████████████████████

20   ████████████████████████████████████████████████████████████████████████████████

21   ████████████████████████████████████████  Therefore, the evidence confirms

22   that AuthToken is a private key.

23              (b)      Sonos Misconstrues "Based On" To Assert No Infringement

24   Sonos's second noninfringement argument with respect to the Authentication Theory—

25   namely, that the claimed "private key" is not the "AuthToken" because it is not "based on" domain

26   information—relies on an artificially narrow construction of the term "based on" that is not

27   supported by either the plain meaning of the claims or by the intrinsic evidence. Although Sonos

28   never outright states what it believes ***is*** required for a private key to be "based on" domain

information, Sonos asserts that associating a private key with domain information or using domain information to generate a private key are ***not*** sufficient to meet the claim. But Sonos provides no intrinsic support for this narrow read of the asserted claims and there is none. The asserted claims merely require "the private key is based on the domain information." The evidence shows that the AuthToken is "based on" the household ID and this claim element is met.

Sonos also incorrectly argues that a determination of whether the private key is "based on" the domain information requires third-party source code. It does not. Sonos documentation, Sonos source code, and the testimony of Sonos's expert all confirm that the AuthToken is generated using the household ID as an input, and that the AuthToken is associated with the household ID to authenticate and verify the device. Ex. 1 (Sherman Rpt.) ¶¶ 292-294; Ex. 3 (Wicker Dep. Tr.) 163:2-23. As Dr. Sherman has explained, the ***generating*** of the AuthToken by ***receiving*** the household ID and using it as an input, as well as ***associating*** the household ID with the AuthToken, all show the ***AuthToken is "based on" the household ID***. Ex. 1 (Sherman Rpt.) ¶¶ 292-294. If the household ID is not received from the Sonos Player device, no AuthToken is generated. *Id*. And if an AuthToken has already been generated for the household in which the Player device is being added, a new AuthToken will not be generated. *Id*. This all confirms AuthToken is based on the household ID.

Sonos's own documentation confirms this. For example, Sonos's developer documentation states that the household ID is sent to the third-party content provider for the third-party content provider to issue and send the AuthToken by using a "getDeviceAuthToken" request.  Ex 5 (Add Browser Authentication) at 2345.  This developer documentation shows how a third-party content provider must implement its authentication process. Specifically, the ***third-party service must generate the AuthToken using the household information*** as input, as the AuthToken is "use[d] to identify the user at this household." *Id*. Sonos documentation also confirms that the response to the "getDeviceAuthToken" request must use the "householdID" as the input for generating the AuthToken because it is generated specifically for the household. Ex. 6 (Sonos Music API – getDeviceAuthToken) at -2392-93 (showing sample request for AuthToken includes household ID as input and response to request using household ID as input). Dr. Sherman explained that this documentation shows that "the digital content provider (i.e., the key issuer) generates the authToken

1   (i.e., private key) in response to receiving the getDeviceAuthToken message, which includes the

2   household ID as an input parameter." Ex. 1 (Sherman Rpt.) ¶ 293.

3        Sonos is wrong to claim there is no evidence third-party music services employ household

4   ID values to generate AuthTokens, and no evidence that AuthTokens are based on the household

5   ID. Sonos's own developer documentation for third-party music services, quoted above, says

6   exactly the opposite. It instructs third parties on how to use Sonos's own application programming

7   interfaces (or "APIs") to make third-party services work with the accused Sonos Player products.

8   Sonos's expert, Dr. Wicker, confirmed this documentation is provided by Sonos to third-party

9   content providers to "***provide technical information to allow third parties to*** design systems that

10  can ***interact***, for example, ***with Sonos***." Ex. 3 (Wicker Dep. Tr.) 185:1-9. Dr. Wicker further

11  confirmed that this Sonos developer documentation provides "***requirements***" and "***suggestions***" for

12  third-party music services. *Id*. 186:1-11. Sonos's own statements to third-party music providers on

13  how those providers should generate and use AuthTokens to implement their services with Sonos

14  products is highly credible evidence of how third-party content providers actually ***do*** generate and

15  use AuthTokens with Sonos products. At this stage, these statements by Sonos to third-party

16  developers more than establish at least a material question of fact as to whether or not AuthToken

17  issuance is "based on" the household ID.

18       Furthermore, this documentation establishes that Sonos mandates a specific relationship

19  between the AuthToken and household ID—a specific user-household combination must be able to

20  be ***determined from*** the AuthToken. Ex. 1 (Sherman Rpt.) ¶¶ 292-294. This again shows the

21  AuthToken is "based on" the household ID. As Dr. Sherman explained, "the digital content provider

22  (i.e., the key issuer) can use the household ID to validate the authToken. For example, the digital

23  content provider can store the household ID and associate it with the authToken when the authToken

24  is generated." Ex. 1 (Sherman Rpt.) ¶ 294 (citing Ex. 7 (Sonos Developer, *Use authentication*

25  *tokens*)). ████████████████████████████████████████████

26  ████████████████████████████████████████████

27  ████████████████████████████████████████████

28  ██████████████████████████████████ The AuthToken is thus ***necessarily***

based on the household ID; it is generated by receiving the household ID, using the household ID as the input for generating the AuthToken, and validating the AuthToken by using the household ID. Ex. 7 (Sonos Developer, *Use authentication tokens*) (stating the "householdID" is "use[d] … to further validate the token" and the "householdID value" is "store[d] … and associate[d] with the AuthToken). This is further confirmed by Sonos's expert, Dr. Wicker, who testified that "[t]he authToken as we discussed was being used by the device to request access to a streaming service or to show … that the particular device is authorized to use the streaming service," by ensuring the AuthToken is "associated with the household." Ex. 3 (Wicker Dep. Tr.) 163:2-23. The ***ability to "use the householdID to [] validate" the AuthToken***—something Sonos admits can be done in its instructions to third-party developers, and something Sonos's own expert also admits can be done to confirm "associat[ion] with the household" for a device—dooms Sonos's arguments. AuthTokens can be validated based on household ID ***because AuthTokens are based on household ID***.

Sonos nonetheless claims that an AuthToken generated with a household ID and validated with a household ID is not "based on" a household ID. That argument, which defies both claim language and logic, relies on an overly-narrow reading of the claim language with no intrinsic support. Claims 1 and 10 state that "the private key is ***based on*** the domain information and is utilized by all devices within the domain of devices." Nothing in the asserted claims, the specification, or the file history narrows the meaning of "based on" beyond this plain meaning of the term as used in claims 1 and 10. Thus, the private key can be "based on" the domain information in any way, including any relationship or association that satisfies the plain language of the claim. The specification confirms (not narrows) the plain meaning of the phrase, explaining that the private key is generated ***in response to*** the domain information being sent to the key issuer:

> [The] key issuer 105 will grant equipment 101 a DRM certificate and a DRM private key, allowing equipment 101 to obtain rights to digital content from rights issuer 103. In order to obtain the DRM certificate and the DRM private key, user equipment 101 and key issuer 105 must first execute a secure authentication protocol utilizing a unit certificate and unit private key that was installed onthe equipment by the manufacturer. ***Domain information, such as the domain name, private domain password and desired domain action (e.g., create a new domain, register into an existing domain, leave a domain, etc), is also exchanged during the protocol***.
> Key issuer 105 authenticates the unit certificate (belonging to equipment 101) and then checks the domain information. ***If the domain information indicates that***

***equipment 101 is being added to a new domain, key issuer 105 creates a new DRM public/private key pair. If equipment 101 is being added to an existing domain, key issuer 105 looks up that domain's DRM public/private key pair in a database…***

Ex. A ('187 patent) at 4:16-41. According to the specification, the private key can thus be "based on" the domain information in the specification by being associated with the domain information—i.e., being the private key associated with the domain information in a database ("that domain's DRM public/private key pair in a database"). *Id.* The specification does ***not*** require that the private key is generated using the domain information. *Id.* The prosecution history likewise does not require ***generating*** the private key using the domain information. Nothing in the prosecution history claimed that this must (or even does) occur in any embodiment. Nor does the prosecution history include any statements disclaiming or disavowing the plain and ordinary meaning of "based on" to distinguish prior art. *See* Ex. 8 ('187 patent File History).

Dr. Sherman appropriately applied the plain and ordinary meaning of "based on" to show how the accused Sonos Player products meet this element. He explained that the AuthToken is generated by the third-party content provider only in response to receiving the household ID in an AuthToken request message, the household ID is used as an input parameter for generating the AuthToken, and the AuthToken is dependent on the household ID as the AuthToken is associated with the household ID to authenticate and verify the device. Ex. 1 (Sherman Rpt.) ¶¶ 292-294. Dr. Wicker confirmed this dependent relationship between the AuthToken and the household ID when he testified that "[t]he authToken as we discussed was being used by the device to request access to a streaming service or to show -- I should be more specific -- to show that the particular device is authorized to use the streaming service" as the AuthToken is "associated with the household." Ex. 3 (Wicker Dep. Tr.) 163:2-23.

Ultimately, Sonos's arguments all turn on resolving a battle of the experts on the relationship between the AuthToken and the household ID, including what that relationship is (and how Sonos tells third parties to relate them). This is not a sufficient basis to grant Sonos's present motion. *Transonic Sys., Inc. v. Non-Invasive Med. Techs. Corp.*, 143 F. App'x 320, 330 (Fed. Cir. 2005) (noting "expert testimony sufficient to raise a genuine issue of material fact"); *Goldman v. Standard*

*Ins. Co.*, 341 F.3d 1023, 1036 (9th Cir. 2003) (denying summary judgment because determination of "[w]ho is correct in this battle of experts is not for [the Court] to decide").

        2.     <u>Sonos Has Raised, At Best, A Genuine Dispute Of Material Fact Regarding Whether Sonos's System Performs The Preamble Of Claim 1</u>

Sonos's noninfringement argument regarding the preamble of claim 1—which applies only to claims 1, 3, and 4, and does not apply at all to apparatus claims 10 and 12—ignores substantial evidence that this element is met.

The preamble of claim 1 states: "[a] method for registering a new device as part of a domain of devices, which share rights associated with a common account, for use in accessing protected digital content within a digital-rights management system." As Dr. Sherman explains, an accused Sonos device meets this limitation because it authenticates third-party content providers for a household, rather than a single device, as part of a new Player device joining the household. *See, e.g.*, Ex. 1 (Sherman Rpt.) ¶¶ 170-193. Dr. Sherman demonstrated this in detail, showing that when a new Sonos device joins a household, the new, joining Sonos product is designed to support authentication with one or more third-party content providers. When this capability is used the new, joining Sonos product is further programmed to share the AuthToken received in response with other devices in the household. This AuthToken can then be used by *all* devices within the household to access protected digital content from the issuing third-party content provider. *Id*. ¶¶ 171-172 (explaining the process of an accused device joining a household and citing Sonos documentation showing the new device joins the household to access third-party content providers). Sonos not only programs the Sonos Player devices to register with third-party music services in this manner, but further instructs its customers how to control Player devices to do so. Ex. 1 (Sherman Rpt.) ¶ 682 (citing Sonos websites and user guides instructing customers to integrate third-party music services and play content on the accused Sonos Player products).

Sonos ignores all this evidence. But this evidence more than establishes that Sonos devices are designed to perform the preamble of Claim 1, and that Sonos instructs users to perform those steps. *See, e.g.*, *Tinnus Enterprises*, 846 F.3d at 1204 (accused infringer's internal documents providing instructions for a product "are at least circumstantial evidence of infringement for any

1   claim elements taught by those materials" and holding "[a] patentee is entitled to rely on

2   circumstantial evidence to establish infringement"). This defeats Sonos's Motion.

3         At best, Sonos is advancing a factual dispute, attempting to contradict Dr. Sherman's

4   thorough explanation of infringement. As Dr. Sherman explains, the "household is a domain

5   associated with a common account for use in accessing protected digital content,' at least because

6   the '187 Accused Instrumentality shares and replicates data, such as music service accounts, on each

7   '187 Accused Instrumentality of the household." *Id*. ¶¶ 112, 193-194. This is shown by Dr.

8   Sherman's Spotify example: when a new Sonos device joins a household, a user can add third-party

9   content providers, like Spotify, to the device by authenticating the device within the household. *Id*.

10   The user will add the accused Sonos Player product and the household to the Spotify service by

11   having the user's account added to the household and new device. *Id*. As part of the process for

12   adding and authenticating the Spotify service for the new accused Sonos Player product, all devices

13   within the household, including the new device, will be authenticated by Spotify so they can all play

14   content from Spotify on the devices ███████████████████████████ *Id*. This

15   AuthToken will be used to verify the account by Spotify before any content is provided to the

16   devices. *Id*. Sonos instructs its customers ***how*** to use this functionality ***with the expectation that***

17   ***they do so*** – and even ***advertises operation with third-party music services*** in an effort to obtain

18   customers. Ex. 1 (Sherman Rpt.) ¶ 682 (citing Sonos websites and user guides instructing customers

19   to integrate third-party music services and play content on the accused Sonos Player products).

20         Dr. Sherman's analysis is corroborated by Sonos's own witnesses, who confirmed that the

21   preamble is met under Google's Authentication Theory. ███████████████████████████

22   ████████████████████████████████████████████████████

23   ████████████████████████████████████████████████████

24   ████████████████████████████████████████████████████

25   ████████████████████████████████████████████████████

26   A jury would be more than entitled to credit Sonos's own employees on this issue.

27

28

Sonos further ignores the evidence when arguing that the process for authenticating a device with a third-party content provider "is different from (and unrelated to) the process of registering a new device into an already-existing household." Mot. 5. This is wrong, for multiple reasons.

**First**, Sonos's argument misreads the preamble of claim 1, and improperly imports a new requirement into the preamble that simply does not appear in the claim language. Sonos imposes an additional timing requirement on the registration of a new device into a domain and the sharing of rights with a common account used to access protected digital content, and then claims no infringement could exist because accused steps happen at the wrong time. But this is a straw man; no timing requirement exists in the claim language, and Sonos's attempt to import a temporal limitation into the claim is legal error. *Baldwin Graphic Systems, Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1345 (Fed. Cir. 2008) (refusing to import timing requirement into method claims unless the "claims, specification, and prosecution history" would "require" a timing requirement).

**Second**, Sonos's allegation that the authentication process is unrelated to the joining of the household is factually unsupported—and Sonos's motion provides no evidence supporting this assertion. Sonos relies on receiving AuthTokens from other devices within the household, but this is misdirection; that is only **one** way that AuthTokens **may** be received by a Sonos device in **one** configuration. Sonos does not, and cannot, disprove that Sonos devices **also** support the operations identified by Google and Dr. Sherman—operations that establish a new Sonos device joining a household can meet the claimed preamble. Ex. 9 (K. Vovk Dep. Tr.) 40:1-41:25, 42:1-21 (explaining the sending of the AuthToken to other devices is a separate action that can be done after a device has already received the AuthToken from the third-party content provider). Specifically, the replication or sharing of the AuthToken from other devices within the domain is only done when a third-party music service has already been setup for the household and the AuthToken has been received from the third-party music service. *Id*. But the accused implementation is one where the music service has **not** yet been set up for the household, and a new device that is being added to the household is the **first** device in the household to authenticate to a third party music service. *See, e.g.*, Ex. 1 (Sherman Rpt.) ¶¶ 170-193. Sonos's argument about the extent of infringement is an issue for damages—not for summary judgment of noninfringement. *See, e.g.*, *Lucent Technologies, Inc. v.*

1    *Gateway, Inc.*, 580 F.3d 1301, 1317–19 (Fed. Cir. 2009) (circumstantial evidence sufficient for

2    finding infringement and scope of use of the infringing functionality was an issue for damages).

3           Sonos's reliance on decisions by foreign courts regarding the preamble language of foreign

4    patents (Mot. 6) is inapposite. Notably, these foreign proceedings applied foreign law to different

5    claims, including foreign law on claim scope and disclaimer—and thus arrived at different claim

6    constructions than the construction required by U.S. law (the only relevant claim construction for

7    purposes of this case). Specifically, the foreign courts used a different and already-rejected claim

8    construction that Sonos proposed in this case for "private key," and which this Court already rejected

9    as overly narrow under U.S. law, as shown below:

| Foreign Court's Construction | The Court's Construction |
|---|---|
| **German Court's Construction:** "As shown by the interpretation, the private key would – in order to be qualified as cryptographic in the sense of the patent in suit – need to be used to encrypt data or to generate digital signatures (para. [0011] of the patent in suit document)."  Ex. E (German Decision) at 46 | "private key" construed as "a non-public key that is used as an input to a cryptographic algorithm designed such that, without the key, the output of the algorithm cannot be computed." Dkt. 108 at 11-15 <br><br> ***Rejected*** Sonos's proposal of "a non-public key used for either decrypting data or generating digital signatures" because under U.S. law, Sonos's proposal "impermissibly seeks to narrow the claim scope." Dkt. 108 at 15. |
| **French Court's Construction:** "It must be noted that no document describes the addition of a device to an existing domain and, in particular, that the transmission of domain information would occur in such a case: - after the device has determined a short range between the speakers, - without the user entering their identification data, - and by intervention for the purpose of securing the process of a key issuer distinct from the domain (see element 103 of Figure 1 of the patent reproduced above), ***intervention by which the issuance of a key allowing the decryption of the content (the private key described in the SONOS system does not have this purpose, nor does the token) would be triggered***." Ex. F (French Decision) at 17. | |

-16-

The foreign opinions Sonos relies on thus limited the "private key" in those patents to decryption, excluding the authentication process associated with registering devices within a household or third-party service under Google's Authentication Theory (as this registration/authentication process does not involve decryption). *Id*. But given the different constructions at issue in those foreign proceedings, those foreign decision have no relevance to the determination of infringement in this case, and certainly cannot support summary judgment of noninfringement; "the constructions offered by another court, applying foreign law, have little relevance to [this Court's] determination." *Ateliers de la Haute-Garonne v. Broetje Automation-USA Inc.*, No. 09-cv-598-LPS, 2011 WL 722937, at *5 (D. Del. Feb. 23, 2011).

At bottom, Google provided substantial evidentiary support for its assertion that the preamble of claim 1 is met by the Sonos accused products under Google's Authentication Theory, including Sonos documentation, source code, expert analysis, and testimony from Sonos's witnesses. Sonos fails to identify any ***undisputed*** issues of material fact that would support summary judgment of no infringement for this element.

### B.   Summary Judgment Of Non-Infringement Should Also Be Denied Under Google's Strong Encryption Theory

Sonos also fails to show undisputed material facts to support a finding of noninfringement under Google's Strong Encryption Theory. Sonos asserts two primary noninfringement arguments for the asserted claims: the accused private device key is allegedly not (1) utilized by all devices in the domain, or (2) based on the domain information. For the method claims (1, 3 and 4) Sonos additionally alleges Google has not shown the method is performed. All these arguments fail.

1.   At Best, Sonos Raises A Genuine Dispute Of Material Facts As To Whether The Accused Private Device Key Is "Utilized By All Devices Within The Domain of Devices"

Sonos argues that the "utilized by all devices within the domain of devices" is not met because the Controller does not utilize ███████████. Mot. 15-16. The Controller is a Sonos application, not a device, and it does not play audio content—it is used to set up Sonos Player devices within a household and send requests to such devices. Ex. 1 (Sherman Rpt.) ¶¶ 379-380. The claim element's language is clear: all of the devices that are in the domain and receive the protected content

1  will utilize the private key to access and play the protected content. *Id*. Google has offered

2  substantial evidence that this occurs, including Sonos documentation and ██████████████

3  ████████████████████████████████████████████████████████████████████

4  ████████████████████████████████ *Id*. There is nothing in the intrinsic record

5  that supports reading the claim to also require a ***non-music playing application***, like the Controller,

6  must also use the private key.

7          Additionally, to the extent the "utilized by all devices within the domain of devices" element

8  is not literally met by the accused Sonos Player products, using the group leader Sonos Player

9  ████████████████████████████████████████████████████████████████████

10  ████████████████████████████████████████████████████████████████████

11  ████████████████████████████████████████████████████████████████████

12  ████████████████████████████████████████████████████████████████████

13  ████████████████████████████████████████████████████████████████████

14  ████████████████████████████████████████████████████████████████████

15  ████████████████████████████████████████████████████████████████████

16  ████  Furthermore, the question of whether any difference (to the extent there is a difference) is

17  substantial or insubstantial ***is a question of fact*** that must be left to the jury. *See, e.g.*, *Adams*

18  *Respiratory Therapeutics, Inc. v. Perrigo Co.*, 616 F.3d 1283, 1292–93 (Fed. Cir. 2010) (vacating

19  a summary judgment of noninfringement as factual dispute existed as to whether difference between

20  the claim and the accused product was insubstantial).

21          As Sonos's Motion explains, "[i]n a household with multiple Sonos players, the players can

22  be grouped together to play music in synchrony—for example, speakers located in a consumer's

23  kitchen, patio, and dining room can play the same song in a synchronized manner." Mot. 2. Thus,

24  the "group" of Sonos Player devices are all within the household and they will play the same music

25  content from a third-party content provider in synchrony. *Id*. The Controller is not a Player device

26  and is never part of a "group" of Sonos Player devices. *Id*. When the Sonos Player devices play this

27  music content in a group, ████████████████████████████████████████

28  ████████████████████████████████████████████████████████████████████

1 ███████████████████████████████████████████████████████████

2 ███████████████████████████████████████████████████████████

3 ██████████

4    Sonos also argues that "utilized by every device" additionally requires each device in the

5 domain to have *its own copy* of the (same) private domain key and each device individually to

6 employ that private domain key to gain access to the received media content. Mot. 16-17. Again,

7 there is nothing in the '187 patent that mandates this narrowed construction. Although the '187

8 patent provides an example where the same private domain key *may* be copied and stored locally

9 on a device ('187 patent 6:45-60), there is no disclosure in the '187 patent or intrinsic record

10 ***mandating*** the claims to be limited to this embodiment (*id.*). A patentee does not limit the scope of

11 the claims to one embodiment by "simply disclos[ing] a single embodiment or us[ing] a word in the

12 same manner in all embodiments." *Thorner v. Sony Comput. Entm't Am. LLC*, 669 F.3d 1362, 1365

13 (Fed. Cir. 2012). Here, the asserted claims do not require the same private device key be "***stored***"

14 on each device; they merely state that the same private key is "utilized" by each device in the

15 domain. Sonos offers no evidentiary basis to add this additional requirement to the claims, and none

16 can be found in the intrinsic or extrinsic evidence.

17    The claim language confirms this. "Utilize" means "to make use of" or "turn to practical use

18 or account." Ex. 10 (*Merriam-Webster Dictionary*, 11th Ed. (2003)). This does not require that each

19 device within a domain of devices ***store*** the private key in order to utilize it. Each device within the

20 domain can utilize a private key by using it to play audio content. Ex. 1 (Sherman Rpt.) ¶¶ 379-380.

21 Although a patentee may act as its own lexicographer by "clearly set[ting] forth a definition of the

22 disputed claim term' other than its plain and ordinary meaning," the patentee must "clearly express

23 an intent" to redefine the term. *Thorner*, 669 F.3d at 1365-1366. There is no such clear expression

24 of intent to redefine "utilize" here, and Sonos's unsupported attempts to define it more narrowly

25 should be rejected.

26    Sonos's reliance on *Eon Corp. IP Holdings LLC v. Silver Spring Networks, Inc.*, 815 F.3d

27 1314, 1320 (Fed. Cir. 2016) is inapposite. *Eon* focused on a meaning of "portable" that was

28 expressly defined by the patent specification and "consistently describe[d]" in the specification as

the invention. *Id*. There are no such express definitions or limiting statements regarding the term "utilized" in the '187 patent. The applicant did not disclaim or disavow the scope of this element during prosecution, and it was not relied on by the applicant to overcome any rejection. '187 patent File History. The claim language, specification, and file history give no support to Sonos's reading.

The asserted claims require nothing more than exactly what Sonos's accused Player products do—

Sonos internal documentation shows how this process is implemented by the accused Sonos Player products.

1  ███████████████████████████████████████████████████████

2  ███████████████████████████████████████████

3        Sonos wrongly claims there are "undisputed facts" showing no infringement; to the contrary,

4  ███████████████████████████████████████████████████████

5  ███████████████  *Id*. Sonos's arguments as to whether the accused devices meet this claim element

6  are at best factual disputes for a factfinder to decide—they cannot be resolved on summary

7  judgment. *AFG Industries, Inc. v. Cardinal IG Co., Inc.*, 375 F.3d 1367, 1374 (Fed. Cir. 2004)

8  (vacating summary judgment of noninfringement and remanding because issues of fact existed as

9  to whether product fell within the claim element of "layer").

10        Finally, Sonos's argument that it does not infringe this limitation under the doctrine of

11  equivalents fails because it is premised on a misstatement of the law that would require Dr. Sherman

12  to explicitly recite the words "function," "way," and "result" in order to provide a doctrine of

13  equivalents opinion. No such requirement exists. Instead, the Federal Circuit has held that an expert

14  is required to provide particularized testimony and linking argument on a "limitation-by-limitation

15  basis" as opposed to "[g]eneralized testimony as to the overall similarity between the claims and the

16  accused infringer's product or process," *Texas Instruments Inc. v. Cypress Semiconductor Corp.*, 90

17  F.3d 1558, 1567 (Fed. Cir. 1996)—and this "'particularized testimony' standard does not require

18  [an expert] to re-start his testimony at square one when transitioning to a doctrine of equivalents

19  analysis." *Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1305 (Fed. Cir. 2007). Dr. Sherman's

20  report provides more than adequate detail for his doctrine of equivalents opinions, including detailed

21  technical analysis showing why any difference between the accused devices and the claim element

22  are insubstantial. *See, e.g.*, Ex. 1 (Sherman Rpt.) ¶¶ 376-390. This analysis complies with the

23  requirements set forth by the Federal Circuit.

24        Sonos's reliance on *Quintal Research Grp., Inc. v. Nintendo of Am., Inc.*, No. C 13-00888

25  SBA, 2015 U.S. Dist. LEXIS 93488 (N.D. Cal. July 17, 2015) to argue otherwise is misplaced. The

26  *Quintal* case dealt with an expert's opinion that merely stated the accused device "perform[ed]

27  substantially the same function in substantially the same way to obtain the same result." *Id*. at *37.

28  This conclusory assertion, lacking analysis, was found insufficient to support a finding of

infringement under the doctrine of equivalent. *Id*. Dr. Sherman, in contrast, did not make a conclusory assertion of equivalence; instead, he provided fourteen paragraphs of detailed doctrine of equivalents analysis. Ex. 1 (Sherman Rpt.) ¶¶ 376-390. For example, Dr. Sherman explained that the claim element "utilized by all devices within the domain of devices" is met under the doctrine of equivalents because ███████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ █████████████████████████████████████████████ Although Sonos may disagree with the evidence and his analysis, this evidence must be accepted as true for purposes of summary judgment. *Fantasy Sports*, 287 F.3d at 1113 ("The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.") Thus, Sonos's mere disagreement with Dr. Sherman's analysis is insufficient to support a finding of summary judgment.

> 2.   At Best, Sonos Raises A Genuine Dispute Of Material Facts As To Whether The Accused Private Device Key Is "Based On" The Household ID

Sonos again relies on an improperly narrow construction of "based on" to argue that the private device key is not "based on" the household ID in the accused products.

*First*, Sonos incorrectly argues that the private device key is not "based on" the domain information because each Sonos device within a household ████████████████████████████ Mot. 21-22. The undisputed evidence shows ██████████████████████████████ ███████████████████████████████████████████████ Ex. 1 (Sherman Rpt.) ¶¶ 295-298. Sonos's source code shows that ██████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████ Ex. 1 (Sherman Rpt.) ¶¶ 297-308. ██████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████

1   ████████████████████████████████████████████████████████████

2   ████████████   This is explicitly shown in Sonos's documentation.   Ex. 11 (SONOS-GVS-

3   00000388). Additionally, Sonos's source code confirms that ████████████████████████

4   ████████████████████████████████████████████████████████████

5   ████████████████████████████

6          As explained above in Section IV.A.1.b, Sonos's attempt to improperly narrow the

7   construction of "based on" is wrong, and its noninfringement argument therefore fails. Google and

8   Dr. Sherman applied the plain and ordinary meaning of "based on" and showed how Sonos infringed

9   under the Strong Encryption Theory. Dr. Sherman explained that ████████████████████

10  ████████████████████████████████████████████████████████████

11  ██████████████████████████████████████████████████   As Dr.

12  Sherman explained in detail, the evidence shows that the private device key is based on the

13  household ID and meets this claim. Sonos's and Dr. Wicker's disagreement with whether this

14  relationship between the private device key and the household ID meets the claim at best creates an

15  issue of fact; it is not a sufficient basis to grant summary judgment of noninfringement. *Transonic*,

16  143 F. App'x at 330-31 (noting "expert testimony sufficient to raise a genuine issue of material

17  fact"); *Goldman*, 341 F.3d at 1036 (denying summary judgment because determination of "[w]ho is

18  correct in this battle of experts is not for [the Court] to decide").

19          3.    <u>At Best, Sonos Raises A Genuine Dispute of Material Fact As To Whether
               the Method of Claim 1 Is Performed</u>

20

21          Sonos's arguments for method claim 1 (Mot. 19) misstate the evidence and the law.[3] Sonos

22  documentation and source code confirm the recited method of playing content on a group of devices

23  and ██████████████████████████████████████████████████████████

24  ████████████   Ex. 1 (Sherman Rpt.) ¶¶ 327-380; Ex. 12 (SONOS-GVS-00000519). This is

25  sufficient to show that a method has been performed by the accused devices. For example, in *Lucent*,

26  the Federal Circuit held an asserted method claim was infringed by the accused infringer's sale of

27  _____

28  [3]   Sonos concedes that this non-infringement argument regarding whether the method is
    performed does not apply to apparatus claims 10 and 12. Mot. 19.

software with a date-picker feature; the defendant's extensive sales of that software, accompanied by instructions on how users should employ that feature, was sufficient circumstantial proof that the feature had been used by at least **one** of those purchasers. 580 F.3d at 1317–19. The Federal Circuit held that, as the accused infringer Microsoft "designed the accused products to practice the claimed invention" and "instructed its customers to use the accused products in an infringing way," "the jury in the present case could have reasonably concluded that, sometime during the relevant period from 2003 to 2006, more likely than not one person somewhere in the United States had performed the claimed method using the Microsoft products." *Id*. at 1318. The same is true here. Sonos programs its devices to perform the claimed method ***by default***, and provides instructions on how users should carry out the accused method when setting up devices. Ex. 1 (Sherman Rpt.) ¶¶ 327-380. This is sufficient evidence for a jury to consider and reasonably conclude that the method was practiced by at least one user during the relevant time period. At best, a genuine dispute of material fact exists as to whether at least **one** of those purchasers ever used the default functionality Sonos instructs purchasers to use.

Sonos's reliance on *E-Pass Tech., Inc. v. 3Com Corp.*, 473 F.3d 1213 (Fed. Cir. 2007) is inapposite. The accused functionality there was an edge case, not default functionality, and "too speculative a leap" was required "to conclude that any customer actually performed the claimed method." *Id*. at 1222. Here, by contrast, the accused group playback of music is a core feature of the accused products—not an edge case. Indeed, Sonos's Motion concedes that the accused products are used, and designed to be used, in this manner: "[i]n a household with multiple Sonos players, the players can be grouped together to play music in synchrony—for example, speakers located in a consumer's kitchen, patio, and dining room can play the same song in a synchronized manner." Mot. 2. The accused devices are specifically designed to perform this accused group playback, and Sonos's documentation instructs users to do so. Ex. 1 (Sherman Rpt.) ¶¶ 327-380; Ex. 12 (SONOS-GVS-00000519). The only reasonable inference based on this evidence is that the method claim has been performed in the infringing manner, as explained by Dr. Sherman. This is more than sufficient to deny summary judgment. *See, e.g.*, *NetFuel*, 438 F. Supp. 3d at 1039 (denying summary judgment of noninfringement of method claim as circumstantial evidence existed it was performed as "two

[of the accused infringer's] documents raise triable questions as to whether [accused infringer] provided customers with instructions to implement applets that would cause its products to infringe").

**V.     <u>CONCLUSION</u>**

For the foregoing reasons, Google respectfully requests that the Court deny Sonos's motion.

DATED: September 1, 2023                    Respectfully submitted,

                                            QUINN EMANUEL URQUHART & SULLIVAN, LLP


                                            By: */s/ Patrick D. Curran*
                                            _____

                                                *Attorney for Google LLC*

1

## CERTIFICATE OF SERVICE

2        I hereby certify that on September 1, 2023, I electronically filed the foregoing document

3  with the clerk of the court for the U.S. District Court, Northern District of California, San Francisco

4  Division, using the electronic case filing system of the Court. The electronic case filing system sent

5  a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept

6  this Notice as service of this document by electronic means.

7                          */s/ Patrick D. Curran*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GOOGLE'S OPPOSITION TO SONOS'S MOTION FOR SUMMARY JUDGMENT