1 | CLEMENT SETH ROBERTS (SBN 209203)
croberts@orrick.com
2 | BAS DE BLANK (SBN 191487)
basdeblank@orrick.com
3 | ALYSSA CARIDIS (SBN 260103)
acaridis@orrick.com
4 | WILL MELEHANI (SBN 285916)
wmelehani@orrick.com
5 | EVAN D. BREWER (SBN 301411)
ebrewer@orrick.com
6 | SHANE D. ANDERSON (SBN 313145)
sdanderson@orrick.com
7 | ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
8 | 405 Howard Street
San Francisco, CA 94105-2669
9 | Telephone:   +1 415 773 5700
Facsimile:   +1 415 773 5759
10 |
GEORGE I. LEE (*pro hac vice*)
11 | lee@ls3ip.com
SEAN M. SULLIVAN (*pro hac vice*)
12 | sullivan@ls3ip.com
RORY P. SHEA (*pro hac vice*)
13 | shea@ls3ip.com
J. DAN SMITH (*pro hac vice*)
14 | smith@ls3ip.com
LEE SULLIVAN SHEA & SMITH LLP
15 | 656 W Randolph St., Floor 5W
Chicago, IL 60661
16 | Telephone:   +1 312 754 0002
Facsimile:   +1 312 754 0003
17 |
*Attorneys for Defendant Sonos, Inc.*
18 |

19 | UNITED STATES DISTRICT COURT

20 | NORTHERN DISTRICT OF CALIFORNIA,

21 | SAN FRANCISCO DIVISION

| | |
|---|---|
| 22  GOOGLE LLC, | Case No. 3:20-cv-03845-EMC |
| 23            Plaintiff, | **SONOS, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF '187 PATENT ASSERTED CLAIMS** |
| 24       v. | |
| 25  SONOS, INC., | Date: October 5, 2023 Time: 1:30 p.m. Place: Courtroom 5, 17th Floor |
| 26            Defendant. | |
| 27 | |
| 28 | **PUBLIC - REDACTED** |

# TABLE OF CONTENTS

Page(s)

I. INTRODUCTION ................................................................................................................ 1

II. GOOGLE'S AUTHENTICATION THEORY .................................................................... 2

    A. Google Provides No Evidence That The AuthToken Is A "Private Key." .............. 2

        1. Google cannot ignore the Court's construction of "private key." ............... 2

        2. Google cannot show that the accused authTokens are "private keys" under the Court's construction. ................................................................. 3

        3. Sonos's ███████████████ does not show that authTokens are "private keys" under the Court's construction. ............................................ 4

    B. Google Fails To Raise Any Factual Dispute That The AuthToken Is "Based On" The Accused Domain Information. ............................................................... 5

    C. Google Cannot Show That its Authentication Theory Satisfies Claim 1's Preamble. ................................................................................................................. 7

        1. Sonos is not imposing a "timing requirement." ........................................... 7

        2. Google fails to distinguish the European decisions finding non-infringement on this same basis. ................................................................. 8

        3. Google's efforts to suggest the parties have a factual dispute regarding Sonos's registration functionality are misrepresentations. ......... 9

III. GOOGLE'S STRONG ENCRYPTION THEORY ............................................................ 10

    A. Google Fails To Provide Any Evidence That The Private Device Key Is "Utilized By All Devices Within The Domain of Devices." .............................. 10

        1. Google concedes that the Controller does not "utilize" the private device key ................................................................................................... 10

        2. Google's attempt to expand the meaning of "utilized" lacks merit. ......... 11

        3. Google has no doctrine of equivalents theory .......................................... 12

    B. Google Cannot Show That The Private Device Key Is Based On The Household ID. ...................................................................................................... 13

    C. Google Has No Evidence That Its Particular "Strong Encryption" Infringement Scenario Has Ever Been Performed. ............................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AquaTex Indus., Inc. v. Techniche Sols.*,
   479 F.3d 1320 (Fed. Cir. 2007) ............................................................................................... 13

*E-Pass Tech., Inc. v. 3Com Corp.*,
   473 F.3d 1213 (Fed. Cir. 2007) ............................................................................................... 15

*Eon Corp. IP Holdings LLC v. Silver Spring Networks, Inc.*,
   815 F.3d 1314 (Fed. Cir. 2016) ......................................................................................... 11, 12

*ePlus, Inc. v. Lawson Software, Inc.*,
   700 F.3d 509 (Fed. Cir. 2012) ................................................................................................. 15

*Paice LLC v. Toyota Motor Corp.*,
   504 F.3d 1293 (Fed. Cir. 2007) ............................................................................................... 13

*Quintal Research Grp., Inc. v. Nintendo of Am., Inc.*,
   No. C 13-00888, 2015 U.S. Dist. LEXIS 93488 (N.D. Cal. July 17, 2015) ............................ 13

*Tinnus Enters., LLC v. Telebrands Corp.*,
   846 F.3d 1190 (Fed. Cir. 2017) ................................................................................................. 3

ii

SONOS'S REPLY ISO MSJ OF
NON-INFRINGEMENT OF '187 PATENT
3:20-CV-03845-EMC

# APPENDIX OF CLAIMS

1. A method for registering a new device as part of a domain of devices, which share rights associated with a common account, for use in accessing protected digital content within a digital-rights management system, the method comprising the steps of:

   receiving domain information corresponding to the domain of devices from a device existing within the domain of devices;

   providing the domain information to a key issuer, which is separate from the domain of devices, causing the key issuer to issue a private key to the new device, wherein the private key is based on the domain information and is utilized by all devices within the domain of devices; and

   receiving the private key from the key issuer for use in accessing the protected digital content within the digital-rights management system.

3. The method of claim 1 wherein the step of receiving the domain information from the device existing within the domain of devices comprises the step of receiving domain information for the device existing within a domain of devices, all devices within the domain sharing account information.

4. The method of claim 1 wherein the step of receiving the domain information from the device existing within the domain of devices comprises the step of receiving the domain information over a short range link.

10. An apparatus comprising:

    communication circuitry receiving domain information from a device existing within a domain of devices, which share rights associated with a common account, for use in accessing protected digital content within a digital-rights management system;

    storage for storing the domain information; and

    logic circuitry for providing the domain information to a key issuer, which is separate from the domain of devices, causing the key issuer to issue a private key for use in accessing protected digital content to the apparatus, wherein the private key is based on the domain information and is utilized by all devices within the domain of devices.

12. The apparatus of claim 10 wherein the domain of devices share account information.

## I.     INTRODUCTION

Google's opposition does not provide any basis for denying Sonos's motion for summary judgment of non-infringement on either of Google's two infringement theories.[1]  For the most part, Google does not engage with the merits of Sonos's motion.  Instead, Google engages in lengthy discussions of irrelevant (and sometimes made-up) functionality in an apparent attempt to manufacture factual disputes.  In reality, there are no disputes over how Sonos's products work, and summary judgment is appropriate.

Where Google does address the merits, it incorrectly asserts that it has relevant "circumstantial evidence" and improperly attempts to read the claims far more broadly than their plain and ordinary meaning would allow.  Neither argument provides a basis to deny the motion.

More specifically, for its Authentication Theory, Google's expert, Dr. Sherman, cannot show that the accused "authTokens" satisfy the "private key" limitation in light of the Court's construction because he repeatedly admitted that he has *no evidence* showing how third parties generate, validate, or use authTokens.  Google's opposition also identifies no such evidence.  Instead, Google retreats to the assertion that Sonos' documents provide "circumstantial evidence" that Sonos instructs or requires third parties to use authTokens in the manner required by the claims.  But none of the documents on which Google relies says anything of the sort.

For its Strong Encryption Theory, Google concedes that it has no evidence that the alleged "private key" is "utilized by every device within the domain of devices."  Indeed, Google admits that the Controller—which it asserts to be a "device within the domain of devices"—does not utilize the alleged private key.  That should be the end of the matter.  In response, Google attempts to rewrite the claims to carve out a special exception for the Controller—trying to argue that it need *not* utilize the private key even though the claims expressly say that it must.  And Google's remaining arguments warp the meaning of the terms "utilized" and "based on" far beyond their plain and ordinary meaning.  That is a legal error that cannot save Google's case from summary judgment.

---

[1] All emphases are added unless otherwise noted.

## II. GOOGLE'S AUTHENTICATION THEORY

### A. Google Provides No Evidence That The AuthToken Is A "Private Key."

Google has produced no evidence that the accused authToken qualifies as the claimed "private key." This argument applies to all asserted claims. Google has three theories as to how an authToken "is used as input to a cryptographic algorithm" some of which rely on how third-party music providers could use the authToken, and some of which rely on how Sonos *signs* authTokens. Mot. at 7-10. But none of these theories can defeat summary judgment.

#### 1. Google cannot ignore the Court's construction of "private key."

Google incorrectly suggests that Sonos is misreading the Court's claim construction—which states that a private key must be "a non-public key that is used as an input to a cryptographic algorithm…"—to require *performance* of this act of "inputting" as a method step. Opp. at 7. That is not, and has never been, Sonos's position. Rather, in Sonos' view, the Court's construction says what a private key *is*, and here, there is *no evidence* that the authToken *is* a private key. That is because there is *no evidence* that the authToken is *ever* used as "a non-public key that is used as an input to a cryptographic algorithm," as required by the Court's construction. While infringement of these apparatus claims can happen without a private key being input into a cryptographic algorithm, that does not mean Google can ignore the Court's construction saying what a private key *is*. By way of example, if an apparatus claim recited a "vehicle" and the Court construed that term to mean "a vessel that is used to drive down a road," the patentee could not point to a boat as satisfying the claim. Even though "driv[ing] down the road" is not a required method step, the alleged "vehicle" still must satisfy the claim construction requirements to fall within the claim scope. So too here—the accused private key must satisfy the Court's construction. It does not.

Google's position seems to be that it can ignore the Court's construction altogether. Specifically, Google asserts that the claims "merely require receipt of a 'private key.'" Opp. at 7. That's true as far as it goes. But that does not mean that Google can point to anything that is received and then declare that it is a "private key." Instead Google must show the receipt of something that *qualifies* as a private key because it "is used as an input to a cryptographic algorithm." Thus, Google must show that what it points to as being the private key (*i.e.*, the

authToken) satisfies the Court's construction by showing that it "is used as an input to a cryptographic algorithm" *somewhere*. But as explained in more detail below, Google has no evidence that authTokens are *ever* "used as an input to a cryptographic algorithm". And Google's suggestion that Dr. Wicker somehow conceded that the authToken is a private key is false. Opp. at 7 (citing Ex. 3[2] (Wicker Dep.) at 152:1-153:17, 145:17-146:20). Indeed, in the cited testimony Dr. Wicker never even discuss the meaning of "private key."

**2.     Google cannot show that the accused authTokens are "private keys" under the Court's construction.**

Google has no evidence that authTokens are used as a key that is input into any cryptographic algorithm, as required by the Court's construction. Google's expert, Dr. Sherman, admitted that he has no evidence regarding what third parties do with authTokens. Ex. C (Sherman Dep.) at 113:1-6 (admitting that he has "not reviewed third-party software that actually" is used to verify authTokens). In a footnote, Google argues that Dr. Sherman's opinion is proper because it is based on the supposed "purpose of the AuthToken." Opp. at 7 n.2. Specifically, according to Google, the authToken's purpose is to "allow[] internet users to access" services "without having to enter their login credentials each time they visit." *Id.* Google then declares that "[t]he AuthToken must be an input to a cryptographic algorithm, because the algorithm is required to verify the AuthToken." *Id.* But Google's own expert disavows this leap. Dr. Sherman admitted that there are ways one can verify authTokens that do not involve cryptographic algorithms. Ex. C (Sherman Dep.) at 117:4-20. And he further admitted that he does not know whether any third-party providers use those non-cryptographic methods or not. *Id.* 118:23-119:8.

Accordingly, Google's reliance on *Tinnus Enters., LLC v. Telebrands Corp.*, 846 F.3d 1190, 1204 (Fed. Cir. 2017) is misplaced. *Tinnus* merely holds that a plaintiff can rely on circumstantial evidence to prove infringement. *Id.* But here, Google's purported circumstantial evidence does not prove, or even suggest, infringement. In fact, Google's evidence is not "circumstantial" whatsoever; it's hypothetical at best. It shows only that third parties may desire to verify

---

[2] Unless otherwise noted, all lettered exhibits referenced herein were submitted with the opening declaration of A. Caridis (Dkt. 184-1). All numbered exhibits referenced herein were submitted with the opposition declaration of S. Taheri (Dkt. 189-1).

1  authTokens.  There is no evidence—circumstantial or otherwise—suggesting that any third party
2  does verify authToken or (more importantly) that they do by using authTokens as a key that is input
3  to a cryptographic algorithm.  Because Google has *no* evidence (direct or circumstantial) that *any*
4  authTokens are ever input into a cryptographic algorithm, there is no material dispute of fact.

5  Google's opposition tries to avoid this result by misrepresenting Dr. Wicker's testimony.
6  Specifically, Google says that Dr. Wicker "agreed that verification of the AuthToken by a third-
7  party music service uses the AuthToken as an input to a cryptographic algorithm." Opp. at 8 (citing
8  Ex. 3 (Wicker Dep.) at 152:1-153:17, 145:13-146:20).  The cited testimony says nothing like that
9  and in fact shows that Dr. Wicker testified that he hasn't "seen any evidence that [the authToken
10 is] actually verified" and that "we don't know if that happens." Ex. 3 (Wicker Dep.) at 146:13-19;
11 153:10-16.  In other words, Dr. Wicker confirmed the absence of evidence Google would need to
12 create a material dispute of fact.

   **3.    Sonos's ▓▓▓▓▓▓▓▓▓▓▓▓ does not show that authTokens are "private keys" under the Court's construction.**

15  Sonos explained in its motion that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
16  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Mot. at 9-10.
17  The Court's construction, however, requires that the alleged "private key" be "a non-public *key*
18  that is used as an input to a cryptographic algorithm." Dkt. 108 at 11.  This "key" requirement is
19  crucial because the construction would otherwise extend to *any data*, as any data can be encrypted
20  using a key and thereby be "input to a cryptographic algorithm." Caridis Reply Decl.[3], Ex. K
21  (Sherman Dep.) at 102:16-103:16 (explaining that any digital data can be encrypted).  But as Dr.
22  Sherman admits, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
23  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Google's
24  opposition does not address the construction's "key" requirement or respond to the arguments in
25  Sonos's motion.  It simply ignores that aspect of the construction altogether.  Opp. at 8.

---

[3] The Reply Declaration of Alyssa Caridis in Support of Sonos's Motion ("Caridis Reply Decl.") is filed concurrently herewith.

1    Accordingly, nothing about ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ shows or

2    even suggests that an "authToken" is a "private key."

### B. Google Fails To Raise Any Factual Dispute That The AuthToken Is "Based On" The Accused Domain Information.

Sonos's motion for summary judgment should also be granted for all asserted claims as to Google's Authentication Theory because Google has no evidence that the authTokens are "based on" the household ID that Google alleges to be the claimed "domain information." In its opposition, Google provides a series of mischaracterizations regarding how the household ID is involved in the process of obtaining an authToken, all of which are contradicted by the evidence. Opp. at 9-11. At bottom, Google's only purported evidence is: (1) source code showing that the household ID is included in the request sent to third parties and (2) Sonos API-related documentation explaining how an authToken can, hypothetically, be *associated with* a household ID. *Id.* None of this is evidence that an authToken is *based on* the household ID.

**First**, Google asserts that the "AuthToken is generated using the household ID as input." Opp. at 9. But Google has literally zero evidence to support this assertion. AuthTokens are generated by third-party music providers, and Google has no evidence as to *how* third parties generate authTokens. The paragraphs of Dr. Sherman's Report that Google cites do not discuss the third-party code for generating authTokens, but instead explain how the household ID is included as a parameter in the "getDeviceAuthToken" *message* that is sent to third-party music providers. *See* Ex. B (Sherman Rpt.) ¶¶292-294; *see also* Opp. at 10 (citing the Sonos getDeviceAuthToken function call). But even if the getDeviceAuthToken message includes the household ID, that does not mean that the third party uses the household ID to *generate* the authToken or provides an authToken that is "based on" the received household ID. Indeed, the *way* a third party generates its authTokens (and what it uses as an input) cannot be known without actually looking at how the third-party music provider generates the authToken. But Dr. Sherman did not review any third-party code relating to the creation of authTokens (or otherwise). Ex. C (Sherman Dep.) at 109:23-110:12. Nor does Google cite any other evidence that specifies how third parties generate or select responsive authTokens.

1    Google also misrepresents its illegible Exhibit 6.  Nowhere does this document show that the household ID is included as part of the third party's *response* to the "getDeviceAuthToken" request, as Google asserts.  Opp. at 9.  But even if it did, it would show only that the third-party music provider sends the household ID back to the Sonos system, not that the authToken is based on the household ID, as the claims require. *Id*.  Accordingly, Google's evidence, at best, shows only that the household ID is included in messages to and from the third-party providers.  Mot. at 11-12.  That is not sufficient to show that the authToken is *based on* the household ID.

**Second**, Google argues that the authToken is "based on" the household ID because it can be associated with the household ID.  Opp. at 10.  For example, Google asserts that Sonos documents require that "a specific user-household combination must be able to be determined from the AuthToken." *Id.*  But that means only that the household ID and authToken are subsequently associated with one another, not that the authToken is based on the household ID.  Similarly, Google argues that the authToken must be based on a household ID because third parties have "[t]he ability to 'use the household ID to [] validate' the AuthToken."  Opp. at 11 (citations omitted).[4]  But login processes can use a password to validate a username, and that does not mean that the username was based on the password.  This too shows only an association.  Mot. at 11-12.

**Third**, Google turns to claim construction and argues that the plain and ordinary meaning of the term "based on" is broad enough to encompass mere association.  But Google provides no support for its view that one thing can be "based on" another just because they are associated.  As the discussion of usernames and passwords above shows, that is not what the phrase "based on" means.  The '187 patent's specification also refutes Google's overbroad construction.  The specification explains that "[i]f equipment 101 is being added to an existing domain, key issuer 105 looks up that domain's DRM public/private key pair in a database." Opp. at 11-12 (citing Ex. A ('187 patent) at 4:16-41).  This passage shows that the domain information that is provided to the key issuer is actively used to *determine* the private key that is provided in response (*e.g.*, through a

---

[4] Google in fact has no evidence that any third parties validate authTokens.  When asked, do you "have any evidence demonstrating that the third parties do verify the authToken?" Dr. Sherman answered "I have not reviewed third-party software that actually performs that step." Ex. C (Sherman Dep.) at 113:1-6.

1  "look up" operation), which is consistent with the plain and ordinary meaning of "based on."[5]  But
2  there is *no evidence* that third parties determine which authTokens to provide in a similar manner.
3  As such, Google's suggestion that it has provoked a "battle of the experts" is untrue.  Opp. at 12-
4  13.  Because Dr. Sherman's "based on" theory rests entirely on his attempts to misconstrue the
5  meaning of "based on," there is no factual issue for the jury to decide.

      **C.     Google Cannot Show That its Authentication Theory Satisfies Claim 1's Preamble.**

Google's Authentication Theory does not show that the accused products perform the steps for obtaining an authToken as part of "[a] method for registering a new device as part of a domain of devices," as claim 1's preamble requires.  Mot. at 5-7.  Rather, there is no dispute that when a Sonos player is registered with a new household—the accused "domain of devices"—obtains any authTokens it needs from *the other devices* that are already in the household.  *See* Ex. B (Sherman Rpt.) ¶109 (explaining that "music service accounts," *i.e.*, authTokens, are replicated from an existing device when a new device is "added to a household"); Ex. C (Sherman Dep.) at 96:10-17 (admitting that new Sonos devices joining a household will obtain existing authTokens from other *Sonos devices* that are already part of the household).  And there is no dispute that the process for registering a device with a household does not involve requesting authTokens from third-party music providers, as Google's Authentication Theory suggests.  *Id.* at 96:18-97:10.

      **1.     Sonos is not imposing a "timing requirement."**

Google contends that Sonos is injecting a "timing requirement" into claim 1's preamble and is asserting non-infringement because the steps happen at the wrong times.  Opp. at 15.  Not so.  Claim 1 does not—as Google seems to believe—call for one step to register a device to a domain and a separate step to obtain a private key from a key issuer.  Rather, claim 1 requires that the steps for obtaining a private key from a key issuer *be part of* the method for registering a device to a domain.  Sonos does not infringe claim 1 because the accused steps for obtaining an authToken

---

[5] Google suggests that Sonos is reading the "based on" limitation to require that the claimed private key be generated using the domain information.  Not so.  As Sonos explained in its opening brief, "based on" requires that the "domain information is used as an input to decide *which* key gets issued."  Mot. at 23-24.

from a third-party music provider *are not part of* any process for registering a Sonos device as part of a household—regardless of timing or order of steps.  Ex. C (Sherman Dep.) at  96:10-97:10.  Instead, ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅ just as the specification disparages.  Ex. A ('187 patent) 2:24-28; 7:32-37.[6]

### 2. Google fails to distinguish the European decisions finding non-infringement on this same basis.

Google also mischaracterizes the European cases that held Google's identical European patent claims were not infringed.  Courts in both Germany and France found no infringement because ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅, as the preamble requires.  Ex. E (Munich Decision) at 34 (finding no infringement because ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅ *see also* Ex. F (Paris Judgment) at 17 (finding non-infringement because Google's theory does not "concerns the addition of a device (a speaker) within a Sonos device domain").  These rulings confirm the flaws in Google's Authentication Theory here.  Google's only response is to raise *the entirely separate and non-responsive* issue of how the foreign courts supposedly construed "private key" in those proceedings. Opp. at 16-17.  But nowhere does Google explain how those supposed constructions are relevant to the issue raised in Sonos's Motion.  They aren't.  The German court rejected Google's theory for the *independent reason* that the accused steps did not pertain to registration.  That rejection had nothing to do with the construction of "private key."  *See* Ex. E (Munich Decision) at 10 (holding that Sonos does not infringe because ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅ 11 (discussing the separate argument that "the private key ... would need to be a cryptographic key").  And French courts likewise did not base

---

[6] Google also suggests that its Authentication Theory works if a household has not previously added any music services and a new device is the first device in the household to authenticate to a third-party music service. Opp. at 15. Limiting infringement to this narrow scenario changes nothing.  In that scenario, the device would be registered and join the household, and that process would still not involve requesting any authTokens from any third-party music service providers. Ex. C (Sherman Dep.) at  96:10-97:10.  The only difference is that the device would not obtain any authTokens from devices that were already part of the household because they would not have any authTokens to provide.

1  this ruling on any construction. The language that Google cites is a list of additional, *independent*
2  bases that court cited in confirming Sonos does not infringe. Ex. F (Paris Judgement) at 17.

### 3. Google's efforts to suggest the parties have a factual dispute regarding Sonos's registration functionality are misrepresentations.

The remainder of Google's arguments on the preamble are attempts to manufacture the false appearance of a factual dispute through confusion and non-responsive descriptions of the separate processes for (1) registering devices to a household versus (2) obtaining authTokens from third-party music providers. Specifically, on page 13 of its opposition, Google offers a description of how Dr. Sherman supposedly demonstrated that Sonos devices practice the preamble, citing to ¶¶170-193 of his report. Those paragraphs, however, describe the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Google's assertion that this evidence relates to authTokens is false. Opp. at 13. The actual content of these paragraphs shows —as Sonos and Dr. Sherman agree—that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Google's assertion that Dr. Sherman demonstrated infringement by explaining how to add a Spotify music account to a Sonos household is also wrong. Opp. at 14. This process relates to adding a music service to a household, not registering a new device to the household. And nothing Google cites from Dr. Sherman says otherwise. Paragraph 112 of his report describes the group play functionality, and has nothing to do with authTokens at all. And paragraphs 192 and 193 say nothing about registering new devices to a household. The cited testimony from Mr. Vovk is likewise irrelevant—it says nothing about the registration of new devices and instead explains that authTokens are used by players within the household to access third-party music content. None of this evidence relates to or raises a dispute as to how the process for registering a new Sonos device into a household works. As Dr. Sherman testified, when a Sonos players joins a household, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Finally, Google asserts that it has circumstantial evidence that Sonos "instructs users to perform" steps to infringe the preamble. Opp. at 13-14. But again, Dr. Sherman has *admitted* that

1  the Sonos device registration process ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

2  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ So there are no steps one could take using

3  Sonos's products to infringe the preamble because ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

4  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Any Sonos documents that explain

5  how to add a third-party music account to a household are not relevant, because those steps do not

6  relate to household registration.

## III. GOOGLE'S STRONG ENCRYPTION THEORY

### A. Google Fails To Provide Any Evidence That The Private Device Key Is "Utilized By All Devices Within The Domain of Devices."

The Court should grant summary judgment of non-infringement on Google's "Strong Encryption Theory" because Google's opposition does not raise any dispute of material fact showing that the private device key—which Google alleged to be the claimed "private key"—is "utilized by all devices within the domain of devices." This is dispositive for all asserted claims.

#### 1. Google concedes that the Controller does not "utilize" the private device key.

The Court should grant summary judgment of non-infringement because Google concedes that the Sonos Controller does not "utilize" the private device key. Because Google has taken the position that the Controller is a "device within the domain of devices," this concession is dispositive. *See*, *e.g.*, Ex. B (Sherman Rpt.) ¶206 (asserting that the Controller is "a device within the domain of devices").

Google nonetheless argues that it does not have to show that the Controller "utilizes" the accused private key because the Controller is an application rather than a device. Opp. at 17-18. But Google cannot run away from its expert, who *repeatedly* asserted that the Controller is a "device within the domain of devices" and relied on that assertion as a basis to conclude that the accused products satisfied *other* limitations. *See* Ex. 1 (Sherman Rpt.) ¶198 (referring to the Controller as a *device* within the domain of devices); 206 (arguing that limitation "receiving domain information . . . from a *device* existing with [sic] the domain of devices" is infringed through a "Controller, which is part of the household (i.e., domain of *devices*)"); 208 (asserting that the accused player

1  receiving the household ID from a Controller is receiving it from "a *device* existing within the
2  domain of devices"); 212 ("[T]he Controller and existing '187 Accused Instrumentality in the
3  household are both *devices* existing within the domain of devices"). Put differently, Google cannot
4  call the Controller a "device within the domain of devices" when it suits its purposes (*i.e.*, to show
5  that some limitations are satisfied) and then deny it when it fails to meet the other claim language.

6  Google also attempts to salvage this theory by substantially (and improperly) revising the
7  claim language. Specifically, Google argues that the claims require that "all of the devices that are
8  in the domain *and* receive the protected content [must] utilize the private key to access and play the
9  protected content." Opp. at 17-18. Nonsense. The "utilized" limitation requires that the private
10 key be "utilized by all devices within the domain of devices." Ex. A ('187 patent), claims 1 and
11 10. It includes *no requirement* that the private key only be "utilized" by devices that that are *both*
12 in the domain *and* recipients of encrypted content.[7] Google admits that Controllers are "within the
13 domain of devices" and Sonos therefore does not infringe.

### 2. Google's attempt to expand the meaning of "utilized" lacks merit.

15 Sonos's Players also do not "utilize" the same private device key as required. Google's
16 "utilized" theory requires broadening meaning of the term "utilized" beyond its plain and ordinary
17 meaning. Specifically, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓
18 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
19 ▓▓ Google's theory thus equates "utilizing" a private key with ▓▓▓▓▓▓
20 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ But the Federal
21 Circuit's holding in *Eon Corp. IP Holdings LLC v. Silver Spring Networks, Inc.* bars Google's
22 attempt to read "utilized" in such a manner that is "divorced from the context of the written
23 description." 815 F.3d 1314, 1320 (Fed. Cir. 2016).

24 Google's only attempt to distinguish *Eon* is a mischaracterization. Google argues that the
25 term "portable" at issue there was "expressly defined by the patent" whereas "utilized" is not

---

[7] Google's acknowledgments that the Controller "does not play audio content" and "is never part of a 'group'" thus do not support Google's position. Opp. at 17-18. They instead confirm Sonos's non-infringement, because Sonos's system includes devices in the accused "domain" that do not "utilize" the private key.

1  defined here. Opp. at 19-20. But *Eon* never refers to an express definition. Rather, the *Eon* court
2  arrived at the proper construction of "portability" by examining how it was "consistently
3  describe[d]" to understand its "meaning in the context of the patent." 815 F.3d at 1321 (citation
4  omitted). That approach mandates rejecting Google's overreaching interpretation here. The '187
5  patent "consistently describes" each device "utilizing" its own copy of the shared domain private
6  key to separately access the protected music. Ex. A ('187 patent) 2:24-28, 7:32-37. And neither
7  the patent nor any other intrinsic evidence supports construing "utilized" in the unusual way that
8  Google seeks here, ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■.[8]

Google also mischaracterizes Sonos's position as requiring that ■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■ just that the devices must "*make use*" of it. Mot. at 16-17. And
they do not. Sonos players that ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

### 3. Google has no doctrine of equivalents theory.

The Court should grant summary judgment of no infringement under the doctrine of equivalents (DOE). Mot. at 18-19. Although Dr. Sherman's report says that he contends that Sonos infringes under the DOE, that's the extent of the "analysis." Ex. B (Sherman Rpt.) ¶376. Contrary to Google's boasts, the paragraphs that follow are not "fourteen paragraphs of detailed doctrine of equivalents analysis." Opp. at 22 (citing Ex. 1 (Sherman Rpt.) ¶¶376-390). Instead, as Dr. Sherman acknowledged in his deposition, these paragraphs just repeat Google's literal infringement theory. Ex. C (Sherman Dep.) at 89:19-91:3. Aside from the statement of contention in the first paragraph, this section contains no opinion that any element is equivalent to another, that any differences are insubstantial, or that any two methods involve substantially the same functions, way or result.

---

[8] Google's opposition re-explains Google's convoluted theory ■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
Setting aside Google's mischaracterization of its own theory, Sonos does not dispute Google's description of ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ Google's effort to frame the parties' disagreement as a "factual dispute" is therefore false. Opp. at 21.

1  *AquaTex Indus., Inc. v. Techniche Sols.*, 479 F.3d 1320, 1328-29 (Fed. Cir. 2007) (affirming summary judgment against a DOE theory where the plaintiff failed "to provide particularized testimony and linking argument on a limitation-by-limitation basis that created a genuine issue of material fact as to equivalents").

Aside from mischaracterizing these paragraphs, Google provides no real defense of its so-called DOE theory. Google cites *Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1305 (Fed. Cir. 2007), suggesting that Dr. Sherman did not need to "re-start his testimony at square one when transitioning to a doctrine of equivalents analysis." But the problem isn't that Dr. Sherman did not "re-start his testimony," it's that he didn't "transition[] to a doctrine of equivalents analysis" at all.

Google's effort to distinguish *Quintal Research Grp., Inc. v. Nintendo of Am., Inc.*, No. C 13-00888 SBA, 2015 U.S. Dist. LEXIS 93488, at *36-37 (N.D. Cal. July 17, 2015) should be unpersuasive. Google asserts that the *Quintal* court rejected the expert's DOE theory because it was "conclusory assertion, lacking analysis," but Dr. Sherman's "analysis" is even worse. Opp. at 21-22. *Quintal*'s expert at least asserted that the accused product and the claimed invention "perfom[ed] the same function." 2015 U.S. Dist. LEXIS 93488, at *36. Dr. Sherman does not even do that. And Google's claim that Dr. Sherman did more than the expert in *Quintal* because his paragraph 378 explains how Sonos's products are "insubstantially different from the claims" is a pure fabrication. Opp. at 22. It explains only how Sonos's products work. Ex. B (Sherman Rpt.) ¶378. Neither the claims nor any insubstantial differences are mentioned whatsoever.

**B. Google Cannot Show That The Private Device Key Is Based On The Household ID.**

The Court should grant summary judgment of non-infringement because the private device key—which Google alleges to be the claimed "private key" for its Strong Encryption Theory—is not "based on" the household ID. Dr. Sherman's report shows only ███████

████████████████████████████████

████████████████████████████████

Google argues otherwise by asserting that ████████

████████████████████████████████

1 ██████████████████████████████████████████████████████████████ There is

2 once again a disconnect between Google's lawyers and its expert. ████████████

3 ████████████████████████████████████████████████████████████████████████████

4 ████████████████████████████████████████████████████████████████████████████

5 ████████████████████████████████████████████████████████████████████████████

6 ██████████████ Google's contrary attorney argument cannot create a dispute of fact.

7     And the portions of Dr. Sherman's report that Google cites in support of its argument do

8 not show ███████████████████████████████████████████████████████████████████

9 ████████████████████████████████████████████████████████████████████████████

10 ███████████████████████████████████████████████████████████████████████████

11 ███████████████████████████████████████████████████████████████████████████

12 ███████████████████████████████████████████████████████████████████████████

13 ███████████████████████████████████████████████████████████████████████████

14 ███████████████████████████████████████████████████████████████████████████

15 ███████████████████████████████████████████████████████████████████████████

16 ███████████████████████████████████████████████████████████████████████████

17 ███████████████████████████████████████████████████████████████████████████

18 ███████████████████████████████████████████████████████████████████████████

19 ███████████████████████████████████████████████████████████████████████████

20 ██████████████████████████████████████████████

21     Google also asserts that it has shown that the private device key is "based on" the household

22 ID because ██████████████████████████████████████████████ This too is false.

23 As explained in Sonos's opening brief, ████████████████████████████████████

24 ██████████████████████████████████████████████████████ None of the evidence

25 that Google batch-cites says otherwise. Opp. at 23. Nor is the private device key "based on" the

26 household ID ████████████████████████████████████████████████ Again, a login

27 username and password may be "bound" together, but the username is not "based on" the password.

28

Google's effort to portray its "based on" argument as raising a fact dispute is also incorrect. Opp. at 23. The parties have no material dispute regarding how Sonos's products work. The dispute exists because of Google's warped construction of "based on." The Court should reject Google's belated and incorrect claim construction argument on summary judgment.

### C. Google Has No Evidence That Its Particular "Strong Encryption" Infringement Scenario Has Ever Been Performed.

Summary judgment should also be granted as to claim 1 under Google's Strong Encryption Theory because Google has no evidence that the configuration needed for alleged infringement to occur has ever happened. Specifically, as Sonos explained, to satisfy the claim requirement that the alleged private key be "utilized by all the devices within the *domain* of devices," Dr. Sherman's theory requires that a Sonos system be configured such that a group includes *all of the devices within a given household*, and is then used to play encrypted music. Mot. at 19-20.

Google seemingly concedes that it has no evidence that this has ever happened. Instead, Google claims it can rely on circumstantial evidence because Sonos's devices are "specifically designed to perform [the] accused group playback, and Sonos's documentation instructs users to do so." Opp. at 24. This is both factually wrong and legally irrelevant.

Google cannot prove that a method was performed simply because the capability to perform the method exists and is discussed in product documentation. Google must produce evidence somebody "ha[s] actually used [the accused] functionality." *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 521 (Fed. Cir. 2012). It has not. This case is thus no different than *E-Pass Tech., Inc. v. 3Com Corp.*, where the Federal Circuit upheld summary judgment of non-infringement where there was "no evidence that the patented method has ever been practiced on any [accused] device." 473 F.3d 1213, 1221 (Fed. Cir. 2007). Google attempts to distinguish *E-Pass* by arguing that the court reached its holding because the functionality at issue in that case as "an edge case, not default functionality." But *E-Pass* said nothing about whether the functionality was "core functionality" or otherwise. And, even if *E-Pass* did only apply to "edge case[s]", any potential use of Google's particular accused configuration to play encrypted music is precisely such an "edge case" for which there is no evidence of anyone performing the accused method. Opp. at 24.

Dated: September 15, 2023

ORRICK HERRINGTON & SUTCLIFFE LLP
*and*
LEE SULLIVAN SHEA & SMITH LLP

By: */s/ Alyssa Caridis*
　　　　Alyssa Caridis

*Attorneys for Sonos, Inc.*