1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   David A. Nelson (admitted *pro hac vice*)
2  davidnelson@quinnemanuel.com
   191 N. Wacker Drive, Suite 2700
3  Chicago, Illinois 60606
   Telephone:    (312) 705-7400
4  Facsimile:    (312) 705-7401

5  Patrick D. Curran (Bar No. 241630)
   patrickcurran@quinnemanuel.com
6  111 Huntington Ave., Suite 520
   Boston, Massachusetts 02199
7  Telephone:    (617) 712-7100
   Facsimile:    (617) 712-7200
8
   *Attorneys for Google LLC*
9
                    UNITED STATES DISTRICT COURT
10
                    NORTHERN DISTRICT OF CALIFORNIA
11
                    SAN FRANCISCO DIVISION
12

| | |
|---|---|
| GOOGLE LLC,<br><br>           Plaintiff,<br><br>     v.<br><br>SONOS, INC.,<br><br>           Defendant. | Case No. 3:20-cv-03845-EMC<br><br>**GOOGLE LLC'S OPENING SUPPLEMENTAL BRIEF IN SUPPORT OF OPPOSITION TO SONOS INC.'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF '187 PATENT ASSERTED CLAIMS**<br><br>Date:    July 18, 2024<br>Time:    1:30 p.m.<br>Place:   Courtroom 5, 17th Floor<br><br>▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................................1

II. BACKGROUND ..................................................................................................................1

    A. Google's Infringement Allegations ...........................................................................1

    B. Cryptographic Algorithms ........................................................................................2

III. LEGAL STANDARD ...........................................................................................................2

IV. ARGUMENT ........................................................................................................................3

    A. Summary Judgment Of Non-Infringement Should Be Denied Under Google's Authentication Theory ................................................................................3

        1. Sonos's AuthToken is "based on" the household ID ....................................4

            (a) Court's Construction of "Based On" ...................................................4

            (b) Sonos's Documents Show the AuthToken is "based on" the household ID ..........................................................................................5

            (c) There Are At Least Genuine Disputes of Material Facts Regarding Whether The AuthToken is "based on" the household ID ..........................................................................................5

        2. Under the proper construction of "Private Key" There Is At Least a Genuine Dispute of Material Facts ................................................................7

            (a) Proper Construction of "Private Key" ................................................7

            (b) Sonos's AuthToken and Signed AuthToken Are Each A "Private Key" ........................................................................................9

            (c) There Are At Least Genuine Disputes of Material Facts Regarding Whether The AuthToken is a "Private Key" ..................10

V. CONCLUSION ...................................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) .................................................................................................... 2, 3

*Fantasy Sports Props., Inc. v. Sportsline.com, Inc.*,
    287 F.3d 1108 (Fed. Cir. 2002) ........................................................................................ 3

*Goldman v. Standard Ins. Co.*,
    341 F.3d 1023 (9th Cir. 2003) ......................................................................................... 6

*Mirror Worlds, LLC v. Apple Inc.*,
    692 F.3d 1351 (Fed. Cir. 2012) ........................................................................................ 3

*NetFuel, Inc. v. Cisco Sys. Inc.*,
    438 F. Supp. 3d 1031 (N.D. Cal. 2020) ........................................................................... 3

*Pitney Bowes, Inc. v. Hewlett–Packard Co.*,
    182 F.3d 1298 (Fed. Cir. 1999) .................................................................................... 2, 3

*Radware, Ltd. v. F5 Networks, Inc.*,
    147 F. Supp. 3d 974 (N.D. Cal. 2015) ............................................................................. 2

*Transonic Sys., Inc. v. Non-Invasive Med. Techs. Corp.*,
    143 F. App'x 320 (Fed. Cir. July 25, 2005) ..................................................................... 6

## I. INTRODUCTION

The Court ordered supplemental briefing on two issues (1) "whether there is a triable issue regarding the 'based on' element of the claim now that the term has been construed," and (2) "what is the proper construction of the term 'private key': may the key be any input into a cryptographic algorithm, including the input that is modified by the algorithm, or must it be the input that prompts the modification to occur?" D.I. 206 at 24.

With respect to the first question, the Accused Products meet the "based on" portion of the asserted claims, as construed, under Google's Authentication Theory. Regarding the second question, any non-public key input to a cryptographic algorithm such that, without the input of that key, the output of the algorithm cannot be computed, can be a "private key" within the context of the claims. Accordingly, the AuthToken used by the Accused Products is a "private key," as required by the asserted claims. Furthermore, viewing the evidence of record in the light most favorable to Google, there are at least genuine issues of material fact and triable issues regarding these two questions that warrant denying Sonos's Summary Judgment Motion of Non-Infringement ("Motion"). Google's expert—Dr. Alan Sherman—has submitted a supplemental expert report addressing the two issues identified by the Court. Dr. Sherman's evidence-based opinions should be accepted as true when considering Sonos's motion, warranting its denial.

## II. BACKGROUND

### A. Google's Infringement Allegations

As Dr. Sherman explained in his Opening Report, each Sonos Player device is designed to support a three-step authentication process when added to an existing household. *See, e.g.*, D.I. 191-2 (Sherman Op. Report) at ¶¶ 108-126, 134-137, 152-161. When the process of adding a Sonos Player device to an existing household involves adding a previously unregistered third-party music service to the household, this process includes providing the household information to the third-party music service provider to obtain an AuthToken required to access audio associated with the user's account from that music service. *Id.* In particular, when the household information is received from the added Sonos Player device by the third-party music service, ▮▮▮▮▮▮

1
2
3 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ This process practices the '187 Patent claims under the "***Authentication Theory***" set out in Dr. Sherman's Opening Report.

### B.   Cryptographic Algorithms

Cryptographic algorithms are not limited to encryption or decryption algorithms, but can include authentication or verification algorithms. Ex. 1 (Sherman Supp. Op. Report) at ¶¶18-20. These authentication or verification algorithms typically take some data as input, along with a verification key, and compute a YES/NO verification decision as the output. Such authentication or verification algorithms can be used, for example, to verify the authenticity of data or to verify authorization to access a system or data. Ex. 1 (Sherman Supp. Op. Report) at ¶¶ 21.

A cryptographic key can be used in two ways as an input to a cryptographic algorithm. First, the key can be used as a specified key (i.e., a "named" key) if the algorithm requires an input key. Ex. 1 (Sherman Supp. Op. Report) at ¶¶23-30. For example, a signature algorithm can take a specified or named key as the specified key input, and that specified key input controls the operation of the signature algorithm, i.e. that specified key input is used to sign the data being operated on. *Id.* Second, for any algorithm, with or without a specified input key, a key can be a ***data input*** to the algorithm. Ex. 1 (Sherman Supp. Op. Report) at ¶¶ 27-28, 33. For example, a verification algorithm can take an authentication or authorization key as the ***data input*** and a separate verification key as the specified key. Ex. 1 (Sherman Supp. Op. Report) at ¶¶ 24-28.

### III.   LEGAL STANDARD

The legal standard for summary judgment is set out in Google's Opposition to Sonos's Motion and incorporated by reference in its entirety. D.I. 191. On summary judgment, the court draws all reasonable factual inferences in favor of the nonmoving party. *See Anderson*, 477 U.S. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* In patent infringement cases, to obtain summary judgement of non-infringement a defendant must show that there is no genuine issue whether the accused device is encompassed by the claims. *See Radware, Ltd. v. F5 Networks,*

*Inc.*, 147 F. Supp. 3d 974, 1001 (N.D. Cal. 2015) (citing *Pitney Bowes, Inc. v. Hewlett–Packard Co.*, 182 F.3d 1298, 1304 (Fed. Cir. 1999) ("[S]ummary judgment of non-infringement can only be granted if, after viewing the alleged facts in the light most favorable to the non-movant, there is no genuine issue whether the accused device is encompassed by the claims."); *see also NetFuel, Inc. v. Cisco Sys. Inc.*, 438 F. Supp. 3d 1031, 1034 (N.D. Cal. 2020) (same). Because evidence of the nonmovant is to be believed on summary judgment, and because a plaintiff may establish infringement by relying on circumstantial evidence, defendants face a *very* high burden to show that there truly is no genuine issue to be weighed and decided by a factfinder. *See Mirror Worlds, LLC v. Apple Inc.*, 692 F.3d 1351, 1359 (Fed. Cir. 2012); *Fantasy Sports Props., Inc. v. Sportsline.com, Inc.*, 287 F.3d 1108, 1113 (Fed. Cir. 2002) (quoting *Anderson*, 477 U.S. at 255 ("The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor")).

## IV.   ARGUMENT

Sonos's Motion relies on noninfringement arguments that ignore the substantial evidence of infringement Google has identified. Sonos cannot meet its burden to justify summary judgment of noninfringement in view of the Court's construction of the phrase "based on," and Sonos also cannot meet its burden under a proper claim construction[1] of the phrase "private key." At most, Sonos's arguments raise genuine disputes of material fact regarding whether the Asserted Claims are met by the Accused Products. But such disputes fail to support a grant of summary judgment.

### A.   Summary Judgment Of Non-Infringement Should Be Denied Under Google's Authentication Theory

Sonos fails to show an absence of disputed material facts sufficient to support a finding of noninfringement under Google's Authentication Theory. Sonos asserts two primary noninfringement arguments for the asserted method (claims 1, 3, and 4) and apparatus (claims 10 and 12) claims: (1) the accused AuthToken is not "based on" the domain information, and (2) the accused AuthToken is not a "private key." Each of these arguments fails.

---

[1] As discussed herein, Google does not believe further construction of the term "private key" is necessary. To the extent Sonos is proposing additional limitations on the term "private key"—something that has not been made clear at this time—Google reserves the right to address any modified construction proposed by Sonos in Google's responsive brief.

1. **Sonos's AuthToken is "based on" the household ID**

    (a) <u>Court's Construction of "Based On"</u>

In its Summary Judgment Order, the Court construed "based on" such that "[i]t is not enough that the key be produced 'in consequence' of the domain information, or that the two are 'associated' in the sense that they are stored together. Rather the domain information must be somehow used to determine which key is issued in the first instance." D.I. 206 at 14.

The Court's construction takes into account the '187 Patent specification, which indicates that the contents of the domain information inform the key that is issued—when domain information is supplier to the key issuer, a determination is made whether that domain information already has already been issued a private key based on a "look up" in a database. This lookup determines that either a new key is issued if the domain information shows the domain does not yet exist, or, if the domain information shows the domain to be existing in the database the particular key in the database for that previously registered domain is provided. D.I. 206 at 12. The '187 Patent discloses that the key issuer performs a check to determine whether there is an existing domain, and the issuance of the key is based on the outcome of the domain check:

> Key issuer 105 authenticates the unit certificate (belonging to equipment 101) and then checks the domain information. ***If the domain information indicates that equipment 101 is being added to a new domain, key issuer 105 creates a new DRM public/private key pair. If equipment 101 is being added to an existing domain, key issuer 105 looks up that domain's DRM public/private key pair in a database…***

D.I. 185-3 ('187 Patent) at 4:16-41. In other words, according to the specification, a key is based on the domain information if the key issued is responsive to the domain information received—*i.e.,* issuance of a new key if a key has not been previously stored for that domain, and issuance of a previously generated key if a database identifies the domain as previously having received a key.

Indeed, the presence of this check is what the Court noted when it stated that "the specification describes a deterministic rather than any kind of causal relationship; the domain information is used to inform *which* key is issued, not just that *some* key is issued." D.I. 206 at 12. However, it is worth noting that there is nothing in the '187 specification that requires the domain information to be an input to the key generator for the key to be "based on" that domain information.

-4-
GOOGLE'S OPENING SUPPLEMENTAL BRIEF IN SUPPORT OF OPPOSITION TO SONOS'S MOTION FOR SUMMARY JUDGMENT

    (b) <u>Sonos's Documents Show the AuthToken is "based on" the household ID</u>

Sonos's documents establish the same "based on" relationship as that described in the '187 Patent specification: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Sonos's documentation and source code establish that, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Accordingly, in the '187 Accused Instrumentality, the AuthToken (private key) is "based on" the household ID (domain information) as construed by the Court, and disclosed in the '187 Patent.

    (c) <u>There Are At Least Genuine Disputes of Material Facts Regarding Whether The AuthToken is "based on" the household ID</u>

Sonos's and Dr. Wicker's disagreement over whether this relationship between the private device key and the household ID meets the claim requirement that the private key be "based on" the domain information at best creates an issue of fact, and is therefore insufficient to support a grant summary judgment of noninfringement.

---

[2] https://docs.sonos.com/docs/add-app-authentication#respond-to-getdeviceauthtoken-with-the-authorization-token

As Dr. Sherman explained, there is evidence that the AuthToken is "based on" the household ID. Wthether an AuthToken is generated upon receipt of the household ID is determined by a database lookup indicating whether an AuthToken already exists for the received Household ID. Ex. 1 (Sherman Suppl. Rpt.) ¶¶51-59. Sonos's own documentation confirms Dr. Sherman's opinions. For example, Sonos's developer documentation states that the household ID is sent to the third-party content provider for the third-party content provider to issue and send the AuthToken by using a "getDeviceAuthToken" request. D.I. 191-6 (Add Browser Authentication) at 2345. As Dr. Sherman explained, Sonos's developer documentation states how a third-party content provider *must* implement its authentication process. Specifically, the ***third-party service must use the household information to determine whether an AuthToken exists for this household, and if none exists, the third-party service responsively generates a specific AuthToken based on the household information***. D.I. 191-7 (Sonos Developer, *Use authentication tokens*).

To the extent Sonos argues that its AuthToken is not "based on" domain information, this argument, at most, raises a "battle of the experts" that revolves around the relationship between the AuthToken and the household ID, including what that relationship is (and how Sonos tells third parties to relate them). However, Sonos's disagreement with Dr. Sherman's analysis, especially in view of Sonos documentation and source code, is not a sufficient basis to grant Sonos's present motion. *Transonic Sys., Inc. v. Non-Invasive Med. Techs. Corp.*, 143 F. App'x 320, 330 (Fed. Cir. 2005) (noting "expert testimony sufficient to raise a genuine issue of material fact"); *Goldman v. Standard Ins. Co.*, 341 F.3d 1023, 1036 (9th Cir. 2003) (denying summary judgment because determination of "[w]ho is correct in this battle of experts is not for [the Court] to decide").

This evidence establishes at least a material question of fact as to whether AuthToken issuance is "based on" the household ID.

### 2. Under the proper construction of "Private Key" There Is At Least a Genuine Dispute of Material Facts

#### (a) Proper Construction of "Private Key"

The Court ordered additional briefing from the parties on whether the "private key," as recited in the Asserted Claims, may be "any input into a cryptographic algorithm, includ[ing] the input that is modified by the algorithm, or must it be the input that prompts the modification to occur?" D.I. 206 at 24. As referenced above, a "private key" should be properly construed as any input into a cryptographic algorithm. Ex. 1 (Sherman Suppl. Rpt.) ¶¶ 31-48. The Court's original claim construction recited "an input" to a cryptographic algorithm, i.e., not limited to a specific input, provided it was an input and was needed to compute the output of the algorithm: "[a] non-public key that is used as ***an input*** to a cryptographic algorithm designed such that, without the key, the output of the algorithm cannot be computed." D.I. 108. The Court's original construction—requiring the private key be "an input" without mandating that the private key be "an input that prompts the modification to occur"—is consistent with the '187 Patent specification, and how a POSITA would have understood a "private key" in the November 2002 timeframe. Accordingly, no further construction is required.

The specification of the '187 Patent does not limit private keys to encryption keys, instead its disclosure allows private keys to be authentication or authorization keys. *See e.g.,* D.I. 185-3 ('187 Patent) at 4:20-24, 6:38-40, 7:54-57. The '187 Patent discloses multiple exemplary techniques for protecting "digital content." For example, the specification describes cryptographic techniques that utilize "Public-Key Cryptography," which involves use of a public key and a private key. '187 Patent at 2:45-50. The '187 Patent also describes that, within a Public-Key Cryptographic system, a private key "is used for either decrypting data or generating digital signatures." *Id.* The specification describes that a "digital signature" is "an electronic signature that can be used to authenticate the identity of the sender of a message or the signer of a document, and possibly to ensure that the original content of the message or document that has been sent is unchanged." *Id.* at

2:59-64. The '187 Patent also describes authentication as "[t]he process of determining whether someone or something is, in fact, who or what it is declared to be," which can involve the use of public-key cryptography. *Id.* at 3:1-6. In addition to "Public-Key Cryptography" (also known as "asymmetric cryptography," because it uses two different keys), the '187 Patent also states that "alternate methods of securing the DRM system are possible using symmetric key techniques or broadcast key encryption techniques." *Id*. at 7:52-57.

The '187 Patent uses the term "private key" in relation to its embodiment describing public-key cryptography, but the term "private key" is not limited to this particular embodiment. *See e.g., Thorner v. Sony Comput. Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012) (finding that a patentee does not limit the scope of the claims to one embodiment by "simply disclos[ing] a single embodiment or us[ing] a word in the same manner in all embodiments.") For instance, the specification describes the process wherein user equipment 101 receives a DRM certificate from a key issuer 105. '187 Patent at 4:29-41. However, as the Court recognized, the specification also provides the following disclaimer: "[o]ne of ordinary skill in the art would recognize that alternate methods of securing the DRM system are possible using symmetric key techniques or broadcast key encryption techniques." '187 Patent, 7:54-57. The '187 Patent also uses the term "private key" more broadly, describing a "unit private key" that is used in relation to a secure authentication protocol . '187 Patent at 4:20-24, 6:38-40. A secure authentication protocol is not limited to encryption or decryption, and includes, for example, digital signature algorithms. Ex. 1 (Sherman Suppl. Rpt.) ¶ 29. There is simply no disclosure in the specification or prosecution history of the '187 Patent indicating that a "private key" must be **the** input that prompts the modification to occur, or that it is restricted solely for use in encryption. Ex. 1 (Sherman Suppl. Rpt.) ¶¶67.

The '187 Patent specification and its disclosure of "private key" are consistent with how a POSITA would have understood the term in the November 2002 timeframe. A POSITA would have known that there are non-public (i.e., private) keys for use in cryptographic algorithms that perform functions other than encryption or decryption. Ex. 1 (Sherman Suppl. Rpt.) ¶ 67. For example, hash algorithms are a type of cryptographic algorithm used for authentication that can employ private keys, but hash algorithms do not involve encryption or decryption. *See* 3/8/2021 Sherman Dep. at

-8-

29:18-31:3, 45:19-46:12; *see also* 3/9/2021 Wicker Dep. at 14:7-15, 28:5-19. Message authentication codes, key expansion, pseudorandom number generation, and sharing of secrets are also cryptographic algorithms that use private keys but do not require those keys for use in performing encryption or decryption. *See* 3/8/2021 Sherman Dep. at 45:5-18; Ex. 1 (Sherman Suppl. Rpt.) ¶ 20.

As Dr. Sherman explained, a POSITA in November 2002 would have understood a "private key" to have the format and properties necessary to be an input into a cryptographic algorithm, but that they would also understand that there would be no requirement that it be the ***only*** key input. Ex. 1 (Sherman Suppl. Rpt.) ¶¶ 70. Furthermore, a POSITA would have understood that a "private key" would not be restricted to the specified (or "named") key input into the cryptographic algorithm (i.e., the key used to modify); it could be a private key input as the specified data input of a cryptographic algorithm, as is typically done for authentication and authorization (private) keys. Ex. 1 (Sherman Suppl. Rpt.) ¶ 39. For example, authentication and authorization keys are typically validated by validation cryptographic algorithms that accept the authentication or authorization key to be validated as the specified data input into the validation algorithm. Ex. 1 (Sherman Suppl. Rpt.) ¶ 66. A POSITA in the November 2002 timeframe would have understood that a private key (such as an authentication or authorization key) that is used as an input to a cryptographic algorithm would function within that algorithm such that, without the key, the output of the algorithm could not be computed. This would be the case whether or not that private key is the only key input to the algorith, and whether or not it is the specified (or "named") key. Ex. 1 (Sherman Suppl. Rpt.) ¶¶70-71. For example, a signed authentication token is a private key, whether or not the original authentication information (data) is included along with the signature information for the signed authentication token. Ex. 1 (Sherman Suppl. Rpt.) ¶¶ 34-42.

### (b)  Sonos's AuthToken and Signed AuthToken Are Each A "Private Key"

The evidence of record establishes that Sonos's AuthToken is a "private key," as required by the claims and already construed by the Court.

1   First, Sonos's AuthToken is a private key in Sonos's signature (cryptographic) algorithm.
2   Ex. 1 (Sherman Suppl. Rpt.) ¶¶ 78-81.

11  Second, Sonos's signed AuthToken is a private key in Sonos's verification (cryptographic)
12  algorithm. Ex. 1 (Sherman Suppl. Rpt.) ¶¶ 82-85.

20  Therefore, the evidence confirms that Sonos's AuthToken is a private key.

(c) <u>There Are At Least Genuine Disputes of Material Facts Regarding Whether The AuthToken is a "Private Key"</u>

The Court already recognized that there is "at least some evidence that the AuthToken is input into a cryptographic algorithm; source code indicates that the AuthToken is signed using a cryptographic algorithm and that, subsequently, the signed AuthToken is transmitted to the third-party provider for purposes of verification." D.I. 206 at 16.

Construing the claims properly, and viewing the evidence in the light most favorable to Google (as it must be viewed at this stage), both the signature of the AuthToken and the verification

-10-
GOOGLE'S OPENING SUPPLEMENTAL BRIEF IN SUPPORT OF OPPOSITION TO SONOS'S MOTION FOR SUMMARY JUDGMENT

of the signed AuthToken by the third-party music services, which also includes the AuthToken as an input, establish at least a material question of fact as to whether the AuthToken is a claimed "private key." *See* Section IV.A.2.b *supra*.

## V. CONCLUSION

For the foregoing reasons, Google respectfully requests that the Court deny Sonos's motion.

DATED: June 6, 2024

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: */s/ Jeffrey S. Gerchick*

*Attorney for Google LLC*

-12-

## **ATTESTATION**

I, Sean Taheri, am the ECF user whose identification and password are being used in this filing. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that Jeffrey Gerchick has concurred in the filing of this document.

Dated: June 5, 2024                                              */s/ Sean Taheri*
                                                                            Sean Taheri

**CERTIFICATE OF SERVICE**

I hereby certify that on June 5, 2024, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of California, San Francisco Division, using the electronic case filing system of the Court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

        */s/ Sean Taheri*
        Sean Taheri