QUINN EMANUEL URQUHART & SULLIVAN, LLP
David A. Nelson (admitted *pro hac vice*)
davidnelson@quinnemanuel.com
191 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Patrick D. Curran (Bar No. 241630)
patrickcurran@quinnemanuel.com
111 Huntington Ave., Suite 520
Boston, Massachusetts 02199
Telephone: (617) 712-7100
Facsimile: (617) 712-7200

*Attorneys for Google LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| GOOGLE LLC,<br><br>            Plaintiff,<br><br>     v.<br><br>SONOS, INC.,<br><br>            Defendant. | Case No. 3:20-cv-03845-EMC<br><br>**GOOGLE LLC'S SUPPLEMENTAL REBUTTAL BRIEF IN SUPPORT OF OPPOSITION TO SONOS INC.'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF '187 PATENT ASSERTED CLAIMS**<br><br>Date:    July 18, 2024<br>Time:   1:30 p.m.<br>Place:   Courtroom 5, 17th Floor |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT .................................................................................................................. 1

    A. There Is Evidence In The Record Upon Which a Jury Could Find That the AuthTokens Are "Based On" The Household ID. ........................................................ 1

    B. There Is No Evidence that the Claimed "Private Key" Must Be The Cryptographic Key Input That Prompts The Modification To Occur ........................ 4

III. CONCLUSION ............................................................................................................... 6

## I. INTRODUCTION

Sonos's supplemental brief in support of summary judgment of noninfringement ("Supplemental. Motion" or "Suppl. Mot.") ignores substantial evidence and relies on unsupported construction of the claims to manufacture non-infringement arguments. Viewing the evidence in the light most favorable to Google (as required) reveals genuine issues of material fact concerning every issue Sonos raises.

With respect to the first issue on which the Court ordered supplemental briefing, nothing in Sonos's Suppl. Mot. resolves the genuine issues of material fact raised by Google. The Accused Products meet the "based on" portion of the asserted claims as construed by the Court, under Google's Authentication Theory.

With respect to the second issue on which the Court ordered supplemental briefing, Sonos's unsupported construction of "private key" does not avoid infringement. Tellingly, Sonos's expert, Dr. Wicker, does not provide any support for Sonos's incorrect construction. And as Google's expert, Dr. Sherman, explained at length, any non-public key input to a cryptographic algorithm such that, without the input of that key, the output of the algorithm cannot be computed, can be a "private key" within the context of the claims.

## II. ARGUMENT

Sonos ignores the substantial evidence of infringement Google has identified. At most, Sonos's arguments raise genuine disputes of material fact regarding whether the Asserted Claims are met by the Accused Products. Sonos's motion for summary judgment should be denied.

### A. There Is Evidence In The Record Upon Which a Jury Could Find That the AuthTokens Are "Based On" The Household ID.

The thrust of Sonos's argument regarding "based on," is once again, "lack of evidence." Because the party that "determine[s] which key is issued" is a third-party content service, Sonos argues that "Google has not obtained any evidence demonstrating how those third-party music services generate or select the authTokens that they supply to Sonos devices." Suppl. Mot. at 9. This is incorrect. As Google demonstrated in its Opening Brief, and as Dr. Sherman explained in both his supplemental report and his deposition (Ex. 1), "know[ing] the Sonos software and the

1  Sonos requirements document that describe the functionality required of the third-party music
2  providers … that information is sufficient to reach [his] conclusions." (Ex. 1 at 74:4-8).
3        As Dr. Sherman further explained, the Sonos requirements documents "include several facts
4  from which deductions can be made" showing the AuthTokens are "based on" the Household ID.
5  (Ex. 1 at 74:10:16.)  First, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
6  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
7  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  Second, the Sonos documentation indicates that the
8  requirements set by Sonos must be followed by the third-party music providers. That Sonos
9  documentation refers to the return token as a token for a specific household ID. (Ex. 1 at 75:17-22.)
10 Third, the Sonos documentation establishes a requirement regarding the generation of the
11 AuthToken by the third-party music providers, that "if a user connects to more than one Sonos
12 household, [the third-party] service must use a different token to represent that user-household
13 combination." (Ex. 1 at 77:7-9.)  This indicates the third-party music provider cannot simply return
14 an arbitrary token – it must return a token that is unique for that household. (Ex. 1 at 76:4-15.)
15 Fourth, the Sonos documentation describes that all devices within a household share the same
16 private key for a given music provider – therefore, a third-party music provider must be able to
17 recognize if a household already has a private key, so it can return the same key for that household.
18 (Ex. 1 at 77:18-79:2.) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
19 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
20 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
21 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
22 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
23 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
24 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
25       Sonos argues that there would be no need for a third-party music service to consult the
26 household ID because ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
27 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
28 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ the third-party music provider

1  would "safely assume that it needs to issue a new [authToken] because, if there already was an
2  existing authToken for that user/household combination, the device would have obtained it from an
3  existing device in the household" rather than a third-party music provider. *Id.* But Sonos provides
4  no evidence for this theory – only unsupported attorney argument. Sonos points to no documents,
5  and does not rely on any explanation from Dr. Wicker, or from its own 30(b)(6) designee on the
6  topic. Instead, Sonos points to testimony from Dr. Sherman that generally addresses replication
7  within a household. *Id.* That testimony says nothing about ███████████████████████
8  █████████████████████████████████████████████████████████████
9  █████████████████████████████████████████████████████████████
10 █████████████████████████████████████████████████████████████
11 █████████████████████████████████████████████████████████████
12 ████████████████  Sonos's theory raises, at most, a question of fact regarding infringement.
13         In the alternative, Sonos argues that "even if there were evidence that third-party music
14 services consult the household ID" to issue an authToken, a simple check would "at best, eliminate
15 a few of the potentially infinite authTokens that might issue, but still [would] not 'determine' which
16 authToken issues." Suppl. Mot. at 11. First, ████████████████████████████
17 ████████████████████████████████████████████████████████ Second,
18 the "simple check" described by Sonos *would* result in authTokens based on the household ID,
19 because such authTokens would be issued responsive to the domain information received —*i.e.*,
20 issuance of a new authToken if an authToken has not been previously stored for that household ID,
21 and issuance of a previously generated authToken if a database identifies the domain as previously
22 having received an authToken. *See* D.I. 213-4 Ex. C ('187 Patent) at 4:29-41. Sonos's example of
23 naming a child something other than their siblings doesn't support its argument. Naming a child
24 something other than their siblings *is* choosing a name for that child based on their siblings' names
25 — a conclusion consistent with the '187 specification, and this Court's construction. A key is based
26 on the domain information if the key is issued responsive to the domain information received—*i.e.*,
27 issuance of a new key if a key has not been previously stored for that domain, and issuance of a
28 previously generated key if a database identifies the domain as previously having received a key.

-3-
GOOGLE'S SUPPLEMENTAL REBUTTAL BRIEF IN SUPPORT OF OPPOSITION TO SONOS'S MOTION FOR SUMMARY JUDGMENT

B.  **There Is No Evidence that the Claimed "Private Key" Must Be The Cryptographic Key Input That Prompts The Modification To Occur**

Sonos argues that the claimed "private key" must be a cryptographic key "that is used as the key input (rather than as the data input) to a cryptographic algorithm." Suppl. Mot. at 2. Sonos's position is inconsistent with how a POSITA would have understood this claim term at the time of the invention.

Sonos continues to misrepresent the specification of the '187 Patent to support its flawed argument that a "key" cannot be used as a data input upon which a cryptographic algorithm is acting. Suppl. Mot. at 7-8. But as Dr. Sherman has opined, there is nothing in the '187 Patent specification that states a "key" cannot also be a data input into a cryptographic algorithm. D.I. 213-4 at ¶ 67. There is nothing in the specification or prosecution history of the '187 Patent indicating that a "private key" must be **the** input that prompts the modification to occur, or that it is restricted solely for use in encryption. As Dr. Sherman explained, "[t]he key that is input into a cryptographic algorithm does not necessarily control the operation. For example, in a verification algorithm of an authentication key, the key is the authentication key which is typically input as data, and that key does not control the operation of the algorithm." Ex. 1 at 14:2-10. This example is embodied in the Kerberos authentication service developed in 1988 at MIT. In the Kerberos service, a "ticket" is an access key, and this encrypted ticket is a data input to a verification algorithm run by a Service Server. D.I. 213-4 at ¶ 37.[1] Nor has Sonos advanced any expert testimony, or any factual evidence to the contrary. The portions of the '187 Patent Specification Sonos relies on refer to different keys, including DRM keys and a content encryption key. *See* D.I. 213-4 Ex. C ('187 Patent) at 4:52-56, 6:60-62. Google is not, as Sonos suggests, arguing that "all data inputs to cryptographic algorithms

---

[1] "In Kerberos, a client requests an access key (called a "ticket") from a Ticket Granting Server (TGS). The TGS issues a ticket (a private access key) to the client and encrypts it with the Service Server Key. In Kerberos, the Service Server is the server that provides the protected resource. Note that Kerberos uses the well-known and commonly used strategy of protecting a key by encrypting it. The client presents the ticket to Service Server. The Service Server verifies the ticket by decrypting it. In this verification step, the encrypted ticket (encrypted private access key) is the data input to the verification algorithm. In Kerberos, this verification algorithm is decryption, with the specified decryption key being the Service Server key."

are cryptographic keys, much less that they are cryptographic keys because they are data inputs to a cryptographic algorithm." Suppl. Mot. at 8.  Instead, as Dr. Sherman explained, the content encryption key is a private key, even if it becomes the data input to an asymmetric system involving both public and private keys.  Ex. 1 at 52:2-24.  The content encryption key is a private key, not because all data input are keys, but because it meets the requirement of a private key to be "***an input*** to a cryptographic algorithm designed such that, without the key, the output of the algorithm cannot be computed." D.I. 108.  Sonos also relies on Google's prior statements, and Dr. Sherman's prior statements, as well as dictionary definitions that use the words "key" and "data" separately.  But there is nothing inconsistent about Google (and Dr. Sherman's) prior statements.  Suppl. Mot. at 3-7.  Google and Dr. Sherman had simply not yet addressed the specific issue raised by the Court.

As explained in Google's Supplemental Brief, the Court's original construction—requiring the private key be "an input" without mandating that the private key be "an input that prompts the modification to occur"—is consistent both with the '187 Patent specification, and how a POSITA would have understood a "private key" in the November 2002 timeframe. Sonos has not shown otherwise.  Instead, Sonos's argument focuses on a "functional distinction" between "key input" and "data input" of a cryptographic algorithm.  Suppl. Mot. at 5.  But Google does not dispute that a cryptographic algorithm may use both data and keys.  Instead, as Dr. Sherman explained, Google simply argues that a private key need not be "the" key input that prompts the modification to occur to meet the definition of key. Sonos acknowledges "it is possible that one could, for example, attempt to encrypt a private key and thereby use that private key as the data input to a cryptographic algorithm that makes use of a different key." Suppl. Mot. Fn. 3.  However, Sonos argues that such a "'private key' is not a cryptographic key simply because it can be encrypted.  It only qualifies as a private key if there is a cryptographic algorithm designed to use it as the key." *Id.*  This is merely attorney argument, and it is incorrect.  As Dr. Sherman explained, a POSITA would have understood that a "private key" would not be restricted to the specified (or "named") key input into the cryptographic algorithm (i.e., the key used to modify); it could be a private key input as the specified data input of a cryptographic algorithm, as is typically done for authentication and authorization (private) keys. D.I. 213-4 at ¶¶ 37-39. Authentication and authorization keys are typically validated

-5-

1  by validation cryptographic algorithms that accept the authentication or authorization key to be
2  validated as the specified data input into the validation algorithm. *Id.* at ¶ 66. Again, this type of
3  configuration is highlighted by the exemplary Kerberos authentication service and its use of an
4  access key ("ticket") as a data input to the verification algorithm, while using a separate service
5  server key as the private key for the verification algorithm. *Id.* at ¶ 37.

6  Construing the claims properly, and viewing the evidence in the light most favorable to
7  Google (as it must be viewed at this stage), both the signature of the AuthToken and the verification
8  of the signed AuthToken by the third-party music services, which also includes the AuthToken as
9  an input, establish at least a material question of fact as to whether the AuthToken is a claimed
10 "private key."

11 **III.    CONCLUSION**

12  For the foregoing reasons, Google respectfully requests that the Court deny Sonos's motion.

14 DATED: July 3, 2024                    Respectfully submitted,

15                                         QUINN EMANUEL URQUHART & SULLIVAN, LLP
16

18                                         By: */s/ Jeff S. Gerchick*

19                                              *Attorney for Google LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 3, 2024, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of California, San Francisco Division, using the electronic case filing system of the Court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

                                                      _/s/ Sean Taheri_